**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-80-JJF-MPT |
| | ) | |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION and PHILIPS | ) | |
| MEDIZIN SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

**MEMORANDUM ORDER**

## I.   INTRODUCTION

Plaintiff Masimo Corporation ("Masimo") and defendants Philips Electronics North

America Corporation and Philips Medizin Systeme Böblingen GMBH manufacture

competing products in pulse oximetry.  Pulse oximetry is a non-invasive procedure for

measuring the level of oxygen saturation in a patient's arterial blood.  Pulse oximtery

systems are standard equipment in many clinical settings, either as stand-alone

devices, or, more commonly, as components of integrated multi-parameter patient

monitors which track pulse, temperature, and other physiological vital signs.  Pulse

oximetry systems are composed of a sensor, which collects data by shining a light through a patient's tissue, a "monitor," also sometimes referred to as a "board," "socket," or "pulse oximeter," which contains the electronics that process the signal and produce a saturation reading, and sometimes a cable which connects the sensor and monitor.

## II.    BACKGROUND

On February 3, 2009, plaintiff Masimo filed a complaint for infringement of its pulse oximetry-related patents, including its patent on signal extraction technology,[1] against defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GMBH.  Masimo filed a first amended complaint on May 12, 2009. Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GMBH filed their answer and Philips Electronics North America Corporation ("Philips") filed its counterclaims on June 15, 2009.  Philips' counterclaims include seven antitrust counterclaims, which focus on four purported categories of misconduct by Masimo. First, Philips' antitrust counterclaims allege that Masimo inserted anticompetitive restrictions into its licensing agreements with independent pulse oximeter companies and distributors.  Second, Philips contends that Masimo improperly excludes competition from the sensor and patient cable markets via ProCal, a proprietary interface that creates a technological tie between Masimo oximeters and sensors and thereby precludes customer use of non-Masimo sensors and patient cables.  Third, Philips alleges anticompetitive effects of a 2006 Masimo-Nellcor settlement agreement. Fourth, Philips alleges that Masimo has engaged in exclusionary pricing and bundling

---

[1] According to Masimo, signal extraction technology was the first pulse oximetry technique that could measure through motion.  D.I. 23.

practices designed to lock hospitals into Masimo pulse oximetry products.  On July 9,

2009, Masimo filed its answer to Philips' counterclaims, asserting its own counterclaims

and defenses.  On August 3, 2009, Philips filed its answer to Masimo's counterclaims

and a motion to strike certain of Masimo's antitrust affirmative defenses.  On August 8,

2009, Masimo filed a motion to bifurcate and stay discovery of Philips' antitrust

counterclaims.  The court heard arguments from the parties on this motion on

September 24, 2009.  This is the court's decision on Masimo's August 8, 2009 motion.

## III.   DISCUSSION

### A.   MOTION TO BIFURCATE

The court has broad discretion to order separate trials "for convenience, to avoid

prejudice, or to expedite and economize."[2]  "Courts, when exercising their broad

discretion to bifurcate issues for trial under Rule 42(b), should consider whether

bifurcation will avoid prejudice, conserve judicial resources, and enhance juror

comprehension of the issues presented in the case."[3]  "In the context of patent cases,

experienced judges use bifurcation and trifurcation both to simplify the issues in patent

cases and to maintain manageability of the volume and complexity of the evidence

presented to the jury."[4]  Bifurcation of patent and antitrust claims is not mandatory, but

---

[2] Fed. R. Civ. P. 42(b); *see also Ricoh Co., Ltd. v. Katun Corp.*, No. 03-2612, 2005 U.S. Dist. LEXIS 46493, at *3 (D.N.J. July 14, 2005) ("The court has broad discretion in deciding whether to separate issues and claims for trial, in accordance with its broad power to manage its trial calendar.") (citing *Enzo Life Sciences, Inc. v. Digene Corp.*, No. 02-212, 2003 U.S. Dist. LEXIS 10202, at *4 (D. Del. June 10, 2003); *Barr Labs. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992)).
[3] *Ciena Corp. v. Corvis Corp.*, No. 00-662-JJF, 2002 U.S. Dist. LEXIS 20826, **3 (D. Del. 2002).
[4] *Ricoh Co., Ltd.*, 2005 U.S. Dist. LEXIS 46493, at *3 (citing *Enzo Life Sciences, Inc.,* 2003 U.S. Dist. LEXIS 10202, at *5).

is common.**5**

The court's interest in juror comprehension weighs in favor of bifurcation in this

case.  There are currently 24 patents involved in this litigation.  A jury will be called upon

to determine whether these patents are valid and infringed.  If Philips' antitrust

counterclaims are tried at the same time, the jury will have to consider, at a minimum,

intricate factual and economic analyses regarding (1) the alleged relevant markets

before and after Masimo's purported anticompetitive behavior; (2) actual and potential

shares in such markets; (3) barriers to entry in such markets; (4) the terms of Masimo's

contracts with multi-parameter patient monitor manufacturers and whether such

contracts violated antitrust laws; (5) antitrust damages; and (6) all remaining

concomitant antitrust considerations.[6]  To add such issues to the patent case "would

pose a difficult task for even the most astute of juries."[7]  Masimo also maintains that it

possesses non-asserted patents which provide defenses to Philips' counterclaims.

