**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MASIMO CORPORATION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 09-80-JJF-MPT |
|  | ) |
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and PHILIPS MEDIZIN SYSTEME BÖBLINGEN GMBH, | ) ) ) |
|  | ) |
| Defendants. | ) |
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, | ) ) |
|  | ) |
| Counterclaim-Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MASIMO CORPORATION, | ) |
|  | ) |
| Counterclaim-Defendant. | ) |

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

Plaintiff Masimo Corporation ("Masimo") and defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GMBH manufacture competing products in pulse oximetry. Pulse oximetry is a non-invasive procedure for measuring the level of oxygen saturation in a patient's arterial blood. Pulse oximtery systems are standard equipment in many clinical settings, either as stand-alone devices, or, more commonly, as components of integrated multi-parameter patient monitors which track pulse, temperature, and other physiological vital signs. Pulse

oximetry systems are composed of a sensor, which collects data by shining a light through a patient's tissue, a "monitor," also sometimes referred to as a "board," "socket," or "pulse oximeter," which contains the electronics that process the signal and produce a saturation reading, and sometimes a cable which connects the sensor and monitor.

## II.  BACKGROUND

On February 3, 2009, plaintiff Masimo filed a complaint for infringement of its pulse oximetry-related patents, including its patent on signal extraction technology,[1] against defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GMBH.  Masimo filed a first amended complaint on May 12, 2009.  Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GMBH filed their answer and Philips Electronics North America Corporation ("Philips") filed its counterclaims on June 15, 2009.  Philips' counterclaims include seven antitrust counterclaims.  On July 9, 2009, Masimo filed its answer to Philips' counterclaims, asserting its own counterclaims and defenses.  On August 3, 2009, Philips filed its answer to Masimo's counterclaims and a motion to strike certain of Masimo's antitrust affirmative defenses.  On August 8, 2009, Masimo filed a motion to bifurcate and stay discovery of Philips' antitrust counterclaims.  The court heard arguments from the parties on this motion on September 24, 2009.  On March 11, 2010, this court granted Masimo's motion to bifurcate and stay discovery of Philips' antitrust counterclaims.[2]  Philips moved for reconsideration of that order on March 22, 2010.  This is the court's

---

[1] According to Masimo, signal extraction technology was the first pulse oximetry technique that could measure through motion.  D.I. 23.
[2] D.I. 67.

decision on Philips' motion for reconsideration of the court's March 11, 2010 order granting Masimo's motion to bifurcate and stay discovery.

## III. LEGAL STANDARD

The purpose of a motion for reargument or reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.[3] "[R]eargument may be appropriate where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'"[4] To prevail on a motion for reconsideration, the moving party must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[5]

## IV. THE PARTIES' POSITIONS

Philips moves the court to reconsider its March 11, 2010 order and to deny Masimo's motion to stay discovery concerning Philips' antitrust counterclaims. In support of its motion, Philips argues (1) the court's stay of Philips' misuse defense and counterclaims is inappropriate absent "extreme circumstances;" (2) the court's treatment of "systems claims" as a justification for an indefinite stay is clearly erroneous; and (3) an indefinite stay in this case severely harms Philips and significantly diminishes meaningful prospects of settlement.

---

[3] *Johnson v. Diamond State Port Corp.*, 50 Fed. Appx. 554, 559–60 (3d Cir. 2002) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).
[4] *Id.* at 560 (quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990)).
[5] *Id.* (citing *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

Masimo argues that Philips' motion should be rejected because it offers no basis for seeking reconsideration of the court's order, but rather merely repeats previously-asserted arguments.  Masimo also contends that Philips' alternative request that the court certify the above quoted question to the Federal Circuit is procedurally flawed and devoid of a proper basis for an interlocutory appeal.  Finally, Masimo maintains that the court's decision to stay antitrust-related discover pending trial of the parties' patent claims was well within the court's discretion and consistent with established law.

## V.  DISCUSSION

Philips asserts neither that an intervening change in controlling law has occurred, nor that new evidence is available that was not available when the court issued its March 11, 2010 order.  As a result, Philips' sole basis for its motion for reconsideration is that reconsideration is necessary to correct a clear error of law or fact or to prevent manifest injustice.

