**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MASIMO CORPORATION,

Plaintiff,

v.

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and PHILIPS MEDIZIN SYSTEME BÖBLINGEN GMBH,

Defendants.

C.A. No. 09-80-LPS-MPT (Consolidated)

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NONINFRINGEMENT OF U.S. PATENT NO. 7,215,984**

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel: (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH*

Dated: August 14, 2012
Public Version Dated: August 21, 2012
1071447 / 33976

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDINGS ..... 1

II. SUMMARY OF ARGUMENT ..... 1

III. STATEMENT OF FACTS ..... 2

A. The '984 Patent ..... 2

B. Philips' Fourier Artifact Suppression Technology ("FAST") ..... 3

IV. ARGUMENT ..... 4

A. Applicable Legal Standards ..... 4

1. Anticipation ..... 4

2. Obviousness ..... 5

3. Non-infringement ..... 5

B. Masimo's Only Validity Argument is Based on an Incorrect Claim Construction it now Proffers for the First Time ..... 6

1. The plain meaning of the claims is readily apparent ..... 6

2. Masimo now adds limitations to the claims for the first time ..... 7

3. The dispute over the meaning of the claims must be decided before trial as a matter of law ..... 9

4. Masimo's efforts to further construe the claims should be rejected ..... 9

C. The Asserted Claims of the '984 Patent are Invalid ..... 10

1. The Asserted Claims of the '984 Patent are Invalid over Ukawa ..... 10

a) Claims 1-5, 15, 19, 20, 22, 52, and 53 are anticipated by Ukawa ..... 11

i. Claims 1, 2-4, and 15 are anticipated by Ukawa ..... 11

ii. Claim 5 is anticipated by Ukawa ..... 12

iii. Claims 19, 20, and 22 are anticipated by Ukawa ..... 13

iv. Claims 52 and 53 are anticipated by Ukawa ..... 13

b) Claims 16 and 54 are obvious over Ukawa ..... 14

2. Claims 1-5, 15, 19, 20, 22, 52, and 53 of the '984 Patent are Anticipated by Hall ..... 15

a) Claims 1-4 and 15 are anticipated by Hall ..... 16

b) Claim 5 is anticipated by Hall ..... 16

c) Claims 19, 20, and 22 are anticipated by Hall ..... 17

d) Claims 52 and 53 are anticipated by Hall ..... 17

D. Philips' FAST Does Not Infringe the Asserted Claims of the '984 Patent ..........17

1. [redacted] ....................17

2. Philips' FAST Does Not Infringe Claims 15, 16, 19, 20, 53, and 54 of the '984 Patent ..........19

V. CONCLUSION ..........20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) ..... 12

*Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310 (Fed. Cir. 2008) ..... 5

*Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241 (Fed. Cir. 2000) ..... 5

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) ..... 4

*Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294 (Fed. Cir. 2010) ..... 12, 17

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) ..... 5

*Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821 (Fed. Cir. 1991) ..... 8

*Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352 (Fed. Cir. 2000) ..... 6

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ..... 5

*Lemelson v. The United States*, 752 F.2d 1538 (Fed. Cir. 1985) ..... 13, 17

*Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997) ..... 13

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ..... 9

*Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043 (Fed. Cir. 2001) ..... 4

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), *aff'd*, 426 F. App'x 913 (Fed. Cir. 2011) ..... 9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 9

*Schering Corp. v. Geneva Pharms.*,
339 F.3d 1373 (Fed. Cir. 2003) .......... 4

*SmithKline Beecham Corp. v. Apotex Corp.*,
403 F.3d 1331 (Fed. Cir. 2005) .......... 5

*V-Formation, Inc. v. Benetton Group SpA*,
401 F.3d 1307 (Fed. Cir. 2005) .......... 5

*Wahpeton Canvas Co. v. Frontier, Inc.*,
870 F.2d 1546 (Fed. Cir. 1989) .......... 5

**STATUTES**

35 U.S.C. § 102(b) .......... 15

35 U.S.C. § 102(e) .......... 10

**OTHER AUTHORITIES**

FED. R. CIV. P. 56 .......... 4

Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH (collectively, "Philips") submit this Opening Brief in Support of their motion for summary judgment of invalidity and non-infringement of the asserted claims of U.S. Patent No. 7,215,984 ("the '984 Patent") (Ex. 3).[1]

## I. NATURE AND STAGE OF PROCEEDINGS

In this lawsuit, Plaintiff Masimo Corporation ("Masimo") accuses Philips of infringing claims 1-5, 15, 16, 19, 20, 22, and 52-54 of the '984 Patent (claims 1, 52, and 53 are independent). Philips has filed counterclaims for non-infringement, invalidity, and unenforceability of the '984 Patent.

The Court issued its *Markman* Order on January 17, 2012. D.I. 319. Fact discovery closed on June 2, 2011 and expert discovery closed on July 16, 2012. No trial date has been set. The present motion is a dispositive motion seeking summary judgment that the asserted claims of the '984 Patent are invalid and that Philips does not infringe them.

## II. SUMMARY OF ARGUMENT

The asserted claims of the '984 Patent recite a device that uses at least one of two available calculation techniques to calculate a physiological parameter such as oxygen saturation. During claim construction, Masimo strenuously argued that the claims should be given their plain and ordinary meaning, with no limitations added, and the Court agreed.

1. As written, all but two claims are undeniably anticipated by prior art patents to inventors Ukawa and Hall. There is no dispute that each reference discloses a device with two calculation techniques for calculating oxygen saturation. Faced with these indistinguishable references, Masimo now seeks at the eleventh hour to construe the claims contrary to their plain

[1] All citations to exhibits refer to Defendants' Compendium of Exhibits filed concurrently herewith.

meaning to require "parallel, alternative calculations" that receive the same "time window" of input data. Masimo's new interpretation is wholly unsupported by the claims, and should be rejected.

Masimo's technical expert admits that Ukawa and Hall are indistinguishable if the Court does not adopt her new construction. Under the proper construction, the asserted claims are anticipated by Ukawa and Hall.

