## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80-LPS-MPT |
| v. | ) | (Consolidated) |
| | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | **JURY TRIAL DEMANDED** |
| CORPORATION and PHILIPS MEDIZIN | ) | |
| SYSTEME BÖBLINGEN GMBH, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

### OPENING BRIEF IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON LACHES
### WITH RESPECT TO U.S. PATENT NOS. 5,632,272, 6,263,222 AND 6,699,194

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel: (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated: August 14, 2012
Public Version Dated: August 21, 2012
1071435 / 33976

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Philips Electronics North America
Corporation and Philips Medizin Systeme
Böblingen GmbH*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

STATEMENT OF FACTS ............................................................................................. 2

I.     MASIMO'S PATENTS SUBJECT TO LACHES ........................................... 2

     A.     The '272 Patent ................................................................................. 2

     B.     The '222 Patent ................................................................................. 2

     C.     The '194 Patent ................................................................................. 3

II.     PHILIPS' FAST ALGORITHM .................................................................... 3

III.     MASIMO'S TEN YEAR DELAY IN FILING SUIT ................................... 3

ARGUMENT .................................................................................................................. 7

I.     LEGAL STANDARDS ................................................................................... 7

     A.     Legal Standard for Summary Judgment ....................................... 7

     B.     Legal Standard for Laches ............................................................. 8

II.     MASIMO INEXCUSABLY DELAYED FILING SUIT AGAINST PHILIPS CAUSING PREJUDICE TO PHILIPS ......................................... 10

     A.     Masimo Knew of Philips' Alleged Infringing Activity Since 1999 .................... 10

     B.     Philips Has Been Economically Prejudiced by Masimo's Delay in Filing Suit ............................................................................. 11

     C.     Masimo has No Excuse For Its Delay in Filing Suit ......................... 13

          1.     The parties' negotiations focused on securing a business relationship; they did not address or resolve Masimo's patent concerns and thus did not toll laches or excuse Masimo's delay ................................................ 13

          2.     Masimo's other litigation with Nellcor does not toll laches as Masimo did not properly notify Philips it would sue .................... 15

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. Miller Formless Co.,*
  693 F.2d 697 (7th Cir. 1982) ....................................................................13

*Adelberg Labs., Inc. v. Miles, Inc.,*
  921 F.2d 1267 (Fed. Cir. 1990) ...............................................................8, 9

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
  679 F. Supp. 2d 512 (D. Del. 2010) ...................................................*Passim*

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,*
  21 U.S.P.Q.2d 1131 (E.D.N.Y. 1991) .......................................................13

*Giese v. Pierce Chem. Co.,*
  29 F. Supp. 2d 33 (D. Mass. 1998) ...........................................................14

*Hall v. Aqua Queen Mfg., Inc.,*
  93 F.3d 1548 (Fed. Cir. 1996) .......................................................9-10, 12

*Jamesbury Corp. v. Litton Indust. Prods., Inc.,*
  839 F.2d 1544 (Fed. Cir. 1988) ...........................................................15, 16

*Johnston v. IVAC Corp.,*
  885 F.2d 1574 (Fed. Cir. 1989) ..................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ....................................................................................8

*Odetics, Inc. v. Storage Tech. Corp.,*
  919 F. Supp 911 (E.D. Va. 1996) ..............................................................10

*RCA Corp. v. Data Gen. Corp.,*
  701 F. Supp. 456 (D. Del. 1988) ...............................................................13


**Rules**

Fed. R. Civ. P. 56(c) .....................................................................................7

**Other Authorities**

6-19 Chisum on Patents § 19.05 [2][b][i] ......................................................15

Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH ("Philips") submits this Opening Brief in support of its Motion for Summary Judgment on the issue of laches with respect to U.S. Patent Nos. 5,632,272 ("the '272 Patent"), 6,263,222 ("the '222 Patent") and 6,699,194 ("the '194 Patent").

## NATURE AND STAGE OF THE PROCEEDINGS

Masimo filed this suit against Philips on February 3, 2009, alleging infringement of fourteen patents related to pulse oximetry. The case has been narrowed to four Masimo Patents, including the '272, '222 and '194 Patents that are the subject of this motion.[1]  Fact and expert discovery has concluded. No trial date has been set.

## SUMMARY OF THE ARGUMENT



1.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Masimo's ten year delay in filing suit is presumptively unreasonable and prejudicial. Masimo can not rebut this presumption and as such, can not recover damages on the '272 Patent.

