**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | C.A. No. 09-80 (LPS/MPT) |
| | ) | CONSOLIDATED |
| Plaintiff, | ) | |
| | ) | **REDACTED** |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION and PHILIPS | ) | |
| MEDIZIN SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-742 (LPS/MPT) |
| | ) | |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION and PHILIPS | ) | |
| MEDIZIN SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**MASIMO CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY AND NONINFRINGEMENT OF U.S. PATENT NO. 7,215,984**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff, Masimo Corporation*

OF COUNSEL:

Joseph R. Re
Karen Vogel Weil
James F. Lesniak
Jon W. Gurka
Perry D. Oldham
Michelle E. Armond
KNOBBE, MARTENS, OLSON
  & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
(949) 760-0404

Original Filing Date: September 21, 2012
Redacted Filing Date: September 28, 2012

# TABLE OF CONTENTS

**Page No.**

I.      NATURE AND STAGE OF PROCEEDINGS ....................................................................1

II.     SUMMARY OF ARGUMENT ........................................................................................1

III.    COUNTERSTATEMENT OF FACTS ...........................................................................2

    A.    Masimo's Parallel Calculation Technology.................................................2

    B.    Philips' FAST Technology ............................................................................2

IV.     ARGUMENT ...................................................................................................................4

    A.    Masimo Agrees The Claims Should Be Given Their Ordinary Meaning...............4

    B.    U.S. Patent No. 5,355,882 ("Ukawa") Is Not Prior Art...........................................6

    C.    Ukawa Also Does Not Disclose The Inventions Of The '984 Patent.....................7

        1.    Ukawa Does Not Disclose Claims 1-4 And 15.............................................7

        2.    Ukawa Does Not Disclose Claim 5 .................................................................9

        3.    Ukawa Does Not Disclose Claims 19, 20, And 22 ....................................10

        4.    Ukawa Does Not Disclose Claims 52 And 53 ...........................................11

        5.    Ukawa Does Not Render Claims 16 And 54 Obvious..............................11

    D.    U.S. Patent No. 4,955,379 ("Hall") Does Not Disclose The Inventions
          of the '984 Patent...........................................................................................12

        1.    Philips Fails To Show That Hall Discloses Claims 1-4 And 15 ...............13

        2.    Philips Fails To Show That Hall Discloses Claim 5..................................15

        3.    Philips Fails To Show That Hall Discloses Claims 19, 20, And
              22........................................................................................................................16

        4.    Philips Fails To Show That Hall Discloses Claims 52 And 53 .................17

    E.    Philips' FAST Algorithm Satisfies The Limitations At Issue ...............................18

        1.    Philips' "Time-Window" Argument Does Not Show Non-
              infringement..................................................................................................18

        2.    Philips' Processing-Module Argument Does Not Show Non-
              infringement..................................................................................................19

**TABLE OF CONTENTS**
*(cont'd)*

**Page No.**

V.     CONCLUSION .................................................................................................................20

# TABLE OF AUTHORITIES

**Page No(s).**

*Bard Peripheral Vascular v. W.L. Gore & Assocs.*,
  670 F.3d 1171 (Fed. Cir. 2012)..............................................................................................12

*In Re Hilmer*,
  359 F.2d 859 (CCPA 1966) ......................................................................................................6

*Mahurkar v. C.R. Bard, Inc.*,
  79 F.3d 1572 (Fed. Cir. 1996)...................................................................................................6

*Pfaff v. Wells*,
  525 U.S. 55, 119 S. Ct. 304, 142 L. Ed. 2d 261 (1998).............................................................6

## OTHER AUTHORITIES

35 U.S.C § 102.............................................................................................................................6

## I.  <u>NATURE AND STAGE OF PROCEEDINGS</u>

Masimo submits this Answering Brief in opposition to Defendants' Motion for Summary Judgment of Invalidity and Noninfringement of U.S. Patent No. 7,215,984 ("the '984 Patent") (D.I. 394).  This Answering Brief is supported by the Declarations of Gail Baura, Ph.D. ("Baura Decl.") and Perry Oldham.

