**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 09-80-LPS-MPT |
| | : | CONSOLIDATED |
| PHILIPS ELECTRONICS NORTH | : | |
| AMERICA CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

**I.     Introduction**

In the continuing saga of disputes in this matter, Philips moved, prior to and
during a status conference held on December 18, 2012, to limit the number of claims
asserted by Masimo in both *Masimo I* and *Masimo II*, which Masimo opposed.[1]  During
that teleconference, both sides were allowed to present argument on the issue, as well
as, additional written submissions.[2]  The court now addresses the matter of reducing the
number of claims asserted by Masimo, limiting the number of claim terms to be
construed and limiting the number of Philips' prior art references.

**II.     Background**

Originally, in *Masimo I*, Masimo sued Philips alleging infringement of fourteen
patents related to pulse oximetry.[3]  Philips countered sued alleging ten of its patents

---

[1] D.I. 639 Joint Interim Status Report for the Remaining Patents.  Because
summary judgment briefing had been completed, and the court had already begun
reviewing and analyzing the parties' arguments, Philips' motion as to the *Masimo I*
patents was denied at this stage, to be addressed later for trial purposes.
[2] *See* D.I. 654 Transcript of December 18, 2012 teleconference at 51-53.
[3] D.I. 1; D.I. 12 at 2-4, ¶¶ 7-20.

and seven antitrust counterclaims, as well as patent misuse.[4]  In subsequent motion practice, the court granted Masimo's motion to bifurcate and stay discovery on Philips' antitrust counterclaims and like defenses to the patents, denied Philips' motion for reconsideration and denied Philips' objections to the original bifurcation decision.[5]

For litigation and case management purposes, the parties were ordered to reduce the number of patents to a more manageable level.  The parties were only able to reduce the original number of twenty-four to fourteen patents.  Thereafter, the court reduced the number of total patents to be initially litigated and tried to seven (four Masimo and three Philips patents), and also reduced the number of claim terms to be construed to 20.[6]  On December 1, 2010, the tutorial and *Markman* hearing on these seven patents occurred.  On February 10, 2011, a Report and Recommendation on claim construction was issued, to which both sides filed objections.[7]  A Memorandum Order was issued on January 17, 2012 overruling the objections by the parties, and adopting the Report and Recommendation, except for the construction of "signal processor," as used in claim 17 of the '222 patent.[8]

Masimo instituted a second action (*Masimo II*) against Philips alleging infringement of two patents in August 2011.[9]  Philips answered, again raising seven

---

[4] D.I. 15.
[5] D.I. 67; D.I. 86; D.I. 118.
[6] D.I. 148; *see also* D.I. 163, 164.  It was left up to the parties to select the patents on which they would initially proceed.
[7] D.I. 210; D.I. 218, 219.
[8] D.I. 319.
[9] *See* 11-742 LPS-MPT (*Masimo II*), D.I. 1.  The '955 and the '400 Masimo patents were initially asserted.

antitrust counterclaims, which were similar to those stayed in *Masimo I*.[10]  On November 22, 2011, Philips filed a motion to consolidate and stay the seven remaining "limbo" patents of *Masimo I* and all patents in *Masimo II*,[11] which Masimo opposed.[12]  The court granted Philips' motion to consolidate, but denied its motion to stay.[13]  As a result, the seven remaining patents in *Masimo I* and all patents in *Masimo II* were consolidated, with *Masimo I* operating as the lead case.

Beginning in August 2012, the parties filed various motions for summary judgment, motions to strike and *Daubert* motions on the initial seven patents.  Briefing on those motions was completed in October 2012, and they are presently under consideration by the court.

In addition to the somewhat tortured procedural history highlighted herein, the parties have entertained the court with a number of discovery matters and other similar concerns.

