**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80-LPS-MPT |
| v. | ) | (Consolidated) |
| | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | **JURY TRIAL DEMANDED** |
| CORPORATION and PHILIPS MEDIZIN | ) | |
| SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR**
**MOTION FOR LEAVE TO AMEND ITS ANSWER**

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel: (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated: May 23, 2014
1153790/33976

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Erich W. Struble (#5394)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
estruble@potteranderson.com

*Attorneys for Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH*

# TABLE OF CONTENTS

                                                                                                              **Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ....................................................2

II.     FACTUAL BACKGROUND ..............................................................................................3

III.    LEGAL STANDARD .........................................................................................................6

IV.     ARGUMENT .......................................................................................................................7

        A.      Philips Did Not Delay in Filing This Motion ....................................................8

        B.      This Motion is Supported by "Good Cause" ......................................................8

        C.      Philips' Inequitable Conduct Allegations Satisfy the Requirements of Rule
                9(b) of the Federal Rules of Civil Procedure .......................................................9

                1.      Masimo Urged The PTO to Adopt a Claim Interpretation
                        Explicitly Rejected by this Court ............................................................10

                2.      The Court's Interpretation of the Claims, and Masimo's
                        Representatives Failure to Notify the Examiner of that
                        Interpretation or Correct the Examiner's Erroneous Interpretation,
                        is Material ..............................................................................................13

                3.      The Failures by Masimo's Representatives Meet the Intent
                        Requirement for Inequitable Conduct .....................................................16

        D.      Masimo Cannot Show any Undue Prejudice if This Motion is Granted..............18

                1.      Philips Seeks Only Limited Additional Discovery .................................19

                2.      Philips Would Suffer Severe Prejudice if Cannot Assert
                        Unenforceability of the '984 Patent at the Upcoming Trial....................20

V.      CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Johnson & Johnson, Inc.*,
   524 F. Supp. 2d 553 (D. Del. 2007)..................................................................................7

*Aerocrine AB v. Apieron Inc.*,
   C.A. No. 08-787-LPS, 2010 WL 1225090 (D. Del. Mar. 30, 2010)...............................7, 8

*Cargill, Inc. v. Canbra Foods, Ltd.*,
   476 F.3d 1359 (Fed. Cir. 2007)......................................................................................16

*Clark v Williams*,
   C.A. No. 07-239 JJF, 2008 WL 1803648 (D. Del. Apr. 18, 2008).....................................7

*Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*,
   910 F.2d 804 (Fed. Cir. 1990).........................................................................................2

*Cordance Corp. v. Amazon.com, Inc.*,
   255 F.R.D. 366 (D. Del. 2009) .......................................................................................18

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
   655 F.3d 1337 (Fed. Cir. 2011).......................................................................................16

*Dole v. Arco Chem. Co.*,
   921 F.2d 484 (3d. Cir. 1990) ..........................................................................................18

*Exergen Corp. v. Wal-mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)............................................................................9, 16, 18

*Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*,
   350 F.3d 1327 (Fed. Cir. 2003).........................................................................................9

*Forman v. Davis*,
   371 U.S. 178 (1962)..........................................................................................................7

*Galderma Labs. Inc. v. Amneal Pharms., LLC*,
   C.A. No. 11-1106-LPS, 2013 WL 5461611 (D. Del. Sept. 30, 2013) ..............................19

*Gaymar Indus. v. Cincinnati Sub-Zero Prods.*,
   Civ. No. 08-CV-299S, 2012 WL 176500 (W.D.N.Y. Jan. 19, 2012)................................20

*Helios Software, LLC v. Awareness Techs., Inc.*,
   C.A. No. 11-12-59-LPS, 12-081-LPS, 2013 WL 6773658 (D. Del. Dec. 19, 2013)..........8, 19

*In re Rambus*,
   694 F.3d 42 (Fed. Cir. 2012) ............................................................................. 2

*Intellect Wireless, Inc. v. HTC Corp.*,
   732 F.3d 1339 (Fed. Cir. 2013) ....................................................................... 16

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
   778 F.2d 1571 (Fed. Cir. 1985) ................................................................... 12, 13

*Leader Techs., Inc. v. Facebook, Inc.*,
   C.A. No.08-862-LPS, 2010 WL 2545959 (D. Del. June 24, 2010) ....................... 8

*Mallinckrodt, Inc. v. Masimo Corp.*,
   147 F. App'x 158 (Fed. Cir. 2005) .................................................................... 18

*Marlow Indus., Inc. v. Igloo Prods. Corp.*,
   65 F. App'x 313 (Fed. Cir. 2003) ...................................................................... 14

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
   984 F.2d 1182 (Fed. Cir. 1993) ........................................................................ 16

*Pettinaro Enters., LLC v. Cont'l Cas. Co.*,
   C.A. No. 09-139-GMS, 2010 WL 4274658 (D. Del. Oct. 29, 2010) .................... 19

*Rohm & Haas Co. v. Crystal Chem. Co.*,
   722 F.2d 1556 (Fed. Cir. 1983) ................................................................... 14, 16

*Southern Track & Pump, Inc. v. Terex Corp.*,
   722 F. Supp. 2d 509 (D. Del. 2010) ................................................................ 7, 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ............................................................ 12, 13, 15

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
   C.A. No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012) ......... 16, 17, 18

## OTHER AUTHORITIES

37 C.F.R. § 1.555 ................................................................................................. 12

Fed. R. Civ. P. 9(b) ........................................................................................ 8, 9, 10

Fed. R. Civ. P. 15(a) ........................................................................................... 1, 7

Fed. R. Civ. P. 15(a)(2) ........................................................................................... 6

Fed. R. Civ. P. 16(b)(4) ........................................................................................... 7

Counterclaim Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Boblingen Gmbh (collectively "Philips") move, pursuant to Federal Rule of Civil Procedure 15(a), for leave to amend their answer to add a defense and counterclaim asserting that plaintiff Masimo Corporation's ("Masimo's") U.S. Patent No. 7,215,984 ("the '984 Patent") is unenforceable due to Masimo's very recent inequitable conduct during the *ex parte* reexamination of the '984 Patent.[1]  The Patent Office ("PTO") just issued a Reexamination Certificate this month confirming the validity of the claims of the '984 Patent.  Masimo obtained this confirmation, however, by urging the patent examiner to adopt a construction of the claims that was explicitly rejected by this Court during summary judgment.

