IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-80-LPS-MPT |
| | : | |
| PHILIPS ELECTRONIC NORTH | : | |
| AMERICA CORPORATION and | : | |
| PHILIPS MEDIZIN SYSTEME | : | |
| BÖBLINGEN GMBH, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

1. Defendants Philips Electronic North American Corporation and Philips Medizin Systeme Böblingen GMBH (collectively, "Philips" or "Defendants") move, pursuant to Federal Rule of Civil Procedure 15(a), for leave to amend their answer to add a defense and counterclaim asserting that Plaintiff Masimo Corporation's ("Masimo" or "Plaintiff") U.S. Patent No. 7,215,984 ("the '984 patent") is unenforceable due to Masimo's alleged recent inequitable conduct during the ex parte reexamination of the '984 patent. (D.I. 805) Plaintiff Masimo opposes the motion on the grounds it is futile and unduly prejudicial. The Court heard oral argument on the motion at the pre-trial conference on August 28, 2014. (*See* Transcript) ("Tr.")

2. Pursuant to Federal Rule of Civil Procedure 15, courts generally grant motions to amend absent a showing of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of the amendment.[1] *See Dole v. Arco Chem.*

---

[1] Having moved for leave to amend after a deadline in the Scheduling Order, Philips' motion must also satisfy Fed. R. Civ. P. 16(b)(4). *See id.* ("A schedule may be modified only for

*Co.*, 921 F.2d 484, 487 (3d Cir. 1990).

3.      An amendment is futile if it fails to satisfy the standards of legal sufficiency under

12(b)(6) of the Federal Rules of Civil Procedure. *See In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1434 (3d Cir. 1997). When reviewing a motion to dismiss for failure to state a

claim on which relief may be granted, the Court must accept as true all material allegations of the

complaint. *See* Fed. R. Civ. P. 12(b)(6); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." *In re Burlington Coat Factory*, 114 F.3d at 1420 (internal

quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after

"accepting all well-pleaded allegations in the complaint as true, and viewing them in the light

most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472,

481-82 (3d Cir. 2000) (internal quotation marks omitted).

4.      The substantive elements of inequitable conduct require: "(1) an individual

associated with the filing and prosecution of a patent application made an affirmative

misrepresentation of a material fact, failed to disclose material information, or submitted false

material information; and (2) the individual did so with a specific intent to deceive the PTO."

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). "[I]n

pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific

who, what, when, where, and how of the material misrepresentation or omission committed

---

good cause and with the judge's consent."). The Court finds that since much of the alleged
conduct occurred quite recently, and Philips has been diligent in pursuing its motion since that
time, Philips has shown good cause. *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509,
521 (D. Del. 2010) ("In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges
on diligence of the movant, and not on prejudice to the non-moving party.") (citation omitted).

2

before the PTO." *Id.* at 1327. Generally, the materiality required to establish inequitable

conduct is "but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276,

1291 (Fed. Cir. 2011). As for the intent prong, Rule 9(b) states that "[m]alice, intent, knowledge,

and other conditions of mind of a person may be averred generally." The relevant "conditions of

mind" for inequitable conduct include: "(1) knowledge of the withheld material information or of

the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO."

*Exergen*, 575 F.3d at 1327.

5.      Having reviewed the parties' submissions (D.I. 806, 807, 811) and considered the

arguments made during the hearing, the Court concludes that the amended allegations adequately

plead inequitable conduct such that Philips' claim is not futile.[2]

6.      In its amended answer, Philips alleges specific Masimo representatives – John

Grover, Stephen Jensen, Joe Kiani, and Jarom Kesler – each failed on several occasions to

inform the PTO that the interpretation of the asserted claims of the '984 patent Masimo urged the

PTO to adopt had been rejected by this Court, including: (i) when Magistrate Judge Thynge

issued her Report & Recommendation ("R&R") regarding summary judgment, (ii) when the PTO

issued its Notice of Intent to Issue Reexamination Certificate ("NIRC") based on that rejected

construction, and (iii) when the undersigned District Judge issued his Summary Judgment

Opinion and Order ("SJ Order") adopting the magistrate's R&R. (*See, e.g.*, D.I. 806 Exhs. 1-2 at

¶¶ 388, 408-10, 413, 416-19, 432-34, and 438) Philips provides sufficient factual support for

---

[2]Masimo submitted a post-hearing letter, which clarifies its position that in analyzing
whether Philips' proposed amendment would be futile the Court need take as true only well-
pleaded factual allegations and may consider documents on which Philips' claim is based. (D.I.
852)

these allegations to support materiality as well as an intent to deceive.