Explanation and presentation of the existence and relevance of these non-asserted

patents to the jury would only further complicate trial and inevitably lead to juror

confusion.  In addition, the court notes that, at trial, Philips' allegations of

monopolization could bias the jury when it evaluates Masimo's patent claims.[8]

---

[5] *See id.* (noting, while deciding whether to bifurcate and stay a defendant's antitrust counterclaims, that "[b]ifurcation of complex patent disputes has become a common occurrence.") (citation ommitted).

[6] *See Dentsply Intern. Inc. v. New Technology Co.*, No. 96-272, 1996 WL 756766, at *5 (D. Del. 1996) (deciding to bifurcate patent and antitrust claims in part due to the risk that the jury would be confused if called upon to consider patent validity and infringement along with a host of antitrust issues).

[7] *Ricoh Co., Ltd.*, 2005 U.S. Dist. LEXIS 46493, at *4.

[8] *See Monsanto Co. v. E.I. Du Pont de Nemours & Co.*, No. 4:09CV00686, 2009 U.S. Dist. LEXIS 84512, at *7 (E.D. Mo. Sept. 16, 2009) ("[T]he court agrees with Plaintiffs that Defendants' allegations of monopolization could bias the jury when it evaluates Plaintiffs' patent claims.") (citing *Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 154 (N.D.N.Y. 1999), where the court noted that other courts had accepted a "prejudice-from-a-'negative label' theory" in deciding whether to sever infringement and

The court's interest in efficiency also weighs in favor of bifurcation.  First, "[t]here is a strong likelihood that consideration of the patent validity issues will be delayed significantly if tried together with the antitrust issues.  Major antitrust litigation is often enormously time-consuming."[9]  Second, the court finds, as discussed in more detail below, that there is a possibility that a trial on Masimo's patent claims will simplify some of Philips' antitrust counterclaims.[10]  A trial will determine, at the very least, the validity and scope of Masimo's asserted patents, and the scope of Masimo's patent protection may affect its liability under antitrust laws.[11]

Finally, there is little indication that bifurcation will substantially prejudice Philips.  Masimo correctly asserts that Philips could have brought its antitrust counterclaims years ago, yet instead waited until this litigation.  Thus, Philips' claim that it will be substantially prejudiced from bifurcation and any resulting delay in the trial of its antitrust counterclaims "rings somewhat hollow."[12]  The court recognizes that one of the bases

---

antitrust claims).

[9] *Akzona, Inc. v. E. I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 236 (D. Del. 1984); *see also Dsm Desotech Inc. v. 3D Sys. Corp.*, No. 08-CV-1531, 2008 U.S. Dist. LEXIS 87473 (D. Ill. Oct. 28, 2008) ("As the Supreme Court, the Seventh Circuit, and this court have all recognized, discovery in any antitrust case can quickly become enormously expensive and burdensome to defendants.") (collecting cases).

[10] *See Monsanto Co.,* 2009 U.S. Dist. LEXIS 84512, at *5 (deciding to bifurcate patent and antitrust claims in part because of the possibility that trial of the plaintiff's patent claims would simplify some of the defendant's antitrust counterclaims).  *See also Dentsply Intern. Inc.*, 1996 WL 756766, at *3, where the court discusses how a jury's resolution of patent claims can moot antitrust counterclaims:

There is a possibility that all aspects of the antitrust counterclaim . . . could be resolved by a first trial on patent infringement.  A patent gives a patent owner the right to exclude others from the marketplace for a statutory number of years.  Accordingly, a patent confers upon its owner the ability to bring monopolistic characteristics to the marketplace–the very antithesis of a prime purpose of antitrust legislation.

[11] *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981), *cert denied* 455 U.S. 1016 (1982) ("[W]here a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws.").