### A.  PHILIPS ARGUES THAT A STAY IS INAPPROPRIATE ABSENT "EXTREME CIRCUMSTANCES"

Philips contends that the court's order will result in the following parade of horribles: "Philips will be unfairly prevented from establishing facts critical to its patent misuse defense;" Philips will bear the brunt of lost evidence and fading memories; Masimo will further entrench its already dominant market position through exclusionary tactics; the prospects of settling this case will be severely diminished due to the parties now-uneven bargaining powers; and Philips, along with third parties who allegedly support Philips' efforts to challenge Masimo's purported anticompetitive behavior, will be

4

subjected to inefficient multiple discovery requests.[6]

Philips asserts that "[i]n situations like this, an indefinite stay 'can constitute an abuse of discretion.'"[7] Philips also contends that stays of indefinite duration are "especially discouraged" due to the significant prejudice to the non-moving party,[8] and that "[w]here a requested stay would prejudice the non-movant, the moving party must make 'a showing of a clear case of hardship or inequity before the Court can enter a stay order.'"[9]

The court is not persuaded by Philips' arguments. First, as Masimo points out, "Philips fails even to pay lip-service to the controlling legal standard [for reconsideration] in its brief."[10] Second, it is well established that "[a] United States district court has broad power to stay proceedings."[11] Third, "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."[12] The court's stay is not "indefinite" as Philips alleges. Rather, as Masimo points out, the court has stayed discovery on antitrust issues only pending trial of

---

[6] D.I. 72 at 3–4.

[7] *Id.* at 4. Philips cites *Dover v. Diuglielmo*, 181 Fed. Appx. 234 (3d Cir. 2006) in support of the proposition quoted above. Philips' reliance on *Dover* is, however, misplaced at best. In *Dover*, an incarcerated appellant, Charles Dover, challenged the district court's dismissal with prejudice of his pro se civil rights action. *Id.* at 236. The district court dismissed Dover's case because, after the district court attempted for over four months to find counsel willing to represent Dover, Dover refused to be deposed without counsel. *Id.* at 237. Dover so refused even after ample notice that his case could be dismissed following such refusal. *Id.* The Third Circuit reviewed the history of Dover's case and noted that "[t]he District Court was not required to stay the proceedings indefinitely pending the appointment of counsel; indeed, such a stay can itself constitute an abuse of discretion." *Id.* Clearly, the present case is distinguishable from *Dover*. In fact, the court finds no meaningful basis for comparing the situation in *Dover* to the present case.

[8] D.I. 72 at 4.

[9] Id. at 3 (citing *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990)).

[10] D.I. 79 at 4. Philips' motion and brief in support fail to mention the controlling legal standard for a court's reconsideration.

[11] *Dentsply Int'l, Inc.,* 734 F. Supp. at 658 (citing *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)).

[12] *Bechtel Corp.*, 544 F.2d at 1215.

Masimo's and Philips' patent claims. Fourth, the thrust of Philips' arguments presupposes that the court believes Philips will be prejudiced by the ordered stay, and, as the court noted in its March 11, 2010 order, Philips waited until this litigation to assert its antitrust counterclaims. It is still the court's opinion that Philips' claim that it will be substantially prejudiced by any delay in the trial of its antitrust counterclaims rings somewhat hollow.[13] For these reasons, the court will deny Philips' motion for reconsideration based on Philips' assertion that a stay is inappropriate absent extreme circumstances.