2. However, if the Court does adopt Masimo's proposed construction, Masimo's expert admits that the accused Philips algorithm ("FAST") does not meet the limitations she seeks to add. [redacted]

3. Regardless of claim construction, the Court should also grant summary judgment of non-infringement of claims 15-16, 19-20 and 53-54. Each of these claims recite functions to be performed by the "processing module." [redacted]

## III. <u>STATEMENT OF FACTS</u>

### A. The '984 Patent

The asserted claims of the '984 Patent are directed at the use of at least one of two calculation techniques for calculating a value representative of a physiological characteristic of a patient, such as oxygen saturation or pulse rate. *See, e.g.*, Ex. 14A (Stone Inv. Rpt.) ¶¶ 188-89;

[redacted] The specification describes the use of multiple "processing functions" in association with Figure 14:

FIG. 14

As illustrated in Figure 14, signals detected by a pulse oximetry sensor are subjected to demodulation 400 and decimation 402. The demodulated and decimated signals are then provided to a statistics module 404 (*i.e.*, a "first calculation technique") and a saturation transform module 406 (*i.e.*, a "second calculation technique"). Modules 404 and 406 are both capable of calculating oxygen saturation using two different techniques. *See, e.g.,* Ex. 3 (the '984 Patent) at 41:65-42:4 and 43:34-46. The results are then "forwarded to saturation operations, as represented by a saturation calculation module 408 and pulse rate operations, as represented in a pulse rate calculation module 410." *Id.* at 40:26-31.

[redacted]

2 [redacted]



## IV. ARGUMENT

### A. Applicable Legal Standards

"Summary judgment is appropriate when, after opportunity for discovery and upon motion, there is no genuine dispute of material fact for trial and one party is entitled to judgment as a matter of law." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998); *see* FED. R. CIV. P. 56.

#### 1. Anticipation

Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir.

2003). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

**2. Obviousness**

Patent claims are obvious when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). "The ultimate judgment of obviousness is a legal determination. [*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).] Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427; *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310 (Fed. Cir. 2008) (affirming summary judgment of obviousness).

**3. Non-infringement**

An accused product can only be found to infringe the claims of a patent if it embodies each and every claim limitation. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). If even one limitation is absent, "there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). Because dependent claims incorporate all the limitations of the independent claims from which they depend, if even one limitation of an independent claim is not met, there can be no infringement of its independent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989). Once the relevant structure in the accused device has been identified, a party may prove it is equivalent to the disclosed structure only by showing that the two perform

the identical function in substantially the same way, with substantially the same result. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

**B. Masimo's Only Validity Argument is Based on an Incorrect Claim Construction it now Proffers for the First Time**

**1. The plain meaning of the claims is readily apparent**

Masimo argued at claim construction that the '984 patent claims "are readily understandable without elaboration" and that "unrecited limitation[s] should not be injected into the claims. . . ." D.I. 169 at 12; D.I. 175 at 12-14. The Court agreed, declining to adopt Philips' narrowing proposal. D.I. 210 at 8-9; D.I. 319 at 2.

Independent claim 1, reproduced below with emphasis, recites a system for processing detected light signals to calculate a physiological characteristic:

> 1. A physiological monitoring system including an optical probe configured to output one or more intensity signals representative of at least one physiological characteristic of body tissue, and a signal processing device configured to accept the one or more intensity signals and configured to determine a resulting value indicative of the at least one physiological characteristic, the physiological monitoring system comprising:
>
> an optical probe including a light-sensitive detector configured to detect light of at least first and second wavelengths attenuated by body tissue carrying pulsing blood and configured to output one or more intensity signals based on the detected light; and
>
> a signal processing device including:
>
> a first calculator ***capable of utilizing a first calculation technique*** to determine at least a first ratio representative of at least one physiological characteristic of the pulsing blood based on ***at least one of the one or more intensity signals*** generated from said detection of said light at said at least first and second wavelengths,
>
> a second calculator ***capable of utilizing a second calculation technique*** different from the first calculation technique, to determine at least a second ratio representative of the at least one physiological characteristic based on ***at least one of the one or more intensity signals*** generated from said detection of said light at said at least first and second wavelengths, and
>
> a processing module configured to ***utilize at least one of the first and second calculators*** to determine a resulting value indicative of the at least one physiological characteristic.

As shown above, the claims plainly recite a "signal processing device" having a first calculator ***capable of*** utilizing a first calculation technique and a second calculator ***capable of*** utilizing a second calculation technique.[3] The signal processing device also includes a "processing module" that utilizes ***at least one*** of the two calculators.

**2. Masimo now adds limitations to the claims for the first time**

[3] Independent claims 52 and 53 include the same or similar recitations to those in claim 1 discussed in this section The construction of the additional recitations of claims 52 and 53 are not in dispute.

[4]

While the signal processing device must include two calculators, each calculator is only required to be ***capable of*** performing a calculation technique—the claim does not require that *both* calculators actually calculate a physiological characteristic every time a calculation is performed. [REDACTED] For example, a vehicle may be capable of traveling 100 miles-per-hour, but that does not mean that it always travels 100 miles-per-hour. *See Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821, 832 (Fed. Cir. 1991) (holding that where claim uses capability language, the accused device, to be infringing, need only be capable of operating in the same way).

Additionally, the claims only require that each calculator be capable of determining a ratio based on ***at least one*** of the detected intensity signals. Thus, each calculator is not required to use the ***same*** intensity signals. While the same or overlapping time windows of data may be used, the claims do not require each calculator to use the same input data. For example, if two signals are detected, the first calculator may rely on the first signal and the second calculator may rely on the second signal and the claim language would be met. Moreover, nothing in the claim language precludes reliance on information in addition to the intensity signals.

Finally, the claim requires only that the processing module utilize ***at least one*** of the calculators, not both calculators. [REDACTED] There is nothing in

the claims that requires that each calculator output a value to the processing module, let alone requires the processing module to choose between multiple values.[5]

**3. The dispute over the meaning of the claims must be decided before trial as a matter of law**

Because Masimo's validity distinctions hinge on its new interpretation of the asserted claims, there appears to be a new claim construction dispute regarding the '984 Patent. The Federal Circuit has held that such a dispute is a matter of law, and must be resolved by the court, not the jury. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The present situation is similar to the issue presented in *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), *aff'd*, 426 F. App'x 913 (Fed. Cir. 2011). As in that case, Masimo here seeks to present expert testimony regarding its new interpretation of the claims to the jury. The Federal Circuit, however, held that "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *Id.* at 1362. Because Masimo's expert admits that her validity arguments depend entirely on her interpretation of the claims, there is no factual dispute regarding the validity of the claims—if the claims are given their plain and ordinary meaning, they are invalid as a matter of law.