2.   Masimo's '222 Patent issued on July 17, 2001. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Masimo's nearly <u>eight</u> <u>year</u> delay in filing suit is presumptively unreasonable and prejudicial. Masimo can not rebut this presumption and as such, can not recover damages on the '222 Patent.

---

[1] Philips alleges patent infringement of its own patents as well as several antitrust counterclaims against Masimo, which have been stayed. *See also* D.I. 12, 67.

[2] Philips is the successor of the pulse oximetry business of HP and Agilent. In 1999 HP spun of Agilent. *See http://www.agilent.com/about/companyinfo/history/index.html?cmpid=4491*. In 2000, Philips acquired Agilent's Healthcare Solutions Group. *See http://www.healthcare.philips.com/us_en/about/company/historyandtimeline.wpd*.

3.     Masimo's '194 Patent issued on March 2, 2004.  ███████████████

████████████████████████████████████████████████████

███████████████████████████████████████  Masimo's five

year delay in filing suit is unreasonable and prejudicial to Philips.

4.     Accordingly, summary judgment should be granted that pre-suit damages are

unavailable due to laches for the '272, '222 and '194 Patents.

## STATEMENT OF FACTS

## I.     MASIMO'S PATENTS SUBJECT TO LACHES

### A.     The '272 Patent

Masimo's '272 Patent issued on May 27, 1997.  *See* Ex. 1 (the '272 Patent).[3]  The '272

Patent describes and claims a pulse oximeter that uses frequency-domain processing to calculate

oxygen saturation.   The embodiment claimed in the asserted claims uses a Fast Fourier

Transform to transform the red and infrared signals into the frequency domain, and then

calculates SpO2 from those transformed signals.  *See id.* at col. 9, 55:19-27; 56:12-20; Fig. 25B.

### B.     The '222 Patent

The '222 patent issued on July 17, 2001.  *See* Ex. 2 (the '222 Patent).  The '222 Patent

describes a pulse oximeter that uses a "correlation canceler" to remove noise from a pulse

oximetry signal to calculate SpO2.  *See id.* at col. 3:56-58; 3:66-4:24.  The asserted claims

broadly recite a pulse oximeter that can measure oxygen saturation "without significant

interference in the calculation from motion induced noise...."  *Id.* at col. 74:57-75:8.

---

[3] For all Exhibits to this motion, see Compendium of Exhibits in Support of Defendants'
Opening Summary Judgment and Daubert Motions.

### C.     The '194 Patent

The '194 Patent issued on March 4, 2004.  *See* Ex. 4 (the '194 Patent).  The '194 Patent describes and claims a frequency domain method for calculating the pulse rate of a patient using pulse oximetry techniques.  The claims generally recite transforming a signal into the frequency domain, identifying peaks in the resulting spectrum, classifying or sorting those peaks, and estimating a pulse rate.  *See, e.g.,* claim 1 at col. 24:12-25.

## II.     PHILIPS' FAST ALGORITHM

The operation of Philips' FAST algorithm is undisputed.  ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

## III.    MASIMO'S TEN YEAR DELAY IN FILING SUIT

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



**ARGUMENT**

## I.   LEGAL STANDARDS

### A.   Legal Standard for Summary Judgment

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard is applicable to patent cases. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989).

The moving party "bears the burden of establishing the lack of a genuinely disputed material fact by demonstrating 'that there is an absence of evidence to support the nonmoving party's case.'" *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 519 (D. Del. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted). The court must give the non-moving party the benefit of all justifiable inferences and the court must resolve any disputed issue of fact in favor of the nonmovant. *See Crown Packaging*, 679 F. Supp. 2d at 519. "The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient to deny a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *Id.* The moving party is entitled to summary judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of the case. *See id.*

### B.    Legal Standard for Laches

As an equitable defense to a claim for patent infringement, laches bars recovery of damages for any infringement committed more than six years prior to the filing of the complaint for patent infringement. *See id.* "The law on laches is rooted in the equitable principle that courts will not assist one who has 'slept on his rights.'" *Id.* "To establish laches, a party must prove: 1) an unreasonable and inexcusable delay by the plaintiff in raising infringement when the plaintiff knew or reasonably should have known of the defendant's allegedly infringing activity; and 2) material prejudice to the defendant resulting from the delay." *Id.* at 519-20. Material prejudice can be evidentiary or economic. *See id.* at 520.