## II.  <u>SUMMARY OF ARGUMENT</u>

Philips wrongly argues that Masimo is now trying to deviate from the ordinary meaning of the asserted claims.   The claims at issue cover a system or method that calculates a physiological parameter of the pulsing blood by using two calculators, where each calculator uses a different calculation technique for the same parameter of pulsing blood to process the incoming signals from the same detected light.

Philips relies on two references to allege invalidity.   Philips ignores that one of them, Ukawa, is not even prior art.   Regardless, Philips' argument that "[t]here is no dispute that each reference discloses a device with two calculation techniques for calculating oxygen saturation" is incorrect.  D.I. 395 at 1.  Each reference discloses a single calculator, and not two, as required by the claims.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████   Thus, Philips' Motion should be denied.

## III. <u>COUNTERSTATEMENT OF FACTS</u>

A.   <u>Masimo's Parallel Calculation Technology</u>

Pulse oximeters may use a variety of calculation techniques to process intensity signals in calculating oxygen saturation and pulse rate.  For example, pulse oximeters may calculate oxygen saturation using time-domain or frequency-domain techniques.  However, each algorithm tends to have strengths and weaknesses, depending on the patient conditions.  Masimo's parallel alternative calculation technology covered by the '984 Patent provides a significant advance in providing robust monitoring of patients, even in different conditions.  The asserted claims of the '984 Patent cover Masimo's breakthrough parallel calculations technology.

The asserted claims require calculating a physiological parameter of the pulsing blood by using two different calculation techniques for the same parameter from the detected signals.  *See, e.g.*, Claim 1.  Each of the independent claims includes language that shows the calculations are from the same detected signals calculating at the same time.  Claim 1 ("a first calculator . . . from said detection of said light . . . a second calculator . . . from said detection of said light"); Claim 52 ("first and second calculation techniques to determine a value indicative of the physiological parameter based upon at least one of the first and second intensity signals"); Claim 53 ("a signal processing device which accepts the one or more intensity signals").

B.   <u>Philips' FAST Technology</u>

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



<hr />

[1] All exhibits referenced hereto are attached to the Declaration of Perry D. Oldham filed concurrently herewith, unless otherwise noted.



## IV.  ARGUMENT

**A.**   **Masimo Agrees The Claims Should Be Given Their Ordinary Meaning**

Masimo is not now adding limitations to the asserted claims.  Masimo has consistently

applied the ordinary meaning to these claims.  Masimo's long-standing use of the generic phrase

"parallel, alternative calculations" was not to reconstrue the claims narrowly as Philips argues,

D.I. 395 at 2, but simply a shorthand phrase to describe what is actually claimed in detailed language.  *See, e.g.*, D.I. 164 at 13; D.I. 178 at 13 ("several parallel calculation techniques."); D.I. 182 (Masimo's Claim Construction PowerPoint) at slide 43 (Fig. 14).

Having lost its attempt to narrow the claims in the '984 Patent to a particular "signal model," Philips now tries to broaden the patents to argue invalidity.  Philips makes three new claim construction arguments.  It argues the claims: 1) do not require that both calculators calculate a ratio representing a physiological characteristic every time a calculation is performed; 2) do not require that each calculator "use the *same* intensity signals;" and 3) do not require that each calculator output a value to the processing module.  D.I. 395 at 8-9.  To make such arguments, Philips had to ignore much of the claim language.

With regard to the first argument, neither Philips' invalidity nor its non-infringement position turns on this interpretation.  Philips' new claim construction is still incorrect.  The claims require that a first calculator "***determine*** at least a first ratio," and a second calculator "***determine*** at least a second ratio."  Thus, the claims require the calculators actually determine their respective ratios.  Ex. 11 at 267:3-268:8.  The language Philips relies on regarding each calculator being "capable of utilizing" a calculation technique in no way suggests that only one calculator need determine its ratio.  The "capable" language is associated with the calculation technique, but the claims require both calculators "to determine" ratios.