## III.    Parties' Positions

### Philips

Philips maintains narrowing the asserted claims from Masimo's present number of 95 (17 independent claims) to a total of 30 claims would reduce the overall complexity of the case because:  1) that reduction would likely reduce the number of claim disputes[14] by forcing Masimo to "strategically select its asserted claims with the

---

[10] D.I. 11 (*Masimo II*).
[11] D.I. 15, 16 (*Masimo II*).
[12] D.I. 23 (*Masimo II*).
[13] D.I. 38 (*Masimo II*).
[14] D.I. 642 at 4 (noting that pursuant to the recently submitted joint claim construction chart (D.I. 636), there are at least 33 disputes, 18 of which fall within a

goal of maximizing disputes;" 2) such narrowing would simplify experts reports,

summary judgment and trial;[15] and 3) due to the overlapping subject matter of most of

the asserted patents, Masimo would not be prejudiced by the reduction.[16]

In response to Masimo's arguments that no restrictions to the number of claims

should be imposed at this stage of the proceedings, Philips emphasizes the shared

specification of five of the *Masimo II* patents with a patent already construed.  It points

to the contradictions in Masimo's present position and its previous arguments that the

subject matter of the '955, '400 and '850 patents is substantially similar to the '272

---

single claim).

[15] *Id.*  As Philips posits, a single prior art reference asserted against each claim on summary judgment means the court would have to separately evaluate the validity of all of the 95 claims.

[16] *Id.* at 5.  Philips points to Masimo's representation that the subject matter of four of the patents is substantially similar since they relate to "'parallel calculations,'" made during a teleconference on December 21, 2011, addressing Philips' motion to consolidate/stay and Masimo's counter motion to add patents from *Masimo II* to *Masimo I* for trial.  *See* D.I. 642, Ex. K 5:6-9:24; 34:7-35:24.  Masimo requested adding three patents after the cutoff date for discovery on claim construction for the original seven had long passed, after completion of the *Markman* briefing and hearing, after the Report and Recommendation on the claim terms for the first seven patents in *Masimo I* had issued, *and* after the parties' objections to this construction had been filed.  During that teleconference, Masimo argued the patents should be grouped according to subject matter based upon the two patent families involved (parallel calculations/frequency domain patents and pulse rate patents), and it was more efficient to add those patents to *Masimo I*, for which minimal, if any discovery would be needed.  In fact, Masimo agreed to no further discovery on patents from the second group in *Masimo I*.  Masimo's request was denied, because the original selection process was left to the parties' discretion; Masimo did not suggest, object or argue the court's approach or limitation on the number of initial patents was insufficient or inappropriate; its request to add admittedly *related* patents arose *after* obtaining the court's analysis on claim construction; and if Masimo desired grouping the patents according to subject matter, it could have done so by its initial selection.  Masimo's present argument on the motion under consideration is in opposite.

construed patent in *Masimo I* because they are parallel calculation patents.[17]  Philips

relies on the precedent of this court, as well as the Federal Circuit.[18]  It distinguishes

*Webexchange, Inc v. Allstate Corp.*,[19] a case cited by Masimo, based on the case's

significantly different procedural posture.  Philips does not oppose "in theory" claim

reduction based on subject matter as Masimo suggests, but does not know how

Masimo envisions this concept, and thus, is unable to evaluate this proposal.

Although Philips agrees narrowing should leave open the possibility of adding

claims upon a showing of good cause, consistent with *Stamps.com*, it does not agree

Masimo should be permitted to assert *new* claims if any presently asserted claims are

eliminated during reexamination.[20]  Philips also does not object to limiting its prior art

references, but argues such reduction should be consistent with any reduction of the

asserted claims, and occur after Masimo's claim selection.  Since Masimo's claim

selection would likely obviate the need for certain prior art references, Philips contends

---

[17] Masimo agreed with Philips that initially there were two Masimo patents raised in C.A. No. 11-742, the '400 and the '955 patents, and that the '955 patent goes back to the unselected '850 patent in the 09-80 case, which then goes back to the '272 patent, a selected, construed patent from *Masimo I*.  D.I. 642, Ex. I at 23-24.