While Masimo submitted Magistrate Thynge's Report & Recommendation regarding summary judgment to the PTO, Masimo did not tell the Examiner that the sole distinction Masimo had made over certain prior art references was based on a claim construction rejected by the Court's recommendation in that Report & Recommendation.  Moreover, when the Notice of Intent to Issue Reexamination Certificate ("NIRC") issued, adopting Masimo's arguments that had been rejected by the Court, Masimo again failed to inform the PTO that its arguments were inconsistent with the Court's claim construction.  Masimo also never disclosed to the Examiner the Court's Summary Judgment Order which adopted the recommendation to reject Masimo's claim construction.  And, most egregiously, even after Philips informed the Court and Masimo of Masimo's failure to disclose and that the PTO's interpretation of the claims was incorrect (weeks before the Reexamination Certificate issued), Masimo again failed to inform the PTO of its erroneous interpretation of the claims.  In so doing, Masimo perpetuated an interpretation of the

---

[1] The '984 Patent is part of the *Masimo I* phase of the case, which is scheduled for trial September 15-25, 2014.  As discussed below, Philips does not believe the present motion will affect the trial date because only limited additional discovery is needed and such discovery can be readily obtained and provided by Masimo.

claims wholly inconsistent with, and explicitly rejected by, this Court.[2]  As pled in the proposed

Amended Answer, the actions of Masimo's attorneys and inventors (including its CEO)

constitute a violation of their duty of good faith and candor to the PTO, resulting in the

unenforceability of the '984 Patent and related patents.

Despite the late stage of this litigation, this motion is timely.  The Reexamination

Certificate of the '984 Patent issued only two weeks ago, and as such, Philips' defense and

counterclaims were not ripe until now.  Moreover, there is no prejudice to Masimo because only

limited, streamlined additional discovery is required, and can be accomplished in a matter of

days.  In any event, equitable defenses including inequitable conduct and laches, should be tried

to the Court rather than the jury, so the addition of this defense and counterclaim should not

affect the jury trial in September.  On the other hand, Philips would be severely prejudiced if it

cannot assert the unenforceability of the '984 Patent in this case.  Philips has a well-pled defense

against the assertion of one of the patents-in-suit based on Masimo's conduct during

reexamination of that patent, and it would be unfair and prejudicial to allow Masimo to seek

hundreds of millions of dollars in damages without letting Philips assert its defense.

Accordingly, Philips respectfully requests leave to amend its answer as shown in Exhibits 1

(clean) and 2 (redline).[3]

---

[2] As an expired patent, the '984 Patent is subject to the same claim construction in reexamination as in district court litigation.  *See, e.g., In re Rambus*, 694 F.3d 42, 46 (Fed. Cir. 2012).  Indeed, the Examiner purported to apply the Court's constructions of the claims.  *See* Exh. P (NIRC) at 12.

[3] Philips also intends to seek leave to amend its answer in the *Masimo II* phase of the case to allege the unenforceability of all patents in *Masimo II* that are in the same patent family and claim the same priority date as the '984 Patent.  *See, e.g., Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir. 1990) (approving the doctrine of "infectious unenforceability" to other patents in the same family).  But, to avoid complication and given the urgency of adding this defense to *Masimo I*, Philips is not seeking such leave at this time.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

In the *Masimo I* phase of this litigation, Masimo accuses Philips of infringing, *inter alia*, claims 1-5, 15, 16, 19, 20, 22, and 52-54 of the '984 Patent.  Fact and expert discovery have closed and the Court has issued its ruling on the parties' summary judgment motions.  Trial is set for September 15-25, 2014.

## II.    FACTUAL BACKGROUND

Philips filed a Request for *Ex Parte* Reexamination of the '984 Patent with the PTO on September 5, 2012, just after it filed its motion for summary judgment of invalidity and noninfringement of the '984 Patent.  *See* Ex. H (Request for Reexamination); D.I. 395 (Philips' Motion for Summary Judgment).  Reexamination was ordered by the PTO and all but two dependent claims were rejected over various prior art references.  *See* Ex. I (PTO Grant of Reexam) and K (Office Action).