7.      Independent claim 1 of the '984 patent requires, in pertinent part:

> *a first calculator capable of utilizing a first calculation technique to determine at least a first ratio* representative of at least one physiological characteristic of the pulsing blood based on at least one of the one or more intensity signals generated from said detection of said light as said at least first and second wavelengths, [and]
>
> *a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second ratio* representative of the at least one physiological characteristic based on at least one of the one or more intensity signals generated from said detection of said light at said at least first and second wavelengths . . . .

(D.I. 1-10) ('984 patent col. 66:31-45) (emphasis added)

8.      In connection with its motion for summary judgment of invalidity, Philips argued to Judge Thynge that "[w]hile the signal processing device must include two calculators, each calculator is only required to be *capable of* performing a calculation technique – the claim does not require that *both* calculators actually calculate a physiological characteristic every time a calculation is performed." (D.I. 806 at 3) (citing D.I. 395 at 6-10) (emphasis in original)  Hence, Philips took the position that the claims of the '984 patent *do not require* that a first and second calculator *actually determine* a calculation.

9.      In response to Philips' motion for summary judgment, Masimo (in a brief it filed in September 2012) argued that "[t]he claims require that a first calculator '*determine* at least a first ratio,' and a second calculator '*determine* at least a second ratio.'" (*Id.*) (citing D.I. 515 at 5) (emphasis in original)  Hence, Masimo took the position that the claims of the '984 patent *do require* that a first and second calculator *actually determine* a calculation.

4

10. At about the same time, in March 2013, Masimo (as part of the ongoing ex parte reexamination of the '984 patent) responded to an office action advocating before the PTO the same claim construction it was pressing on Magistrate Judge Thynge, i.e., that *both* the first and second calculators *must actually determine* a ratio. For example, Masimo wrote to the examiner:

> . . . Thus two calculators are recited that determine a ratio or value representing the same physiological characteristic.
>
> The claim language in Claims 1 and 53 regarding each calculator being "capable of utilizing" a calculation technique *cannot be construed* as allowing only one calculator to make a determination for a particular measurement. To begin with, the "capable" language is associated with the calculation technique, and not the "to determine" language which follows it. *The claims require both calculators "to determine" ratios or values* . . . . *Thus, Claims 1 and 53 require that both calculators actually determine their respective ratio or value.*

(D.I. 806-7 Ex. N at 22-23) (emphasis added)

11. On April 2, 2013, while recommending denial of Philips' motion for summary judgment of invalidity due to the existence of genuine disputes of material fact (D.I. 662 at 51-65), Judge Thynge rejected Masimo's construction, finding (as Philips argued) that the '984 patent claims do *not require* both calculators to actually determine their respective ratios. Judge Thynge wrote: "[T]he drafter included the 'capable of' language which indicates the ability of 'a first calculator' to 'determine at least a first ratio,' *not* that both the first and second calculators are *required to actually calculate a physiological characteristic every time* a calculation is performed." *Id.* at 48 (emphasis added). Masimo did not object to the recommended claim construction or the recommendation that Philips' motion seeking to invalidate the '984 patent be

5

denied.

12.     While Masimo now argues that Judge Thynge's construction merely rejects a

requirement that both calculators actually determine a ratio *every time* – a requirement Masimo

insists it has never advocated – it is plain from Judge Thynge's explanation that she was more

broadly *rejecting* Masimo's proposed construction and *adopting* Philips' construction. In

particular, Judge Thynge set out the parties' positions as follows:

> Philips first argues that although the signal processing
> device must include two calculators, the claims only require each
> calculator to be *capable of* performing a calculation technique, not
> that *both* calculators actually calculate a physiological
> characteristic every time a calculation is performed.
>
> Masimo disputes that argument, citing the claim language
> that a first calculator "*determine* at least a first ratio," and a second
> calculator "*determine* at least a second ratio." Based on that
> language, Masimo concludes that the claim requires that the
> calculators [i.e., *both calculators*] actually determine their
> respective ratios.