[12] *See ASM Am., Inc. v. Genus, Inc.*, No. 01-2190, 2002 U.S. Dist. LEXIS 1351, at *18 (N.D. Cal. Jan. 9, 2002) ("[Defendant's] allegation of irreparable harm rings somewhat hollow, however, in light of its failure to bring its antitrust claims against [Plaintiff] independently.").

for Philips' antitrust counterclaims–the allegedly anticompetitive 2006 Masimo-Nellcor

settlement agreement–is relatively recent, but the court nonetheless finds that its

interest in efficiency and in enhancing juror comprehension outweighs any purported

prejudice to Philips that might result from bifurcation.  Bifurcation will limit the number of

legal issues the jury must address at any particular time and will result in the

presentation of evidence in a manner that is easier for the jurors to understand.[13]

For the above reasons, Masimo's motion to bifurcate Philips' antitrust

counterclaims is granted.

### B.    MOTION TO STAY DISCOVERY

"Although separate trials have been ordered, there remains a distinct and

important issue:  whether the Court should order a stay in discovery on the antitrust

counterclaims."[14]  On one hand, the court fears that a stay in discovery on Philips'

antitrust counterclaims will "most likely devolve into a series of time-consuming and

expensive discovery disputes as to whether particular discovery is directed at the patent

or antitrust claims."[15]  On the other hand, the court is cognizant of the need to prevent

the parties from conducting discovery that will ultimately prove unnecessary.[16]

---

[13] *Ricoh Co., Ltd.*, 2005 U.S. Dist. LEXIS 46493, at *4
[14] *Dentsply Intern. Inc.*, 1996 WL 756766, at * 5.
[15] *Id.* at *6.  In *Densply*, the court decided to bifurcate patent and antitrust claims but not to stay discovery on the antitrust counterclaims:
> [A] stay of discovery on antitrust issues would most likely devolve into a series of time-consuming and expensive discovery disputes as to whether particular discover is directed at the patent or antitrust claims.  Efficiency dictates that discovery on all claims, including the antitrust counterclaims, continue apace.

*Id.*
[16]  *Cf. Monsanto Co.,* 2009 U.S. Dist. LEXIS 84512, at *8 ("Because these claims cannot be mooted by resolution of the infringement action, allowing discovery to proceed does not increase the potential that the parties will conduct discovery that will ultimately prove unnecessary, and such a course will likely reduce delay in resolving all issues before the court.").

Philips asserts that staying its antitrust counterclaims is inadvisable because resolution of Masimo's patent claims will have no impact on the viability of its antitrust counterclaims.  Philips maintains that (a) Masimo's "system claims" do not immunize Masimo from antitrust liability; (b) Masimo's patents do not confer any right to "police" the sale of sensors and cables through exclusionary conduct; (c) Masimo's separate patent protection for its oximetry components confers no independent right to violate antitrust law; and (d) Masimo's license agreements, settlement agreements, and other contracts are plainly subject to antitrust scrutiny.[17]

Masimo contends that a stay should be ordered because resolution of Masimo's patent claims will moot or at least simplify many of Philips' antitrust claims.  First, Masimo contends that, assuming its asserted system patents are valid, "the licensing and distribution agreements of which Philips complains . . . cannot have an anticompetitive effect."[18]  Masimo maintains that an agreement between Masimo and a third party manufacturer of pulse oximetry equipment prohibiting the third party from selling non-Masimo sensors or cables for use with Masimo pulse oximetry monitors could not violate antitrust laws as it would be within the scope of Masimo's patent rights.[19]  Masimo recognizes that "a patent owner may not take the property right granted by a patent and use it to extend his power in the marketplace improperly,"[20] but contends that its patents cover pulse oximetry systems as an integrated whole and therefore entitle it to exclude all others from a market covering monitors, sensors, and

---

[17] D.I. 31 at 6–16.
[18] D.I. 23 at 13.
[19] *Id.* at 12–13.
[20] *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1576 (Fed. Cir. 1990).

cables which incorporate its pulse oximetry technology.[21]

The scope of Masimo's patents will be determined at trial.  Although a patent does not permit a patentee to condition use of the patented product on the surrender of a monopoly in some other unpatented product, should Masimo's patents on signal extraction technology and pulse oximetry equipment cover using such patented products in concert with unpatented products (say, sensors and cables) in pulse oximetry systems, then Masimo may be entitled to monopolize those systems.[22] Accordingly, there is a possibility that a trial on Masimo's patent claims will potentially eliminate or simplify Philips' antitrust counterclaims alleging anticompetitive licensing restrictions.  It follows that discovery on such claims should be stayed.[23]

Second, Masimo argues that there can be no illegal tie or any other possible

---

[21]  D.I. 23 at 12–13.

[22] *Cf. Schor v. Abbott Labs.*, 457 F.3d 608, 614 (7th Cir. Ill. 2006) (discussing, in dicta, how Abbott's patents could potentially shield it from antitrust liability).