### B. PHILIPS ARGUES THAT THE COURT'S TREATMENT OF "SYSTEM CLAIMS" AS A JUSTIFICATION FOR AN INDEFINITE STAY IS CLEARLY ERRONEOUS

Philips asserts that the court, in granting a stay, "has relied on an erroneous theory, championed by Masimo, that a 'system claim' grants Masimo the right to exclude competition from all components of a pulse oximetry 'system.'"[14] Philips takes issue with the court's reading of *Schor v. Abbott Labs*.[15] Citing *Shor* for support, in its March 11, 2010 order, the court provided the following:

---

[13] In its motion for reconsideration, Philips complains:
The Court's statement that "Philips could have brought its antitrust claims years ago" assumes facts that have not been presented, unjustly shifts the burden to Philips to prove a new harm during some time period that is apparently shorter than the statute of limitations, and ignores the fact that Masimo could have brought its claims several years ago but did not. In short, the Court's analysis wrongly places the burden on the **non-moving party**, where there were facts that pointed at least equally in the other direction.
D.I. 72 at 9 n.7 (emphasis in original). The court has neither assumed any fact not presented nor shifted any burden to Philips. The court merely recognizes that Philips did not assert a claim against Masimo alleging anticompetitive practices until after Masimo filed its complaint alleging patent infringement. Thus, ringing somewhat hollow are Philips' claims that a stay disserves Philips, health care consumers, the economy, and public interest in private antitrust enforcement.
[14] D.I. 72 at 4.
[15] 457 F.3d 608 (7th Cir. 2006).

> The scope of Masimo's patents will be determined at trial. Although a patent does not permit a patentee to condition use of the patented product on the surrender of a monopoly in some other unpatented product, should Masimo's patents on signal extraction technology and pulse oximetry equipment cover using such patented products in concert with unpatented products (say, sensors and cables) in pulse oximetry systems, then Masimo may be entitled to monopolize those systems.[16]

In a footnote, the court provided the following excerpt from the *Schor* opinion:

> Abbott's patents do more to support its position than to assist Schor. Recall that the patents cover not only ritonavir administered by itself but also ritonavir administered in combination with another protease inhibitor. Abbott therefore could take control of the market in combination treatments until the patents expire. A patent does not permit its owner to condition use of the patented product on the surrender of a monopoly in some other unpatented product. But the product "ritonavir in combination with another protease inhibitor" is patented to Abbott, which therefore is entitled to monopolize the combination.[17]

In support of its argument that the court plainly misconstrued the *Schor* opinion, Philips cites from this excerpted section the sentence providing, "A patent does not permit its owner to condition use of the patented product on the surrender of a monopoly in some other unpatented product."[18] Notably, Philips omits the subsequent sentence. Philips then contends that the court erred in its conclusion that delineation Masimo's patent rights may narrow or simplify Philips' antitrust claims because Masimo in fact conditions sales of its Masimo SET oximeters on aftermarket sales of Masimo sensors, and the anticompetitive effects of this action are subject to antitrust scrutiny regardless of Masimo's patent rights.

Philips cites *Aro Mfg. Co. v. Convertible Top Replacement Co.*,[19] *Husky Injection*

---

[16] D.I. 67 at 8.
[17] D.I. 67 at 8 n.22 (citing *Schor*, 457 F.3d at 614).
[18] D.I. 72 at 6.
[19] 365 U.S. 336 (1961).

*Molding Sys. Ltd. v. R&D Tool Eng'g Co.*,[20] *Kendall Co. v. Progressive Med. Tech.*,[21] and *Beal Corp. Liquidating Trust v. Valleylab, Inc.*[22] in support of the proposition that replaceable components of a patented "system" are not separately covered by a patent grant, and a patentee is therefore precluded from imposing anticompetitive restrictions on downstream replacement component sales.[23]

*Aro*, *Husky*, and *Kendall* addressed the right to repair unpatented, commodity components after the initial purchase of a patented product.[24] *Beal* addressed, *inter alia*, whether a defendant patentee with a patent on a base unit for an electrosurgical device could, on the basis of the plaintiff's sale of handpieces capable of being used in conjunction with the patentee's base unit, assert a patent law defense (alleging the plaintiff's contributory infringement) to plaintiff's antitrust claims.[25] In each of these cases, the component at issue was either not patented by the party alleging infringement, or considered a replaceable commodity product, or both.[26]