**4. Masimo's efforts to further construe the claims should be rejected**

As discussed above, the meaning of the claims of the '984 Patent is readily discernable and no further construction is needed. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Masimo never sought to construe the claims to include the limitations Dr. Baura relies

---

[5] Masimo's U.S. Patent No. 6,157,850 ("the '850 Patent") does require the calculation of two values and "analyzing" the two values "to determine a resulting indication that likely most closely correlates to a physiological parameter. *See* Ex. 84 at 109:1-16 (claim 1). No such analysis or determination is recited by the claims of the '984 Patent.

on, and in fact argued vociferously during claim construction the terms of the '984 patent should be given their plain and ordinary meaning. *See, e.g.,* D.I. 175 at 12 ("An unrecited limitation should not be injected into the claims under the guise of claim construction.") Now that Masimo is facing clearly anticipatory prior art, it has changed its tune and argues that the claims should be interpreted contrary to what it argued previously. For the reasons discussed above, Masimo's attempt to rewrite the claims should be rejected.

**C. The Asserted Claims of the '984 Patent are Invalid**

It is undisputed that both U.S. Patent No. 5,355,882 to Ukawa ("Ukawa") (Ex. 37) and U.S. Patent No. 4,955,379 to Hall ("Hall") (Ex. 36) utilize multiple calculation techniques to calculate oxygen saturation. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70 and 215-16;

**1. The Asserted Claims of the '984 Patent are Invalid over Ukawa**

Ukawa issued on October 18, 1994 and is thus prior art to the '984 Patent under 35 U.S.C. § 102(e). It was not cited during prosecution of the '984 Patent.

It is undisputed that Ukawa discloses a pulse oximeter capable of calculating oxygen saturation using first and second calculation techniques. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-

16;

In other words, Ukawa discloses the calculation of oxygen saturation using the "first computing means" if there is no fluctuation in the detected signals and the "second computing means if there is fluctuation in the detected signals.

As discussed below, and as illustrated in the claim chart attached as Appendix A, Ukawa anticipates claims 1-5, 15, 19, 20, 22, 52, and 53 and renders obvious claims 16 and 54 of the '984 Patent.[6] *See also* Ex. 14A (Stone Inv. Rpt.) App. C. As such, the asserted claims of the '984 Patent are invalid over Ukawa.

**a) Claims 1-5, 15, 19, 20, 22, 52, and 53 are anticipated by Ukawa**

***i. Claims 1, 2-4, and 15 are anticipated by Ukawa***

[6] Notably, Ukawa also discloses that the same time windows of signals (i.e., the "current DC component") are used by both the first and second computing means disclosed by Ukawa. Thus, even if the Court agreed with Masimo that the claims require the "same time window" for each calculation technique, Ukawa still invalidates the claims.

[redacted]

### *ii. Claim 5 is anticipated by Ukawa*

Claim 5 depends from claim 1 and requires a calculation of blood oxygen saturation that is "significantly free of an influence of motion induced noise."[7] Masimo cannot dispute that Ukawa explicitly discloses a pulse oximeter that calculates oxygen saturation that is free of erratic noise caused by motion. Specifically, Ukawa discloses an algorithm that "is adapted for effective rejection of the noise component due to body movements." Ex. 37 (Ukawa) at 1:12-15; *see also* 4:7-15 ("the oxygen saturation S that involves less effects of noise due to body movements can be measured continuously"); *see also* Ex. 14A (Stone Inv. Rpt.) App. C, p. 20; [redacted] Indeed, the purpose of using the second calculation technique in Ukawa is to obtain better readings in the presence of motion. Ex. 37 (Ukawa) at 6:50-62.

[redacted] This conclusory opinion is irrelevant. A prior art references anticipate that which it discloses. *See Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1302 (Fed. Cir. 2010) (a prior art reference "is prior art for all that it teaches"). Moreover, it is presumed enabled. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003). [redacted]

---

[7] The parties have agreed that "significantly free of an influence" means "the calculated oxygen saturation is accurate enough for the purpose of which the calculation is being employed" and "motion" means "movement of body tissue which causes erratic noise, that, in the absence of a filter, would cause the ratio of red to infrared signals to not accurately reflect the arterial oxygen saturation." D.I. 140 at 50.

[redacted] As such, since Ukawa discloses an algorithm that is enabled and is described as effectively rejecting noise due to body movements, Ukawa anticipates claim 5 of the '984 Patent.

### *iii. Claims 19, 20, and 22 are anticipated by Ukawa*

As Dr. Stone opined, and as illustrated in Appendix A, Ukawa discloses all of the limitations of, and thus anticipates, dependent claims 19, 20, and 22. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 263, 269, and 276. [redacted] Because Dr. Baura's rebuttal to Dr. Stone's opinions are merely conclusory, they are insufficient to create an issue of material fact and should not be given any weight. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997) (affirming summary judgment of obviousness because statements of patentee's expert were conclusory and thus failed to raise a genuine issue of material fact); *Lemelson v. The United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("giv[ing] no weight to the series of conclusory statements offered by [plaintiff's] expert witness").

### *iv. Claims 52 and 53 are anticipated by Ukawa*

Claims 52 and 53 are independent claims that contain very similar limitations to claim 1. Claim 52 is a method claim that recites "utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter based upon at least one of the first and second intensity signals." Claim 53 is an apparatus claim that recites "a processing module which utilizes at least one of the first and second calculators. . . ." The parties seem to agree that the validity analysis for claim 52 is identical as for claims 1 and 20,

and that the validity analysis of claim 53 is identical as for claims 1 and 15. Thus, for the same reasons discussed above with respect to claims 1, 15 and 20, and as illustrated in Appendix A, claims 52 and 53 are anticipated by Ukawa.