8

> Evidentiary prejudice arises when the infringer cannot put on a fair defense because of the loss of records, death of witnesses, or the dimming of memories. Economic prejudice arises when an infringer suffers the loss of monetary investments or incurs damage that would likely have been prevented by an earlier suit.

*Id.*

The plaintiffs delay is measured from "the time the patentee knew, or in the exercise of reasonable diligence should have known, of the allegedly infringing activity." *Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990). "It is enough that the plaintiff has or should have 'more than a mere suspicion but less than absolute assurance of [the] alleged infringement in order to activate the laches clock.'" *Crown Packaging*, 679 F. Supp. 2d at 520 (quoting *Rockwell Int'l Corp. v. SDL, Inc.* 103 F. Supp. 2d 1192, 1197 (N.D. Cal. 2000)). Courts will impose constructive knowledge on the patentee based on the required reasonable, diligent inquiry. *See id.* (citing *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998)).

"An alleged infringer can establish a presumption of laches by showing that more than six years elapsed between the time the patentee knew or should have known of the alleged infringing activity at the time of filing suit." *Id.* A delay in filing suit of six years or more is presumed unreasonable, inexcusable and prejudicial. *See id.* Once the presumption is established, the "burden shifts to the patentee to produce sufficient evidence to 'put the existence of a presumed fact into genuine dispute' with regard to the reasonableness of the delay or the alleged prejudice." *Id.* at 521 (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1037, 1038 (Fed. Cir. 1992)). "Importantly, where the patentee fails to meet this burden of production by failing to come forward with *either* affirmative evidence of a lack of prejudice *or* a legally cognizable excuse for its delay in filing suit, the two facts of unreasonable delay and

prejudice '*must* be inferred.'" *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553-54 (Fed. Cir. 1996) (emphasis in the original) (quoting *A.C. Aukerman Co.*, 960 F.2d at 1037).

## II.   MASIMO INEXCUSABLY DELAYED FILING SUIT AGAINST PHILIPS CAUSING PREJUDICE TO PHILIPS

### A.   Masimo Knew of Philips' Alleged Infringing Activity Since 1999



**B.     Philips Has Been Economically Prejudiced by Masimo's Delay in Filing Suit**

Masimo's delay in filing suit against Philips for infringement of its patents resulted in economic prejudice to Philips. Not only did Philips and its predecessors expand the use of the FAST technology into several lines of patient monitors, including IntelliVue and SureSigns patient monitors, but Philips expanded the use of FAST into other product lines, including defibrillators. *See* Ex. 53 at 314:16-316:13; *see also* Ex. 80 (Spreadsheet of FAST Product Use).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

However, with respect to at least the '272 and '222 Patents, the burden is not on Philips to show prejudice. Because Masimo delayed in filing suit for six years on both of these patents the prejudice to Philips is presumed and Masimo "bears the burden of production and must come forward with evidence sufficient to raise a genuine factual issue as to whether prejudice exists." *Crown Packing*, 679 F. Supp. 2d at 526. With respect to these patents, Philips "can remain 'utterly mute' on the issue of prejudice and nonetheless prevail." *Id.* (citing *Hall*, 93 F.3d at 1553). Masimo can not produce such evidence. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

### C.     Masimo has No Excuse For Its Delay in Filing Suit

Masimo has no excuse for not bringing suit on the '272, '222 and '194 Patents before February 2009.  Courts have recognized a limited number of excuses to rebut the presumed unreasonable delay of more than six years in filing suit or to justify the reasonable of the delay of less than six years in filing suit.  *See Crown Packaging*, 679 F. Supp. 2d at 526 (citing *A.C. Aukerman*, 960 F.2d at 1033). ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

> *1.     The parties' negotiations focused on securing a business relationship; they did not address or resolve Masimo's patent concerns and thus did not toll laches or excuse Masimo's delay*

████████████████████████████████████████████████████████████████

████████████████████████████████  While negotiations between a patent owner and an accused infringer regarding *licensing of the patents* can be a valid excuse for delay in filing suit, courts across the country, including this Court, recognize that the parties must be "diligent" and "genuine" in pursuing these efforts.  *See RCA Corp. v. Data Gen. Corp.*, 701 F. Supp. 456, 476 (D. Del. 1988); *see also Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 21 U.S.P.Q.2d 1131, 1133 (E.D.N.Y. 1991), *rev'd on other grounds and remanded*, 60 F.3d 770, (Fed. Cir. 1995); *see also A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697 (7th Cir. 1982).  Even though the parties were in regular communication through out much of the laches period,

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ Such definitive refusal to engage in licensing negotiations and consistent denials of infringement puts an end to any "on-going negotiation" excuse Masimo could offer. *See Giese v. Pierce Chem. Co.*, 29 F. Supp. 2d 33, 41 (D. Mass. 1998) ("the record reflects a series of rebuffed offers to negotiate. [The defendant] consistently denied infringement over the course of the parties' sporadic contacts, and nothing the in the record indicates any bilateral negotiation or progress toward settling the dispute.")