With regard to the second argument, Claim 1, for example, recites that the calculations from both calculators are "from **said** detection of **said** light at **said at least first and second wavelengths**."  Thus, the claims are clear that the input signals for the first and second calculators are the same because both calculators use "**said** detection of **said** light."

With regard to the third argument, Philip's argument would make having two calculators

meaningless.  For example, in Claims 1 and 53, the processing module is "configured to utilize at least one of the first **and** second calculators to determine a **resulting value** . . . ."  Philips argues as if the word "and" says "or."  In order to be configured to use at least one of the first **and** second calculators to determine a **resulting value**, output from both calculators must be available to the processing module.  Ex. 11 at 269:8-14.  That makes sense, because if only one calculator was connected to the processing module, the other calculator would be rendered useless.

Because claim construction has concluded, the parties should adhere to the ordinary meaning of the unconstrued terms.  Philips cannot now construe the claims to deviate from that ordinary meaning.

## B.      U.S. Patent No. 5,355,882 ("Ukawa") Is Not Prior Art

Philips argues that Ukawa is prior art under 35 U.S.C § 102(e) because it issued on October 18, 1994.  D.I. 395 at 10.  But its issue date is irrelevant under § 102(e).  The question is whether Ukawa was "filed in the United States before the invention" by Masimo.  35 U.S.C § 102(e) (1994).

The Ukawa patent was filed in the United States on July 8, 1993.  D.I. 432, Ex. 37 ("Ukawa").  Although it bears a foreign application date of July 9, 1992, this date is irrelevant under 35 U.S.C. § 102(e).  *See* Ex. 12 (MPEP § 2136.03 ("Foreign applications' filing dates . . . may **not** be used as 35 U.S.C. 102(e) dates for prior art purposes.")); *see also In Re Hilmer*, 359 F.2d 859, 883 (CCPA 1966).  Thus, Ukawa is only prior art if the July 8, 1993 filing date predates Masimo's invention date.  *See Pfaff v. Wells*, 525 U.S. 55, 61, 62, 119 S. Ct. 304, 142 L. Ed. 2d 261 (1998) (explaining the meaning of invention); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-78 (Fed. Cir. 1996).  ██████████████████████ █████████████████████████████████████████████  Ukawa is not prior art under § 102(e).  Ex. 13 at 31; Diab Decl. ¶¶ 10-15.

███████████████████████████████████████

███████████████████████████████████████

████████    That failure shows that Philips' Motion is baseless.

**C.**    **Ukawa Also Does Not Disclose the Claimed Inventions Of The '984 Patent**

Even if Ukawa were prior art, it still would not anticipate the '984 Patent. Ukawa discloses only a single calculation technique for determining oxygen saturation. Although Ukawa discloses multiple calculation steps, those steps are performed in sequence. The output of each calculation step provides the input for the next calculation step. D.I. 431, Ex. 23 ¶ 139.

**1.**    **Ukawa Does Not Disclose Claims 1-4 And 15**

Ukawa does not disclose Claim 1 or dependent claims 2-4 and 15. As illustrated in Figure 1 of Ukawa, computing unit 14 provides an initial red-to-infrared ratio ($\Phi$). Ukawa, Fig. 1, 3:47-56, 5:29-46. Correction circuit 15 applies a correction to the ratio, to provide an adjusted red-to-infrared ratio ($\Phi'$). Ukawa, Fig. 1, 4:59-65, 5:4-9, 6:7-15. The computing unit 16 only uses the corrected ratio ($\Phi'$) to determine saturation ($S$). Ukawa, Fig. 1, 4:67-5:2; 6:17-27. The saturation calculation of computing unit 16 is the last step in the sequential calculations as shown below. D.I. 431, Ex. 23 ¶ 139.



The "second computing means" that Philips points to in its claim chart is the computing unit 16. D.I. 395 App. A at 2. This computing unit merely converts the calculated adjusted ratio ($\Phi'$) into oxygen saturation. Ukawa, 2:46-48, 6:16-24. This computing unit 16 is not capable of using any calculation technique to determine a ratio. It accepts the corrected ratio provided to it

and converts it to saturation, thus it cannot satisfy the "second calculator" of Claim 1. Baura Decl. ¶ 4; D.I. 431, Ex. 23 ¶ 139.