[18] *See Stamps.com Inc v. Endica, Inc.*, 437 Fed. Appx. 897 (Fed. Cir. 2011); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011); *Intellectual Ventures v. Check Point Software*, C.A. No. 10-1067-LPS, Tr. 11/13/2011, D.I. 642, Ex. B; *Nuvasive, Inc v. Globus Medical Inc.*, C.A. No. 10-849-LPS, Tr. 11/3/11, *id.*, Ex. D; *Softview LLC v. Apple Inc.*, C.A. No. 10-389-LPS, Tr. 9/6/11, *id.*, Ex. E; *Personalized User Model, LLP v. Google, Inc.*, C.A. No. 09-5252-LPS, Tr. 9/8/10, *id.* Ex. C.  Philips also relies on decisions from other jurisdictions.  *See High Point Sarl v. Sprint Nextel Corp.*, C.A. No. 09-2269-CM-DJW (D. Kan. Aug. 18, 2010), *id.*, Ex. F; *Hearing Components, Inc v. Shure, Inc.*, C.A. No. 9:07CV104-Clark (June 13, 2008), *id.*, Ex. A.

[19] C.A. No. 08-131-JJF, D.I. 66, Order (D. Del. Nov. 10, 2008).

[20] The PTO initially rejected the asserted claims of the '955 (*Masimo II*) during reexamination proceedings.  D.I. 642, Ex. N.  The PTO has also ordered reexamination of the asserted claims for the '984, '194 and '222 of *Masimo I.  Id.*, Exs. O-Q.

"those references should not be counted against" its total reduction.[21]

**Masimo**

Masimo argues because discovery is ongoing in the remaining eight patents, any claim reduction should occur shortly before trial.  It maintains Philips has failed to show any claims are duplicative to support "dismissal" of 65 of its patent claims,[22] and any reduction at this early stage would have minimal effect on discovery and claim construction.[23]  Rather, Masimo's solution at this stage of the proceedings is to limit only the number of claim terms to be construed.  Masimo also criticizes Philips' failure to address the subject matter of the presently asserted claims.[24]  It argues the only basis recognized to dismiss claims is a "convincing showing that many of the claims are duplicative," relying on *In re Katz*.[25]  In the absence of such a showing, Masimo contends Philips' proposed number to limit claims is arbitrary and violates due process.

Masimo summarily discusses how each asserted claim is directed to "distinct inventions with unique features," for which the innovative aspects of its products are entitled to protection via injunctive relief.[26]  It notes the patents are directed to both method and apparatus claims, which justifies no reduction in the number of claims.  Masimo also contends lessening complexity does not warrant reducing its claims, and

---

[21] D.I. 642 at 10.
[22] Philips adamantly denies it is requesting summary dismissal, and has explicitly provided "'any claim narrowing should leave open the possibility of adding additional claims upon a showing of good cause.'" D.I. 644 (quoting D.I. 642 at 8-9).
[23] Masimo's argument conflicts with its prior representations that certain "limbo" patents could easily be incorporated in *Masimo I*.  *See* n.16, *infra.*
[24] D.I. 643 at 1.
[25] 639 F.3d at 1311.
[26] *See* D.I. 643 at 3-6.

disputes such reduction would simplify the complexity of this matter.  All of Masimo's arguments are premised on the purported attempt by Philips to "dismiss" its claims. Masimo admits, however, it never intended to submit all presently asserted claims to the jury, and only some would be tried with the outcome applicable to other representative claims, which would protect the due process rights of both parties.  Masimo maintains the representative approach "is only possible . . . after the parties know what issues are to be presented at trial."[27]

Masimo also notes Philips listed 135 prior art references, but its validity charts only addressed 19, which were raised against all 95 claims.  It requests Philips be limited to those charted references.  It further demands before any claim reduction occurs, Philips be required to provide their validity contentions, citing *Intellectual Ventures* and *Personal User.*[28]  Masimo's proposal is:  limit the number of claim terms to be construed with an equal division between the parties; after *Markman* is decided, the parties meet and confer to reduce the claims and prior art references; after summary judgment motions are decided, the parties again meet and confer to further reduce the claims and prior art references, with any claim reduction on a representative-claim basis; and, if the parties are unable to agree at any stage, seek relief from the court.

## IV.   Analysis

---

[27] Masimo does not indicate when that event is likely to occur, but apparently under its proposal, it is sometime after summary judgment motions are decided, and assumes counsel are able to agree, which, from prior experience, the court feels is questionable.