During expert discovery in *Masimo I*, it became clear that the parties had a dispute regarding interpretation of the asserted claims of the '984 Patent that was not addressed during the *Markman* proceedings.  Specifically, Masimo and its expert Dr. Baura took the position that the asserted claims require "parallel, alternative calculations of a signal to determine first and second ratios."  *See* D.I. 431, Ex. 23 at 47-77.  Philips disagreed, and presented the dispute to the Court in its motion for summary judgment.  *See* D.I. 395 at 6-10 (Philips' argument that "[w]hile the signal processing device must include two calculators, each calculator is only required to be ***capable of*** performing a calculation technique –the claims does not require that *both* calculators actually calculate a physiological characteristic every time a calculation is performed").  In response, Masimo argued that "[t]he claims require that a first calculator '***determine*** at least a first ratio,' and a second calculator '***determine*** at least a second ratio.' Thus, the claims require the

calculators actually determine their respective ratios."  D.I. 515 at 5

While the claim construction dispute was pending before the Court, Masimo's lawyers John Grover and Stephen Jensen[4] and its CEO and inventor Joe Kiani participated in an interview with the Examiner handling the '984 Patent reexamination proceeding.  *See* Ex. L (Examiner Interview Summary); Ex. M (Applicant Interview Summary).  According to the Examiner's summary of the interview, Messrs. Grover, Jensen, and Kiani argued that the rejected claims of the '984 Patent were patentable over the prior art references because they require both calculators to actually determine their respective ratios.  *See* Ex. L.  This argument is the same argument that Masimo presented to the Court in its opposition to Philips' summary judgment motion.  There is no record that anyone at the interview for Masimo told the Examiner that the interpretation was disputed and would be resolved by the Court.

On March 25, 2013, Masimo's lawyer Jarom Kesler filed a Response to the PTO's Office Action ("Response").  *See* Ex. N.  The Response offered the same interpretation of the claims, namely that they "require both calculators 'to determine' ratios or values" and that "both calculators operate in parallel."  *Id.* at 22-25.  Mr. Kesler argued that the asserted claims could be distinguished from the cited prior art based on this claim interpretation.  *Id.* at 42-51.  Importantly for certain references as applied to certain claims, including the Hall patent, this was the only distinction Masimo made.  *See, e.g., id.* at 48-49.  Again, there was no mention in the response that Masimo's interpretation was disputed and would be decided by the Court..

One week after Mr. Kesler filed Masimo's Response, Magistrate Judge Thynge issued her Report and Recommendations regarding the parties' summary judgment motions, including her

---

[4] Mr. Jensen is also counsel of record for Masimo in this litigation, and argued at the *Markman* hearing and attended the summary judgment hearing in which the '984 Patent was addressed.

recommendation regarding the '984 Motion ("Summary Judgment R&R") (D.I. 662).   The Summary Judgment R&R agreed with Philips and <u>rejected</u> the interpretation of the asserted claims of the '984 Patent argued by Masimo in its Opposition, argued by Messrs. Grover, Jensen, and Kiani during the interview with the PTO, and argued by Mr. Kesler in the Response to Office Action.  *See* D.I. 662 at 42-51.  Masimo submitted the R&R to the PTO on April 29, 2013, and pointed out the section of the R&R that dealt with the '984 Patent, but did not tell the Examiner that the claim construction position it had urged was explicitly rejected by the Court. *See* Exh. O (IDS) at 4-5.  Nor did it tell the Examiner that the distinctions it made over the prior art that relied on its interpretation were inconsistent with the Court's claim construction.  *Id.*

Masimo did not object to Magistrate Thynge's interpretation of the asserted claims, and thus that interpretation was adopted by Judge Stark in his Order and Opinion dated March 31, 2014 (D.I. 776-777) ("Summary Judgment Order").  Masimo never disclosed the Summary Judgment Order to the PTO.

On April 10, 2014, less than two weeks after the Summary Judgment Order (which the PTO did not have), the PTO issued a NIRC confirming the asserted claims over the cited prior art references.  Ex. P.  While the NIRC makes clear that the PTO must apply the Court's claim constructions, and did in fact apply the Court's earlier claim constructions, there is no indication that the Examiner was aware of the Court's ruling on the interpretation of the asserted claims of the '984 Patent during summary judgment.  *Id.* at 12-13.  Indeed, the NIRC indicates that the PTO confirmed the claims based entirely on the claim interpretation argued by Masimo during the interview and in its Response—the same interpretation the Court rejected.  *Id.* at 15-16 (summarizing Masimo's argument).  It is thus clear from the NIRC that the Examiner did not appreciate that the Court rejected Masimo's construction, and that Masimo's distinctions over the

prior art based on that interpretation were inconsistent with the Court's construction.

Rather than correcting the PTO or pointing out the above inconsistency, Masimo instead tried to use the faulty PTO decision to sway the Court in its resolution of pending summary judgment issues.  One day after the NIRC, Masimo submitted to the Court a Statement of Recent Decision by the PTO touting the PTO's confirmation of the asserted claims of the '984 Patent. *See* D.I. 783.  The Court immediately denied Philips' pending summary judgment motion before Philips could respond to Masimo's letter, but in Philips' response, Philips notified the Court that the NIRC was based on a rejected interpretation of the claims and that Philips intended to pursue its rights based on Masimo's deception of the PTO.  *See* D.I. 789 ("the PTO's Decision is a finding that is contradictory to this Court's claim construction").

On May 6, 2014, the PTO issued a Reexamination Certificate of the '984 Patent, confirming the asserted claims of the '984 Patent.  Ex. J ("'984 Reexamination Certificate").  Twenty six days passed between the PTO's NIRC, which explicitly states it was confirming the claims based on the interpretation of the claims rejected by this Court, and the PTO's issuance of the '984 Certificate.   But despite Philips' statement to the Court and ample opportunity to disclose the Court's Summary Judgment Order and correct the PTO's understanding of the disputed claim terms, no one representing Masimo did so.  Rather, Masimo allowed the PTO to issue the '984 Reexamination Certificate based on the rejected construction it had perpetuated.

## III.   LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that on a motion for leave to amend a pleading, a court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that a particular claim will be decided on the merits rather than on

technicalities. *Aerocrine AB v. Apieron Inc.*, C.A. No. 08-787-LPS, 2010 WL 1225090, at *7 (D. Del. Mar. 30, 2010) (*quoting Abbott Labs. v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 557 (D. Del. 2007)).