(D.I. 662 at 47) (emphasis in original; internal footnote omitted) After expressly stating

Masimo's position as being that "the claims *require* both calculators 'to determine' ratios" (*id.*)

(emphasis added), Judge Thynge rejected that position. She elaborated:

> The court agrees with Philips' interpretation. As Philips
> notes, the claim requires, e.g., "a first calculator *capable of*
> utilizing a first calculation technique to determine at least a first
> ratio." Rather than writing the limitation as "a first calculator
> utilizing a first calculation technique to determine at least a first
> ratio," the drafter included the "capable of" language which
> indicates the ability of "a first calculator" to "determine at least a
> first ratio," not that both the first and second calculators are
> required to actually calculate a physiological characteristic every
> time a calculation is performed.

(*Id.* at 48) (emphasis in original) In context, Judge Thynge's conclusion was not limited to the

"every time a calculation is performed" portion of the final sentence quoted above.

13.     Masimo submitted the R&R to the Patent Office on April 29, 2013 in an

Information Disclosure Statement ("IDS") and expressly identified the pages containing Judge

Thynge's constructions for claim terms in the '984 patent.  (D.I. 806-8 Ex. O)  Masimo did not

explain how Judge Thynge's construction or explanation related to the claim construction

positions Masimo had advocated before Judge Thynge and was continue to advocate before the

PTO.

14.     On March 31, 2014, the Court issued its SJ Order, ruling on the parties' objections

relating to 19 motions which had previously been reviewed by Judge Thynge and adopting all

portions of her recommendations to which neither side objected, including her recommended

construction of the disputed claim language in the '984 patent.  (*See* D.I. 777 at ¶ 4)  Thus, on

March 31, 2014, what had previously been a claim construction recommended by the Magistrate

Judge became an Order of the Court through the action of the District Judge.  In particular, it was

on March 31 that the Court construed the claims of the '984 patent as *not requiring* the two

calculators *to actually determine* a ratio.

15.     Less than two weeks later, on April 10, the PTO issued its NIRC for the '984

patent.  In the NIRC, the examiner's reasoning appeared to indicate that she was relying on the

rejected construction advanced by Masimo – that the claims *do require* the calculation of two

ratios – as the basis for distinguishing several prior art references.  (*See, e.g.*, D.I. 806-8 Ex. P at

16 ("Hall does not specifically teach that each calculation *results* in a ratio.  Consequently, Hall

does not explicitly teach *two ratios* but instead only mentions one ratio . . . .") (emphasis added);

*id.* at 17 (withdrawing rejection of claims based on patentee's argument that "EP '923 does *not*

*use two different techniques as required* by the claims . . . . [I]t is not inherent that both

calculations would determine a ratio *as required by claim 1* [of the '984 patent]") (emphasis

added))

16.     The plausibility of Philips' allegations that (i) the examiner relied on Masimo's

proposed claim construction which was rejected by this Court, and (ii) the examiner would have

found the claims of the '984 patent to be invalid had the examiner been advised this Court had

rejected Masimo's proposed construction is enhanced by the fact that it appears the examiner

intended to adopt the same claim construction this Court was adopting, and that the examiner

mistakenly believed she had done so.  In the NIRC, the examiner stated: "the claims considered

herein are interpreted in accordance with the court decision resulting from the litigation of

Masimo v. Philips, No. 1:09-CV-00080-LPS-MPT explained in the Joint Claim [Construction]

and Stipulations."  (D.I. 806-8 Ex. P at 12)[3]

17.     At *no point* did Masimo disclose to the PTO that on March 31, the Court issued

its SJ Order, transforming the Magistrate Judge's recommended rejection of Masimo's proposed

claim construction into an Order of the Court.  Masimo did not disclose this material fact to the

PTO during the ten days between the Court's issuance of its SJ Order and the PTO's issuance of

its NIRC, nor did Masimo disclose this material fact to the PTO even after the NIRC issued and

appeared to make clear that the examiner (mistakenly) was adopting the same claim construction