> Abbott's patents do more to support its position than to assist Schor.  Recall that the patents cover not only ritonavir administered by itself but also ritonavir administered in combination with another protease inhibitor.  Abbott therefore could take control of the market in combination treatments until the patents expire.  A patent does not permit its owner to condition use of the patented product on the surrender of a monopoly in some other unpatented product.  But the product "ritonavir in combination with another protease inhibitor" is patented to Abbott, which therefore is entitled to monopolize the combination.

*Id.* (internal citations omitted).

[23] *See Monsanto Co.,* 2009 U.S. Dist. LEXIS 84512, at *5 (deciding to stay discovery on defendants' antitrust counterclaims alleging sham litigation, fraud on the patent office, misrepresentations of patent rights, *and* anticompetitive licensing restrictions).  At the September 24, 2009 hearing on the present motion, counsel for Philips asserted that the court in *Monsanto Co.* (1) distinguished between patent-related antitrust claims that are sham litigation or *Walker Process*-based and independent antitrust claims and (2) "decided to go ahead and proceed with those independent antitrust claims staying discovery only on the sham litigation claims."  D.I. 65-1 at 7.  The distinction drawn in *Monsanto Co.*, however, is more accurately characterized as one between antitrust counterclaims that could potentially be eliminated or narrowed by resolution of the plaintiff's patent claims and those that could not be so affected.  The court in *Monsanto Co.* notes that through a separate trial on the plaintiffs' patent claims "there is the possibility of simplifying those claims alleging that Plaintiffs' license restrictions are anticompetitive."  *Monsanto Co.*, 2009 U.S. Dist. LEXIS 84512, at *5.  The court later concludes, "In sum . . . a stay of discovery and a separate trial of Defendants' antitrust counterclaims is warranted.  Discovery should proceed, however, on Defendants' antitrust counterclaims that will not potentially be eliminated or narrowed by resolution of Plaintiffs' patent claims . . . ."  *Id.* at *8–*9.

antitrust claim based on Procal, its allegedly exclusionary technological interface,

because (a) as Masimo has a right to exclude third parties from its entire pulse oximetry

system under [its] patents, there is no potential antitrust violation from Masimo requiring

that hospitals using its pulse oximetry monitors also use Masimo sensors and connector

cables and (b) "[i]f using an unlicensed sensor with a Masimo-technology monitor

infringes–and it does–then a technology that identifies an unauthorized combination

merely reinforces the patent right."[24]  Once again, the validity of this argument and its

resulting capacity to provide Masimo with a defense to Philips' antitrust counterclaims

turns, at least in part, on the scope of Masimo's patents.  The court therefore finds that

Philips' antitrust counterclaims alleging that Masimo illegally uses exclusionary

technological interfaces should be stayed.

Third, Masimo maintains that its 2006 settlement agreement with Nellcor could

not support antitrust liability as alleged by Philips.  Masimo argues that it has the right

under its patents to preclude Nellcor from permitting third parties to manufacture and

sell sensors for use with Nellcor's pulse oximeter monitors because such third party

sensors would be infringing products and Nellcor would thus be a contributory

infringer.[25]  Should Masimo's patents entitle Masimo to exclude others from its allegedly

patented pulse oximetry system (including monitors, sensors and cables using its signal

extraction technology), then Maximo may be entitled to restrict both Nellcor's continued

sale of its allegedly infringing pulse oximeter and its manufacture of such pulse

oximeters that are compatible with third-party  sensors.  It follows that Philips' antitrust

---

[24] *Id.* at 14.
[25] *Id.*

counterclaims concerning the 2006 Masimo-Nellcor settlement agreement may potentially be eliminated or narrowed by a determination of the scope of Masimo's patents.  Thus, again, a stay of discovery is warranted.

Lastly, Masimo contends that it is entitled to offer hospitals a package price for its patented system without raising any issue under antitrust law.[26]  Philips' antitrust counterclaims concerning Masimo's dealings with hospitals are primarily concerned with the effect that Masimo's alleged tying of cables and sensors to its oximeters has on the market for non-Masimo sensors and cables.  As explained above, the legality of this allegedly anticompetitive action may be affected by the scope of Masimo's patents, which will be determined at the trial of Masimo's patent claims.  Thus, a stay of Philips' antitrust counterclaims alleging exclusionary pricing and bundling is warranted.

## IV.    CONCLUSION

For the foregoing reasons, Masimo's motion to bifurcate and stay discovery of Philips' antitrust counterclaims (D.I. 22) is hereby GRANTED.  The patent and antitrust issues in this case will be bifurcated.  Discovery of the antitrust issues will be stayed pending trial on the patent issues.

Date:  March 11, 2010                    /s/ Mary Pat Thynge
                                         UNITED STATES MAGISTRATE JUDGE

---

[26] *Id.*