---

[20] 291 F.3d 780 (Fed. Cir. 2002).
[21] 85 F.3d 1570 (Fed. Cir. 1996).
[22] 927 F. Supp. 1350 (D. Colo. 1996).
[23] D.I. 72 at 5–6.
[24] *See Aro Mfg. Co.*, 365 U.S. at 342 ("The determinative question, therefore, comes down to whether the car owner would infringe the combination patent by replacing the worn-out fabric element of the patented convertible top on his car, or even more specifically, whether such a replacement by the car owner is infringing 'reconstruction' or permissible 'repair.'"); *Husky Injection Molding Sys. Ltd.*, 291 F.3d at 787 ("We conclude that the same safe harbor exists where activity 'akin to repair' is involved as when repair is involved. In both cases, there is no infringement if the particular part is readily 'replaceable.'"); *Kendall Co.*, 85 F.3d at 1573 ("[T]he specific issue that we must address is whether Kendall's customers acted 'without authority' when they replaced the pressure sleeves after each use. The district court held that such action was within their right to repair the [patented] System.").
[25] *Beal*, 927 F. Supp. at 1360–62.
[26] *See Aro Mfg. Co.*, 365 U.S. at 339 ("The fabric with which we deal here is an unpatented element of respondent's combination patent, which covers only the combination of certain components, one of which is a 'flexible top material.'"); *Husky Injection Molding Sys. Ltd.*, 291 F.3d at 788–89 ("Here there is no question that the particular parts were readily 'replaceable' parts. . . . In this case, the [component at issue] is just one element of the patented combination and not separately patented . . . ."); *Kendall Co.*, 85 F.3d at 1576 n.3 ("The sleeve is apparently the subject of one or more U.S. patents, but those patents were not asserted . . . ."); *Beal Corp. Liquidating Trust*, 927 F. Supp. at 1362 ("Where direct infringement does not exist, there can be no contributory infringement. Because Beacon's sale of its

Here, Masimo asserts that its patents "cover Masimo's pulse oximetry technology as an integrated whole" and that its sensors and cables are "not mere commodity products that can be replaced with third party components without altering the nature of the patented system itself."[27] Masimo maintains that its "patented SET technology cannot function properly without Masimo sensors, and Masimo has separate patents on its sensors and the verification system that helps ensure appropriate sensors will be used with its monitors."[28] Philips argued in its opposition to Masimo's August 8, 2009 motion to bifurcate and stay discovery of Philips' antitrust counterclaims that "sensors and cables are essentially 'staple' goods that are capable of substantial non-infringing uses," and, accordingly, "Masimo has no legal right to prohibit the manufacture or sale of any staple goods that a consumer might choose to use in conjunction with an oximeter 'system.'"[29] The parties' conflicting positions on what Masimo's patents protect underscores the possibility that delineation of Masimo's patent rights may narrow or simplify Philips' antitrust claims.

The court is not prepared to reconsider its order granting Masimo's motion for bifurcation and stay of Philips' antitrust counterclaims on the ground that the court erred in its treatment of Masimo's "system claims."

### C. PATENT MISUSE

Philips maintains that this case will reach "procedural limbo" under the court's

---

handpieces for use with Birtcher and Valleylab base units does not infringe on Birtcher's base unit patent, the handpiece is capable of non-infringing use. 35 U.S.C. § 271 provides a patentee the limited right to control nonstaple goods that are capable only of infringing use. Birtcher, therefore, does not have a statutory right to control the market for handpieces.") (citations omitted).
  [27] D.I. 79 at 7–8.
  [28] Id. at 9 n.5.
  [29] D.I. 31 at 13.

March 11, 2010 order. Philips argues that it needs discovery on Masimo's anticompetitive conduct before any final ruling on patent issues because such discovery is relevant to Philips' affirmative defense of patent misuse. Philips contends that a stay of only antitrust discovery produces the "unworkable result that final judgment on Masimo's patent claims must await discovery on the patent case, trial and potentially appeal on the patent liability case, discovery on Masimo's anticompetitive conduct, and finally a trial on that conduct," which will mire the parties in perpetual litigation.[30]