### b) Claims 16 and 54 are obvious over Ukawa

Dependent claims 16 and 54 recite the utilization of one of the first and second calculators based at least in part on a "correlation between at least two of [the] intensity signals." As mentioned above, Ukawa discloses the calculation of an "absorbance ratio" from the intensities of the detected signals. *See, e.g.*, Ex. 37 (Ukawa) at 1:31-38. Ukawa uses the amount of fluctuation in the absorbance ratio to determine whether to use a first or second computing means. *See id.* at 2:36-37 (". . . detects the degree of fluctuation in the absorbance ratio. . . ."). It would have been obvious to one of ordinary skill in the art to modify Ukawa to utilize the correlation between the detected intensity signals to determine whether to use either the first or second computing means, as required by claims 16 and 54. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 256-57 and 293-94.

[redacted][8] As such, one of ordinary skill in the art would have been motivated to look at the correlation of the detected intensity signals to determine whether to utilize either of the computing means disclosed by Ukawa. *See, e.g.*, Ex. 14A (Stone Inv. Rpt.) ¶ 257. Such a modification would increase processing efficiency and

[8] It was commonly known to those of ordinary skill in the art that highly correlated signals are more likely to correspond to arterial (physiological) signals. *See, e.g.*, Ex. 15 (Stone Depo. Tr. (7/10/2012)) at 442:10-443:14.

accuracy because unnecessary or inaccurate calculations would not be performed in the presence of bad correlation. As such, claims 16 and 54 are obvious as a matter of law.

**2. Claims 1-5, 15, 19, 20, 22, 52, and 53 of the '984 Patent are Anticipated by Hall**

As with Ukawa, Hall also anticipates most claims. *See* Ex. 36 (Hall). Hall issued on September 11, 1990 and is thus prior art to the '984 Patent under 35 U.S.C. § 102(b). Masimo cited it during prosecution of the '984 Patent along with 475 other references, and it was never used in a rejection of the claims. It is undisputed that Hall discloses a pulse oximeter capable of calculating oxygen saturation using first and second calculation techniques. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70; [REDACTED]

[REDACTED]

[REDACTED] In other words, Hall uses one technique when motion artifact is not present in the detected signals and another technique when motion is present. As discussed below, and as illustrated in the claim chart attached as Appendix B, Hall discloses all of the recitation of claims 1-5, 15, 19, 20, 22, 52, and 53 the '984 Patent. *See also* Ex. 14A (Stone Inv. Rpt.) App. C. As such, those claims are invalid over Hall.

**a) Claims 1-4 and 15 are anticipated by Hall**

[redacted]

**b) Claim 5 is anticipated by Hall**

Masimo cannot dispute that Hall discloses a pulse oximeter that he describes as calculating oxygen saturation that is free of erratic noise caused by motion. Specifically, Hall discloses "a motion artefact [sic] rejection system for pulse oximeters" for which "errors in oxygen saturation measurements, as well as pulse rate, caused by patient movement are thus advantageously removed." Ex. 36 (Hall) at 1:7-10 and 3:37-39; *see also* 2:50-53 (stating that the disclosed invention "comprises a bandpass filter adapted selectively to exclude motion artefact from wanted signal"); *see also* Ex. 14A (Stone Inv. Rpt.) App. C, p. 20; [redacted]

9 [redacted]



**c) Claims 19, 20, and 22 are anticipated by Hall**

As Dr. Stone opined, and as illustrated in Appendix B, Hall discloses all of the limitations of, and thus anticipates, claims 19, 20, and 22. As with Ukawa, Dr. Baura conclusively states that Hall does not disclose the recitations of claims 19, 20, and 22, but does not provide any analysis or citations to evidence to support her opinion. Because Dr. Baura's rebuttal to Dr. Stone's opinions are nothing but conclusions, they are insufficient to create an issue of material fact and should not be given any weight. *Lemelson*, 752 F.2d at 1551.

**d) Claims 52 and 53 are anticipated by Hall**

As discussed above, claims 52 and 53 contains similar limitations to those in claims 1, 15 and 20. Thus, for the same reasons discussed above with respect to claims 1, 15 and 20, and as illustrated in Appendix B, claims 52 and 53 are anticipated by Hall.

**D. Philips' FAST Does Not Infringe the Asserted Claims of the '984 Patent**

10

**2. Philips' FAST Does Not Infringe Claims 15, 16, 19, 20, 53, and 54 of the '984 Patent**



## V. CONCLUSION

For all of the foregoing reasons, Philips requests that the Court grant summary judgment that the asserted claims of the '984 Patent are invalid, or alternatively not infringed. Regardless of claim construction, Philips also requests that the Court grant summary judgment that claims 15-16, 19-20, and 53-54 are not infringed.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH*

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel: (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated: August 14, 2012
Public Version Dated: August 21, 2012
1071447 / 33976

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 1 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 1. A physiological monitoring system | Ukawa discloses "a pulse oximeter with which the oxygen saturation of the arterial blood of a subject can be measured continuously in a non-invasive manner." *See* 1:6-9.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| including an optical probe configured to output one or more intensity signals representative of at least one physiological characteristic of body tissue, | Ukawa discloses "a first and second light source that apply red light and infrared light, respectively, of two different wavelengths to a living tissue including the arterial blood." *See* 2:23-25.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| and a signal processing device configured to accept the one or more intensity signals and configured to determine a resulting value indicative of the at least one physiological characteristic, the physiological monitoring system comprising: | Ukawa discloses a signal processor that calculates oxygen saturation by selecting between two different methods based on the quality of the result of each method. *See* 2:30-60. Figure 1 illustrates a computing units 14 and 16 and correction circuit 15 that receive the detected signals and determine oxygen saturation:<br><br>FIG. 1<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

## Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 1 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| an optical probe including a light-sensitive detector configured to detect light of at least first and second wavelengths attenuated by body tissue carrying pulsing blood and configured to output one or more intensity signals based on the detected light; and | Ukawa discloses "a light-receiving element for detecting optical outputs as produced after the red and infrared light of two wavelengths emitted from [the] first and second light sources have been absorbed by the living tissue." *See* 2:26-29.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a signal processing device including: a first calculator capable of utilizing a first calculation technique to determine at least a first ratio representative of at least one physiological characteristic of the pulsing blood based on at least one of the one or more intensity signals generated from said detection of said light at said at least first and second wavelengths, | Ukawa discloses "a **first computing means** that computes the ratio between the pulsating components of light absorbance for the two wavelengths due to the arterial blood on the basis of the dc components and pulsating components of the respective wavelengths that are obtained from the reception outputs of [the] light receiving means." *See* 2:30-35 (emphasis added); *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16. The oxygen saturation is calculated based on the calculated absorbance ratio.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second ratio representative of the at least one physiological characteristic based on at least one of the one or more intensity signals generated from said detection of said light at said at least first and second wavelengths, and | Ukawa discloses "a **second computing means** for computing the oxygen saturation of arterial blood on the basis of the absorbance ratio as provided from [a] correction circuit." *See* 2:46-48 (emphasis added); *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 290:5-18.<br><br>The correction circuit "detects the degree of fluctuation in the absorbance ratio as produced from the [the] first computing means but which also holds the pulsating components of [t]he respective wavelengths when they are stable." *See* 2:36-40. "[I]f there is fluctuation in the absorbance ratio, [the correction circuit] computes a corrected absorbance ratio using the pulsating components of the respective wavelengths that were held at [a] stable time and the dc components of the respective wavelengths at the present time." *See* 2:40-45. |

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 1 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| a processing module configured to utilize at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic. | Ukawa discloses the use of the oxygen saturation from the "second computing means" "if the absorbance ratio Φ is found to fluctuate on account of noise due to body movements." *See* 2:50-51; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 290:5-18. |

| Claim 2 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 2. The physiological monitoring system of claim 1, wherein the at least one physiological characteristic comprises a blood constituent level. | Ukawa discloses "a pulse oximeter with which the oxygen saturation of the arterial blood of a subject can be measured continuously in a non-invasive manner." *See* 1:6-9; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 226.<br><br>Dr. Baura admits claim 2 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13. |

| Claim 3 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 3. The physiological monitoring system of claim 2, wherein the blood constituent level comprises blood oxygen saturation. | Ukawa discloses "a pulse oximeter with which the oxygen saturation of the arterial blood of a subject can be measured continuously in a non-invasive manner." *See* 1:6-9; ; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 233.<br><br>Dr. Baura admits claim 3 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13. |

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 4 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 4. The physiological monitoring system of claim 3, wherein the resulting value comprises a ratio. | Ukawa discloses that first and second computing means calculate ratios. *See* 2:49-60; 4:8-15; *see also* Ex. 14a (Stone Inv. Rpt.) ¶ 240.<br><br>Dr. Baura admits claim 4 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13. |

| Claim 5 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 5. The physiological monitoring system of claim 3, wherein the resulting value of the blood oxygen saturation is significantly free of an influence of motion induced noise. | The parties have agreed that "significantly free of an influence" means "the calculated oxygen saturation is accurate enough for the purpose of which the calculation is being employed" and "motion" means "movement of body tissue which causes erratic noise, that, in the absence of a filter, would cause the ratio of red to infrared signals to not accurately reflect the arterial oxygen saturation."<br><br>Ukawa discloses that the final oxygen saturation value is significantly free of motion induced noise, in accordance with the parties' constructions. Specifically, Ukawa discloses an algorithm that "is adapted for effective rejection of the noise component due to body movements." *See* 1:12-15; *see also* 4:7-15 ("the oxygen saturation S that involves less effects of noise due to body movements can be measured continuously"); Ex. 14A (Stone Inv. Rpt.) ¶ 246. |

| Claim 15 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 15. The physiological monitoring system of claim 1, wherein said utilization of said at least one of the first and second calculators is based at least in part on a property of the one or more intensity signals. | Ukawa discloses the calculation of an absorbance ratio of the detected intensity signals to determine whether oxygen saturation should be calculated using a first computing means or a second computing means. *See* 2:30-60; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 253.<br><br>Dr. Baura admits claim 15 rises and falls with claim 1. *See* Ex. 23 (Baura Validity Rpt.) at ¶ 178. |

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 16 of the '984 Patent | Ukawa (Exhibit 37) in view of Knowledge of a Person of Ordinary Skill in the Art |
|---|---|
| 16. The physiological monitoring system of claim 15, wherein said property comprises a correlation between at least two of said intensity signals. | As illustrated above, Ukawa discloses all of the limitations of claim 15 and, more specifically, discloses the calculation of an "absorbance ratio Φ" from the intensities of the detected signals. *See* 1:31-38. Ukawa uses the amount of fluctuation in the absorbance ratio to determine whether to use a first or second computing means. *See* 2:36-37 (". . . detects the degree of fluctuation in the absorbance ratio. . . ."). One of ordinary skill in the art would have known to modify Ukawa to utilize the correlation between the detected signals in determining whether to use the disclosed calculation techniques. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 256-257. |

| Claim 19 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 19. The physiological monitoring system of claim 1, wherein the processing module is programmed to evaluate at least one of the one or more intensity signals to obtain an indication of reliability for at least one of the first and second calculation techniques. | Ukawa discloses use of the oxygen saturation calculation of the second computer means "if the absorbance ratio Φ is found to fluctuate on account of noise due to body movements." *See* 2:30-60. Thus, Ukawa utilizes the absorbance ratio to determine the reliability of the first and second calculation techniques. *See* Ex. 14A (Stone Inv. Rpt.) ¶ 263. |

| Claim 20 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 20. The physiological monitoring system of claim 1, wherein the processing module is programmed to qualify at least one of the first and second ratios as usable to determine the resulting value. | Ukawa discloses use of the ratio calculated by the first calculation technique of the second computer means "if the absorbance ratio Φ is found to fluctuate on account of noise due to body movements." *See, e.g.*, 2:50-51. *See, e.g.*, 2:40-45 and 2:49-60. Thus, the first ratio is qualified if the absorption ratio does not fluctuate. *See* Ex. 14A (Stone Inv. Rpt.) ¶ 269. |