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

14



     2.     *Masimo's other litigation with Nellcor does not toll laches as Masimo did not properly notify Philips it would sue*

Any excuse that Masimo was engaged in other patent litigation with Nellcor from June 2000 through August 2004 proffered in an attempt to toll the laches period for the '272 and '222 Patents is without merit.[4]  While courts have acknowledged that a patent owner should not be forced to litigate against all potential infringers at the same time as it is expensive, time consuming, and unfair (*see* 6-19 Chisum on Patents § 19.05 [2][b][i]) Courts have imposed a heightened duty on a patent owner already involved in patent litigation and already involved in communication with the potential infringer to affirmatively notify the potential infringer that they are next to be sued.  *See A.C. Aukerman*, 960 F.2d at 1039.  The Federal Circuit has reasoned that prior contacts between a patent owner and potential infringer that do not resolve the dispute are "equivocal" in nature, leaving the accused without knowledge of the patentee's intentions.  *See Jamesbury Corp. v. Litton Indust. Prods., Inc.*, 839 F.2d 1544, 1553 (Fed. Cir.

---

[4] In addition to the reasons articulated above, courts have acknowledged that it is burdensome to file a second patent infringement suit against a second infringer when the validity of the patent at issue had not yet been judicially affirmed.  *See* 6-19 Chisum on Patents § 19.05 [2][b][i].  In this case, the '272 Patent was not at issue in the Nellcor litigation or any other litigation during the laches period.  As such, Masimo did not have this burden with regard to filing suit on the '272 Patent.

1988) *overruled on other grounds by A.C. Aukerman*, 960 F.2d 1037.  As such, when there has been prior communication between the patent owner and the potential infringer, more substantive notice of the patent owners intent to sue the potential infringer once the other litigation terminates may be required.   *See A.C. Aukerman*, 960 F.2d at 1039; *see also Jamesbury*, 839 F.2d at 1553.

Despite the heightened duty, Masimo never affirmatively told Philips it would sue once the Nellcor litigation ended.  The Masimo-Nellcor litigation began in 2001 and ended in 2004. *See Masimo v. Mallinckrodt*, CACD 00-6506.  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████   In these circumstances, if Masimo intended to sue Philips after the Nellcor litigation, it had a heightened duty to affirmatively tell Philips as much.   Yet Masimo did not.  ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

Moreover, the patent litigation between Masimo and Nellcor ended in 2004.  *See Masimo v. Mallinckrodt*, CACD 00-6506.  It took Masimo another five years before it filed suit against Philips.  Even if the four year patent litigation between Masimo and Nellcor, tolled the laches period for the '272 and '222 Patents, the laches clock began ticking in at least 1999 for the '272 Patent and in 2001 for the '222 Patent.  As such, even if four years were tolled, Masimo still

delayed six years before filing suit on the '272 Patent and five years before filing suit on the '222 Patent.

In addition, Masimo was not involved in any other patent litigation from 2004 to the time it filed suit against Philips in 2009.  As such, Masimo can not assert the excuse of "other litigation" in an effort to justify its five year delay in filing suit against Philips on the '194 Patent.

## CONCLUSION

Masimo's delay in filing suit against Philips on the '272 and '222 Patents for ten and eight years respectively is presumptively unreasonable and prejudicial to Philips.  Masimo now bears the burden to produce sufficient evidence to put the existence of a presumed fact into genuine dispute with regard to the reasonableness of the delay or the prejudice.  Masimo is unable to meet this burden.  Moreover, Masimo's five year delay in bringing suit on the '194 Patent is likewise unreasonable and prejudicial to Philips.  Accordingly summary judgment should be granted preventing Masimo from obtaining presuit damages on the '272, '222 and '194 Patents pursuant to laches.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel: (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated: August 14, 2012
Public Version Dated: August 21, 2012
1070924 / 33976

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Philips Electronics North America*
*Corporation and Philips Medizin Systeme*
*Böblingen GmbH*

18