Philips also does not identify any additional processing module in Ukawa corresponding to the final limitation of Claim 1. D.I. 395 App. A at 3. Because Philips identifies the module that determines saturation (computing unit 16) as the second calculator, D.I. 395 App. A at 2, it leaves nothing in Ukawa to determine a resulting oxygen saturation from at least one of the first and second calculators. Baura Decl. ¶ 5.

Instead of attempting to show that Ukawa anticipates Claim 1, Philips distorts the testimony of Dr. Baura into fabricated "admissions." For example, Philips boldly states that based upon Dr. Baura's testimony "[i]t is undisputed that Ukawa discloses a pulse oximeter capable of calculating oxygen saturation using first and second calculation techniques." D.I. 395 at 10-11. Dr. Baura, however, said no such thing. She really said:

> While it is a second calculation technique, it's not the first and second calculators of '984 because they are not in parallel. These are done sequentially.

Ex. 11 at 290:15-18. She said that the calculation technique in Ukawa did not satisfy the claims.

Philips also argues "Dr. Baura admits that claim 1 is anticipated by Ukawa should the court disagree with [Dr. Baura's] interpretation of the claims." D.I. 395 at 11. She did not:

> Q. You are taking the interpretation of Claim 1 of the '984 that it requires the same input to go into both calculators?
> A. Yes.
> Q. And that both calculators actually perform a calculation; right?
> A. Yes.
> Q. Is it true that your opinions on invalidity for Claim 1 are based entirely on that interpretation?
> A. Yes.
> * * *
> Q: *If the Court disagreed with your interpretation of Claim 1 . . . , do you agree that Claim 1 would be anticipated by the prior art?*
> A: *No*. . . .

Ex. 11 at 277:16-278:3, 279:3-10.

Philips' twisting of deposition testimony continues with its argument that "[w]ith respect to claims 2-4 and 15, Dr. Baura also admits that if claim 1 is invalid over Ukawa, so too are claims 2-4 and 15." D.I. 395 at 11-12. While Dr. Baura agreed that Claims 2-4 rise and fall with Claim 1, this testimony did not address Ukawa. Moreover, it did not address Claim 15. Ex. 11 at 261:8-12. Claim 15 requires that "utilization of said at least one of the first and second calculators is based at least in part on a property of the one or more intensity signals." In Ukawa, the computing unit 14, the correction circuit 15, and the computing unit 16 always perform their calculations, in a sequential manner. Ukawa, 5:4-9. There is no selective utilization. D.I. 431, Ex. 23 ¶¶ 171, 174; Baura Decl. ¶ 8.

### 2.    Ukawa Does Not Disclose Claim 5

Claim 5 depends from Claim 1. Thus, Ukawa does not disclose Claim 5 for at least the reasons explained above. In addition, Ukawa does not disclose the limitation of Claim 5 that "the resulting value of the blood oxygen saturation is significantly free of an influence of motion induced noise." Philips confuses "rejecting" or ignoring the signal during motion with measuring the blood oxygen saturation through motion to argue that Dr. Baura simply does not believe the statements in Ukawa about motion performance. D.I. 395 at 12-13. However, Dr. Baura properly explained that Ukawa "rejects signals containing noise: it does not provide an accurate measurement in the presence of noise." D.I. 431, Ex. 23 at 58. Ukawa's approach is to first detect the level of the motion noise. Ukawa, 5:47-56. Then, the correction circuit 15 **holds** the ratio for pulsing blood determined before the motion started, when the ratio was stable, and stops using any new signals from pulsing blood. Ukawa, 2:36-55, 4:8-14, 6:50-59; D.I. 431, Ex. 23 ¶ 168; Baura Decl. ¶ 6. This has long been known in the pulse oximetry field as "freezing" or "suspending" the prior reading. *See* Diab Decl. ¶ 16. (MASP0089024 "In essence,

the system suspends judgment temporarily in times of signal corruption and looks for the next plausible signal to update the output."). Thus, Ukawa does **not** disclose determining a resulting value of blood oxygen saturation that "is significantly free of an influence of motion induced noise" as recited in Claim 5. Baura Decl. ¶¶ 6-7.