[28] *See* D.I. 642, Ex. B at 24:6-10, 31:4-9 (*Intellectual Ventures*); *id.*, Ex. C at 26:5-18 (*Personal User*).

A district court has inherent authority to reasonably limit both the number of claim terms to be construed and the number of patent claims the parties may assert,[29] "to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[30]   In this jurisdiction, limiting the number of claim terms the court will construe and the number of patent claims a party may assert is well recognized.   By the court's count, more than 39 claim terms are proposed for construction:   95 claims are asserted by Masimo on seven patents, averaging more than 12 claims per patent, making this litigation unwieldy.   As evidenced by the history in *Masimo I*, as well as *Masimo II*, depending on the parties' discretion to reduce the claims at issue until sometime after summary judgment is decided is at best doubtful, and will not simplify the matter.   The fairer and more effective approach is to limit both the number of claim terms to be construed and the number of asserted claims.

When Masimo moved to incorporate three of the seven unselected or "limbo"

---

[29] *See Stamps.com Inc v. Endica, Inc.*, 437 Fed. Appx. 897 (Fed. Cir. 2011); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011); *Intellectual Ventures v. Check Point Software*, C.A. No. 10-1067-LPS, Tr. 11/13/2011, D.I. 642, Ex. B; *Nuvasive, Inc v. Globus Medical Inc.*, C.A. No. 10-849-LPS, Tr. 11/3/11, *id.*, Ex. D; *Softview LLC v. Apple Inc.*, C.A. No. 10-389- LPS, Tr. 9/6/11, *id.*, Ex. E; *Personalized User Model, LLP v. Google, Inc.*, C.A. No. 09-5252-LPS, Tr. 9/8/10, *id.* Ex. C.; *High Point Sarl v. Sprint Nextel Corp.*, C.A. No. 09-2269-CM-DJW (D. Kan. Aug. 18, 2010), *id.*, Ex. F; *Hearing Components, Inc v. Shure, Inc.*, C.A. No. 9:07CV104-Clark (June 13, 2008) *id.*, Ex. A; *Ip Cleaning S.p.A v. Annovi Reverberi, S.p.A.*, C.A. No. 08-cv-147-bbc, 2006 WL 5925609, at *1 (W.D. Wis. Oct. 26, 2006) (determining the court would only construe 16 claim terms, regardless of the number of patents and patent claims asserted); *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, C.A. No. 04-38 JJF, 2005 WL 2304190, at *3 (D. Del. Sept. 20, 2005) (finding 90 asserted claims covering 49 allegedly infringing products as unreasonable and admittedly arbitrarily reduced the number of claims to 10 and 5 products).
[30] *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

patents for trial, it unequivocally represented minimal, if any discovery was needed,[31] by

pointing to their significant relationship with the selected *Masimo I* patents.  Masimo

urged subject matter grouping based on the two patent families involved (parallel

calculation/frequency domain patents and the pulse rate patents).[32]  As referenced in

Philips submission, which Masimo does not dispute, a common genealogy exists among

five of the *Masimo II* patents.[33]  Specifically, five of the seven Masimo patents have a

common application, and are part of the '060 application family, which through various

continuations-in-part resulted in the '272 patent (construed).  The '850 patent (an

unselected patent of the original 14 patents, now a *Masimo II* patent) is a continuation of

the '272 patent.  Through subsequent continuation applications and a divisional

application, the following *Masimo II* patents issued:  the '154 patent and '572 patents

(unselected patents of *Masimo I*, now part of *Masimo II*) and the '955 and '400 patents

(new patents raised *Masimo II*).[34]  All these related patents fall within Masimo's

---

[31] D.I. 642, Ex. I 8:13-15 ("But one thing that is clear is that there has been substantial discovery already and much of that discovery is related to the unselected patents."); 11:5-6 ("There's no doubt that judicial economy would be served" [by incorporating the three unselected patents into *Masimo I* for trial].).

[32] D.I. 642, Ex. I at 6:12-7:4 (representing that the selected, construed '984 patent and the unselected '850 patent are related parallel calculation patents; the selected and construed '272 patent and unselected '154 patent are related frequency domain patents; while the unselected '952 patent and the selected, construed '941 patent are related pulse rate patents.