"Amendment should ordinarily be permitted absent a showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.'" *Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 520-21 (D. Del. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "In the Third Circuit, the non-moving party has the burden of proving that actual prejudice will result from amendment of the complaint." *Aerocrine*, 2010 WL 1225090, at *7 (quoting *Clark v Williams,* C.A. No. 07-239 JJF, 2008 WL 1803648, at *1 (D. Del. Apr. 18, 2008)) (internal quotation marks omitted). "In determining the futility of a proposed amendment, this Court must apply the same standard of legal sufficiency as under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Southern Track*, 722 F. Supp. 2d at 522.

When, as here, "a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 of the Federal Rules of Civil Procedure is also implicated." *Id.*, According to Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In this District, "'[g]ood cause' exists when the Schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Southern Track*, 722 F. Supp. 2d at 521 (quoting Fed. R. Civ. P 16(b)(4) Advisory Committee's Notes (1983 amendments)). "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on the diligence of the movant, and not on prejudice to the non-moving party." *Id.*

## IV.    ARGUMENT

This Motion should be granted because Philips did not delay in bringing it, the Motion is supported by good cause, and it meets the pleading requirements under Federal Rule of Civil Procedure 9(b).  Moreover, Masimo cannot show any undue prejudice if this Motion is granted, and Philips would suffer immense prejudice if the Motion is not granted.

### A.    Philips Did Not Delay in Filing This Motion

As discussed herein, the issuance of the '984 Reexamination Certificate on May 6, 2014 is the basis for the inequitable conduct allegations Philips seeks to add to its Answer.  Philips' claims did not exist before the Reexamination Certificate.  Indeed, Masimo misled the PTO and failed to correct the PTO even after it indicated it was issuing the '984 Reexamination Certificate based on an interpretation of the claims rejected by this Court, despite Philips informing the Court and Masimo that the PTO was erroneously relying on the rejected interpretation.  *See* Ex. P (NIRC) at 12-19; D.I. 789.  This Motion is being filed only 17 days after issuance of the '984 Reexamination Certificate.  Accordingly, "delay is not an issue."  *Aerocrine*, 2010 WL 1225090, at *9; *see also Leader Techs., Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, 2010 WL 2545959, at *5 (D. Del. June 24, 2010); *Helios Software, LLC v. Awareness Techs., Inc.*, C.A. No. 11-12-59-LPS, 12-081-LPS, 2013 WL 6773658, at *1-2 (D. Del. Dec. 19, 2013).

### B.    This Motion is Supported by "Good Cause"

"'Good cause" supports Philips' request for leave to file an amended answer.  The '984 Reexamination Certificate issued on May 6, 2014 and therefore Philips could not have brought these amendments until just recently.  *Southern Track*, 722 F. Supp. 2d at 521.  Moreover, as noted above, only 17 days have passed since the '984 Reexamination Certificate issued.  Thus, there should be no dispute that Philips was not diligent in seeking leave to amend.  *Id.*

### C.   Philips' Inequitable Conduct Allegations Satisfy the Requirements of Rule 9(b) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity under Rule 9(b)." *Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003) (internal quotation marks omitted))... "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

As set forth in its proposed Amended Answer (Exhibits 1-2), Philips inequitable conduct answer and counterclaim cite and allege facts that answer each of the *Exergen* questions in detail. Indeed, Philips' proposed Amended Answer pleads, among other things:

- *who*:  John M. Grover, Jarom Kesler, Stephen C. Jensen, and Joe. E. Kiani ("Masimo's Representatives") knew that the interpretation of the asserted claims of the '984 Patent they urged the PTO to adopt was rejected by the Court (*see, e.g.*, Exhs. 1-2 at ¶¶ 388, 391-93, and 426-31);

- *what*: Masimo's Representatives each failed on multiple occasions to inform the PTO that the interpretation of the asserted claims of the '984 Patent they urged the PTO to adopt had been rejected by the Court.  Additionally, each failed to correct the PTO after learning that the basis for confirming the asserted claims was the interpretation rejected by the Court.  Finally, each failed to disclose the Court's Summary Judgment Order in which Masimo's interpretation was formally rejected by the Court (*see, e.g.,* Exhs. 1-2 at ¶¶ 388, 408-10, 413, 416-19, 425, 432-34, and 438);

- *when* and *where*:  during reexamination interviews and in papers submitted to the PTO (*see, e.g.,* Exhs. 1-2 at ¶¶ 388, 393, 407-09, 413, 421-25, and 438); and

- *how*:  the asserted claims of the '984 Patent would not have been confirmed during reexamination of the '984 Patent if the PTO applied the interpretation adopted by the Summary Judgment R&R and Order because Masimo made no distinctions to the PTO over the cited prior art under the proper interpretation (*see, e.g.,* Exhs. 1-2 at ¶¶ 388, 415, 419, 424-25, 435-38).

Because each of the above elements is set forth in Philips' proposed Amended Answer in detail, Philips' pleading satisfies the applicable Rule 9(b) standard.  Nonetheless, Philips has set forth below a summary of its inequitable conduct allegations.