---

[3]It is undisputed that the PTO was not required to follow the Court's construction.  *See In
re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1298 (Fed. Cir. 2007) ("Since the PTO was not a
party to the district court litigation, issue preclusion does not apply."); *see also* D.I. 811 at 7
("Philips is not arguing that the PTO is limited by issue preclusion principles . . . .").  Because
the reexamination involved claims of an expired patent, the examiner applied the same claim
construction principles as a court must do in litigation.  (*See* D.I. 806-8 Ex. P at 12) (examiner
citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005))

as the Court. Regardless of whether a patentee in all cases has an obligation to disclose a District

Court's adoption of an unobjected-to recommended claim construction, or whether a patentee has

an obligation to explain the impact of a Court's claim construction on arguments the patentee has

made to the examiner, under the facts alleged here it is plausible to believe that Masimo

intentionally decided not to make these disclosures because Masimo intended to deceive the

examiner into believing she was applying the Court's claim construction, when Masimo knew

she was not, and when Masimo feared application of the Court's claim construction could lead

the examiner to invalidate its claims.[4] While Philips has not yet proven these allegations,[5] it has

stated plausible claims for relief, and it has met its burden for prevailing on its pending motion.

18. Hence, Defendants have provided adequate factual support for the allegations,

allowing the Court to draw the reasonable inference that the PTO would not have issued the

Reexamination Certificate had it been aware it was predicating its conclusion solely on a

___

[4]The parties dispute whether Philips could have disclosed the Court's SJ Order to the examiner, and perhaps even explained its significance to her. The MPEP provisions cited by the parties are not entirely clear on this point, although the record does indicate the examiner expressly reminded Philips that it had an opportunity to make submissions. (*See* D.I. 806-8 Ex. P at 20) ("The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 7,215,984 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286."). It is unnecessary for purposes of resolving the pending motion to decide whether Philips could have done more to help itself. What is important to today's ruling is that Philips has plausibly stated a claim for inequitable conduct by Masimo in Masimo's decision not to make disclosures to the PTO.

[5]There appears to be evidence in the record that would support Masimo's contention that it persuaded the examiner on the basis that the prior art – unlike the '984 patent's claims – did not disclose parallel paths for processing signals "according to two different calculation techniques." (*See, e.g.*, D.I. 806-7 Ex. M at 2) (ex parte reexamination interview summary) However, discovery and trial will be necessary before the Court can resolve the parties' disputes.

construction rejected by this Court. *See Therasense*, 649 F.3d at 1291. Therefore, the pleadings satisfy the "but-for materiality" requirement. From the allegations, Philips has likewise satisfied its burden to plead Masimo acted with an intent to deceive.

19.     Separately, Masimo contends Philips' motion should be denied because of the undue prejudice it imposes on Masimo. "In the Third Circuit, '[t]he non-moving party has the burden of proving that actual prejudice will result from amendment.'" *Aerocrine AB v. Apieron Inc.*, Civ. No. 08-787-LPS, 2010 WL 1225090, at *7 (D. Del. Mar. 30, 2010) (quoting *Clark v. Williams*, Civ. No. 07-239-JJF, 2008 WL 1803648, at *1 (D. Del. Apr. 18, 2008)). While Masimo will suffer some prejudice from Philips' new counterclaim, the prejudice here is significantly minimized by the fact that Philips seeks only limited additional discovery, including short depositions of the four Masimo representatives and production of the readily available reexam history (*see* D.I. 806 at 19-20), which should not affect the trial scheduled to begin September 15, 2014. Additionally, the issue will be tried to the bench as part of an as-yet-unscheduled bench trial concerning all remaining equitable issues.

Accordingly, IT IS HEREBY ORDERED THAT:

A.     Defendants' motion for leave to amend (D.I. 805) is GRANTED. Defendants shall filed their amended pleading within three (3) days of the date of this Order.

B.     Defendants' request to take limited discovery related to its defense and counterclaim of inequitable conduct is GRANTED.

September 2, 2014

UNITED STATES DISTRICT JUDGE

10