The court will modify its March 11, 2010 order to address Philips's concerns. Contrary to what Philips requests, however, the court will neither order that patent misuse be tried with infringement and validity issues, nor allow discovery relating to the alleged patent misuse to go forward. Because "patent misuse issues are more analogous to antitrust claims than patent validity or infringement,"[31] and because this court will not reconsider its March 11, 2010 order staying antitrust discovery, that order

---

[30] D.I. 72 at 9.
[31] *Pharmacia, AB v. Hybritech, Inc.*, 224 U.S.P.Q. 975, 976 (S.D. Cal. 1984) ("Because the patent misuse issues are more analogous to antitrust claims than patent validity or infringement, they should be tried in the subsequent antitrust trial.") (citation omitted); *Eurand Inc. v. Mylan Pharms., Inc.*, Civ. No. 08-889-SLR, 2009 U.S. Dist. LEXIS 92542, at *8 (D. Del. Oct. 1, 2009) (granting motion to sever and stay patent infringement action from antitrust counterclaims and patent misuse affirmative defense). In *Eurand*, Judge Robinson reasoned:
> Defendants do not oppose bifurcation of the antitrust counterclaims. However, while a finding of patent misuse does not mandate a similar finding of antitrust violation, the issues are closely aligned as both inquire into anticompetitive behavior. Thus, any economies derived from severing the antitrust issues from the case at bar would be minimized by failing to also sever the issues of patent misuse.

*Id.* at *7 (citations omitted). *See also Components, Inc. v. Western Electric Co.*, 318 F. Supp. 959, 968 (D. Me. 1970), where the court concludes:
> Defendant's motion for a separate trial and stay of discovery of the antitrust and patent misuse issues presented by this action will be granted. A trial on the patent infringement and validity issues . . . will be held first, and pretrial discovery directed to those issues will proceed forthwith. At the termination of the trial of the infringement and validity issues, the parties may then proceed with their pretrial discovery on the antitrust and misuse issues, and upon completion of that discovery, the trial of those issues will be had.

will be modified so that Philips' affirmative defense of patent misuse is bifurcated along with Philips' antitrust counterclaims. Discovery relating to patent misuse will be stayed.

### D. CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

Philips moves in the alternative for certification of the following question for immediate appeal to the Federal Circuit, pursuant to 28 U.S.C. § 1292(b):[32]

> Whether, a patent holder, wielding economic monopoly power over a patented article, may rely on a "system claim" to exclude aftermarket competition from commodity components of the claimed system.[33]

The following constitutes the entirety of Philips' argument in support of this request: "Philips submits that this question would plainly constitute a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[34]

Masimo argues that Philips is not entitled to § 1292(b) certification of its proposed question. The court agrees. Review under § 1292(b) is granted sparingly, in exceptional cases, and only after the moving party shows that "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference

---

[32] 28 U.S.C. § 1292(b) provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
(Emphasis in original).
[33] D.I. 71 at 1–2; D.I. 72 at 10.
[34] D.I. 71 at 1–2; D.I. 72 at 10.

of opinion respecting the correctness of the district court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation."[35] In its March 11, 2010 order, the court did not decide a controlling issue of law. The court made no legal determinations about the scope and application of Masimo's patent-related defenses to Philips' antitrust claims. Further, the court does not believe that an immediate appeal would materially advance the ultimate termination of this litigation. Certification pursuant to § 1292(b) is inappropriate at this juncture. Therefore,

    IT IS ORDERED that

For the reasons contained herein, Philips' motion for reconsideration, or, in the alternative, certification of its proposed question to the Federal Circuit (D.I. 71) is DENIED. Philips' request for a hearing on the issue of § 1292(b) certification is also denied.

    IT IS FURTHER ORDERED that

Philips' affirmative defense of patent misuse is hereby bifurcated and discovery related to that defense is stayed pending trial of the parties' patent infringement and validity issues.

Date: April 19, 2010                  /s/ Mary Pat Thynge
                                               UNITED STATES MAGISTRATE JUDGE

---

[35] *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. Ohio 1993); *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. Pa. 1977) ("Section 1292(b) is not intended to grant the appellate courts power to give advice on speculative matters.").