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 22 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 22. The physiological monitoring system of claim 1, wherein the first and second calculators are capable of relying on at least partially differing strengths in processing at least one of the one or more intensity signals. | Ukawa discloses use of the oxygen saturation calculation of the second computer means "if the absorbance ratio Φ is found to fluctuate on account of noise due to body movements." *See* 2:40-45 and 2:49-60. As Dr. Stone opined (and Dr. Baura failed to rebut), a fluctuating absorbance ratio necessarily implies that the intensity signals used in the calculations have different strengths. *See* Ex. 14A (Stone Inv. Rpt.) ¶ 276. |

| Claim 52 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 52. A method of determining a physiological characteristic of pulsing blood, the method comprising: | Ukawa discloses "a pulse oximeter with which the oxygen saturation of the arterial blood of a subject can be measured continuously in a non-invasive manner." *See* 1:6-9.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| receiving first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; and | Ukawa discloses "a first and second light source that apply red light and infrared light, respectively, of two different wavelengths to a living tissue including the arterial blood." *See* 2:23-25. Ukawa discloses "a light-receiving element for detecting optical outputs as produced after the red and infrared light of two wavelengths emitted from [the] first and second light sources have been absorbed by the living tissue." *See* 2:26-29.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

<table>
<tr><th>Claim 52 of the '984 Patent</th><th>Ukawa (Exhibit 37)</th></tr>
<tr><td>utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter based upon at least one of the first and second intensity signals, wherein the utilizing comprises qualifying the value for inclusion, depending upon different conditions of the first and second intensity signals, and wherein the first calculation technique is different from the second calculation technique.</td><td>Ukawa discloses a signal processor that calculates oxygen saturation by selecting between two different methods based on the quality of the result of each method. (See 2:30-60.) Figure 1 illustrates a computing units 14 and 16 and correction circuit 15 that receive the detected signals and determine oxygen saturation:<br><br><br><br><br>Ukawa discloses "a <u>first computing means</u> that computes the ratio between the pulsating components of light absorbance for the two wavelengths due to the arterial blood on the basis of the dc components and pulsating components of the respective wavelengths that are obtained from the reception outputs of [the] light receiving means." See 2:30-35 (emphasis added) ; see also Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16. The oxygen saturation is calculated based on the calculated absorbance ratio.<br><br>Ukawa also discloses "a <u>second computing means</u> for computing the oxygen saturation of arterial blood on the basis of the absorbance ratio as provided from [a] correction circuit." See 2:46-48 (emphasis added) ; see also Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 290:5-18.<br><br>The correction circuit "detects the degree of fluctuation in the absorbance ratio as produced from the [the] first computing means but which also holds the pulsating components of [t]he respective wavelengths when they are stable." See 2:36-40. "[I]f there is fluctuation in the absorbance ratio, [the correction circuit] computes a corrected absorbance ratio using the pulsating components of the respective wavelengths that were held at [a] stable time and the dc components of the respective wavelengths at the present time." See 2:40-45.</td></tr>
</table>

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 52 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| | Ukawa discloses the use of the oxygen saturation from the "second computing means" "if the absorbance ratio Φ is found to fluctuate on account of noise due to body movements." *See* 2:50-51. |

| Claim 53 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| 53. A physiological monitoring system comprising: | Ukawa discloses "a pulse oximeter with which the oxygen saturation of the arterial blood of a subject can be measured continuously in a non-invasive manner." *See* 1:6-9.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a light-sensitive detector which detects light of at least first and second wavelengths attenuated by body tissue carrying pulsing blood and outputs one or more intensity signals based on the detected light, the one or more intensity signals representative of at least one physiological characteristic of the body tissue; and | Ukawa discloses "a first and second light source that apply red light and infrared light, respectively, of two different wavelengths to a living tissue including the arterial blood." *See* 2:23-25. Ukawa discloses "a light-receiving element for detecting optical outputs as produced after the red and infrared light of two wavelengths emitted from [the] first and second light sources have been absorbed by the living tissue." *See* 2:26-29.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

# Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 53 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| a signal processing device which accepts the one or more intensity signals and determines a resulting value indicative of the at least one physiological characteristic, the signal processing device including: | Ukawa discloses a signal processor that calculates oxygen saturation by selecting between two different methods based on the quality of the result of each method. *See* 2:30-60. Figure 1 illustrates a computing units 14 and 16 and correction circuit 15 that receive the detected signals and determine oxygen saturation:<br>FIG. 1<br>OSCILLATION CIRCUIT; MPX; HPF; HPF; COMPUTING UNIT; CORRECTION CIRCUIT; COMPUTING UNIT<br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

## Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 53 of the '984 Patent | Ukawa (Exhibit 37) |
|---|---|
| a first calculator capable of utilizing at first calculation technique to determine at least a first value representative of the at least one physiological characteristic of the pulsing blood, | Ukawa discloses "a **first computing means** that computes the ratio between the pulsating components of light absorbance for the two wavelengths due to the arterial blood on the basis of the dc components and pulsating components of the respective wavelengths that are obtained from the reception outputs of [the] light receiving means." *See* 2:30-35 (emphasis added); *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16. The oxygen saturation is calculated based on the calculated absorbance ratio.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second value representative of the at least one physiological characteristic, and | Ukawa discloses "a **second computing means** for computing the oxygen saturation of arterial blood on the basis of the absorbance ratio as provided from [a] correction circuit." *See* 2:46-48; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 290:5-18.<br><br>The correction circuit "detects the degree of fluctuation in the absorbance ratio as produced from the [the] first computing means but which also holds the pulsating components of [t]he respective wavelengths when they are stable." *See* 2:36-40. "[I]f there is fluctuation in the absorbance ratio, [the correction circuit] computes a corrected absorbance ratio using the pulsating components of the respective wavelengths that were held at [a] stable time and the dc components of the respective wavelengths at the present time." *See* 2:40-45. |
| a processing module which utilizes at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic, said utilization based at least in part on a property of the one or more intensity signals. | Ukawa discloses the use of the oxygen saturation from the "second computing means" "if the absorbance ratio Φ is found to fluctuate on account of noise due to body movements." *See* 2:50-51; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 215-16; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 290:5-18. |