### 3.   Ukawa Does Not Disclose Claims 19, 20, And 22

Claims 19, 20, and 22 depend from Claim 1. Because Ukawa does not disclose Claim 1, Ukawa does not disclose Claims 19, 20, and 22. Claim 19 further recites "the processing module is programmed to evaluate at least one of the one or more intensity signals to obtain an indication of reliability for at least one of the first and second calculation techniques." Philips' brief is silent as to how Ukawa discloses this limitation. D.I. 395 at 13. Philips' Appendix also is unhelpful. While it points to determining if the absorbance ratio Φ is found to fluctuate, it fails to explain how that fluctuation is "an indication of reliability for at least one of the first and second **calculation techniques.**" D.I. 395 App. A 5; *see also* D.I. 431, Ex. 23 ¶¶ 184, 187, 191.

Claim 20 further recites "the processing module is programmed to qualify at least one of the first and second ratios as usable to determine the resulting value." Again, Philips' brief is silent as to how Ukawa discloses this limitation. D.I. 395 at 13. Philips' Appendix summarily states that the first ratio is qualified if the absorption rate does not fluctuate. D.I. 395 App. A 5. However, the first ratio Φ in Ukawa is not the ratio sent to the saturation computing unit 16. Ukawa always uses the second ratio Φ' to calculate saturation, regardless of fluctuation in the absorption rate. Ukawa, 6:17-27. There is no processing module to qualify at least one of the first and second ratios. The same ratio Φ' is always used to calculate saturation. Baura Decl. ¶ 9; D.I. 431, Ex. 23 ¶ 197.

Claim 22 further recites "the first and second calculators are capable of relying on at least partially differing strengths in processing at least one of the one or more intensity signals." As

with Claims 19 and 20, Philips' brief is silent in explaining how Ukawa discloses this limitation. D.I. 395 at 13.  Philips' Appendix merely concludes that "a fluctuating absorbance ratio necessarily implies that the intensity signals used in the calculations have different strengths." D.I. 395 App. A 5.  But that is not what Claim 22 requires.  Claim 22 requires at least partially differing strengths in ***processing*** the intensity signals, not differing strengths in the actual intensity signals.  Philips has failed to show that Ukawa discloses the additional limitations recited in Claim 22.  D.I. 431, Ex. 23 ¶ 204.

### 4.      Ukawa Does Not Disclose Claims 52 And 53

Philips states that the validity analysis for Claims 52 and 53 is identical to other claims. This is not correct.  Claim 52 recites "utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter . . . wherein the utilizing comprises qualifying the value for inclusion . . . ."  Ukawa discloses that the computing unit 16 ***always*** calculates oxygen saturation using the corrected ratio $\Phi'$.  Ukawa, 6:17-27. Ukawa does not disclose any qualifying a value for inclusion.  D.I. 431, Ex. 23 ¶ 211.

Claim 53 recites "said utilization based at least in part on a property of the one or more intensity signals."  Ukawa, however, discloses that the computing unit 14, the correction circuit 15, and the computing unit 16 are always utilized.  Ukawa, 5:4-9.  Ukawa does not disclose utilization based on a property of an intensity signal.  D.I. 431, Ex. 23 ¶ 218.