[33] *See* 642, Ex. J.

[34] The '053 patent is from a continuation application of the '850.  The '159 and '400 patents are from separate continuation applications of the '053.  The '859 patent (now abandoned) is from a continuation application of the '053 patent.  The '955 patent is from a divisional application of the '859 patent, and the '572 patent is from a continuation application of the '955 patent.  Thus, the '850, '159, '400, '955 and '572 are the result of continuation applications from the construed '272 patent, which is presently under consideration on summary judgment.

A continuation application is filed to pursue additional claims to an invention

identified two subject matter categories of parallel calculation/frequency domain patents and pulse rate patents, the same subject matters of the construed *Masimo I* patents.  As noted by Philips, the '955 and '572 patents recite a method of determining pulse rate and include the step of determining "at least two values corresponding to pulse rate based upon at least two alternative methods of processing."[35]  Moreover, the parties have already filed their Joint Claim Construction Chart for the 95 presently asserted claims in *Masimo II*, which identifies the claim terms in dispute, the parties' proposed construction for each disputed term and the reasoning for their construction.[36]  The court's prior claim construction decisions and the completed summary judgment briefing on the seven construed patents from *Masimo I*, the overlapping subject matters among the construed and unconstrued claim terms, and the parties' proposed claim constructions for the *Masimo II* patents should assist in any reduction selection of the claims and prior art references.

Masimo suggests the only legal standard recognized by the Federal Circuit in *In re Katz* was the duplicativeness of the claims.  That assumption is not accurate.  Rather, the Federal Circuit specifically noted in response to Katz's criticism that only a

---

disclosed in an earlier application (the parent application) that has not yet been issued or is abandoned.  The continuation application uses the same specification as the pending parent application, and the applicant may not add additional disclosure to the specification.  It claims the same invention claimed in the earlier application.  Harmon, Homan and McMahon, PATENTS AND THE FEDERAL CIRCUIT, 10th Ed. § 18.1(f) 2011.  A divisional application is similar to a continuation application in that it is based on the same disclosure as an earlier application, but is "carved out of an earlier application that disclosed and claimed more than one independent invention."  *Id.*

[35] *Compare* D.I. 642, Ex. G ('955 patent) at claim 5 and Ex. H ('572 patent) at claim 1.

[36] D.I. 636.

small number of claims had been examined by the district court before reduction occurred, that court also "based its findings on the common genealogy of Katz's patents."[37]  Further, *In re Katz* upheld the lower court's denial to allow Katz to sever and stay the unselected claims in the absence of a showing of good cause.[38]  In the subsequent opinion of *Stamps.com*, the Federal Circuit emphasized limiting the number of claims "was permissible if the district court left open the door for the assertion of additional claims on a showing of need," relying on *In re Katz*.[39]  Therefore, significant to the *In re Katz* and *Stamps.com* decisions were the safety valve provisions of the lower courts, which did not make the limitation on the number of claims immutable.

Masimo argues in its overview of its presently asserted 17 independent claims and the purported innovative features of the 78 related dependent claims that each claim is a distinct invention with unique features, which suggests no claim reduction could ever occur in any matter.  Yet, it admits reduction is necessary, and it never intended to present all presently asserted claims to the jury.  Masimo's summary does not refute early claim reduction, and claim reduction does not offend "the statutory

---

[37] *In re Katz Interactive Call Processing Litig.*, 639 F.3d at 1312 n.7.

[38] *Id.* at 1310.  *See also*, *Stamps.com Inc. v. Endicia, Inc.*, 437 Fed. Appx. 897, 902-3.  *In re Katz* also recognized burden allocation rests on the claimant ("When the claimant is in the best position to narrow the dispute, allocating the production burden to the claimant will benefit the decision-making process and therefore will not offend due process unless the burden allocation unfairly prejudices the claimant's opportunity to present its claim.").  *Id.* at 1311.