### 1. *Masimo Urged The PTO to Adopt a Claim Interpretation Explicitly Rejected by this Court*

Philips' inequitable conduct allegations stem from the conduct of Masimo's Representatives during the reexamination proceedings that led to issuance of the '984 Reexamination Certificate on May 6, 2014.  As pled in the proposed Amended Answer, each of Masimo's Representatives (1) participated in the interview with the patent examiner where they argued that the PTO should adopt a specific interpretation of the asserted claims of the '984 Patent, or (2) submitted Masimo's Response arguing that the PTO should adopt the same interpretation of the claims.  *See* Exh. 1-2 ¶¶ 407, 409, and 423-24; Exh. L (Masimo's Interview Summary) at 2 (listing Messrs. Grover, Jensen, and Kiani as attendees); Exh. N (Response) at 59 (signed by Mr. Kesler).  The PTO ultimately adopted Masimo's interpretation of the claims and confirmed the claims based on that interpretation, as stated in the NIRC.  *See, e.g.,* Exh. P (NIRC) at 16 ("The Examiner has found Patent Owner's argument persuasive.").

As illustrated in the table below, Masimo made the same arguments regarding interpretation of the asserted claims of the '984 Patent to both the Court and the PTO.  But, during pendency of the reexamination before the PTO, the Court ***explicitly rejected*** that interpretation:

10

| Masimo's Arguments Regarding Interpretation of the Asserted Claims of the '984 Patent | | | Magistrate Thynge's Report & Recommendation (D.I. 672 at 48-51)[5] |
|---|---|---|---|
| Summary Judgment (D.I. 515 at 5) | Examiner's Interview Summary (Exh. L at 2) | Response to Office Action (Exh. N at 19-36) | |
| "The claims require that a first calculator 'determine at least a first ratio,' and a second calculator 'determine at least a second ratio.' *Thus, the claims require the calculators actually determine their respective ratios* [emphasis added]." | Masimo's representatives argued that while the prior art discloses two calculation techniques, they are not executed simultaneously.  For example:<br><br>"[the two techniques] *are not executed simultaneously, but instead, either first or second calculation is carried out* [emphasis added]."<br><br>"[the prior art] *fails to teach two different calculation techniques to process the inputted signals* [emphasis added]." | Masimo included a 16 page section regarding "[c]laim construction" having sections entitled "[b]oth calculators operate in parallel" and "[e]ach calculator outputs a value to the processing module."<br><br>"*The claims require both calculators 'to determine' ratios or values* [emphasis added]."<br><br>"*The 'utilizing' step language requires both techniques be actually performed to determine a value* [emphasis added]." | "The drafter included the 'capable of' language which indicates the ability of a 'first calculator' to 'determine at least a first ratio,' *not that both the first and second calculators are required to actually calculate a physiological characteristic every time a calculation is performed* [emphasis added]."<br><br>"[T]he court agrees the use of 'at least one' demonstrates *the claim does not require the processing module to utilize both calculators* [emphasis added]." |

Yet, despite the fact that the Court's Summary Judgment R&R rejected Masimo's claim interpretation, and the Order adopted that construction, Masimo's Representatives never disclosed the final Order to the Examiner, nor told her that the very claim interpretation it presented during the interview and in its Response had been rejected.  *See* Exh. L (Examiner's

---

[5] Notably, Masimo did not object to Magistrate Thynge's recommendation regarding interpretation of the claims of the '984 Patent in her Report & Recommendation. Thus, that interpretation was adopted in Judge Stark's Order and Opinion regarding summary judgment. However, Masimo never disclosed that Order to the PTO. *See* D.I. 776 at 7.

Interview Summary); Exh. N (Response).  Nor did Masimo's Representatives correct the PTO after the examiner made clear in the NIRC that she was confirming the claims based on Masimo's rejected claim interpretation.  *See* Exh. P (NIRC) at 15-16.  Rather, Masimo's Representatives allowed the '984 Reexamination Certificate to issue and then touted that confirmation to the Court as "support" for its argument that the '984 Patent is valid over the prior art in a Statement of Recent Decision to the Court.  *See* D.I. 783.

Thus, as set forth in Philips' proposed Amended Answer, each of Masimo's Representatives breached their duty to disclose to the PTO all information known to them to be material to patentability in a reexamination proceeding under 37 C.F.R. § 1.555 at least by:

(1) failing to tell the Examiner that the Court had rejected the construction it had advanced to the PTO as the sole basis to distinguish certain prior art;

(2) failing to disclose the Summary Judgment Order adopting the R&R's interpretation of the asserted '984 Patent claims and explaining that it rejected the claim construction it urged PTO to adopt; and/or

(3) failing to correct the PTO's erroneous interpretation of the claims after the NIRC, despite Philips specifically pointing out the PTO's error to the Court.

Each of these failures is material because the patent examiner would not have confirmed the asserted claims of the '984 Patent if she had known the Court had explicitly rejected that interpretation.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011).  This is clear from the record because Masimo did not advance any basis to distinguish certain prior art (including the Hall patent) under the interpretation adopted by the Court. Moreover, the only reasonable conclusion to draw from the facts is that these failures to disclose known, material information and failure to correct the PTO's erroneous interpretation were done with intent to deceive given the Examiner's explicit basis for allowing the claims. *See, e.g., KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985) ("We agree with the district court that [the duty to disclose] is not done by one who knowingly takes

12

advantage of an error by the PTO.").  Certainly after Philips pointed out the inconsistency to

Masimo, there can be no argument that Masimo did not fully understand the inconsistency and

yet allowed the Reexamination Certificate to issue without taking any action.  There can be no

other conclusion but that Masimo intended the PTO to be deceived.  At a minimum, Philips has

stated sufficient facts on which to find that Masimo's Representatives intended to deceive the

PTO in order to salvage the asserted claims of the '984 Patent for trial, as discussed below.  *Id.*

> **2.      *The Court's Interpretation of the Claims, and Masimo's Representatives
> Failure to Notify the Examiner of that Interpretation or Correct the
> Examiner's Erroneous Interpretation, is Material***

The fact that the Court explicitly rejected the claim interpretation Masimo's

Representatives urged the patent examiner to adopt, which she did, is material to the

confirmation of the asserted claims of the '984 Patent during reexamination.  Indeed, the failures

by Masimo's Representatives to point out the Summary Judgment R&R's interpretation, disclose

the Summary Judgment Order, and correct the PTO's erroneous interpretation of the claims meet

the standards that the Federal Circuit has established for the materiality prong of inequitable

conduct.  *See Therasense,* 649 F.3d at 1291-93.  Specifically, the Federal Circuit has held that

"the materiality required to establish inequitable conduct is but-for materiality," which means

that the claims would not have been allowed had the information been disclosed.  *Id.* at 1291.