## Appendix A

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 5,355,882 to Ukawa ("Ukawa")**

| Claim 54 of the '984 Patent | Ukawa (Exhibit 37) in view of Knowledge of a Person of Ordinary Skill in the Art |
|---|---|
| 54. The patient monitoring apparatus of claim 53, wherein said property comprises a correlation between at least two of said intensity signals. | As illustrated above, Ukawa discloses all of the limitations of claim 53 and, more specifically, discloses the calculation of an "absorbance ratio Φ" from the intensities of the detected signals. *See* 1:31-38. Ukawa uses the amount of fluctuation in the absorbance ratio to determine whether to use a first or second computing means. *See* 2:36-37 (". . . detects the degree of fluctuation in the absorbance ratio. . . ."). One of ordinary skill in the art would have known to modify Ukawa to utilize the correlation between the detected signals in determining whether to use the disclosed calculation techniques. *See* Ex. 14A (Stone Inv. Rpt.) ¶¶ 256-257. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 1 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 1. A physiological monitoring system | Hall discloses a physiological monitoring system. *See* 1:7-21.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| including an optical probe configured to output one or more intensity signals representative of at least one physiological characteristic of body tissue, | Hall discloses an optical probe configured to output one or more intensity signals representative of at least one physiological characteristic of body tissue. Specifically, Hall discloses a "sensor, containing two LEDs of different wavelength . . ., and a photodetector, which are applied directly to a patient. *See* 1:22-26.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| and a signal processing device configured to accept the one or more intensity signals and configured to determine a resulting value indicative of the at least one physiological characteristic, the physiological monitoring system comprising: | Hall discloses a signal processing device configured to accept the intensity signals to calculate oxygen saturation. *See* 3:12-67.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 1 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| an optical probe including a light-sensitive detector configured to detect light of at least first and second wavelengths attenuated by body tissue carrying pulsing blood and configured to output one or more intensity signals based on the detected light; and | Hall discloses a "sensor, containing two LEDs of different wavelength." *See* 1:22-26. Hall also discloses a "photodetector" responsive to light from the two LEDs that provides intensity signals associated with the light from the two LEDs. *See* 1:22-65.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a signal processing device including: a first calculator capable of utilizing a first calculation technique to determine at least a first ratio representative of at least one physiological characteristic of the pulsing blood based on at least one of the one or more intensity signals generated from said detection of said light at said at least first and second wavelengths, | Hall discloses that "[i]f artifact is not judged present, [a] bandpass filter is tuned to the pulse rate as determined by the normal oximeter algorithms." *See* 3:15-17; *see also* 1:30-50.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second ratio representative of the at least one physiological characteristic based on at least one of the one or more intensity signals generated from said detection of said light at said at least first and second wavelengths, and | Hall discloses that "[w]hen artifact is present, the AGC system is frozen, fixing the gain level, and the bandpass filter is configured in a feedback loop. . . .") *See* 3:21-24; *see also* 1:30-50. "Thus, when motion artifact is present, the bandpass filters can stay tuned to the pulse rate, tracking its change [and] . . .[t]he errors in oxygen saturation measurements, as well as pulse rate, caused by patient movement are thus advantageously reduced." *See* 3:32-39; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 284:15-285:9. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 1 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| a processing module configured to utilize at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic. | Hall discloses that "a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present." *See* 3:12-15. Based on that decision, the system is configured to utilize either the first or the second calculator for calculating oxygen saturation. *See* 3:12-39; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 284:15-285:9. |

| Claim 2 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 2. The physiological monitoring system of claim 1, wherein the at least one physiological characteristic comprises a blood constituent level. | Hall discloses the calculation of oxygen saturation. *See* 1:30-50; 3:12-67; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 227.<br><br>Dr. Baura admits claim 2 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13 and 285:22-286:4. |

| Claim 3 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 3. The physiological monitoring system of claim 2, wherein the blood constituent level comprises blood oxygen saturation. | Hall discloses the calculation of oxygen saturation. *See* 1:30-50; 3:12-67; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 234.<br><br>Dr. Baura admits claim 3 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13 and 285:22-286:4. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 4 of the '984 Patent | Hall (Exhibit 36) |
| --- | --- |
| 4. The physiological monitoring system of claim 3, wherein the resulting value comprises a ratio. | Hall discloses that the first and second computing means calculate ratios. *See* 1:30-50; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 241. Specifically, Hall discloses that, for each computing mean, "[o]xygen saturation is calculated by the microprocessor by inserting the amplitudes of the various signals into the following formula: $\frac{AC_1/DC_1}{AC_2/DC_2}$ *Id.* Dr. Baura admits claim 4 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13 and 285:22-286:4. |

| Claim 5 of the '984 Patent | Hall (Exhibit 36) |
| --- | --- |
| 5. The physiological monitoring system of claim 3, wherein the resulting value of the blood oxygen saturation is significantly free of an influence of motion induced noise. | The parties have agreed that "significantly free of an influence" means "the calculated oxygen saturation is accurate enough for the purpose of which the calculation is being employed" and "motion" means "movement of body tissue which causes erratic noise, that, in the absence of a filter, would cause the ratio of red to infrared signals to not accurately reflect the arterial oxygen saturation." Hall discloses that the "errors in oxygen saturation measurements, as well as pulse rate, caused by patient movement are thus advantageously removed." *See* 3:37-39; *see also* 1:7-10 and 2:50-53; Ex. 14A (Stone Inv. Rpt.) ¶ 247; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 287:17-22. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 15 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 15. The physiological monitoring system of claim 1, wherein said utilization of said at least one of the first and second calculators is based at least in part on a property of the one or more intensity signals. | Hall discloses that "a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present." *See* 3:12-15; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 254. Based on that decision, the system is configured to utilize either the first or the second calculator for calculating oxygen saturation. *See* 3:12-39.<br><br>Dr. Baura admits claim 15 rises and falls with claim 1. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 261:8-13 and 285:22-286:4. |

| Claim 19 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 19. The physiological monitoring system of claim 1, wherein the processing module is programmed to evaluate at least one of the one or more intensity signals to obtain an indication of reliability for at least one of the first and second calculation techniques. | Hall a processing module programmed to evaluate at least one of the one or more intensity signals to obtain an indication of reliability for at least one of the first and second calculation techniques. *See* 3:12-39; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 264. For example, Hall determines the quality of the received data before proceeding with SpO2 calculation.<br><br>Additionally, Hall discloses that "a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present." *See* 3:12-15. Based on that decision, the system is configured to utilize either the first or the second calculator for calculating oxygen saturation. *See* 3:12-39. |

## Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 20 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 20. The physiological monitoring system of claim 1, wherein the processing module is programmed to qualify at least one of the first and second ratios as usable to determine the resulting value. | Hall discloses the determination as to whether to use the first or second calculator for calculating oxygen saturation, , thus qualifying the selected algorithm for use in determining the final SpO2 value. *See* 3:12-39; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 270.<br><br>Additionally, Hall discloses that "a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present." *See* 3:12-15. Based on that decision, the system is configured to utilize either the first or the second calculator for calculating oxygen saturation. *See* 3:12-39. |

| Claim 22 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 22. The physiological monitoring system of claim 1, wherein the first and second calculators are capable of relying on at least partially differing strengths in processing at least one of the one or more intensity signals. | Hall discloses that "a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present." *See* 3:12-15; *see also* Ex. 14A (Stone Inv. Rpt.) ¶ 277. Based on that decision, the system is configured to utilize either the first or the second calculator for calculating oxygen saturation. *See* 3:12-39. Thus, the calculators rely on differing strengths in processing at least one of the one or more intensity signals. |

| Claim 52 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 52. A method of determining a physiological characteristic of pulsing blood, the method comprising: | Hall discloses a physiological monitoring system the calculation of oxygen saturation. *See* 1:7-21; 1:30-50; 3:12-67.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 52 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| receiving first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; and | Hall discloses an optical probe configured to receive one or more intensity signals representative of at least one physiological characteristic of body tissue. Specifically, Hall discloses a "sensor, containing two LEDs of different wavelength . . ., and a photodetector, which are applied directly to a patient. *See* 1:22-26.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter based upon at least one of the first and second intensity signals, wherein the utilizing comprises qualifying the value for inclusion, depending upon different conditions of the first and second intensity signals, and wherein the first calculation technique is different from the second calculation technique. | Hall discloses that "[i]f artifact is not judged present, [a] bandpass filter is tuned to the pulse rate as determined by the normal oximeter algorithms." *See* 3:15-17; *see also* 1:30-50.<br><br>Hall also discloses that "[w]hen artifact is present, the AGC system is frozen, fixing the gain level, and the bandpass filter is configured in a feedback loop. . . .") *See* 3:21-24; *see also* 1:30-50. "Thus, when motion artifact is present, the bandpass filters can stay tuned to the pulse rate, tracking its change [and] . . .[t]he errors in oxygen saturation measurements, as well as pulse rate, caused by patient movement are thus advantageously reduced." *See* 3:32-39; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 284:15-285:9. |

# Appendix B

**Invalidity of U.S. Patent No. 7,215,984 ("the '984 Patent") over U.S. Patent No. 4,955,379 to Hall ("Hall")**

| Claim 53 of the '984 Patent | Hall (Exhibit 36) |
|---|---|
| 53. A physiological monitoring system comprising: | Hall discloses a physiological monitoring system. *See* 1:7-21.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a light-sensitive detector which detects light of at least first and second wavelengths attenuated by body tissue carrying pulsing blood and outputs one or more intensity signals based on the detected light, the one or more intensity signals representative of at least one physiological characteristic of the body tissue; and | Hall discloses a "sensor, containing two LEDs of different wavelength." *See* 1:22-26. Hall also discloses a "photodetector" responsive to light from the two LEDs that provides intensity signals associated with the light from the two LEDs. *See* 1:22-65.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a signal processing device which accepts the one or more intensity signals and determines a resulting value indicative of the at least one physiological characteristic, the signal processing device including: | Hall discloses a signal processing device configured to accept the intensity signals to calculate oxygen saturation. *See* 3:12-67.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the '984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |

## Appendix B

**Invalidity of U.S. Patent No. 7,215,984 (“the ‘984 Patent”) over U.S. Patent No. 4,955,379 to Hall (“Hall”)**

| Claim 53 of the ‘984 Patent | Hall (Exhibit 36) |
|---|---|
| a first calculator capable of utilizing at first calculation technique to determine at least a first value representative of the at least one physiological characteristic of the pulsing blood, | Hall discloses that “[i]f artifact is not judged present, [a] bandpass filter is tuned to the pulse rate as determined by the normal oximeter algorithms.” *See* 3:15-17; *see also* 1:30-50.<br><br>The parties do not dispute that this limitation was known to one of skill in the art at the time the ‘984 Patent was filed. *See* Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 258:6-22. |
| a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second value representative of the at least one physiological characteristic, and | Hall discloses that “[w]hen artifact is present, the AGC system is frozen, fixing the gain level, and the bandpass filter is configured in a feedback loop. . . .”) *See* 3:21-24; *see also* 1:30-50. “Thus, when motion artifact is present, the bandpass filters can stay tuned to the pulse rate, tracking its change [and] . . .[t]he errors in oxygen saturation measurements, as well as pulse rate, caused by patient movement are thus advantageously reduced.” *See* 3:32-39; Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 284:15-285:9. |
| a processing module which utilizes at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic, said utilization based at least in part on a property of the one or more intensity signals. | Hall discloses that “a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present.” *See* 3:12-15. Based on that decision, the system is configured to utilize either the first or the second calculator for calculating oxygen saturation. *See* 3:12-39; *see also* Ex. 14A (Stone Inv. Rpt.) ¶¶ 169-70; Ex. 25 (Baura Depo. Tr. (7/16/2012)) at 284:15-285:9. |

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 21, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 21, 2012, the attached document was Electronically Mailed to the following person(s):

Jack B. Blumenfeld
Julia Heaney
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
jheaney@mnat.com
jtigan@mnat.com

Joseph R. Re
Jon W. Gurka
Perry Oldham
Stephen Larson
Michelle Armond
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
jre@kmob.com
jgurka@kmob.com
poldham@kmob.com
stephen.larson@kmob.com
michelle.armond@kmob.com

Karen Vogel Weil
Knobbe, Martens, Olson & Bear, LLP
10100 Santa Monica Boulevard, Suite 1600
Los Angeles, CA 90067
kweil@kmob.com

M. Laurence Popofsky
Robert A. Rosenfeld
Scott A. Westrich
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
lpopofsky@orrick.com
rrosenfeld@orrick.com
swestrich@orrick.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

907271 / 33976