### 5.      Ukawa Does Not Render Claims 16 And 54 Obvious

Claim 16 depends from Claim 15, which depends from Claim 1.  Claim 54 depends from Claim 53.  Both Claims 16 and 54 distinguish Ukawa for the reasons set forth above with respect to the claims from which they depend.  Further, both Claims 16 and 54 refer to utilization of first and second calculators based on a property, and recite "said property comprises a correlation between at least two of said intensity signals."  The only basis Philips provides for its

obviousness argument is that "one of ordinary skill in the art would have been motivated to look at the correlation of the detected intensity signals to ***determine whether to utilize either of the computing means*** disclosed by Ukawa."  D.I. 395 at 14 (emphasis added).  Ukawa, however, discloses that both computing unit 14 and computing unit 16 are always used.  Thus, Philips' suggestion that modifying Ukawa to look at the correlation of intensity signals would somehow "increase processing efficiency and accuracy because unnecessary or inaccurate calculations would not be performed in the presence of bad correlation" is completely unsupported.  D.I. 395 at 14-15.  Ukawa never suggests that any calculations would not be performed, and does not suggest using a correlation to determine whether or not to utilize a calculation.  To the contrary, Ukawa states that "the measurement will not be interrupted as in the prior art and it can be continued as long as one desires, thereby offering the added advantage of permitting continuous monitoring of the oxygen saturation of the subject's arterial blood."   Ukawa, 2:65-3:2.  Accordingly, Ukawa teaches away from the modification proposed by Philips to not utilize calculations.  Baura Decl. ¶ 10; D.I. 431, Ex. 23 ¶¶ 181-182, 221.

**D.     U.S. Patent No. 4,955,379 ("Hall") Does Not Disclose The Inventions Of The '984 Patent**

Philips also relies upon U.S. Patent No. 4,955,379 ("Hall") to argue invalidity.  Hall was considered by the Patent Office.  Philips points out that Hall was "never used in a rejection of the claims."  D.I. 395 at 14.  But that cannot help Philips.  Rather it indicates the Examiner thought it was not material.  The Examiner is presumed to have done his job and considered every prior art reference cited during the examination.  *See, e.g., Bard Peripheral Vascular v. W.L. Gore & Assocs.*, 670 F.3d 1171 (Fed. Cir. 2012).

Hall discloses the use of a tunable bandpass filter that attempts to track the pulse rate.  D.I. 432, Ex. 36 ("Hall"), 3:15-24.  In some instances, the bandpass filter is tuned to the pulse

rate using "normal oximeter algorithms." Hall, 3:15-17. In other instances, the bandpass filter is tuned to the pulse rate using a feedback loop. Hall, 3:21-24. Regardless of how the bandpass filter is tuned, the outputs of a single pair of red and infrared bandpass filters are used to calculate saturation. Hall, 3:34-37. Hall only discloses using the bandpass filter technique, and does not disclose any other techniques for determining saturation. Baura Decl. ¶ 12; D.I. 431, Ex. 23 ¶ 140.

### 1.  Philips Fails To Show That Hall Discloses Claims 1-4 And 15

Philips ignores the plain language of the claims in order to present its invalidity arguments. Claim 1 of the '984 Patent requires first and second calculators that are capable of using different calculation techniques. As explained above, the first calculator is to determine a first ratio, and the second calculator is to determine a second ratio using a different calculation technique. Hall, however, discloses only *one* calculator that tunes its function to determine one ratio. Hall, Figure 5, 3:34-37 ("the amplitude of the AC signals emergent from the filters may be used by the oximeter as normal."). Baura Decl. ¶ 12; D.I. 431, Ex. 23 ¶ 140.

Philips identifies a single red and infrared bandpass filter pair as being both the first calculator and the second calculator. D.I. 395 App. B 1-2. Philips cannot explain how the same bandpass filter can be *both* the first calculator and the second calculator as required by Claim 1. Further, Philips never attempts to explain how Hall discloses determining first and second ratios. D.I. 395 at 15-16, App. B 1-2.

As explained above, both the first and the second calculators must be capable of performing the calculation "from *said* detection of *said* light at *said at least first and second wavelengths*." The first calculator recites "a *ratio* representative of at least one physiological characteristic of the *pulsing blood*." The second calculator recites a "second *ratio* representative of *the* at least one physiological characteristic." In addition, the signal from which the first and

second calculation occurs is the same, due to the usage of the term "*said* detection of *said* light" for both calculators. Philips ignores all this plain language which requires that there be *two calculators*. Philips fails to show how Hall discloses distinct first and the second calculators that each are capable of using different calculation techniques to determine its own ratio as required by Claim 1 of the '984 Patent. Philips also does not explain how Hall could have first and second calculators both capable of determining their respective ratios "from *said* detection of *said* light at *said at least first and second wavelengths*." Hall provides no such disclosure. Baura Decl. ¶¶ 12-13.