[39] *Stamps.com*, 437 Fed. Appx. at 902.  *Stamps.com* addressed similar issues as *In re Katz*, including plaintiff's argument that the denial of its motion to pursue additional claims violated due process.  In upholding the lower court's refusal to allow additional claims beyond the litigated claims, the Federal Circuit determined "[w]here the patentee 'did not file a motion to add claims with the requisite showing of need,' it 'cannot legitimately complain that it did not have a meaningful opportunity to be heard.'"  *Id.*, quoting *In re Katz*, 639 F.3d at 1312.

presumption that each claim is independently presumed valid" or the "'rebuttable presumption that different claims are of different scope.'"[40] "While different claims are presumed to be of different scope, that does not mean that they necessarily present different questions of validity or infringement."[41] Masimo's underlying gripe is timing–being required to reduce its claims at the present stage, and not that the number of claims asserted would eventually be reduced.

Despite couching its arguments as an attempt by Philips to dismiss Masimo's presently asserted claims, nothing in Philips' written or oral presentation suggests that purpose. Philips explicitly states "any claim narrowing should leave open the possibility of adding additional claims upon a showing of good cause."[42]

Therefore, early claim reduction is warranted before claim construction briefing and summary judgment motions are filed. In light of the analysis herein, including the breakdown between the number of presently asserted independent and dependent claims, the related subject matter of the patents, the genealogy of the asserted patents and the relationship among them, the previous claim construction decisions, and the filed summary judgment motions, Masimo is ordered to identify thirty (30) claims that are representative of the claims presently at issue from any or all of its asserted patents. The purpose of limiting the number of presently asserted claims to a selected group of representative claims is to streamline the issues, and Masimo should endeavor in its selection to choose truly representative claims directed to issues material to this

---

[40] *In re Katz*, 639 F.3d at 1313 (citing *Amgen Inc v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003)).
[41] *Id.*
[42] D.I. 642 at 8-9.

litigation.  The parties are further ordered to identify no more than twenty (20) claims terms for construction, taking into account terms that would be unfamiliar or confusing to the jury or unclear or ambiguous in the context of the claim.[43]

As to narrowing the prior art references,[44] Philips does not object to reducing its prior art references if it is consistent with the reduction in the number of asserted claims, and Philips is allowed to modify its selected references upon a showing of good cause. Philips maintains limiting its prior art references before Masimo's selection of claims would be unfair.  Philips also contends prior art references eliminated due to the reduction in claims should not count against Philips' total.

Masimo objects to Philips' "arbitrary mathematical approach," and requests, before claim reduction occurs, that Philips either be limited to the 19 references it has charted or complete its discovery responses for all prior art references it previously identified, relying on *Intellectual Ventures* and *Personal User.*

In *Intellectual Ventures*, the court did not order the defendants to serve invalidity contentions before the plaintiff reduced its claims.[45]  The timing of when claim reduction was to occur appears to be sometime after the defendants' document production would be completed and their invalidity contentions served.  The focus of the court, as well as the argument by the defense, however, was on the number of asserted claims and its

---

[43] *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (recognizing that every word in a claim has meaning, but this does not mean every word requires construction).

[44] Philips identified 135 prior art references, but only provided discovery responses for 19 of these references.

[45] As evidenced by the transcript, the request by the defendants to reduce the number of asserted claims in *Intellectual Ventures* was made at a much earlier stage in the case than the motion filed in the instant matter.

13

effect on the number of potential claim terms to be construed.[46]  Contrary to Masimo's argument that reduction in the number of claims asserted would have little, if any effect, on the complexity of the case, Judge Stark found that it would in *Intellectual Ventures.*

In *Personalized User*, the plaintiff had *previously* reduced its asserted claims from 68 to 36 claims, and the issue was whether the plaintiff would be required to reduce its asserted claims *further* before claim construction submissions and the *Markman* hearing.  The plaintiff sought invalidity contentions from the defendant only on the remaining 36 asserted claims.[47]  It also wanted the court's *Markman* ruling before any further reduction occurred, and acknowledged it would likely further limit its asserted claims before trial.[48]  In light of the plaintiff's initial efforts reducing the number of asserted claims, the defendant agreed to provide invalidity contentions on the remaining claims.[49]  Unlike the instant matter, when the court ordered the defendant provide its invalidity contentions on the remaining 36 claims *before* any further reduction in the claims occurred, the plaintiff had already reduced its claims by almost half.  Recognizing the relationship between the number of asserted claims and the number of claim terms requiring claim construction and their combined affect on the complexity of a case, the court ordered the plaintiff to reduce its asserted claims "to no more than 15" before the parties exchanged claim construction terms, but after the defendant provide its invalidity contentions to the already reduced number of asserted claims.[50]