The Federal Circuit also held that "affirmative egregious misconduct" may alternatively be a

predicate for a finding of inequitable conduct because "a patentee is unlikely to go to great

lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect

issuance of the patent."  *Id.* at 1292.

Here, the failures by Masimo's Representatives discussed above are material under the

"but-for" standard.  Masimo does not dispute that the PTO was obligated to use this Court's

interpretation of the claims of the '984 Patent in considering the validity of the claims over the

cited prior art.  As Masimo's Representatives pointed out during the interview and in the Response, the claims "must be construed in the same way a District Court construes claims." Exh. N (Response) at 19-20; Exh. M (Masimo's Interview Summary) at 2.  This was clearly understood by the patent examiner, who noted in the NIRC that she was obligated to interpret the claims "in accordance with the court decision resulting from [this] litigation. . . ."  Exh. P at 12.

Notwithstanding this requirement, Masimo's Representatives failed to tell the Examiner that the Summary Judgment R&R had rejected the very interpretation of the claims they urged the patent examiner to adopt during both the interview and in the Response.[6]  Moreover, Masimo's Representatives failed to disclose the Summary Judgment Order adopting that interpretation of the claims.  And then, even after the patent examiner indicated she had found "Patent Owner's argument persuasive" and was confirming the claims based on that interpretation, Masimo's Representatives did nothing to correct the PTO's error.  *See* Exh. P (NIRC) at 15-16 (summarizing Masimo's argument during prosecution of the reexamination).

These failures by Masimo's Representatives meet the "but-for" standard for materiality— the failures were material because the patent examiner would not have confirmed the claims had she known that Masimo's interpretation was rejected by the Court.  *See, e.g., Marlow Indus., Inc. v. Igloo Prods. Corp.*, 65 F. App'x 313, 318 (Fed. Cir. 2003) ("a reasonable examiner reviewing

---

[6] Masimo may argue that it did notify the patent examiner of the Summary Judgment R&R because it submitted it on an Information Disclosure Statement.  *See* Exh. O (IDS) at 5. But that disclosure is insufficient to identify the inconsistent claim construction.  While Masimo's IDS made a cursory reference to the fact that the Magistrate Judge had construed some claim elements of the '984 Patent, Masimo made no effort to point out that the Magistrate Judge ruling rejected  the very claim interpretation Masimo was urging the PTO to adopt.  Nor did the IDS point out to the PTO that the Summary Judgment R&R had, on the basis of rejecting Masimo's claim interpretation, explicitly rejected Masimo's only purported distinctions between the asserted claims of the '984 Patent and the cited prior art references.  *See, e.g., Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572-73 (Fed. Cir. 1983) (there is no presumption that an examiner can find, with his expertise and adequate time, the critical data when presented with a "mountain of largely irrelevant data").

14

[patentee's arguments/amendments] would have considered the district court's prior construction of that patent important").  The but-for materiality is most clearly shown by the fact that the only distinction Masimo made to the PTO over certain prior art references, including the Hall patent, was based on the erroneous claim construction. *See, e.g.,* Exh. N at 48-49.  Hence, there were no other distinctions on which the PTO could or would have relied on to confirm the claims.[7]

Moreover, the failure by Masimo's Representatives to correct the patent examiner after Philips pointed out the examiner's erroneous interpretation of the claims rises to the level of "affirmative egregious misconduct."  This serves as an independent basis to find materiality even if the "but-for" test is not met. *See Therasense,* 649 F.3d at 1292.  As discussed above, the day after the PTO issued the NIRC, Masimo filed its Statement of Recent Decision touting the PTO's confirmation of the claims.  *See* D.I. 783.  Philips then filed a letter with the Court specifically noting "that the PTO's Decision was based on a construction of the asserted claims urged by Masimo on March 25, 2013 and **rejected** by the Court one week later on April 2, 2013." *See* D.I. 789 at 1.  Thus, Philips noted, "the PTO's Decision is a finding that is contradictory to this Court's claim construction." *Id.*  Twenty-seven (27) days passed between the time the PTO issued the NIRC to the time it issued the '984 Patent Certificate.  During that time, despite Philips letter informing Masimo of the PTO's inconsistent claim interpretation, Masimo's Representatives made no effort to inform the PTO that the basis for its confirmation of the asserted claims of the '984 Patent had been rejected by the Court in the Summary Judgment R&R and Order.  This knowing failure to cure prior misconduct before the PTO is the type of

---

[7] Masimo's reliance on only one distinction to the PTO is consistent with the testimony of Masimo's technical expert in the litigation, Dr. Gail Baura, who admitted at deposition that she could not distinguish the prior art on any basis other than Masimo's rejected claim construction.  *See* D.I. 431, Exhibit 25 (Baura Depo. Tr. (7/16/2012)) at 270:6-10, 272:4-7, 263:22-264:3, 268:7-8; D.I. 431, Exhibit 23 (Baura Validity Rpt) at 67, 77.