Hall also cannot be "configured to utilize at least one of the first and second calculators to determine a resulting value" as required by Claim 1. Baura Decl. ¶ 14. The output of the single pair of bandpass filters is always used to calculate saturation. There is no connection of two ratios from two calculators for possible use as a resulting value. Baura Decl. ¶ 14. Philips' implication that the processing module need only be connected to one calculator renders the processing module meaningless as a limitation of the claim.

Philips' brief provides no analysis as to how Hall anticipates Claims 1-4 and 15. D.I. 395 at 16. Like Philips' analysis in view of Ukawa, Philips distorts the testimony of Dr. Baura into fabricated "admissions." As explained above, Dr. Baura never admitted that Claim 1 would be anticipated by any prior art reference if the Court disagreed with her understanding of the Claims. D.I. 395 at 16; Ex. 11 at 278:1-279:10 ("If the Court disagrees with your interpretation of Claim 1 as to the two points we identified, *do you agree that Claim 1 would be anticipated by the prior art? . . . No.*") (emphasis added).

Hall does not anticipate Claim 1, and therefore, it does not anticipate dependent Claims 2-4 or 15. Because Hall only calculates one ratio, it does not disclose utilizing at least one of the

first and second calculators to determine a resulting value that comprises a ratio as required by Claim 4.  Baura Decl. ¶ 15.  Further, Hall does not disclose first and second calculators, so it cannot disclose "said utilization of said at least one of the first and second calculators is based at least in part on a property of the one or more intensity signals" as recited in Claim 15.

### 2.   Philips Fails To Show That Hall Discloses Claim 5

Claim 5 depends from Claim 1, and Hall does not disclose Claim 5 for the same reasons set forth above with respect to Claim 1.  Claim 5 requires the additional limitation that "the resulting value of the blood oxygen saturation is significantly free of an influence of motion induced noise."  As set forth in Masimo's Opposition to Philips' Motion for Summary Judgment with respect to the '222 Patent, Hall does not disclose the calculation of oxygen saturation that is significantly free of an influence of motion induced noise.

Philips' argument that Baura's sole basis for her opinion on Claim 5 is that the Hall algorithm was commercialized in a Novametrix oximeter that did not measure through motion is false.  Baura testified that Hall does not disclose, much less enable, a pulse oximeter that can address the problem of erratic noise.  Baura Decl. ¶ 16; D.I. 431, Ex. 23 ¶ 120 ("Hall does not disclose an instrument that could calculate oxygen saturation without significant interference from motion induced noise.").  Hall merely discloses a traditional filtering technique known as a frequency-locked loop or bandpass tracking filter tuned to the patient's pulse rate.  Hall, 3:30-33; Baura Decl. ¶ 16; D.I. 431, Ex. 23 ¶ 120.  It is well known to those of skill in the art that frequency-locked loop or bandpass tracking filters, such as the filter disclosed in Hall, cannot remove erratic noise.  Baura Decl. ¶ 16; *see also* Masimo's Opposition to Philips Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,263,222 at 16-20; Baura Decl. ¶¶ 16-25.

**3.      Philips Fails To Show That Hall Discloses Claims 19, 20, And 22**

Claims 19, 20, and 22 depend from Claim 1, and Hall does not disclose those claims for the reasons set forth above with respect to Claim 1.  Claim 19 also requires the limitation that "the processing module is programmed to evaluate at least one of the one or more intensity signals to obtain an indication of reliability for at least one of the first and second calculation techniques."  Hall discloses that "a motion artifact detector system decides by examination of the variability of the amplitude and frequency of the incoming AC signals whether motion artifact is present."  Hall, 3:12-15.  However, Hall never discloses that this examination is "an indication of reliability for at least one of the first and second calculation techniques" as required by Claim 19.  Baura Decl. ¶ 27; D.I. 431, Ex. 23 ¶ 192.