---

[46] D.I. 642, Ex. B at 22:10-24:4; 30:3-31:1.
[47] D.I. 642, Ex. C. at 7:2-8.
[48] *Id.* at 8:10-14.
[49] Unlike the instant matter, the defendant had *not* provided *any* invalidity contentions.
[50] D.I. 642, Ex. C at 26: 5-27:6.

14

Unlike *Personal User*, in the instant matter, no initial reduction in the number of asserted claims has occurred, and Philips has responded to invalidity contentions by charting 19 of its prior art references, which are identified as applicable to all 95 presently asserted claims.[51]  Therefore, unlike the plaintiff in *Personal User*, Masimo will not be modifying the number of asserted claims blindly.

Applying the prior analyses, including those on claim reduction and limiting the number of claim terms, after the selection by Masimo, Philips is ordered to identify no more than 40 prior art references, and shall provide its invalidity contentions with charts, if it has not done so previously, for each prior art reference.

Consistent with the findings in *In re Katz* and *Stamps.com*, the limitations imposed on the number of presently asserted claims to 30 and the number of presently asserted prior art references to 40 may be modified upon a showing of good cause.[52]

Because of the findings herein, modification in the scheduling order is necessary, and the briefing schedule for claim construction beginning February 4, 2013 and the March 20, 2013 *Markman* hearing date are cancelled.  Counsel shall meet and confer regarding the timing of Masimo's identification of the asserted claims and Philips' subsequent identification of its prior art references and completion of its invalidity

---

[51] In its one page letter response to Masimo's submission, Philips did not dispute this representation by Masimo.  *See* D.I. 644.

[52] For example, whether a proposed added claim presents different questions on infringement or validity.

By directing Masimo to identify a limited number of claims and Philips to identify a limited number of references, the court is not absolutely precluding Masimo from asserting any of the 65-some remaining claims, or Philips from raising additional prior art references, but the court *is requiring* good cause to be shown before any modification to the limitations imposed will occur.

15

contentions, as well as submission of a new Joint Claim Construction Chart and a new briefing schedule on claim construction.  The court expects counsel to agree on these matters.  Counsel shall file a joint proposal regarding these matters on or before 5:00 p.m. Eastern time on February 5, 2013.  A teleconference to discuss these matters and to set a new *Markman* hearing date is scheduled for Thursday, February 7, 2013 at 11:00 a.m. Eastern time with counsel for Philips initiating and organizing the teleconference.

## ORDER

Consistent with the findings herein, IT IS ORDERED that:

1.  Masimo shall identify no more than thirty (30) of its presently asserted claims, from any or all of its patents-in-suit, that are representative of the claims at issue in this litigation.

2.  The parties shall identify no more than twenty (20) claim terms for the court to construe.

3.  After Masimo has completed its selection as contained in ¶ 1 of this Order, Philips shall identify no more than forty (40) of its presently asserted prior art references, and shall provide its invalidity contentions with charts for each prior art reference, if it has not previously done so.

4.  Counsel shall meet and confer regarding the dates for completion of Masimo's claim selection, Philips' prior art references' selection and invalidity contentions, submission of a new Joint Claim Construction Chart and a new briefing schedule on claim construction.  Counsel shall file a joint submission on these matters by **Tuesday**,

**February 5, 2013** on or before **5:00 p.m.** Eastern time.  A teleconference to discuss these matters and to set a new *Markman* hearing date is scheduled for **Thursday, February 7, 2013** at **11:00 a.m.** Eastern time with counsel for Philips initiating and organizing the teleconference.

5.  As a result of ¶ 4 of this Order, the present briefing schedule on claim construction and the *Markman* hearing date of March 20, 2013 are cancelled.

 Dated January 23, 2013                    /s/ Mary Pat Thynge_____
                                           UNITED STATES MAGISTRATE JUDGE