"affirmative egregious misconduct" that the caselaw seeks to prevent.  *See, e.g., Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1343-44 (Fed. Cir. 2013) ("Given the false statements and the clear failure to do what is necessary according to our precedent to cure the misconduct, the argument that materiality has not been established is entirely without merit." (citing *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571-72 (Fed. Cir. 1983)).

### 3.   *The Failures by Masimo's Representatives Meet the Intent Requirement for Inequitable Conduct*

A pleading claiming inequitable conduct must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327.  The requisite state of mind includes:  "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO."  *Id.*  "Intent rarely can be, and need not be, proven by direct evidence.  Instead, an intent to deceive is usually inferred form the facts and circumstances surrounding the conduct at issue."  *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007) (internal citations omitted); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189-90 (Fed. Cir. 1993) ("[S]moking gun evidence is not required in order to establish an intent to deceive.").  At the pleading stage, "an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)." *Exergen*, 575 F.3d at 1329 n.5; *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (inequitable conduct claim must survive motion to dismiss where court can reasonably infer specific individual had intent to deceive the PTO); *Wyeth Holdings Corp. v. Sandoz, Inc.*, Civ. No. 09-955-LPS-CJB, 2012 WL 600715, at *9 (D. Del. Feb. 3, 2012).  In denying plaintiff's motion to dismiss inequitable conduct counterclaim in *Wyeth*, this Court found the defendant had "pled sufficient facts, with sufficient particularity, to give rise to a reasonable inference that

16

[plaintiff's] representatives deliberately acted to deceive the PTO" based on interpretive statements by the prosecuting attorney. *Wyeth*, 2012 WL 600715, at *13.

Here, under the facts as pled, the single most reasonable inference able to be drawn from the evidence is that Masimo's Representatives deliberately failed to inform the patent examiner that Masimo's claim interpretation had been rejected by the Court in its Summary Judgment R&R and Order, as well as to correct the patent examiner's erroneous claim interpretation after issuance of the NIRC, and that these failures to disclose highly material information were done with the intent to deceive the PTO into confirming the claims of the '984 Patent. As pled in the proposed Amended Answer, each of Masimo's Representatives knew about the Court's Summary Judgment R&R and Order and the fact they rejected the claim construction Masimo's Representatives urged the PTO to adopt. *See* Exh. 1-2 ¶¶ 426-31. Nonetheless, Masimo's Representatives failed to inform the PTO about the Court's final interpretation of the claims even after the patent examiner made absolutely clear she was confirming the claims based on Masimo's rejected claim construction. *See* Exh. P (NIRC) at 15-16.

Masimo cannot credibly argue that there is another reasonable explanation for these failures. Indeed, Masimo's Representatives had multiple opportunities to make sure the patent examiner was aware of the Court's interpretation of the asserted claims of the '984 Patent, but ***never did so***. These missed opportunities include:

- Masimo's Representatives could and should have stated in its IDS dated April 29, 2013 that the Summary Judgment R&R dated April 2, 2013 had rejected Masimo's interpretation of the claims (*see* Exh. O (IDS)) and that these interpretations would not be considered final by the Court until it ruled on any objections by the parties;

- Masimo's Representatives could and should have disclosed the Summary Judgment Order dated March 31, 2014 to the patent examiner;

- Masimo's Representatives could and should have contacted the patent examiner after issuance of the NIRC on April 10, 2014 (*see* Exh. P (NIRC)) and explained that the PTO was relying on a claim construction that had been rejected by the Court; and

17

- Masimo's Representatives could and should have contacted the patent examiner after Philips filed its letter with the Court noting the NIRC's erroneous interpretation of the claims (*see* D.I. 789).

Had Masimo's Representatives taken <u>any one</u> of these actions, the patent examiner would have seen the inconsistency of Masimo's prior arguments and could not have confirmed the claims based on the claim construction rejected by this Court, as discussed above.  But Masimo's Representatives took <u>none</u> of these actions, instead allowing the PTO to confirm the asserted claims of the '984 Patent before it proceeded to trial later this year.  These failures by Masimo's Representatives during the reexamination constitute a pattern of conduct for which an intent to deceive the PTO is the most reasonable inference to draw.[8]  *See Exergen*, 575 F.3d at 1329 n.5. Indeed, these failures provide a factual basis for the Court to "reasonably infer that the patent applicant made a deliberate decision to deceive the PTO." *Wyeth*, 2012 WL 600715, at *7.

### D.   Masimo Cannot Show any Undue Prejudice if This Motion is Granted

To establish prejudice, Masimo "must do more than merely claim prejudice; it must show that it [would be] unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been [provided earlier]." *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009); *see also Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d. Cir. 1990).  Masimo cannot make any such showing.

---

[8] Notably, this is not the first time Masimo and its lawyers have knowingly misled the PTO on patents in the same patent family as the '984 Patent.  In 2005, the Federal Circuit found that Steve Jensen, one of Masimo's Representatives here, committed inequitable conduct for failing to advise the PTO that the Central District of California construed a term he had previously added to a pending patent application.  *Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 164-65 &183-84 (Fed. Cir. 2005).  The facts of that case were very similar to the situation presented here—Mr. Jensen failed to inform the PTO of the District Court's construction of a term that appeared in the claims of the asserted patent.  *Id.*  The Federal Circuit held "that Jensen did not disclose the [prior] litigation to the PTO, when he for certain knew about it since he was the lead attorney representing Masimo in that litigation, strongly suggests that he intended to deceive the PTO." *Id.* at 184.  Given this previous finding, Mr. Jensen should have been particularly aware of the importance of ensuring that the PTO was aware of the Court's ruling regarding interpretation of the asserted claims of the '984 Patent in this case.