Claim 20 requires that "the processing module is programmed to qualify at least one of the first and second ratios as usable to determine the resulting value."  As set forth above with respect to Claim 1, Hall never discloses first and second calculators capable of determining first and second ratios from the detected signals.  Further, for the ratio calculated by Hall, there is no disclosure of qualifying that ratio as usable to determine the resulting value.  Baura Decl. ¶ 28; D.I. 431, Ex. 23 ¶ 198.  Philips' brief and Appendix B ignore the word "ratio" with respect to Claim 20.  D.I. 395 at 17, App. B 6.

Claim 22 requires that "the first and second calculators are capable of relying on at least partially differing strengths in processing at least one of the one or more intensity signals."  With respect to Hall, Philips could not identify what those strengths were or how the calculators relied upon those strengths.  D.I. 395 at 17, App. B 6; *see also* D.I. 431, Ex. 23 ¶ 205.

Philips' argument that Dr. Baura's rebuttal to Dr. Stone's opinions are "conclusions" is misplaced.  Philips, as the party alleging invalidity of Claims 19, 20, and 22, bears the burden of

coming forth with evidence to show invalidity. Philips has not provided an explanation for its invalidity theory with respect to Claims 19, 20, and 22.

### 4. Philips Fails To Show That Hall Discloses Claims 52 And 53

Philips provides no invalidity arguments specific to Claims 52 or 53. Instead, Philips merely argues that Claims 52 and 53 contain similar limitations to those in Claims 1, 15, and 20.

Claim 52 recites, among other limitations, that "the first calculation technique is different from the second calculation technique." As explained above with respect to Claim 1, Hall discloses only a single calculator.

Claim 52 further recites "utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter . . . wherein the utilizing comprises qualifying the value for inclusion . . . ." Philips fails to explain how Hall qualifies any value for inclusion. D.I. 395 at 17, App. B 7. To the contrary, Hall discloses that the output of the bandpass filter is *always* used to calculate oxygen saturation. Hall, 2:50-57 ("as the pulse rate changes, the filter is so-adapted that its pass-band will follow the frequency change."). Philips has failed to show that Hall discloses the limitations recited in Claim 52. D.I. 431, Ex. 23 ¶ 212.

Claim 53 recites, among other limitations, "a second calculation technique different from the first calculation technique." As explained above with respect to Claim 1, Hall discloses only a single band pass filter, and does not disclose a second calculation technique different from the first calculation technique.

Claim 53 further recites "said utilization based at least in part on a property of the one or more intensity signals." Hall, however, discloses that the bandpass filter is always utilized, and does not disclose utilization based on a property of an intensity signal. Hall, 3:15-27. Philips has failed to show that Hall discloses the limitations recited in Claim 53. D.I. 431, Ex. 23 ¶ 219.

**E.**   <u>**Philips' FAST Algorithm Satisfies The Limitations At Issue**</u>

**1.**



_____

[2] Philips applies this unique construction for purposes of non-infringement only.  Philips never says Ukawa and Hall include a processing module that analyzes the input signals directly.



## V. <u>CONCLUSION</u>

For the foregoing reasons, Philips' Motion for Summary Judgment of Invalidity and Noninfringement of U.S. Patent No. 7,215,984 should be denied

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff, Masimo Corporation*

OF COUNSEL:

Joseph R. Re
Karen Vogel Weil
James F. Lesniak
Jon W. Gurka
Perry D. Oldham
Michelle E. Armond
KNOBBE, MARTENS, OLSON
   & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
(949) 760-0404

September 21, 2012
6462416

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused to be served copies of the foregoing document on September 28, 2012, upon the following in the manner indicated:

### <u>BY ELECTRONIC MAIL</u>

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC  20006

Steven Yovits
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606

*/s/ Julia Heaney*

_____

Julia Heaney (#3052)