### 1. *Philips Seeks Only Limited Additional Discovery*

Here, Philips will only seek limited additional discovery that is already in Masimo's possession or readily available to Masimo.  That discovery can be completed in a matter of days and should not affect the parties' ability to retain the trial scheduled for September 15-25, 2014.  *See, e.g., Galderma Labs. Inc. v. Amneal Pharms., LLC*, C.A. No. 11-1106-LPS, 2013 WL 5461611, at *2 (D. Del. Sept. 30, 2013) (allowing amendment to add inequitable conduct allegations three months before trial because only "'limited discovery relating to [the] new claims" is required); *Helios Software,* 2013 WL 6773658, at *2 (finding no undue prejudice by allowing amendment to add inequitable conduct because trial "is likely several months away").  Indeed, Philips would only seek at most 4-hour depositions of each of the individuals it alleges committed inequitable conduct:  John Grover, Jarom Kesler, Steve Jensen, and Joe Kiani.  These depositions can be completed in two or three days.

Furthermore, any relevant documents are readily available.  Masimo has access to its own documents and the documents of its attorneys that are relevant to Philips' allegations.  This is especially true given that all the activities at issue occurred recently and all involved Masimo's CEO and/or the same law firm representing Masimo in this litigation; any relevant documents should be easily accessible.  Given the limited discovery needed to address Philips' allegations, "little prejudice will result from re-opening discovery for the limited purpose of obtaining additional information on these [proposed amendments]." *Pettinaro Enters., LLC v. Cont'l Cas. Co.*, C.A. No. 09-139-GMS, 2010 WL 4274658, at *3 (D. Del. Oct. 29, 2010).

Finally, during the parties' meet and confer regarding this motion, Masimo indicated that if Philips is granted leave to add its inequitable conduct allegations, those allegations should be tried before the Court in a bench trial.  Philips agrees, and believes that all equitable defenses should be tried to the Court at a trial that can be scheduled at the Court's convenience.  This

undercuts any argument Masimo can offer regarding prejudice because the Court has yet to schedule any such bench trial.[9]

### 2. Philips Would Suffer Severe Prejudice if Cannot Assert Unenforceability of the '984 Patent at the Upcoming Trial

Even if Masimo could assert that Philips' amendment would cause it minimal prejudice, any such prejudice is outweighed by the severe prejudice to Philips that would result from not being able to present a significant unenforceability defense that would render the '984 Patent unenforceable.  *See Gaymar Indus. v. Cincinnati Sub-Zero Prods.*, Civ. No. 08-CV-299S, 2012 WL 176500, at *6 (W.D.N.Y. Jan. 19, 2012) ("whatever prejudice [plaintiff] may suffer in the form of continued litigation—litigation that, it should be noted, was initiated by [plaintiff]—does not overcome the interests in justice allowing [defendant] to plead and argue its counterclaim on the merits").  Simply put, the sole reason the '984 Patent was confirmed during reexamination and is still being asserted against Philips is the fact that Masimo convinced the PTO to apply a claim interpretation rejected by this Court and not objected to by Masimo.  Masimo should not be permitted to assert patents against Philips, seeking over $600 million in damages, without Philips being able to defend itself by advancing a well-pled defense of unenforceability due to Masimo's very recent continuing misconduct in the prosecution of this patent family.

## V.   CONCLUSION

For the foregoing reasons, Philips respectfully request that the Court grant it leave to amend its answer as shown in Exhibits 1-2 to allege unenforceability due to inequitable conduct during reexamination of the '984 Patent.

---

[9] As noted by the parties' previously, Philips believes that its equitable defenses should also be tried in a bench trial.  However, if Masimo prevails in arguing that equitable defenses should be tried before the jury, inequitable conduct may also need to be tried to the jury.  In addition to inequitable conduct, Philips also intends to try its unclean hands defense in view of the same facts alleged in its proposed Amended Answer.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel:  (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated:  May 23, 2014
1153790/33976

By:  /s/ David E. Moore
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Erich W. Struble (#5394)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        estruble@potteranderson.com

*Attorneys for Philips Electronics North America
Corporation and Philips Medizin Systeme
Böblingen GmbH*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on May 23, 2014, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on May 23, 2014, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Jack B. Blumenfeld<br>Julia Heaney<br>Jeremy A. Tigan<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>jblumenfeld@mnat.com<br>jheaney@mnat.com<br>jtigan@mnat.com | Joseph R. Re<br>Jon W. Gurka<br>Perry Oldham<br>Stephen Larson<br>Michelle Armond<br>Knobbe, Martens, Olson & Bear, LLP<br>2040 Main Street<br>Fourteenth Floor<br>Irvine, CA  92614<br>jre@knobbe.com<br>jgurka@knobbe.com<br>poldham@knobbe.com<br>stephen.larson@knobbe.com<br>michelle.armond@knobbe.com |
| Karen Vogel Weil<br>Knobbe, Martens, Olson & Bear, LLP<br>10100 Santa Monica Boulevard, Suite 1600<br>Los Angeles, CA  90067<br>kweil@knobbe.com | M. Laurence Popofsky<br>Robert A. Rosenfeld<br>Scott A. Westrich<br>Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105<br>lpopofsky@orrick.com<br>rrosenfeld@orrick.com<br>swestrich@orrick.com |

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Erich W. Struble
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
estruble@potteranderson.com

907271 / 33976

2