**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80-LPS-MPT |
| v. | ) | (Consolidated) |
| | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | **JURY TRIAL DEMANDED** |
| CORPORATION and PHILIPS MEDIZIN | ) | |
| SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' FIRST AMENDED ANSWER AND PHILIPS ELECTRONICS NORTH AMERICA CORPORATION'S SECOND AMENDED COUNTERCLAIMS TO MASIMO'S FIRST AMENDED COMPLAINT**

Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen Gmbh (collectively "Philips") by and through undersigned counsel, hereby answer the First Amended Complaint ("Complaint") filed by plaintiff Masimo Corporation ("Masimo"). Philips hereby responds in numbered paragraphs corresponding to the numbered paragraphs of the Complaint, and in doing so denies the allegations of the Complaint except as specifically stated:

## I.  PARTIES

1.     Plaintiff Masimo is a corporation incorporated under the laws of Delaware and has its principal place of business at 40 Parker, Irvine, California 92618.

ANSWER: Philips is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 and on that basis denies each and every such allegation.

2.     Upon information and belief, Defendant Philips Electronics North America Corporation ("Philips NA") is a Delaware corporation having its principal place of business at 3000 Minuteman Rd., Andover, Massachusetts 01810. Defendant Philips NA resides in Delaware and is subject to personal jurisdiction in Delaware.

ANSWER: Philips admits that Philips Electronics North America Corporation is a Delaware corporation having its principal place of business at 3000 Minuteman Road, Andover, Massachusetts 01810. Philips admits that Philips Electronics North America Corporation is subject to personal jurisdiction in Delaware. Otherwise, Philips denies the remaining allegations in Paragraph 2.

> 3. Upon information and belief, Defendant Philips Medizin Systeme Böblingen Gmbh ("Philips Böblingen") is a corporation organized and existing under the laws of Germany having its principal place of business at Hewlett-Packard-Strasse 2, 71034 Böblingen, Germany. Defendant Philips Böblingen conducts substantial and continuous business in the United States, and is subject to personal jurisdiction in Delaware.

ANSWER: Philips admits that Philips Medizin Systeme Böblingen Gmbh is a corporation organized and existing under the laws of Germany having its principal place of business at Hewlett-Packard-Strasse 2, 71034 Böblingen, Germany. Philips does not contest the exercise of personal jurisdiction over Philips Medizin Systeme Böblingen Gmbh for the sole purpose of this litigation. Otherwise, Philips denies the remaining allegations in Paragraph 3.

## II.  SUBJECT MATTER JURISDICTION AND VENUE

4. This action is one for patent infringement arising under 35 U.S.C. § 271.

ANSWER: Philips admits that the Complaint purports to set forth a claim under 35 U.S.C. § 271. However, Philips denies that Plaintiff has a valid claim.

5. The Court has jurisdiction under 28 U.S.C. § 1338(a). ANSWER: Philips admits that the Court has jurisdiction under 28 U.S.C. § 1338(a).

6. Venue lies in this district under 28 U.S.C. § 1391(b), (c), (d), and 1400(b). ANSWER: Philips admits that venue lies in this district under 28 U.S.C. §§ 1391 (b), (c), (d), and 1400(b).

### III. THE PATENTS-IN-SUIT

7.    Masimo is the owner by assignment of U.S. Patent 5,632,272 entitled "Signal Processing Apparatus" ("the '272 patent") which the United States Patent and Trademark Office lawfully and duly issued on May 27, 1997. A true and correct copy of the '272 patent is attached hereto as Exhibit 1.

ANSWER: Philips admits that on its face U.S. Patent No. 5,632,272 ("the '272 patent") is entitled "Signal Processing Apparatus" and that on its face it bears an issue date of May 27, 1997. Otherwise, Philips denies the remaining allegations in Paragraph 7.

8.    Masimo is the owner by assignment of U.S. Patent 6,002,952 entitled "Signal Processing Apparatus and Method" ("the '952 patent") which the United States Patent and Trademark Office lawfully and duly issued on December 14, 1999. A true and correct copy of the '952 patent is attached hereto as Exhibit 2.

ANSWER: Philips admits that on its face U.S. Patent No. 6,002,952 ("the '952 patent") is entitled "Signal Processing Apparatus and Method" and that on its face it bears an issue date of December 14, 1999. Otherwise, Philips denies the remaining allegations in Paragraph 8.

9.    Masimo is the owner by assignment of U.S. Patent 6,157,850 entitled "Signal Processing Apparatus" ("the '850 patent") which the United States Patent and Trademark Office lawfully and duly issued on December 5, 2000. A true and correct copy of the '850 patent is attached hereto as Exhibit 3.

ANSWER: Philips admits that on its face U.S. Patent No. 6,157,850 ("the '850 patent") is entitled "Signal Processing Apparatus" and that on its face it bears an issue date of December 5, 2000. Otherwise, Philips denies the remaining allegations in Paragraph 9.

10.    Masimo is the owner by assignment of U.S. Patent 6,263,222 entitled "Signal Processing Apparatus" ("the '222 patent") which the United States Patent and Trademark Office lawfully and duly issued on July 17, 2001. A true and correct copy of the '222 patent is attached hereto as Exhibit 4.

ANSWER: Philips admits that on its face U.S. Patent No. 6,263,222 ("the '222 patent") is entitled "Signal Processing Apparatus" and that on its face it bears an issue date of July 17, 2001. Otherwise, Philips denies the remaining allegations in Paragraph 10.

11.     Masimo is the owner by assignment of U.S. Patent 6,334,065 entitled "Stereo Pulse Oximeter" ("the '065 patent") which the United States Patent and Trademark Office lawfully and duly issued on December 25, 2001. A true and correct copy of the '065 patent is attached hereto as Exhibit 5.

ANSWER: Philips admits that on its face U.S. Patent No. 6,334,065 ("the '065 patent") is

entitled "Stereo Pulse Oximeter" and that on its face it bears an issue date of December 25, 2001.

Otherwise, Philips denies the remaining allegations in Paragraph 11.

12.     Masimo is the owner by assignment of U.S. Patent 6,650,917 entitled "Signal Processing Apparatus" ("the '917 patent") which the United States Patent and Trademark Office lawfully and duly issued on November 18, 2003. A true and correct copy of the '917 patent is attached hereto as Exhibit 6.

ANSWER: Philips admits that on its face U.S. Patent No. 6,650,917 ("the '917 patent") is

entitled "Signal Processing Apparatus" and that on its face it bears an issue date of November

18, 2003. Otherwise, Philips denies the remaining allegations in Paragraph 12.

13.     Masimo is the owner by assignment of U.S. Patent 6,699,194 entitled "Signal Processing Apparatus and Method" ("the '194 patent") which the United States Patent and Trademark Office lawfully and duly issued on March 2, 2004. A true and correct copy of the '194 patent is attached hereto as Exhibit 7.

ANSWER: Philips admits that on its face U.S. Patent No. 6,699,194 ("the '194 patent) is entitled

"Signal Processing Apparatus and Method" and that on its face it bears an issue date of March 2,

2004. Otherwise, Philips denies the remaining allegations in Paragraph 13.

14.     Masimo is the owner by assignment of U.S. Patent 6,745,060 entitled "Signal Processing Apparatus" ("the '060 patent") which the United States Patent and Trademark Office lawfully and duly issued on June 1, 2004. A true and correct copy of the '060 patent is attached hereto as Exhibit 8.

ANSWER: Philips admits that on its face U.S. Patent No. 6,745,060 ("the '060 patent") is

entitled "Signal Processing Apparatus" and that on its face it bears an issue date of June 1, 2004.

Otherwise, Philips denies the remaining allegations in Paragraph 14.

15.     Masimo is the owner by assignment of U.S. Patent 6,770,028 entitled "Dual-Mode Pulse Oximeter" ("the '028 patent") which the United States Patent and

Trademark Office lawfully and duly issued on August 3, 2004. A true and correct copy of the '028 patent is attached hereto as Exhibit 9.

ANSWER: Philips admits that on its face U.S. Patent No. 6,770,028 ("the '028 patent") is entitled "Dual-Mode Pulse Oximeter" and that on its face it bears an issue date of August 3, 2004. Otherwise, Philips denies the remaining allegations in Paragraph 15.

16.    Masimo is the owner by assignment of U.S. Patent 7,215,984 entitled "Signal Processing Apparatus" ("the '984 patent") which the United States Patent and Trademark Office lawfully and duly issued on May 8, 2007. A true and correct copy of the '984 patent is attached hereto as Exhibit 10.

ANSWER: Philips admits that on its face U.S. Patent No. 7,215,984 ("the '984 patent") is entitled "Signal Processing Apparatus" and that on its face it bears an issue date of May 8, 2007. Otherwise, Philips denies the remaining allegations in Paragraph 16.

17.    Masimo is the owner by assignment of U.S. Patent 7,489,958 entitled "Signal Processing Apparatus and Method" ("the '958 patent") which the United States Patent and Trademark Office lawfully and duly issued on February 10, 2009. A true and correct copy of the '958 patent is attached hereto as Exhibit 11.

ANSWER: Philips admits that on its face U.S. Patent No. 7,489,958 ("the '958 patent") is entitled "Signal Processing Apparatus and Method" and that on its face it bears an issue date of February 10, 2009. Otherwise, Philips denies the remaining allegations in Paragraph 17.

18.    Masimo is the owner by assignment of U.S. Patent 7,499,741 entitled "Signal Processing Apparatus and Method" ("the '741 patent") which the United States Patent and Trademark Office lawfully and duly issued on March 3, 2009. A true and correct copy of the '741 patent is attached hereto as Exhibit 12.

ANSWER: Philips admits that on its face U.S. Patent No. 7,499,741 ("the '741 patent") is entitled "Signal Processing Apparatus and Method" and that on its face it bears an issue date of March 3, 2009. Otherwise, Philips denies the remaining allegations in Paragraph 18.

19.    Masimo is the owner by assignment of U.S. Patent 7,509,154 entitled "Signal Processing Apparatus" ("the '154 patent") which the United States Patent and Trademark Office lawfully and duly issued on March 24, 2009. A true and correct copy of the '154 patent is attached hereto as Exhibit 13.

ANSWER: Philips admits that on its face U.S. Patent No. 7,509,154 ("the '154 patent") is entitled "Signal Processing Apparatus" and that on its face it bears an issue date of March 24, 2009. Otherwise, Philips denies the remaining allegations in Paragraph 19.

20.     Masimo is the owner by assignment of U.S. Patent 7,530,949 entitled "Dual-Mode Pulse Oximeter" ("the '949 patent") which the United States Patent and Trademark Office lawfully and duly issued on May 12, 2009. A true and correct copy of the '949 patent is attached hereto as Exhibit 14.

ANSWER: Philips admits that on its face U.S. Patent No. 7,530,949 ("the '949 patent") is entitled "Dual-Mode Pulse Oximeter" and that on its face it bears an issue date of May 12, 2009. Otherwise, Philips denies the remaining allegations in Paragraph 20.

## IV.  DEFENDANTS' ACTIVITIES

21.     Upon information and belief, Philips has made, used, offered to sell, and/or sold within the United States, and /or has imported into the United States, products including at least pulse oximeters incorporating a technology Philips calls "Fourier Artifact Suppression Technology" ("FAST-Sp02") such as Philips' IntelliVue line of patient monitors, including, without limitation, Philips MP20/30, MP40/50, and MP60/70/80/90 monitors and Philips MMS X2 transport monitors.

ANSWER: Philips admits that it has made, used, offered to sell, or sold in the United States products incorporating Fourier Artifact Suppression Technology ("FAST"). Philips admits that it has made, used, offered to sell, or sold in the United States the MP20, MP30, MP40, MP50, MP60, MP70, and MP90 monitors and the MMS X2 transport monitor. Otherwise, Philips denies the remaining allegations in Paragraph 21.

22.     Upon further information and belief, Philips has made, used, offered to sell, and/or sold within the United States, and/or has imported into the United States, products including at least the Philips MMS X2 transport monitors combined with Philips' IntelliVue line of patient monitors, including at least the Philips MP20/30, MP40/50, and MP60/70/80/90 monitors.

ANSWER: Philips admits that it has made, used, offered to sell, or sold in the United States the MMS X2 transport monitor and the MP20, MP30, MP40, MP50, MP60, MP70, and MP90 patient monitors. Otherwise, Philips denies the remaining allegations in Paragraph 22.

## V.  FIRST CLAIM FOR RELIEF (THE '272 PATENT)

23.    Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 22.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-22.

24.    Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '272 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 24.

25.    Masimo has notified Philips of the existence of the '272 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the

'272 patent, at least by virtue of the filing of this lawsuit.

26.    Upon information and belief, Philips' infringement of the '272 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 26.

27.    As a consequence of Philips' patent infringement of the '272 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 27.

28.    Upon information and belief, unless enjoined, Philips and/or others acting on behalf of Philips, will continue their infringing acts thereby causing additional inrreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 28.

## VI.  SECOND CLAIM FOR RELIEF (THE '952 PATENT)

29.    Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 28.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-28.

30.    Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '952 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 30.

31.    Masimo has notified Philips of the existence of the '952 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '952 patent, at least by virtue of the filing of this lawsuit.

32.    Upon information and belief, Philips' infringement of the '952 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 32.

33.    As a consequence of Philips' patent infringement of the '952 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 33.

34.    Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 34.

## VII.  THIRD CLAIM FOR RELIEF (THE '850 PATENT)

35.    Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 34.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-34.

36.    Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '850 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 36.

37.    Masimo has notified Philips of the existence of the '850 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '850 patent, at least by virtue of the filing of this lawsuit.

38.   Upon information and belief, Philips' infringement of the '850 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 38.

39.   As a consequence of Philips' patent infringement of the '850 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 39.

40.   Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 40.

## VIII.  FOURTH CLAIM FOR RELIEF (THE '222 PATENT)

41.   Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 40.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-40

42.   Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '222 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 42.

43.   Masimo has notified Philips of the existence of the '222 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '222

patent, at least by virtue of the filing of this lawsuit.

44.   Upon information and belief, Philips' infringement of the '222 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 44.

45.   As a consequence of Philips' patent infringement of the '222 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 45.

46. Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 46.

## IX.  FIFTH CLAIM FOR. RELIEF (THE '065 PATENT)

47. Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 46.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-46.

48. Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '065 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 48.

49. Masimo has notified Philips of the existence of the '065 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '065

patent, at least by virtue of the filing of this lawsuit.

50. Upon information and belief, Philips' infringement of the '065 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 50.

51. As a consequence of Philips' patent infringement of the '065 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 51.

52. Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 52.

## X. SIXTH CLAIM FOR RELIEF (THE '917 PATENT)

53.   Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 52.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-52,

54.   Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '917 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 54.

55.   Masimo has notified Philips of the existence of the '917 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '917 patent, at least by virtue of the filing of this lawsuit.

56.   Upon information and belief, Philips' infringement of the '917 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 56.

57.   As a consequence of Philips' patent infringement of the '917 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 57.

58.   Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 58

## XI.  SEVENTH CLAIM FOR RELIEF (THE '194 PATENT)

59.   Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 58.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-58.

60.   Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '194 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 60.

61.   Masimo has notified Philips of the existence of the '194 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '194 patent, at least by virtue of the filing of this lawsuit.

62.   Upon information and belief, Philips' infringement of the '194 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 62.

63.   As a consequence of Philips' patent infringement of the '194 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 63.

64.   Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 64.

## XII.  EIGHTH CLAIM FOR RELIEF (THE '060 PATENT)

65.   Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 64.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-64.

66.   Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '060 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 66.

67.   Masimo has notified Philips of the existence of the '060 patent.

ANSWER: Philips admits that Masimo has made Philips aware of the existence of the '060 patent, at least by virtue of the filing of this lawsuit.

68.   Upon information and belief, Philips' infringement of the '060 patent has been and continues to be, willful, deliberate, and intentional by continuing its acts of

infringement after being placed on notice of its infringement thus acting in reckless disregard of Masimo's patent rights.

ANSWER: Philips denies each and every allegation contained in Paragraph 68.

69.    As a consequence of Philips' patent infringement of the '060 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 69.

70.    Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 70.

## XIII.  NINTH CLAIM FOR RELIEF (THE '028 PATENT)

71.    Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 70.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-70.

72.    Upon information and belief, at least the Philips MMS X2 transport monitors in combination with Philips MP20/30, MP40/50, and MP60/70/80/90 monitors infringe at least one claim of the '028 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 72.

73.    As a consequence of Philips' patent infringement of the '028 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 73.

74.    Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 74.

## XIV.  TENTH CLAIM FOR RELIEF (THE '984 PATENT)

75.    Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 74.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-74.

76.   Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '984 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 76.

77.   As a consequence of Philips' patent infringement of the '984 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 77.

78.   Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 78.

## XV.   ELEVENTH CLAIM FOR RELIEF (THE '958 PATENT)

79.   Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 78.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-78.

80.   Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '958 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 80.

81.   As a consequence of Philips' patent infringement of the '958 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 81.

82.   Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 82.

## XVI.   TWELFTH CLAIM FOR RELIEF (THE '741 PATENT)

83.   Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 82.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-82.

84.     Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '741 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 84.

85.     As a consequence of Philips' patent infringement of the '741 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 85.

86.     Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 86.

## XVII.  THIRTEENTH CLAIM FOR RELIEF (THE '154 PATENT)

87.     Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 86.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-86.

88.     Upon information and belief, Philips products, including at least products incorporating FAST-Sp02 technology, infringe at least one claim of the '154 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 88.

89.     As a consequence of Philips' patent infringement of the '154 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 89.

90.     Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 90.

## XVIII.  FOURTEENTH CLAIM FOR RELIEF (THE '949 PATENT)

91.    Masimo realleges and reincorporates the allegations set forth in Paragraphs 1 through 90.

ANSWER: Philips incorporates herein and realleges its answers to Paragraphs 1-90.

92.    Upon information and belief, at least the Philips MMS X2 transport monitors in combination with Philips MP20/30, MP40/50, and MP60/70/80/90 monitors infringe at least one claim of the '949 patent under 35 U.S.C. § 271(a), (b), or (c).

ANSWER: Philips denies each and every allegation contained in Paragraph 92.

93.    As a consequence of Philips' patent infringement of the '949 patent, Masimo has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial.

ANSWER: Philips denies each and every allegation contained in Paragraph 93.

94.    Upon information and belief, unless enjoined, Philips, and/or others acting on behalf of Philips, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

ANSWER: Philips denies each and every allegation contained in Paragraph 94.

## XV.  PRAYER FOR JUDGMENT AND RELIEF

95.    Philips denies that Masimo is entitled to either the requested relief or any other or further relief.

## DEFENSES

Philips hereby asserts the following defenses without undertaking or otherwise shifting any applicable burdens of proof. Philips reserves the right to assert additional defenses, as warranted by facts revealed through investigation and discovery.

## FIRST DEFENSE – FAILURE TO STATE A CLAIM

96.    Masimo's Complaint fails to state a claim on which relief can be granted.

## SECOND DEFENSE – NON-INFRINGEMENT

97.    Philips does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '272, '952, '850, '222, '065,

'917, '194, '060, '028, '984, '958, '741, '154, or '949 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

### THIRD DEFENSE – INVALIDITY

98.     The '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents are invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

### FOURTH DEFENSE – PROSECUTION HISTORY ESTOPPEL

99.     By reason of the proceedings in PTO during the prosecution of the applications that resulted in issuance of the '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents, as shown by the prosecution history thereof, Masimo is estopped from maintaining that any claim of those patents covers any of Philips' products.

### FIFTH DEFENSE – WAIVER, LACHES and ESTOPPEL

100.     Masimo's claims are barred by the doctrines of waiver, equitable estoppel, and/or laches.

### SIXTH DEFENSE – FAILURE TO MARK

101.     To the extent Masimo has failed to comply with the notice requirements of 35 U.S.C. § 287, Masimo is barred from all monetary relief for acts that occurred prior to Masimo providing actual notice to Philips.

### SEVENTH DEFENSE – LIMITATION OF DAMAGES

102.     Pursuant to 35 U.S.C. § 286, Masimo is barred from recovering any damages for acts that occurred more than six years before it filed the complaint in this action.

## EIGHTH DEFENSE – NON-ENTITLEMENT TO COSTS

103.     Masimo is not entitled to any costs in this lawsuit because of its failure to comply with 35 U.S.C. § 288.

## NINTH DEFENSE – UNCLEAN HANDS

104.     Masimo is not entitled to any relief in this action because it has come to this Court with unclean hands.

## TENTH DEFENSE — PATENT MISUSE

105.     Philips hereby incorporates by reference the allegations contained in Paragraphs 110-445 below.

106.     Masimo has engaged in a systematic campaign to broaden the scope of its patent rights with anticompetitive effect. As a result, Masimo has misused the '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents, and is barred from asserting them against Philips under the equitable doctrine of patent misuse.

## ELEVENTH DEFENSE – PROSECUTION LACHES

107.     The '154 patent is unenforceable due to patent prosecution laches in light of Masimo's unreasonable delay in seeking the claims of the '154 patent and the prejudice suffered by Philips because of this delay.

## TWELFTH DEFENSE – IMPLIED LICENSE

108.     Masimo granted to Philips an implied license to make, use, import, offer for sale, and sell products covered by the '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents.

### THIRTEENTH DEFENSE - UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT

109.     For the reasons set forth in greater detail below in Philips Electronics' Counterclaims 43 and 44 (paragraphs 382-445, which are incorporated by reference here), upon information and belief, the '272 Patent, '850 Patent, '222 Patent, '917 Patent, '060 Patent, '060 Patent, '984 Patent, '984 Patent, '958 Patent, '741 Patent and '154 Patent are each unenforceable as a result of inequitable conduct before the PTO during reexamination proceedings of the '984 patent.  Specifically, upon information and belief, John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani failed to comply with their duty of candor and good faith before the PTO by knowingly and deliberately failing to disclose information material to the patentability of the asserted claims of the '984 patent during the reexamination proceeding and failing to correct the patent examiner's erroneous interpretation of the claims during the reexamination proceeding, and but for such failures the asserted claims of the '984 patent would not have been confirmed during the reexamination proceeding.  Additionally, upon information and belief, John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani failed to comply with their duty of candor and good faith before the PTO by engaging in affirmative egregious misconduct for failing to correct the patent examiner's erroneous interpretation of the asserted claims of the '984 Patent during the reexamination proceeding after Philips informed Masimo and the Court of the patent examiner's erroneous interpretation of the asserted claims of the '984 Patent.  Upon information and belief, the failures by Messrs. Grover, Jensen, Kesler, and Kiani were done so with the intent to deceive the PTO into confirming the asserted claims of the '984 patent during the reexamination. As such, the '984 Patent, and each asserted patent related to the '984 Patent, is unenforceable.

## COUNTERCLAIMS

Philips Electronics North America Corporation ("Philips Electronics") alleges the following counterclaims against Masimo:

### JURISDICTION AND VENUE

110.     Philips Electronics asserts violations of federal antitrust law, specifically Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and Section 3 of the Clayton Act, 15 U.S.C. § 14. Philips Electronics seeks monetary and equitable relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26.

111.     Philips Electronics asserts counterclaims under the Federal Declaratory Judgment Act, 28 U.S.C. § 2, seeking declaratory judgments under the patent laws of the United States, United States Code Title 35, that the patents asserted by Masimo are invalid, unenforceable, and not infringed.

112.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. § 1, et seq.

113.     Masimo has submitted to the personal jurisdiction of this Court.

114.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because this suit was filed in this district by Masimo.

### THE PARTIES

115.     Philips Electronics is a Delaware corporation having its principal place of business at 3000 Minuteman Road, Andover, Massachusetts 01810.

116.     Masimo purports to be a Delaware corporation with its principal place of business at 40 Parker, Irvine, California 92618.

## ALLEGATIONS COMMON TO ANTITRUST COUNTERCLAIMS

### A.        Background of Pulse Oximetry

117.        Pulse oximetry involves the noninvasive measurement of oxygen levels in a patient's blood. This is accomplished by using a sensor that typically fits onto the finger of an adult patient or the foot of an infant patient. Sensors may also be used on other parts of the body, including the ear and the forehead, depending on the needs of individual patients. The sensor contains two light emitting diodes ("LEDs") — one red and one infrared. The LEDs emit light through the patient's tissue. A receptor opposite the LEDs detects the amount of light that is not absorbed by the blood and tissue. This information is transmitted from the sensor through a patient cable and into a pulse oximeter. Because oxygenated blood absorbs light differently than deoxygenated blood, a pulse oximeter is able to use various algorithms to calculate oxygenation based on light absorption. The pulse oximeter may also be employed to determine additional patient parameters, such as pulse rate. On information and belief, pulse oximetry was invented in the 1970s and introduced into the United States healthcare markets during the early 1980s, long before Masimo's existence.

118.        Pulse oximeters are comprised of electronic circuitry and integrated software. They are reusable, durable pieces of equipment that typically function for up to 10 years before needing replacement. Pulse oximeters are typically sold as either standalone devices or components of a multi-parameter patient monitoring system ("MPPM").

119.        In contrast to pulse oximeters, patient cables and sensors are commoditized products that must be replaced frequently. Hospitals generally purchase either disposable sensors, which must be replaced after each use, or reusable sensors, which typically are replaced every 1 — 2 years. Likewise, patient cables typically have a limited useful life of about a year.

### B.        The Relevant Markets

120.        There is a relevant product market for pulse oximeters. The relevant geographic market for this product is the United States. The pulse oximeter market contains several relevant sub-markets — a market for stand-alone pulse oximeters, a market for pulse oximeters incorporated into MPPMs ("OEM pulse oximeters"), and an underlying technology market.

121.        There is a second relevant product market for pulse oximetry sensors. Absent anticompetitive constraints, customers would make buying decisions for sensors independently from decisions to purchase pulse oximeters. The relevant geographic market for this product is the United States.

122.        There is a third relevant product market for patient cables used to connect sensors to pulse oximeters. Absent anticompetitive constraints, customers would make buying decisions for patient cables independently from decisions to purchase pulse oximeters. The relevant geographic market for this product is the United States.

123.        Masimo markets pulse oximeters under the brand name "Masimo SET." While Masimo manufactures some of its own pulse oximeters, it also has licensed its technology to third parties. These third parties, including Nellcor, manufacture pulse oximeters pursuant to their agreements with Masimo. On information and belief, Nellcor is currently the largest manufacturer of Masimo-licensed pulse oximeters, which are sold under the brand name "Oximax." In addition, Masimo sells OEM pulse oximeters for incorporation into MPPMs. Philips incorporates a Masimo-branded SET pulse oximeter into its MPPMs and also manufactures a Philips-branded pulse oximeter, known as "Philips FAST."

124.        The relevant market for pulse oximeters (including standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market) is highly concentrated. On

information and belief, Masimo currently controls over 80% of the market by manufacturing its own products and by directing the competitive activities of its licensees and distributors. The market for pulse oximeters is also subject to high barriers to entry, including the cost of developing intellectual property and defending against lawsuits.

125.     The markets for sensors and cables are moderately concentrated with lower barriers to entry due to general commoditization of both products and relatively low technical hurdles to production.

126.     Sensor and patient cable sales account for significantly more revenue than sales of pulse oximeters in any given year. For companies like Masimo, the primary driver for sales of sensors and patient cables is an installed base of pulse oximeters. On information and belief, more than 80% of Masimo's revenues are derived from forcing Masimo pulse oximeter customers to purchase Masimo sensors and cables.

### C.     Masimo's Market Power

127.     Masimo has engaged in a systematic effort to monopolize pulse oximetry in the United States.

128.     Masimo currently wields market power in the sale of pulse oximeters. It has the ability to control price and exclude competition. Masimo's market power extends equally into the corresponding submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market. Masimo's market power is maintained through the coordinated direction of its own branded products and its licensed pulse oximeter products.

129.     Masimo's market power is derived in part from the abuse of its technology position. Masimo has entered into numerous contracts to restrain competition for the sale of pulse oximeter technology by third parties. Masimo exerts control over the market by dictating

the terms under which licensees or distributors can compete using their own branded pulse oximeters or Masinao-branded pulse oximeters. Through its agreements, Masimo has directed licensees and distributors to exclude competition in the pulse oximeter, sensor, and patient cable markets. Masimo extracts the anticompetitive profits from these exclusionary practices by recovering royalties for the sale of both patented and unpatented goods.

130.    Through the combination of its direct pulse oximeter sales and its control over third-party pulse oximeter manufacturers, Masimo has become the single dominant firm in the market for pulse oximeters, including the submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market. Masimo's dominant market position empowers it to control pricing and exclude competition. As detailed below, Masimo has created and maintained its dominant position through various anticompetitive practices. Masimo has further exploited its dominant position in the market for pulse oximeters to capture additional profits from the relevant markets for patient cables and sensors.

**D.    Exclusionary Agreements with Competitors and Distributors**

131.    On information and belief, Masimo has forced many of its current and former competitors to enter into exclusive dealing arrangements under threat of onerous patent litigation. These agreements require the licensee or distributor to produce and sell only Masimo-branded pulse oximeters, patient cables, or sensors. These agreements also expressly prohibit the sale of non-Masimo pulse oximeters, patient cables, or sensors, even if the non-Masimo products would not infringe any of Masimo's patents.

132.    Masimo's licensing and distribution agreements have foreclosed significant commerce in the market for pulse oximeters by preventing the sale or introduction of competing products. In addition, the licensing and distribution agreements have stifled the incentive to

innovate, as a large percentage of distributors would be unable to offer a competing non-Masimo pulse oximeter even if it could be sold at a lower price or with superior features. The licensing and distribution agreements also preclude the sale of competing cables and sensors for use with Masimo pulse oximeters, even though these are commodity products for which Masimo would otherwise face competition from a variety of branded and generic products.

133.    Masimo has also entered into agreements prohibiting the promotion of competing products, regardless of whether such products might offer better quality or more competitive prices to customers. In some cases Masimo has required its licensees and distributors to discontinue sales of competing products.

134.    Masimo has also required licensees and distributors to agree not to offer any competing pulse oximeters at a lower price than Masimo's SET pulse oximeter, even if customers would benefit from differentiated pricing.

135.    Masimo's exclusionary licensing and distribution provisions are specifically designed and intended to stabilize the market and exclude competition.

136.    According to public statements, Masimo currently has licensing or distribution agreements with 53 OEM partners, which account for over 90% of the worldwide shipments of OEM pulse oximeters. On information and belief, Masimo systematically requires its OEM partners to agree to provisions designed to exclude competition, such as those outlined in Paragraphs 130 through 133 herein. Such provisions can be found in current and former agreements with Respironics, Medical Data Electronics, Invivo, Philips Electronics, and others.

137.    Consumers have been harmed by the reduction in competition as the result of Masimo's exclusionary practices. The provisions have reduced customer choice, restrained output, and raised prices.

### E.        Exclusionary Technological Interface

138.    Masimo pulse oximeters and pulse oximetry sensors employ a proprietary interface called "ProCal." The ProCal interface is comprised of a patented resistor resident in Masimo's sensor, together with a software program in the pulse oximeter that detects the presence of the resistor once upon insertion of the cable and again prior to rendering a measurement. Masimo's pulse oximeters are programmed not to function unless they detect the presence of a Masimo-branded sensor containing ProCal.

139.    Masimo's ProCal resistor has the effect of excluding competition from both the sensor and patient cable markets.

140.    On information and belief, there is no technical need to nest a ProCal resistor in parallel with the LEDs. The purpose of the resistor is to create a technological tie between the Masimo pulse oximeter and Masimo sensors and patient cables. As a result of ProCal, Masimo sensors are the only sensors that will function with Masimo pulse oximeters. Any competing sensor is rejected.

141.    But for Masimo's tying, non-Masimo sensors and patient cables would function with a Masimo pulse oximeter, just as non-Masimo sensors and patient cables routinely function with non-Masimo pulse oximeters, including pulse oximeters manufactured by Philips.

142.    On information and belief, Masimo has designed ProCal to "lock in" customers to Masimo products with clear anticompetitive effect. Masimo's ProCal tie has the effect of increasing switching costs and raising barriers to entry for competitors. Masimo has employed ProCal with the specific intent to foreclose competition and, among other things, to limit the ability and opportunity of customers to switch to competing pulse oximetry products, including those offered by Philips.

143.     On information and belief, Masimo requires its licensee Nellcor to use a similar method of tying with its Oximax pulse oximeters. In 2006, Masimo prevailed in a lawsuit alleging that Nellcor pulse oximeters infringed certain claims of Masimo patents. Under the terms of a settlement agreement, Nellcor is permitted to continue its sale of an allegedly infringing pulse oximeter under the express condition that it pay a royalty on the revenues derived from all Nellcor oximetry products, including oximeters, sensors, and patient cables that were not subject to the infringement allegations. The agreement contemplates that Nellcor will use a "lock and key" mechanism to ensure that Nellcor ties its pulse oximeters to aftermarket sales of sensors and patient cables.

144.     Masimo further enforces the Nellcor tying scheme through a covenant not to sue that is expressly nullified if Nellcor manufactures pulse oximeters that are compatible with any third-party (i.e., non-Nellcor) sensors. Masimo uses this provision to exclude third-party sensor and cable manufacturers and to collect profits on sales of tied sensors and patient cables.

145.     Nellcor's sensors are tied to its Oximax oximeters through a technological "lock and key" protocol known as DigiCal. But for this tying arrangement, non-Nellcor sensors and patient cables would function with a Nellcor pulse oximeter, just as non-Nellcor sensors and patient cables routinely function with non-Nellcor pulse oximeters, including pulse oximeters manufactured by Philips.

146.     On information and belief, Masimo has required Nellcor to use the DigiCal interface to "lock-in" customers with Nellcor products. This requirement directly benefits Masimo by artificially increasing sales of Nellcor sensors and patient cables, on which Masimo collects a high royalty based on its agreement with Nellcor. Masimo has required the use of DigiCal with the specific intent to foreclose competition and, among other things, to limit the

ability and opportunity of customers to switch to competing pulse oximetry products, including those offered by Philips.

147.     By forcing Nellcor to tie its sensors to its pulse oximeters, Masimo is able to extract anticompetitive profits from Nellcor's substantial installed base of pulse oximeter customers. By collecting anticompetitive profits from all oximetry products, including current and future products that do not infringe Masimo's patents, Masimo effectively forecloses Nellcor from any effort to invent around Masimo's technology.

148.     Philips Electronics is directly harmed by these tying arrangements. But for these arrangements, Philips Electronics could offer its own sensors and cables or competitive third-party sensors and cables to customers.

**F.        Exclusionary Pricing and Bundling Practices**

149.     Sensors and patient cables are consumables that must be frequently replaced, often after a single use. As a result, hospitals must keep a stock of sensors and patient cables on hand at all times.

150.     Masimo has engaged in exclusionary pricing and bundling practices designed to lock hospitals into Masimo pulse oximetry products. On information and belief, Masimo induces hospitals to convert to Masimo SET by offering pulse oximeters at no cost in exchange for a commitment to purchase a minimum number of sensors over the course of a long-term contract, typically five to ten years. After the long-term contract expires, Masimo continues to lock in the customer through its tying of cables and sensors to its oximeters.

151.     On information and belief, Masimo's anticompetitive pricing and bundling practices are designed to shift hospital capital costs to consumers and third-party payers, who are charged an additional one to two dollars over the regular price of the consumable sensors.

152.     Once a hospital standardizes on Masimo oximetry products, additional purchases of Masimo oximeters and sensors are mutually reinforcing. A hospital using Masimo oximeters must maintain a large stock of Masimo sensors and cables due to technological ties that prohibit compatibility with competing sensors. This stock creates a strong economic incentive for the hospital to purchase only Masimo pulse oximeters. To do otherwise would require the hospital to maintain separate stocks of sensors and patient cables for its Masimo and non-Masimo pulse oximeters, increasing overall costs.

153.     Masimo's requirement that Nellcor tie its sensors to its oximeters similarly creates a strong economic incentive for Nellcor's hospital customers to purchase only Nellcor pulse oximeters. To do otherwise would require the hospital to maintain separate stocks of sensors and patient cables for its Nellcor and non-Nellcor pulse oximeters, increasing overall costs.

154.     Masimo's conduct has harmed competition. Its anticompetitive pricing and bundling practices preclude realistic future competition by locking up prospective customers and raising barriers to entry. Masimo's scheme is designed to preserve market power by depriving customers of product choice and competitive prices in pulse oximetry.

155.     Philips Electronics is directly harmed by Masimo's pricing, bundling practices, and tying schemes. But for Masimo's conduct, hospitals would be free to choose Philips pulse oximetry products. As a result of Masimo's conduct, Philips Electronics has lost sales of FAST oximeters and has been precluded from selling its own sensors and patient cables to hospitals using Masimo SET or Nellcor Oximax.

## COUNTERCLAIM 1: MONOPOLIZATION
## IN VIOLATION OF THE SHERMAN ACT

156.     Philips Electronics repeats and realleges Paragraphs 110-155 above as if fully set forth herein.

157.     Masimo has monopoly power in the relevant market for pulse oximeters in the United States. Masimo also has monopoly power in the relevant submarkets for stand-alone pulse oximeters, OEM pulse oximeters, and the underlying technology market. Through its exclusionary conduct, Masimo has unlawfully acquired and maintained its monopoly power in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

158.     Masimo could not maintain its substantial monopoly power in the pulse oximeter market, including the relevant submarkets for stand-alone pulse oximeters, OEM pulse oximeters, and the underlying technology market, but for its tying arrangements, exclusionary agreements, and other anticompetitive conduct. Thus, its monopolization is not due to growth or development as a consequence of a superior product, business acumen, or historic accident.

159.     Masimo's monopolization has injured consumers and harmed competition.

160.     There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

161.     As a direct and proximate result of Masimo's acts of monopolization and monopoly maintenance, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 2: ATTEMPTED MONOPOLIZATION
## IN VIOLATION OF THE SHERMAN ACT

162.     Philips Electronics repeats and realleges Paragraphs 110-161 above as if fully set forth herein.

163.     Through its exclusionary conduct, Masimo has unlawfully attempted to acquire a monopoly in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, in the relevant market for pulse oximeters in the United States, including the relevant submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market.

164.     Masimo's conduct evidences a specific intent to acquire and maintain monopoly power in the relevant market for pulse oximeters, including the corresponding submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market.

165.     Masimo's exclusionary conduct creates a dangerous probability that Masimo will obtain monopoly power in the relevant markets and submarkets, including the power to unilaterally exclude competition, eliminate innovation, and/or raise prices.

166.     Masimo's attempted monopolization has injured consumers and harmed competition.

167.     There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

168.     As a direct and proximate result of Masimo's attempted monopolization, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 3: ATTEMPTED MONOPOLIZATION
## IN VIOLATION OF THE SHERMAN ACT

169.     Philips Electronics repeats and realleges Paragraphs 110-168 above as if fully set forth herein.

170.     Through its exclusionary technological ties and contract arrangements, Masimo has unlawfully attempted to acquire a monopoly in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, in the relevant markets for sensors and patient cables.

171.     Masimo has developed and used the ProCal interface with the specific intent of monopolizing the markets for sensors and patient cables. Because of Masimo's significant market power in the market for pulse oximeters, including the corresponding submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market, there is a dangerous probability that Masimo will be able to leverage this position to gain monopoly power in the markets for sensors and patient cables.

172.     Masimo's attempted monopolization has injured consumers and harmed competition.

173.     There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

174.     As a direct and proximate result of Masimo's attempted monopolization, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 4: CONSPIRACY TO MONOPOLIZE
## IN VIOLATION OF THE SHERMAN ACT

175.     Philips Electronics repeats and realleges Paragraphs 110-174 above as if fully set forth herein.

176.     Masimo's 2006 Settlement Agreement with Nellcor constitutes an illegal conspiracy to monopolize the market for pulse oximeters in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

177.     Masimo's 2006 Settlement Agreement with Nellcor was entered into with specific intent to create and maintain Masimo's monopoly power in the market for pulse oximeters, including the corresponding submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market. In exchange for cooperation, Masimo granted Nellcor the right to continue selling an infringing pulse oximeter and to collect anticompetitive profits from tied sensor and cable sales.

178.     Masimo has taken overt acts in furtherance of this conspiracy, including tying sensors and patient cables to pulse oximeters, forcing distributers to accept exclusionary contractual    terms, and boycotting manufacturers of third-party sensors and patient cables through the use of the ProCal and DigiCal technologies.

179.     Masimo's Settlement Agreement with Nellcor has injured consumers and harmed competition.

180.     There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

181.     As a direct and proximate result of Masimo's exclusionary and anticompetitive acts, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse

oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 5: TYING IN VIOLATION OF THE SHERMAN ACT AND THE CLAYTON ACT

182. Philips Electronics repeats and realleges Paragraphs 110-181 above as if fully set forth herein.

183. Masimo's anticompetitive tying of pulse oximeters to patient cables and sensors violates Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1-2, and Section 3 of the Clayton Act, 15 U.S.C. § 14. This conduct has suppressed competition in the relevant markets for sensors and patient cables.

184. Pulse oximeters, patient cables, and sensors used in pulse oximetry are separate relevant products.

185. Masimo controls, either directly or through its control of Nellcor, approximately 80% of the market for pulse oximeters. Masimo's control extends equally into the corresponding submarkets for standalone pulse oximeters, OEM pulse oximeters, and the underlying technology market. This dominant position allows Masimo to control prices and exclude competition.

186. Masimo has forced customers to purchase Masimo sensors by conditioning the sale of Masimo pulse oximeters on the sale of Masimo sensors. It has done so through a technological tie, which makes non-Masimo sensors incompatible with Masimo pulse oximeters. It has also enforced the unlawful tie through contractual provisions with distributors.

187. Masimo has forced customers to purchase Masimo patient cables by conditioning the sale of Masimo pulse oximeters on the sale of Masimo patient cables. It has enforced the unlawful tie through contractual provisions with distributors.

188.    Through its license agreement, Masimo has caused Nellcor to force customers to purchase Nellcor sensors and patient cables by conditioning the sale of Nellcor pulse oximeters on the sale of Nellcor sensors. Masimo has threatened to sue Nellcor for infringement of its pulse oximeter patents if it allows competition from third-party sensor manufacturers.

189.    Absent Masimo's illegal conduct, consumers would purchase sensors and patient cables from third-party suppliers, including Philips. Consumers have been harmed by Masimo's tying because they have been forced to pay higher prices for sensors and patient cables and have been unable to choose the sensors and patient cables that best match their individual needs.

190.    Masimo's tying scheme has resulted in foreclosure of a substantial amount of commerce in the markets for sensors and patient cables. By forcing customers to purchase particular sensors and patient cables, Masimo is likely to achieve market power in those markets.

191.    Masimo's tying scheme has injured consumers and harmed competition.

192.    There are no legitimate business justifications for Masimo's requirement that its pulse oximeters be used only with Masimo-branded sensors and cables, and no purported justification   would outweigh the considerable harm to competition. Similarly, there is no justification for Masimo to cause Nellcor to require that its pulse oximeters be used only with Nellcor-branded sensors, and no purported justification would outweigh the considerable harm to competition.

193.    As a direct and proximate result of Masimo's unlawful tying, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 6: GROUP BOYCOTT
## IN VIOLATION OF THE SHERMAN ACT

194.     Philips Electronics repeats and realleges Paragraphs 110-193 above as if fully set forth herein.

195.     Masimo's exclusion of third parties constitutes a group boycott or concerted refusal to deal, and is illegal per se under Section 1 of the Sherman Act. 15 U.S.C. § 1.

196.     Masimo possesses a dominant position in the relevant market for pulse oximeters, as well as the corresponding submarkets for stand-alone pulse oximeters, OEM pulse oximeters, and the underlying technology market.

197.     Through its agreements with licensees and distributors, Masimo has excluded third-party patient cable and sensor manufacturers from the markets for these products by prohibiting licensees and distributors from selling or marketing third-party sensors or patient cables for use with Masimo SET.

198.     Masimo has further enforced this exclusive scheme by entering into a contract with Nellcor whereby Nellcor must configure its products to exclude third-party sensor and patient cable manufacturers.

199.     Because of Masimo's contracts referenced herein, third-party sensor and patient cable manufacturers are excluded from approximately 80% of the market.

200.     Masimo's contracts referenced herein have injured consumers and harmed competition.

201.     There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

202.     As a direct and proximate result of Masimo's exclusionary and anticompetitive acts, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

### COUNTERCLAIM 7: AGREEMENT IN RESTRAINT OF TRADE IN VIOLATION OF THE SHERMAN ACT

203.     Philips Electronics repeats and realleges Paragraphs 110-202 above as if fully set forth herein.

204.     As alleged above, Masimo has entered into exclusionary agreements with Nellcor, OEMs, distributors, and hospitals that have unreasonably restrained trade and competition in the relevant markets for oximeters, patient cables, and sensors in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

205.     Masimo's exclusionary agreements affect a substantial amount of commerce in the relevant markets for oximeters, patient cables, and sensors.

206.     Masimo's exclusionary agreements have injured consumers and harmed competition.

207.     There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

208.     As a direct and proximate result of Masimo's exclusionary and anticompetitive acts, Philips Electronics has suffered antitrust injury and damages, including lost sales of pulse oximeters, sensors, and patient cables. Philips Electronics will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 8: DECLARATORY JUDGMENT OF NON INFRINGEMENT OF THE '272 PATENT

209.     Philips Electronics repeats and realleges Paragraphs 110-208 above as if fully set forth herein.

210.     Masimo alleges in its Complaint that it is the owner of the '272 patent, entitled "Signal Processing Apparatus," which bears an issue date of May 27, 1997.

211.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '272 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '272 patent.

212.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '272 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

213.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '272 patent.

## COUNTERCLAIM 9: DECLARATORY JUDGMENT OF INVALIDITY OF THE '272 PATENT

214.     Philips Electronics repeats and realleges Paragraphs 110-213 above as if fully set forth herein.

215.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '272 patent.

216.     Each claim of the '272 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

217.     Philips Electronics requests declaratory judgment that each claim of the '272 patent is invalid.

## COUNTERCLAIM 10: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '952 PATENT

218.     Philips Electronics repeats and realleges Paragraphs 110-217 above as if fully set forth herein.

219.     Masimo alleges in its Complaint that it is the owner of the '952 patent, entitled "Signal Processing Apparatus and Method," which bears an issue date of December 14, 1999.

220.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '952 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '952 patent.

221.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '952 patent under any theory, including literal infringement and infringement under the doctrine of equivalents_

222.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '952 patent.

## COUNTERCLAIM 11: DECLARATORY JUDGMENT OF INVALIDITY OF THE '952 PATENT

223.     Philips Electronics repeats and realleges Paragraphs 110-222 above as if fully set forth herein.

224.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '952 patent.

225.     Each claim of the '952 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

226.     Philips Electronics requests declaratory judgment that each claim of the '952 patent is invalid.

## COUNTERCLAIM 12: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '850 PATENT

227.     Philips Electronics repeats and realleges Paragraphs 110-226 above as if fully set forth herein.

228.     Masimo alleges in its Complaint that it is the owner of the '850 patent, entitled "Signal Processing Apparatus," which bears an issue date of December 5, 2000.

229.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '850 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '850 patent.

230.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '850 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

231.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '850 patent.

## COUNTERCLAIM 13: DECLARATORY JUDGMENT OF INVALIDITY OF THE '850 PATENT

232.     Philips Electronics repeats and realleges Paragraphs 110-231 above as if fully set forth herein.

233.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '850 patent.

234.     Each claim of the '850 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

235.     Philips Electronics requests declaratory judgment that each claim of the '850 patent is invalid.

## COUNTERCLAIM 14: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '222 PATENT

236.     Philips Electronics repeats and realleges Paragraphs 110-235 above as if fully set forth herein.

237.     Masimo alleges in its Complaint that it is the owner of the '222 patent, entitled "Signal Processing Apparatus," which bears an issue date of July 17, 2001.

238.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '222 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '222 patent.

239.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '222 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

240.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '222 patent.

## COUNTERCLAIM 15: DECLARATORY JUDGMENT OF INVALIDITY OF THE '222 PATENT

241.     Philips Electronics repeats and realleges Paragraphs 110-240 above as if fully set forth herein.

242.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '222 patent.

243.     Each claim of the '222 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

244.     Philips Electronics requests declaratory judgment that each claim of the '222 patent is invalid.

41

## COUNTERCLAIM 16: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '065 PATENT

245.     Philips Electronics repeats and realleges Paragraphs 110-244 above as if fully set forth herein.

246.     Masimo alleges in its Complaint that it is the owner of the '065 patent, entitled "Stereo Pulse Oximeter," which bears an issue date of December 25, 2001.

247.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '065 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '065 patent.

248.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '065 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

249.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '065 patent.

## COUNTERCLAIM 17: DECLARATORY JUDGMENT OF INVALIDITY OF THE '065 PATENT

250.     Philips Electronics repeats and realleges Paragraphs 110-249 above as if fully set forth herein.

251.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '065 patent.

252.     Each claim of the '065 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 3§§ 101, 102, 103, and 112.

253.     Philips Electronics requests declaratory judgment that each claim of the '065 patent is invalid.

## COUNTERCLAIM 18: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '917 PATENT

254.     Philips Electronics repeats and realleges Paragraphs 110-253 above as if fully set forth herein.

255.     Masimo alleges in its Complaint that it is the owner of the '917 patent, entitled "Signal Processing Apparatus," which bears an issue date of November 18, 2003.

256.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '917 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '917 patent.

257.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '917 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

258.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '917 patent.

## COUNTERCLAIM 19: DECLARATORY JUDGMENT OF INVALIDITY OF THE '917 PATENT

259.     Philips Electronics repeats and realleges Paragraphs 110-258 above as if fully set forth herein.

260.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '917 patent.

261.     Each claim of the '917 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

262.     Philips Electronics requests declaratory judgment that each claim of the '917 patent is invalid.

## COUNTERCLAIM 20: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '194 PATENT

263.     Philips Electronics repeats and realleges Paragraphs 110-262 above as if fully set forth herein.

264.     Masimo alleges in its Complaint that it is the owner of the '194 patent, entitled "Signal Processing Apparatus and Method," which bears an issue date of March 2, 2004.

265.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '194 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '194 patent.

266.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '194 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

267.   Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '194 patent.

## COUNTERCLAIM 21: DECLARATORY JUDGMENT OF INVALIDITY OF THE '194 PATENT

268.     Philips Electronics repeats and realleges Paragraphs 110-267 above as if fully set forth herein.

269.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '194 patent.

270.     Each claim of the '194 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

271.     Philips Electronics requests declaratory judgment that each claim of the '194 patent is invalid.

## COUNTERCLAIM 22: DECLARATORY JUDGMENT OF NON INFRINGEMENT OF THE '060 PATENT

272.     Philips Electronics repeats and realleges Paragraphs 110-271 above as if fully set forth herein.

273.     Masimo alleges in its Complaint that it is the owner of the '060 patent, entitled "Signal Processing Apparatus," which bears an issue date of June 1, 2004.

274.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '060 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '060 patent.

275.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '060 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

276.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '060 patent.

## COUNTERCLAIM 23: DECLARATORY JUDGMENT OF INVALIDITY OF THE '060 PATENT

277.     Philips Electronics repeats and realleges Paragraphs 110-276 above as if fully set forth herein.

278.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '060 patent.

279.     Each claim of the '060 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

280.     Philips Electronics requests declaratory judgment that each claim of the '060 patent is invalid.

## COUNTERCLAIM 24: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '028 PATENT

281.     Philips Electronics repeats and realleges Paragraphs 110-280 above as if fully set forth herein.

282.     Masimo alleges in its Complaint that it is the owner of the '028 patent, entitled "Dual-Mode Pulse Oximeter," which bears an issue date of August 3, 2004.

283.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '028 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '028 patent.

284.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '028 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

285.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '028 patent.

## COUNTERCLAIM 25: DECLARATORY JUDGMENT OF INVALIDITY OF THE '028 PATENT

286.     Philips Electronics repeats and realleges Paragraphs 110-285 above as if fully set forth herein.

287.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '028 patent.

288.     Each claim of the '028 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

289.     Philips Electronics requests declaratory judgment that each claim of the '028 patent is invalid.

**COUNTERCLAIM 26: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '984 PATENT**

290.     Philips Electronics repeats and realleges Paragraphs 110-289 above as if fully set forth herein.

291.     Masimo alleges in its Complaint that it is the owner of the '984 patent, entitled "Signal Processing Apparatus," which bears an issue date of May 8, 2007.

292.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '984 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '984 patent.

293.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '984 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

294.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '984 patent.

**COUNTERCLAIM 27: DECLARATORY JUDGMENT OF INVALIDITY OF THE '984 PATENT**

295.     Philips Electronics repeats and realleges Paragraphs 110-294 above as if fully set forth herein.

296.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '984 patent.

297.     Each claim of the '984 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

298.     Philips Electronics requests declaratory judgment that each claim of the '984 patent is invalid.

**COUNTERCLAIM 28: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '958 PATENT**

299.     Philips Electronics repeats and realleges Paragraphs 110-298 above as if fully set forth herein.

300.     Masimo alleges in its Complaint that it is the owner of the '958 patent, entitled "Signal Processing Apparatus and Method," which bears an issue date of February 10, 2009.

301.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '958 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '958 patent.

302.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '958 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

303.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '958 patent.

**COUNTERCLAIM 29: DECLARATORY JUDGMENT OF INVALIDITY OF THE '958 PATENT**

304.     Philips Electronics repeats and realleges Paragraphs 110-303 above as if fully set forth herein.

305.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '958 patent.

306.     Each claim of the '958 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

307.     Philips Electronics requests declaratory judgment that each claim of the '958 patent is invalid.

## COUNTERCLAIM 30: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '741 PATENT

308.     Philips Electronics repeats and realleges Paragraphs 110-307 above as if fully set forth herein.

309.     Masimo alleges in its Complaint that it is the owner of the '741 patent, entitled "Signal Processing Apparatus and Method," which bears an issue date of March 3, 2009.

310.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '741 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '741 patent.

311.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '741 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

312.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '741 patent.

## COUNTERCLAIM 31: DECLARATORY JUDGMENT OF INVALIDITY OF THE '741 PATENT

313.     Philips Electronics repeats and realleges Paragraphs 110-312 above as if fully set forth herein.

314.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '741 patent.

315.     Each claim of the '741 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

316.     Philips Electronics requests declaratory judgment that each claim of the '741 patent is invalid.

## COUNTERCLAIM 32: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '154 PATENT

317.     Philips Electronics repeats and realleges Paragraphs 110-316 above as if fully set forth herein.

318.     Masimo alleges in its Complaint that it is the owner of the '154 patent, entitled "Signal Processing Apparatus," which bears an issue date of March 24, 2009.

319.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '154 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '154 patent.

320.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '154 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

321.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '154 patent.

## COUNTERCLAIM 33: DECLARATORY JUDGMENT OF INVALIDITY OF THE '154 PATENT

322.     Philips Electronics repeats and realleges Paragraphs 110-321 above as if fully set forth herein.

323.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '154 patent.

324.     Each claim of the '154 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

325.     Philips Electronics requests declaratory judgment that each claim of the '154 patent is invalid.

## COUNTERCLAIM 34: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '949 PATENT

326.     Philips Electronics repeats and realleges Paragraphs 110-325 above as if fully set forth herein.

327.     Masimo alleges in its Complaint that it is the owner of the '949 patent, entitled "Dual-Mode Pulse Oximeter," which bears an issue date of May 12, 2009.

328.     Masimo has sued Philips Electronics in the present action, alleging infringement of the '949 patent. Thus, an immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the alleged infringement of the '949 patent.

329.     Philips Electronics does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '949 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

330.     Philips Electronics requests declaratory judgment that Philips Electronics does not infringe, directly or indirectly, any claim of the '949 patent.

## COUNTERCLAIM 35: DECLARATORY JUDGMENT OF INVALIDITY OF THE '949 PATENT

331.     Philips Electronics repeats and realleges Paragraphs 110-330 above as if fully set forth herein.

332.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the invalidity of the '949 patent.

333.     332.   Each claim of the '949 patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

334.     Philips Electronics requests declaratory judgment that each claim of the '949 patent is invalid.

## COUNTERCLAIM 36: INFRINGEMENT OF THE '165 PATENT

335.     Philips Electronics repeats and realleges Paragraphs 110-334 above as if fully set forth herein.

336.     United States Patent No. 4,867,165 ("the '165 patent"), entitled "Method for Determining the Perfusion" was duly and lawfully issued on September 19, 1989. A true and correct copy of the '165 patent is attached hereto as Exhibit A.

337.     Philips Electronics is the owner of all right, title and interest in the '165 patent, including the right to sue and recover damages for infringement.

338.     Masimo has infringed, directly, by inducement, and/or contributorily, one or more claims of the '165 patent at least by making, using, selling and/or offering to sell in the United States products using Masimo SET technology, including without limitation the Rad-8 monitor, Rad-5 monitor, Rad-5v monitor, Radical-7 monitor, Rad-87 monitor, Rad-57 monitor, PPO+ monitor, Pronto, RadNet, SatShare, MX-1 board, MS-13 board, MS-11 board, MS-7 board, MS 5 board, and MS-3 board.

339.     Upon information and belief, Masimo has had actual notice of the '165 patent and/or constructive notice of the '165 patent.

340.     Upon information and belief, Masimo's infringement of the '165 patent has been, and continues to be, willful.

341.     As a result of Masimo's infringement of the '165 patent, Philips Electronics has been damaged in an amount yet to be determined.

## COUNTERCLAIM 37: INFRINGEMENT OF THE '791 PATENT

342.     Philips Electronics repeats and realleges Paragraphs 110-341 above as if fully set forth herein.

343.     United States Patent No. 5,170,791 ("the '791 patent"), entitled "Method and Apparatus for Calculating the Fetal Heart Rate" was duly and lawfully issued on December 15, 1992. A true and correct copy of the '791 patent is attached hereto as Exhibit B.

344.     Philips Electronics is the owner of all right, title and interest in the '791 patent, including the right to sue and recover damages for infringement.

345.     Masimo has infringed, directly, by inducement, and/or contributorily, one or more claims of the '791 patent at least by making, using, selling and offering to sell in the United States products using Masimo SET technology, including without limitation the Rad-8 monitor, Rad-5 monitor, Rad-5v monitor, Radical-7 monitor, Rad-87 monitor, Rad-57 monitor, PPO+ monitor, Pronto, RadNet, SatShare, MX-1 board, MS-13 board, MS-11 board, MS-7 board, MS 5 board, and MS-3 board.

346.     As a result of Masimo's infringement of the '791 patent, Philips Electronics has been damaged in an amount yet to be determined.

### COUNTERCLAIM 38: INFRINGEMENT OF THE '233 PATENT

347.     Philips Electronics repeats and realleges Paragraphs 110-346 above as if fully set forth herein.

348.     United States Patent No. 7,088,233 ("the '233 patent"), entitled "Personal Medical Device Communication System and Method" was duly and lawfully issued on August 8, 2006. A true and correct copy of the '233 patent is attached hereto as Exhibit C.

349.     Philips Electronics is the owner of all right, title and interest in the '233 patent, including the right to sue, recover damages for infringement and obtain a preliminary or permanent injunction.

350.     Masimo has infringed and continues to infringe, directly, by inducement, and/or contributorily, one or more claims of the '233 patent at least by making, using, selling and

offering to sell in the United States products, including without limitation pulse oximeters used with Safety Net and/or RadNet systems.

351.    As a result of Masimo's infringement of the '233 patent, Philips Electronics has been and continues to be damaged in an amount yet to be determined.

352.    Upon information and belief, unless enjoined, Masimo and/or others acting on behalf of Masimo, will continue their infringing acts, thereby causing additional irreparable injury to Philips Electronics for which there is no adequate remedy at law.

## COUNTERCLAIM 39: INFRINGEMENT OF THE '588 PATENT

353.    Philips Electronics repeats and realleges Paragraphs 110-352 above as if fully set forth herein.

354.    United States Patent No. 5,058,588 ("the '588 patent"), entitled "Oximeter and Medial Sensor Therefor" was duly and lawfully issued on October 22, 1991. A true and correct copy of the '588 patent is attached hereto as Exhibit D.

355.    Philips Electronics is the owner of all right, title and interest in the '588 patent, including the right to sue, recover damages for infringement and obtain a preliminary or permanent injunction.

356.    Masimo has infringed and continues to infringe, directly, by inducement, and/or contributorily, one or more claims of the '588 patent at least by making, using, selling and offering to sell in the United States products, including without limitation one or more model of Masimo pulse oximetry sensors.

357.    Upon information and belief, Masimo has had actual notice of the '588 patent and/or constructive notice of the '588 sensors.

358.    Upon information and belief, Masimo's infringement of the '588 patent has been, and continues to be, willful.

359.     As a result of Masimo's infringement of the '588 patent, Philips Electronics has been and continues to be damaged in an amount yet to be determined.

360.     Upon information and belief, unless enjoined, Masimo and/or others acting on behalf of Masimo, will continue their infringing acts, thereby causing additional irreparable injury to Philips Electronics for which there is no adequate remedy at law.

### COUNTERCLAIM 40: INFRINGEMENT OF THE '535 PATENT

361.     Philips Electronics repeats and realleges Paragraphs 110-360 above as if fully set forth herein.

362.     United States Patent No. 6,122,535 ("the '535 patent"), entitled "Method and Apparatus for Determining the Concentration of a Component" was duly and lawfully issued on September 19, 2000. A true and correct copy of the '535 patent is attached hereto as Exhibit E.

363.     Philips Electronics is the owner of all right, title and interest in the '535 patent, including the right to sue, recover damages for infringement and obtain a preliminary or permanent injunction.

364.     Masimo has infringed and continues to infringe, directly, by inducement, and/or contributorily, one or more claims of the '535 patent at least by making, using, selling and offering to sell in the United States products using Masimo SET technology, including without limitation the Rad-8 monitor, Rad-5 monitor, Rad-5v monitor, Radical-7 monitor, Rad-87 monitor, Rad-57 monitor, PPO+ monitor, Pronto, RadNet, SatShare, MX-1 board, MS-13 board, MS-11 board, MS-7 board, MS-5 board, and MS-3 board.

365.     Upon information and belief, Masimo's has had actual notice of the '535 patent and/or constructive notice of the '535 patent.

366.     Upon information and belief, Masimo's infringement of the '535 patent has been, and continues to be, willful.

367.     As a result of Masimo's infringement of the '535 patent, Philips Electronics has been and continues to be damaged in an amount yet to be determined.

368.     Upon information and belief, unless enjoined, Masimo and/or others acting on behalf of Masimo, will continue their infringing acts, thereby causing additional irreparable injury to Philips Electronics for which there is no adequate remedy at law.

### COUNTERCLAIM 41: INFRINGEMENT OF THE '074 PATENT

369.     Philips Electronics repeats and realleges Paragraphs 110-368 above as if fully set forth herein.

370.     United States Patent No. 6,725,074 ("the '074 patent"), entitled "Quality Indicator for Measurement Signals, in Particular, for Medical Measurement Signals such as those used in Measuring Oxygen Saturation" was duly and lawfully issued on April 20, 2004. A true and correct copy of the '074 patent is attached hereto as Exhibit F.

371.     Philips Electronics is the owner of all right, title and interest in the '074 patent, including the right to sue, recover damages for infringement and obtain a preliminary or permanent injunction.

372.     Masimo has infringed and continues to infringe, directly, by inducement, and/or contributorily, one or more claims of the '074 patent at least by making, using, selling and offering to sell in the United States products, including without limitation pulse oximeters with Adaptive Probe Off Detection ("APOD").

373.     Upon information and belief, Masimo's has had actual notice of the '074 patent and/or constructive notice of the '074 patent.

374.     Upon information and belief, Masimo's infringement of the '074 patent has been, and continues to be, willful.

375.    As a result of Masimo's infringement of the '074 patent, Philips Electronics has been and continues to be damaged in an amount yet to be determined.

376.    Upon information and belief, unless enjoined, Masimo and/or others acting on behalf of Masimo, will continue their infringing acts, thereby causing additional irreparable injury to Philips Electronics for which there is no adequate remedy at law.

## COUNTERCLAIM 42: INFRINGEMENT OF THE '745 PATENT

377.    Philips Electronics repeats and realleges Paragraphs 110-376 above as if fully set forth herein.

378.    United States Patent No. 5,337,745 ("the '745 patent"), entitled "Device and Method for In Vivo Qualitative or Quantative Measurement of Blood Chromophore Concentration Using Blood Pulse spectrophotometry" was duly and lawfully issued on August 16, 1994. A true and correct copy of the '745 patent is attached hereto as Exhibit G.

379.    Philips Electronics is the owner of all right, title and interest in the '745 patent, including the right to sue and recover damages for infringement.

380.    Masimo has infringed, directly, by inducement, and/or contributorily, one or more claims of the '745 patent at least by making, using, selling and/or offering to sell in the United States products using Masimo Rainbow SET technology, including without limitation, the Radical-7 monitor, Rad-87 monitor, and Rad-57 monitor.

381.    As a result of Masimo's infringement of the '745 patent, Philips Electronics has been damaged in an amount yet to be determined.

## COUNTERCLAIM 43:  DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '984 PATENT

382.    Philips Electronics repeats and realleges Paragraphs 110-381 above as if fully set forth herein.

383.     An immediate, real, and justiciable controversy exists between Philips Electronics and Masimo with respect to the enforceability of the '984 patent.

384.     Each individual associated with the patent owner in a reexamination proceeding has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability in a reexamination proceeding. 37 C.F.R. § 1.555(a).

385.     As part of the duty of candor and good faith in dealing with the PTO, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. MPEP § 2001.04.  This "duty to disclose the information exists with respect to each claim pending in the reexamination proceeding until the claim is cancelled." 37 C.F.R. § 1.555(a). This duty applies equally to reexamination proceedings.  MPEP § 2014. This duty includes the duty to correct known errors made by the PTO.  A breach of this duty may constitute inequitable conduct or "fraud on the PTO," rendering the patent unenforceable.

386.     Information is material to patentability when "[i]t refutes, or is inconsistent with, a position the applicant takes in:  (i) [o]pposing an argument of unpatentability relied on by the Office, or (ii) [a]sserting an argument of patentability."   37 C.F.R. § 1555(b); MPEP § 2001.05(b)(2).

387.     Individuals owing a duty to disclose to the PTO are "(1) Each inventor named in the application; (2) Each attorney or agent who prepares or prosecutes the application; and (3) Every other person who is substantively involved in the preparation or prosecution of the

application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application." MPEP § 2001.01; *see also* 37 C.F.R. § 1.56(c).

388.    For the reasons set forth in greater detail below, on information and belief, the '984 patent is unenforceable as a result of inequitable conduct before the PTO based on John M. Grover's, Stephen C. Jensen's, Jarom Kesler, and Joe E. Kiani's failure to comply with their absolute duty of candor and good faith before the PTO. Upon information and belief, as set forth below in detail, Messrs. Grover, Jensen, Kesler, and Kiani knowingly and deliberately took a position with the PTO in opposing an argument of unpatentability during a reexamination proceeding. That position was inconsistent with the Summary Judgment Report & Recommendation (D.I. 662) and the Summary Judgment Order (D.I. 776-777) regarding the interpretation of asserted claims 1-5, 15, 16, 19, 20, 22, and 52-54 of the '984 patent. Upon learning of this Court's ruling regarding the interpretation of those claims, each of Messrs. Grover, Jensen, Kesler and Kiani failed to inform the PTO that Masimo's purported distinctions over the prior art were inconsistent with that the Summary Judgment Report & Recommendation and the Summary Judgment Order. Moreover, upon learning that the PTO had confirmed the claims of the '984 patent during reexamination based on the position argued by Messrs. Grover, Jensen, Kesler, and Kiani, each of those individuals failed to correct the PTO's inconsistent determination and allowed the PTO to issue a reexamination certificate based on an interpretation of the asserted claims that is inconsistent with this Court's interpretation of the claims. The Court's ruling regarding the interpretation of the claims of the '984 patent, and the inconsistent nature of Masimo's arguments to the PTO, was material to the PTO's consideration of the patentability of the asserted claims of the '984 patent. But for the failure of Messrs. Grover, Jensen, Kesler, and Kiani to disclose information material to the patentability of the

59

asserted claims of the '984 patent during the reexamination proceeding and their failure to correct the patent examiner's erroneous interpretation of the claims during the reexamination proceeding, the claims of the '984 patent would not have been confirmed during reexamination. Additionally, the failure of John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani to correct the patent examiner's erroneous interpretation of the asserted claims of the '984 Patent during the reexamination proceeding after Philips informed Masimo and the Court of the patent examiner's erroneous interpretation of the asserted claims of the '984 Patent is affirmative egregious misconduct.  Upon information and belief, Messrs. Grover's, Jensen's, Kesler's, and Kiani's failure to disclose the Court's rulings and their failure to correct the PTO's erroneous interpretation of the asserted claims of the '984 Patent was done so with the intent to deceive the PTO into confirming the asserted claims of the '984 patent during reexamination.

A. **Background and Timeline of Relevant Facts**

389.    On February 3, 2009, Masimo filed this lawsuit accusing Philips Electronics of infringing, *inter alia*, the '984 patent.  Among other things, Masimo accuses Philips Electronics of infringing the '984 patent, and has identified claims 1-5, 15, 16, 19, 20, 22, and 52-54 of the '984 patent as asserted claims.

390.    On September 5, 2012, a Request for *Ex Parte* Reexamination of the '984 patent was filed with the PTO.  *See* Exhibit H.  Pursuant to that Request, reexamination was ordered by the PTO on October 10, 2012 and the proceeding was assigned control number 90/012,463 ("'984 Reexamination") *See* Exhibit I.  On May 6, 2014, a reexamination certificate issued from the '984 Reexamination ("'984 Certificate") confirming the patentability of claims 1-5, 15, 16, 19, 20, 22, and 52-54 over the prior art references cited during the '984 Reexamination.  *See* Exhibit J.

391.    The law firm of Knobbe, Martens, Olson & Bear, LLP ("Knobbe") has represented and continues to represent Masimo in this litigation as well as in the '984 Reexamination proceeding.  John M. Grover, Stephen C. Jensen, Jarom Kesler each hold the title of "Partner" with Knobbe.   Each of John M. Grover, Stephen C. Jensen, and Jarom Kesler are listed as attorneys of record for Masimo in the '984 Reexamination proceeding.  Stephen C. Jensen is listed as an attorney of record for Masimo in this litigation.  *See* D.I. 103 (so ordered May 13, 2010).

392.    Joe E. Kiani is a founder and currently Chief Executive Officer & Chairman of the Board of Masimo as well as a named inventor of the '984 patent.

393.    Upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler, and Joe E. Kiani are aware of the proceedings in this litigation *and* the '984 Reexamination proceedings.   John M. Grover and Jarom Kesler are attorneys of record for Masimo in the '984 Reexamination proceeding and have submitted documents related to this litigation to the PTO on Information Disclosure Statements during the '984 Reexamination. Steve C. Jensen is an attorney of record for Masimo in both this litigation and the '984 Reexamination proceeding.   Mr. Jensen has had substantial substantive involvement in this litigation, including arguing motions, arguing at the claim construction hearing where the '984 Patent was addressed, and participating in mediations and settlement discussions regarding this litigation.  Joe E. Kiani participated in an in-person interview conducted at the PTO on February 8, 2013 regarding the '984 Reexamination and, upon information and belief, is significantly involved in both the '984 Reexamination and this litigation (including submitting at least two declarations and sitting for at least two depositions in this litigation, participating in mediations

and settlement discussions regarding this litigation, and submitting two declarations in the '984 Reexamination).

394.    Independent asserted claim 1 of the '984 Patent (and thus each of its asserted dependent claims 2-5, 15, 16, 19, 20, and 22) recites "[a] physiological monitoring system . . . comprising: a signal processing device including [] a first calculator capable of utilizing a first calculation technique to determine at least a first ratio representative of at least one physiological characteristic of the pulsing blood based on at least one of the one or more intensity signals . . . , a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second ratio representative of the at least one physiological characteristic based on at least one of the one or more intensity signals . . . , and a processing module configured to utilize at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic.

395.    Independent claim 52 of the '984 Patent similarly recites "[a] method of determining a physiological characteristic of pulsing blood, the method comprising: . . . utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter based upon at least one of the first and second intensity signals."

396.    Independent claim 53 of the '984 patent (and thus its asserted dependent claim 54) similarly recites "[a] physiological monitoring system comprising: … a signal processing device including[]a first calculator capable of utilizing at first calculation technique to determine at least a first value representative of the at least one physiological characteristic of the pulsing blood, a second calculator capable of utilizing a second calculation technique different from the first calculation technique, to determine at least a second value representative of the at least one physiological characteristic, and a processing module which utilizes at least one of the first and

second calculators to determine a resulting value indicative of the at least one physiological characteristic. . . ."

397.    On February 18, 2011, Magistrate Judge Mary Pat Thynge issued her Report and Recommendation on Claim Construction ("*Markman* R&R") with her constructions regarding various terms of the asserted patents. *See* D.I. 210.  With respect to '984 patent, the only term in dispute was "calculation technique" in claims 1, 52, and 53.  The *Markman* R&R recommended that no construction was necessary for that term.  *Id.* at 8-9.  No other terms of the '984 patent were addressed by the *Markman* R&R.

398.    On January 17, 2012, District Judge Stark issued his *Markman* Order ("*Markman* Order"), which adopted the *Markman* R&R's recommendation regarding "calculation technique." *See* D.I. 319 at 2.

399.    On May 8, 2012, Philips Electronics served the Expert Report of Dr. Robert Stone Regarding the Invalidity of Masimo's Patents-In-Suit (U.S. Patent No. 5,632,272, U.S. Patent No. 6,263,222, U.S. Patent No. 7,215,984, and U.S. Patent No. 6,699,194) ("Stone Invalidity Rpt") (D.I. 429, Exhibit 14A).  In the Stone Invalidity Report, Dr. Stone opined that asserted claims 1-4, 15, 19, 22, 52, and 53 of the '984 patent were invalid as anticipated by U.S. Patent No. 4,911,167 to Corenman ("Corenman"), U.S. Patent No. 5,355,882 to Ukawa ("Ukawa"), U.S. Patent No. 4,955,379 to Hall ("Hall"), and European Patent Publication No. EP 0352923 to Baxter International, Inc., ("EP '923"),  Additionally, Dr. Stone opined that asserted claims 5 and 20 were invalid as anticipated by Corenman, Ukawa, and Hall.  Dr. Stone also opined that claims 16 and 54 of the '984 Patent are Obvious over Ukawa.

400.    On June 18, 2012, Masimo served the Rebuttal Expert Report of Professor Gail D. Baura, Ph.D. Regarding the Validity of Masimo's U.S. Patent Nos. 5,632,272; 6,263,222;

7,215,984; and 6,699,194 ("Baura Validity Rpt") (D.I. 431, Exhibit 23).   In the Baura Validity Report, Dr. Baura opined that the asserted claims of the '984 patent were valid over the references cited by Dr. Stone in the Stone Invalidity Report.   Specifically, she opined that the references cited by Dr. Stone do not disclose "parallel, alternative calculations of a signal to determine first and second ratios," which she stated is required by the asserted claims of the '984 patent.  *See, e.g., id.* at 47-77.   Dr. Baura further argued that none of references, including *Hall*, anticipate the asserted claims of the '984 Patent.   For instance, Dr. Baura opinioned "Hall does not disclose the use of parallel, alternative calculations of a signal to determine first and second values, and a utilization of one of the calculations to determine a resulting value.   Moreover, Hall does not disclose utilization of one of the parallel calculations based at least in part on a property of the signal." *Id*. at 48.

401.     In light of Dr. Baura's opinion regarding interpretation of the claims of the '984 patent, it became clear that the parties had a dispute regarding interpretation of the asserted claims of the '984 patent that had not been addressed by the *Markman* R&R or the *Markman* Order.

402.     On August, 14, 2012, Philips Electronics filed its Opening Brief in Support of Defendant's Motion for Summary Judgment of Invalidity and Noninfringement of U.S. Patent No. 7,215,984 ("'984 Motion") (D.I. 395).  In the '984 Motion, Philips Electronics presented the parties' dispute regarding interpretation of the asserted claims of the '984 patent to the Court for the first time.  D.I. 395 at 6-10.  Specifically, Philips Electronics argued that "the claims plainly recite 'a signal processing device' having a first calculator ***capable of*** utilizing a first calculation technique and a second calculator ***capable of*** utilizing a second calculation technique.   The signal processing device also includes a 'processing module' that utilizes ***at least one*** of the two

calculators." *Id.* at 7.  Philips Electronics also argued that under the correct interpretation, the asserted claims of the '984 patent are invalid over Hall and Ukawa. *Id.* at 10-17.

403.     As mentioned above, on September 5, 2012, the '984 Reexamination was filed. *See* Exhibit H.  The Request argued that the asserted claims of the '984 patent are invalid over, *inter alia*, Hall and Ukawa.

404.     On September 21, 2012, Masimo filed its Answering Brief in Opposition to the '984 Motion ("Masimo Opposition") (D.I. 515).  In its Opposition, Masimo argued that "[t]he claims require that a first calculator '*determine* at least a first ratio,' and a second calculator '*determine* at least a second ratio.'  Thus, the claims require the calculators actually determine their respective ratios."  D.I. 515 at 5.

405.     On October 10, 2012, the PTO granted the Request for Reexamination, finding that, *inter alia*, Hall and Ukawa presented a substantial new question of patentability of the asserted claims of the '984 patent.   *See* Exhibit I.

406.     On January 23, 2013, the PTO issued a Non-Final Office Action rejecting all of the asserted claims of the '984 patent except claims 16 and 54 over, *inter alia*, Hall and Ukawa. *See* Exhibit K.

407.     On February 8, 2013, the PTO held an in-person interview with John M. Grover, Stephen C. Jensen, and Joe E. Kiani.  *See* Exhibit L (Examiner Interview Summary); Exhibit M (Applicant Interview Summary).   According to the Applicant's summary of the interview, Messrs. Grover, Jensen, and Kiani argued that the PTO must apply "the same standards and cannons as the courts" in the '984 reexamination because the '984 patent had expired.  *See* Exhibit M at 2-3.  According to the Examiner's summary of the interview, Messrs. Grover, Jensen, and Kiani argued that the asserted claims require both calculators to actually determine

their respective ratios. *See* Exhibit L.  Notably, this argument is the same argument that Masimo presented to the Court in the Masimo Opposition, discussed above.  Indeed, the Examiner notes in his summary of the interview that Messrs. Grover, Jensen, and Kiani argued that "Ukawa fails to teach parallel paths for processing the same signals according to two different calculation techniques." And that "Hall teaches tunable filter but he fails to teach two different calculation techniques to process the inputted signals."  *Id.*   These are the same purported distinctions over Hall and Ukawa that Masimo advanced in the Masimo Opposition, discussed above.

408.    Upon information and belief, although Masimo attached the Philips' Motion for Summary Judgment of Invalidity and Noninfringement of U.S. Patent No. 7,215,984 to its November 19, 2012 IDS, Messrs. Grover, Jensen, Kesler, and Kiani did not tell the Examiner that Philips Electronics disagreed with their interpretation of the claims during the interview with the Examiner, as set forth in the '984 Motion.

409.    On March 25, 2013, Masimo responded to the PTO's Non-Final Office Action ("Response to Office Action").  *See* Exhibit N.  The Response to Office Action was signed by Jarom Kesler.  *Id.* at 59.  The Response to Office Action argued that claims 1 and 53 "require both calculators 'to determine' ratios or values" and that "the p*r*ocessing module language of Claim 1 and 53 [sic] requires that both calculators operate in parallel."  Exhibit N at 22-24, Similarly, the Response to Office Action argued that claim 52 "requires both tech*nique*s be actually performed to determine a value" and that "both calculation techniques are used on overlapping intensity signals."  *Id.* at 24-25.  The Response to Office Action then argued that the asserted claims could be distinguished from the cited prior art, *inter alia*, Hall and Ukawa based on this claim interpretation.  *Id.* at 42-51.  Specifically, the Response to Office Action argued that "Ukawa does not teach two calcul*ato*rs that determine a ratio or a value representing the

same physiological characteristic as required by the claims at issue." *Id.* at 42-47.  Similarly, the Response to Office Action argued that Hall does not invalidate the asserted claims because the disclosed "single ratio from the same bandpass filter cannot be ***both*** the first calculator and the second calculator and provide both first and second ratios, as required by Claim 1." *Id.* at 47-51.

410.    The Response to Office Action does not state that Philips Electronics disagreed with the interpretation of the asserted claims, as set forth in the '984 Motion.

411.    One week after the Response to the Office Action, on April 2, 2013, Magistrate Judge Thynge issued her Report and Recommendations regarding the parties' summary judgment motions, including her recommendation regarding the '984 Motion ("Summary Judgment R&R") (D.I. 662).   The Summary Judgment R&R <u>rejected</u> the interpretation of the asserted claims of the '984 patent argued by Masimo in its Opposition, argued by Messrs. Grover, Jensen, and Kiani during the interview with the PTO, and argued by Mr. Kesler in the Response to Office Action.   *See* D.I. 662 at 42-51.  Specifically, the Court agreed with Philips Electronics that the asserted claims do <u>not</u> require the actual calculation of two ratios.   Rather, while they require the capability of utilizing two calculators, they only require that one calculator be utilized to calculate a ratio at any given time.   *Id.*  Particularly, the Court held:

> The court agrees with Philips' interpretation.  As Philips notes, the claim requires, e.g., 'a first calculator *capable of* utilizing a first calculation technique to determine at least a first ratio.'  Rather than writing the limitation as 'a first calculator utilizing a first calculation technique to determine at least a first ratio.' The drafter included the 'capable of' language which indicates the ability of a 'first calculator' to 'determine at least a first ratio,' **not that both the first and second calculators are required to actually calculate a physiological characteristic every time a calculation is performed**.  [*See* D.I. 662 at 48 (emphasis added).]
>
> As with Philips' previous argument, the court agrees the use of 'at least one' demonstrates **the claim does not require the processing module to utilize both calculators**.  Contrary to Masimo's assertion, that interpretation does not render one of the calculators useless.  Output from both calculators might be utilized by the processing module, but the claim

does not include that requirement." [*See* D.I. 662 at 50-51 (emphasis added).]

412.   Masimo did not object to Magistrate Thynge's interpretation of the asserted claims of the '984 patent in its objections filed April 19, 2013.  (D.I. 674).

413.   On April 29, 2013, John M. Grover submitted an Information Disclosure Statement ("April 29, 2013 IDS") to the PTO that included, *inter alia*, the Summary Judgment R&R. *See* Exhibit O.   The April 29, 2013 IDS included an "explanation of relevance" that merely pointed out the pages in the Summary Judgment R&R discussing all of the parties' arguments on summary judgment regarding the '984 patent (including invalidity and noninfringement issues).  Exhibit O at 2-5.  The April 29, 2013 IDS stated "In the Report and Recommendation, Magistrate Thynge construed claim elements of the '984 Patent. These claim constructions can be found at least on page 42 through 51 of the Report and Recommendation." *Id.* at 5.  The April 29, 2013 IDS failed to point out to the PTO that the Summary Judgment R&R had explicitly rejected the claim interpretation that Messrs. Grover, Jensen, and Kiani argued during the interview with the Examiner and that Mr. Kesler had argued in the Response to Office Action.   Nor did the IDS point out to the PTO that the Summary Judgment R&R had, on the basis of rejection of Masimo's claim interpretation, explicitly rejected the only purported distinctions between the asserted claims and the Hall and Ukawa references that Messrs. Grover, Jensen, and Kiani argued during the interview with the Examiner and that Mr. Kesler had argued in the Response to Office Action.

414.   On March 31, 2014, Judge Stark issued his Opinion and Order regarding the parties' summary judgment motions (D.I. 776-777) ("Summary Judgment Order").   The Summary Judgment Order adopted the Summary Judgment R&R's interpretation of the asserted claims of the '984 Patent discussed above.  Masimo did not provide the Summary Judgment

Order to the PTO during the reexamination of the '984 Patent.  Upon information and belief, Masimo did not inform the PTO of the existence of the Summary Judgment Order.

415.     On April 10, 2014, the PTO issued a Notice of Intent to Issue Reexamination Certificate ("NIRC"), confirming the asserted claims over the cited prior art references including, *inter alia*, Hall and Ukawa.  Exhibit P.  The NIRC makes clear that the PTO must consider the claims in accordance with the Court's decisions regarding claim construction and interpretation. *Id.* at 12.  However, the NIRC only indicates that the PTO is relying on the *Markman* R&R and Order.  *Id.*  Particularly, the PTO did not address the terms of the asserted claims of the '984 Patent that were interpreted by the Court in the Summary Judgment R&R' and the Summary Judgment Order.  There is no indication in the NIRC that the PTO is aware of the Summary Judgment R&R or Order, and no indication that the PTO is applying the interpretation of the claims adopted by the Summary Judgment R&R or Order.   Indeed, the Examiner relied on Markman R&R and Markman Order when she interpreted the claims, " the claims considered herein are interpreted in accordance with the court decision resulting from the litigation of [present litigation] explained in Joint Claim Contraction and Stipulations." *Id.* at 12.  The NIRC makes clear that it is adopting the claim interpretation argued by Messrs. Grover, Jensen, and Kiani during the interview with the PTO and argued by Mr. Kesler in the Response to Office Action.  *Id.* at 15-16 (summarizing the argument).   The NIRC specifically indicates that the Examiner found "Patent Owner's argument persuasive" and notes that "Hall does not explicitly teach two ratios."  *Id.* at 16.  As such, it is clear that the PTO did not apply the Court's interpretation of the claims set forth in the Summary Judgment R&R or Order, in which the Court rejected Masimo's interpretation of the claims to require "parallel, alternative calculations."

416.     On April 11, 2014, Masimo submitted to the Court a Statement of Recent Decision by the PTO Confirming the Patentability of the Asserted Claims of the '984 Patent. D.I. 783.   The Statement indicates that "the USPTO considered both Hall and Ukawa and confirmed the patentability of all of [the asserted] claims."   *Id.*   The Statement fails to indicate that in confirming the asserted claims over Hall and Ukawa, the PTO applied a claim construction that was explicitly rejected by this Court during summary judgment.

417.     On April 15, 2014, Philips Electronics notified the Court (with a copy to Masimo) that the NIRC "was based on a construction of the asserted claims urged by Masimo on March 25, 2013 and rejected by the Court one week later on April 2, 2013."   D.I. 789.   Philips noted that Masimo "allowed the claims to be confirmed based on that rejected claim construction" and, "[a]s such, the PTO's Decision is a finding that is contradictory to this Court's claim construction."   *Id.* (citing In re Rambus, 694 F.3d 42, 46 (Fed. Cir. 2012)).

418.     On May 6, 2014, the PTO issued the '984 Certificate.   Exhibit J.

419.     Twenty-seven (27) days passed between the time the PTO issued the NIRC to the time it issued the '984 Certificate.   During that time, Philips informed Masimo, as set forth above, of its improper failure to inform the PTO of the inconsistency between its arguments that were accepted by the PTO and the Court's claim construction of the '984 Patent.   Despite clearly knowing about the inconsistency, upon information and belief, during that time Messrs. Grover, Jensen, Kesler, or Kiani did not make any effort to inform the PTO that the basis for its confirmation of the asserted claims of the '984 patent had been rejected by the Court in the Summary Judgment R&R and the Summary Judgment Order.   Indeed, despite their knowledge that this Court had rejected the very claim construction they had argued to the PTO, and despite the fact that Philips pointed this out in it's April 15, 2014 filing, Messrs. Grover, Jensen, Kesler,

and Kiani allowed the PTO to proceed in issuing a reexamination certificate in the '984 reexamination.

420.     By statute, after filing the petition for *ex parte* reexamination on the '984 patent, Philips had no mechanism to participate in the reexamination proceeding such that it could inform the PTO of the inconsistency of Masimo's arguments with the Court's claim construction, and instead had to rely on Masimo to inform the PTO, which Masimo failed to do.

### B.   The '984 Patent is Unenforceable for Inequitable Conduct During Reexamination Proceedings Before the PTO

#### i.   *The Summary Judgment R&R and Order are Material to the Patentability of the Asserted Claims of the '984 Patent*

421.     Each of the asserted claims 1-5, 15, 16, 19, 20, 22, and 52-54 of the '984 patent were the subject of the '984 Reexamination.  Asserted claims 1-5, 15, 16, 19, 20, and 22 of the '984 patent recites a "[first/second] calculator capable of utilizing a [first/second] calculation technique [] to determine at least a [first/second] ratio representative of [the] at least one physiological characteristic [. . .] based on at least one of the one or more intensity signals" and " a processing module configured to utilize at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic."  Asserted claim 52 recites "utilizing at least one of at least first and second calculation techniques to determine a value indicative of the physiological parameter based upon at least one of the first and second intensity signals."  Asserted claims 53-54 recite "a [first/second] calculator capable of utilizing a [first/second] calculation technique [] to determine at least a [first/second] value representative of the at least one physiological characteristic" and "a processing module which utilizes at least one of the first and second calculators to determine a resulting value indicative of the at least one physiological characteristic. . . ."

422.     The Summary Judgment R&R and Summary Judgment Order are material to the interpretation of the limitations of the asserted claims of the '984 patent recited in the preceding paragraph, and thus are material to the patentability of the asserted claims of the '984 patent. During summary judgment, the parties presented a dispute regarding the meaning of these claim limitations to the Court.  *See* D.I. 395 at 6-10; D.I. 593 at 2-6; D.I. 515 at 4-6.  The Summary Judgment R&R agreed with Philips Electronics' interpretation of these claim limitations and disagreed with Masimo's interpretation of these claim limitations.  *See* D.I. 662 at 42-51. Specifically, the Summary Judgment R&R held that none of the asserted claims require the actual calculation of two ratios.  *See* D.I. 662 at 50-51.  Rather, the Summary Judgment R&R held that while the claim limitations require the capability of utilizing two calculators, they only require that one calculator be utilized to calculate a ratio at any given time.  *Id.*  Masimo did not object to the Summary Judgment R&R's interpretation of the asserted claims of the '984 Patent, and thus that interpretation was adopted by Judge Stark in the Summary Judgment Order.  D.I. 776 at 7.

423.     Masimo does not dispute that the PTO was obligated to use this Court's interpretation of the claims of the '984 Patent in considering the validity of the claims over the cited prior art.  As Messrs. Grover, Jensen, Kesler, and Kiani pointed out during the interview and in the Response, the claims "must be construed in the same way a District Court construes claims."  Exhibit N (Response to Office Action) at 19-20; Exhibit M (Applicant Interview Summary) at 2.  This was clearly understood by the patent examiner, who noted in the NIRC that she was obligated to interpret the claims "in accordance with the court decision resulting from [this] litigation. . . ."  Exhibit P (NIRC) at 12.

424.     Upon information and belief, Messrs. Grover, Jensen, Kesler, and Kiani failed to note that the Summary Judgment R&R had rejected the interpretation of the claims they urged the patent examiner to adopt during both the interview and in the Response.  Moreover, upon information and belief, Messrs. Grover, Jensen, Kesler, and Kiani failed to disclose the Summary Judgment Order adopting that interpretation of the claims.   And then, even after the patent examiner indicated she had found "Patent Owner's argument persuasive" and was confirming the claims based on that interpretation, Messrs. Grover, Jensen, Kesler, and Kiani did nothing to correct the PTO's error.  *See* Exhibit P (NIRC) at 15-16 (summarizing Masimo's argument during prosecution of the reexamination).  These failures by Messrs. Grover, Jensen, Kesler, and Kiani meet the "but-for" standard for materiality—the failures were material because the patent examiner would not have confirmed the claims had she known that Masimo's interpretation was rejected by the Court.  This is particularly apparent given that Masimo's own technical expert, Dr. Gail Baura, admitted during her deposition that she could not provide any distinctions over the prior art references cited in both the '984 Motion and in the '984 Reexamination (including, *inter alia*, the Hall reference) under the Court's interpretation of many of the claims as set forth in the Summary Judgment R&R and Order.  Indeed, during her deposition, Dr. Baura admitted that her only basis for disputing invalidity of many of the asserted claims was the interpretation of the claims Messrs. Grover, Jensen, Kesler, and Kiani argued to the PTO during the interview and in the Response.  *See* D.I. 431, Exhibit 25 (Baura Depo. Tr. (7/16/2012)) at 270:6-10, 272:4-7, 263:22-264:3, 268:7-8; D.I. 431, Exhibit 23 (Baura Validity Rpt) at 67, 77; Exhibit L (Examiner Interview Summary) at 2; Exhibit N (Response to Office Action) at 36-55.

425.     The failure by Messrs. Grover, Jensen, Kesler, and Kiani to correct the patent examiner after Philips pointed out the examiner's erroneous interpretation of the claims rises to

the level of "affirmative egregious misconduct."  As discussed above, the day after the PTO issued the NIRC, Masimo filed its Statement of Recent Decision touting the PTO's confirmation of the claims.  *See* D.I. 783.  Philips then filed a letter with the Court specifically noting "that the PTO's Decision was based on a construction of the asserted claims urged by Masimo on March 25, 2013 and **rejected** by the Court one week later on April 2, 2013."  *See* D.I. 789 at 1.  Thus, Philips noted, "the PTO's Decision is a finding that is contradictory to this Court's claim construction."  *Id.*  Twenty-seven (27) days passed between the time the PTO issued the NIRC to the time it issued the '984 Patent Certificate.  During that time, despite Philips letter informing Masimo of the PTO's inconsistent claim interpretation, upon information and belief, Messrs. Grover, Jensen, Kesler, and Kiani made no effort to inform the PTO that the basis for its confirmation of the asserted claims of the '984 Patent had been rejected by the Court in the Summary Judgment R&R and Order.

### ii. John M. Grover, Stephen C. Jensen, Jarom Kesler And Joe. E. Kiani Knew Of The Summary Judgment R&R and Order and its Materiality to the Patentability of the Asserted Claims of the '984 Patent

426.     Upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler, and Joe E. Kiani knew about the Summary Judgment R&R and Order's Interpretation and its materiality to the patentability of the asserted claims of the '984 Patent.

427.     John M. Grover and Jarom Kesler have each submitted documents related to this litigation to the USPTO on Information Disclosure Statements during the '984 Reexamination, including submitting the Summary Judgment R&R and Order to the USPTO. Mr. Grover participated in an interview with the Examiner during which he argued that the asserted claims of the '984 patent are patentable over the cited prior art references (including, *inter alia*, the Hall reference) based on the same interpretation of the claims Masimo argued during summary judgment proceedings related to the '984 patent.  *See* Exhibit L.  Examiner Interview Summary

at 2.  Mr. Kesler submitted a response to an Office action in which he argued that the asserted claims of the '984 patent are patentable over the cited prior art references (including, *inter alia*, the Hall reference) based on the same interpretation of the claims Masimo argued during summary judgment proceedings related to the '984 patent.  *See* Exhibit N.  March 25, 2013 Response to Office Action at 36-55.  Thus, upon information and belief, both Messrs. Grover and Kesler were aware of the Summary Judgment R&R and Order and knew of their materiality to the patentability of the asserted claims of the '984 Patent.

428.    Steve C. Jensen is an attorney of record for Masimo in both this litigation and the '984 Reexamination proceeding.  Mr. Jensen has appeared at numerous hearings and arguments, including arguing at the claim construction hearing where the '984 Patent claims interpretation was addressed.   Mr. Jensen has also participated in numerous settlement and mediation discussions during the litigation.  Mr. Jensen also participated in an interview with the Examiner during which he argued that the asserted claims of the '984 patent are patentable over the cited prior art references (including, *inter alia*, the Hall reference) based on the same interpretation of the claims Masimo argued during summary judgment proceedings related to the '984 patent.  *See* Exhibit L (Examiner Interview Summary) at 2.  Thus, upon information and belief, Mr. Jensen was aware of the Summary Judgment R&R and Order and knew of their materiality to the patentability of the asserted claims of the '984 patent.

429.    The '984 Patent reexamination is not the first time Mr. Jensen has intentionally failed to inform the PTO of material and relevant District Court activity during prosecution of a patent related to the '984 Patent.  In 2005, the Federal Circuit affirmed the finding of the United States District Court for the Central District of California that Mr. Jensen had engaged in inequitable conduct with respect to the prosecution of another Masimo patent, U.S. Patent No.

6,206,830 ("the '830 Patent").  The '830 Patent is also in the same patent family as the '984 Patent and similarly claims priority to March 7, 1991.  Mr. Jensen was substantively involved in the prosecution of the application that led to the '830 Patent at the same time he was substantively involved in litigation involving related patents.  *Mallinckrodt, Inc. et al. v. Masimo Corp.*, 147 Fed. Appx. 158, 164 (Fed. Cir. 2005).  Indeed, as in this case, Mr. Jensen had participated in the claim construction hearing at the district court.  *Id.* at 164-65.  The Federal Circuit found Mr. Jensen had committed inequitable conduct by failing to inform the PTO of a claim construction the District Court had issued in a related patent of a term that also appeared in the claims of the application for the '830 Patent.  Based on that inequitable conduct, the Federal Circuit affirmed the finding that the '830 Patent is unenforceable.  In so finding, the Federal Circuit held "that Jensen did not disclose the *Masimo I* litigation to the PTO, when he for certain knew about it since he was the lead attorney representing Masimo in that litigation, strongly suggests that he intended to deceive the PTO."  *Id.* at 184.  Given this Federal Circuit finding regarding Mr. Jensen's prosecution of patents in the same family of the '984 Patent, Mr. Jensen should have been particularly aware of the importance of informing the PTO of related District Court activity.  Joe E. Kiani is the founder and CEO of Masimo as well as a listed inventor of the '984 patent.  Upon information and belief, Mr. Kiani is aware of the proceedings in this litigation and the '984 Reexamination.  Mr. Kiani has signed four declarations and sat for two depositions in this litigation.  Mr. Kiani has also participated in mediation and settlement discussions related to the litigation.  Mr. Kiani also participated in an interview with the Examiner during which he argued that the asserted claims of the '984 patent are patentable over the cited prior art references (including, *inter alia*, the Hall reference) based on the same interpretation of the claims Masimo argued during summary judgment proceedings related to the '984 patent.  Exhibit L (Examiner

Interview Summary) at 2. Mr. Kiani also signed two declarations during the '984 Reexamination. Thus, upon information and belief, Mr. Jensen was aware of the Summary Judgment R&R and Order and knew of their materiality to the patentability of the asserted claims of the '984 patent.

430. Upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler, and Joe E. Kiani knew that the interpretation of the asserted claims of the '984 patent they used to distinguish the cited prior art references (including, *inter alia*, the Hall reference) was rejected by this Court in the Summary Judgment R&R and Order. Upon information and believe, those individuals also knew that the purported distinctions over Hall and Ukawa they argued to the PTO were inconsistent with the Court's claim construction set froth in the Summary Judgment R&R and Order. Upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler, and Joe E. Kiani knew that the interpretation of the asserted claims was rejected by this Court at the time the USPTO issued the NIRC and before the PTO issued the '984 Certificate. *See* Exhibit P (NIRC); Exhibit J ('984 Certificate). Accordingly, upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler, and Joe E. Kiani knew that the Summary Judgment R&R and Order were material to the patentability of the asserted claims of the '984 patent during pendency of the '984 Reexamination, and that they were inconsistent with positions they had taken with the PTO.

431. Upon information and belief, the single most reasonable inference able to be drawn from the evidence is that Messrs. Grover, Jensen, Kesler, and Kiani deliberately failed to inform the patent examiner that Masimo's claim interpretation had been rejected and correct the patent examiner's erroneous claim interpretation after issuance of the NIRC, and that these failures were done with the intent to deceive the PTO into confirming the claims of the '984

patent.  As discussed above, each of Masimo's Representatives knew about the Court's Summary Judgment R&R and Order and the fact they rejected the claim construction Messrs. Grover, Jensen, Kesler, and Kiani urged the PTO to adopt.  Nonetheless, Messrs. Grover, Jensen, Kesler, and Kiani failed to inform the PTO about the Court's interpretation of the claims even after the patent examiner made absolutely clear she was confirming the claims based on Masimo's rejected claim construction.  *See* Exhibit. P (NIRC) at 15-16.

> ### iii.   *John M. Grover, Stephen C. Jensen, Jarom Kesler And Joe. E. Kiani Failed to Inform the PTO of the Summary Judgment R&R's and Order's Interpretation of the Asserted Claims of the '984 Patent and Failed to Correct the PTO After Learning the PTO Confirmed The Asserted Claims of the '984 Patent Based on an Interpretation of the Claims Inconsistent with the Summary Judgment R&R's and Order's Interpretation of the Asserted Claims*

432.   Each of John M. Grover, Stephen C. Jensen, Jarom Kesler And Joe. E. Kiani failed to inform the PTO that the Summary Judgment R&R rejected the interpretation of the asserted claims of the '984 patent they used to distinguish the cited prior art references (including, *inter alia*, the Hall reference).   While John M. Grover submitted the Summary Judgment R&R to the PTO in an IDS on April 20, 2013 , Mr. Grover did not inform the PTO that this Court had rejected the same interpretation of the asserted claims of the '984 Patent he had used to distinguish the cited prior art references (including, *inter alia*, the Hall reference) during the interview and in the response to the Office action.  *See* Exhibit L (Examiner Interview Summary) at 2; *see* Exhibit N (March 25, 2013 Response to Office Action) at 36-55.

433.   Upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani did not inform the PTO of the Summary Judgment Order in which the Court adopted the Summary Judgment R&R's interpretation of the asserted claims of the '984 Patent (D.I. 776-777).

434.     On April 10, 2014, the PTO issued the NIRC, which indicated that the PTO was confirming each of the asserted claims of the '984 patent based on the interpretation of the asserted claims of the '984 patent argued by John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani during the interview and response to the Office action.  *See* Exhibit P (NIRC) at 13-19.  Upon information and belief, each of John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani were aware of the NIRC and the fact that the PTO was confirming the claims based on the interpretation of the asserted claims of the '984 patent that was rejected by the Court in the Summary Judgment R&R and Order.  Regardless, each of John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani failed to correct the PTO's interpretation of the asserted claims of the '984 patent and allowed the '984 Certificate to issue based on the interpretation of the claims rejected by the Summary Judgment R&R and Order.  In fact, none of John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani, or anyone else representing Masimo or affiliated with Masimo made any submissions to the PTO regarding the '984 Reexamination from the time the PTO issued the NIRC until it issued the '984 Certificate.

> ### iv. *If John M. Grover, Stephen C. Jensen, Jarom Kesler And Joe. E. Kiani Had Informed the PTO of the Summary Judgment R&R's and Order's Interpretation of the Asserted Claims of the '984 Patent and/or Corrected the PTO After Learning the PTO Confirmed the Asserted Claims of the '984 Patent Based on an Interpretation of the Claims Inconsistent with the Summary Judgment R&R's and Order's Interpretation of the Asserted Claims, the PTO Would Not Have Confirmed the Asserted Claims*

435.     Upon information and belief, if John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani had informed the PTO that the Summary Judgment R&R and Order rejected the interpretation of the asserted claims of the '984 patent they used to distinguish the cited prior art references (including, *inter alia*, the Hall reference) or corrected the PTO after learning the PTO confirmed the asserted claims of the '984 patent based on that interpretation of

the claims, the PTO would not have confirmed the asserted claims of the '984 patent.  Rather, upon information and belief, had the PTO known that the Summary Judgment R&R and Order had rejected the interpretation of the asserted claims of the '984 patent Messrs. Grover, Jensen, Kesler, and Kiani used to distinguish the cited prior art references (including, *inter alia*, the Hall reference), the PTO would have rejected the asserted claims of the '984 patent over the cited prior art references (including, *inter alia*, the Hall reference).   Indeed, the NIRC specifically stated that the PTO was confirming the asserted claims of the '984 patent based on the interpretation of those claims presented by Messrs. Grover, Jensen, Kesler, and Kiani. Moreover, Masimo's Technical Expert,  Dr. Baura admitted during her deposition that she could not provide any distinctions over the cited prior art references (including, *inter alia*, the Hall reference) under the Court's interpretation of many of the claims as set forth in the Summary Judgment R&R and Order.  Indeed, during her deposition, she admitted that her only basis for disputing invalidity of many of the asserted claims was the interpretation of the claims Messrs. Grover, Jensen, Kesler, and Kiani argued to the PTO during the interview and in the response to the Office action.  *See* D.I. 431, Exhibit 25 (Baura Depo. Tr. (7/16/2012)) at 270:6-10, 272:4-7, 263:22-264:3, 268:7-8; D.I. 431, Exhibit 23 (Baura Validity Rpt) at 67, 77; Exhibit L (Examiner Interview Summary) at 2; Exhibit N (March 25, 2013 Response To Office Action) at 36-55.

436.     Upon information and belief, John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani purposefully withheld from the PTO the Summary Judgment R&R and Order's interpretation of the asserted claims of the '984 patent to overcome PTO's earlier rejection. Additionally, upon information and belief, Messrs. Grover, Jensen, Kesler, and Kiani purposefully did not correct the PTO's interpretation of the asserted claims of the '984 patent after learning that the PTO had confirmed the claims based on the interpretation of those claims

rejected by the Court.  Upon information and belief, the failure to inform the PTO and failure to correct the PTO by Messrs. Grover, Jensen, Kesler, and Kiani was done with the intent to deceive the PTO.

> ### v.   The Failure by John M. Grover, Stephen C. Jensen, Jarom Kesler And Joe. E. Kiani  to Correct the PTO After Learning the PTO Confirmed the Asserted Claims of the '984 Patent Based on an Interpretation of the Claims Inconsistent with the Summary Judgment R&R's and Order's Interpretation of the Asserted Claims was Affirmative Egregious Misconduct

437.     The failure by Messrs. Grover, Jensen, Kesler, and Kiani to correct the patent examiner after Philips pointed out the examiner's erroneous interpretation of the claims rises to the level of "affirmative egregious misconduct."  As discussed above, the day after the PTO issued the NIRC, Masimo filed its Statement of Recent Decision touting the PTO's confirmation of the claims.  *See* D.I. 783.  Philips then filed a letter with the Court specifically noting "that the PTO's Decision was based on a construction of the asserted claims urged by Masimo on March 25, 2013 and **rejected** by the Court one week later on April 2, 2013."  *See* D.I. 789 at 1.  Thus, Philips noted, "the PTO's Decision is a finding that is contradictory to this Court's claim construction."  *Id.*  Twenty-seven (27) days passed between the time the PTO issued the NIRC to the time it issued the '984 Patent Certificate.  During that time, despite Philips letter informing Masimo of the PTO's inconsistent claim interpretation, upon information and belief, Messrs. Grover, Jensen, Kesler, and Kiani made no effort to inform the PTO that the basis for its confirmation of the asserted claims of the '984 Patent had been rejected by the Court in the Summary Judgment R&R and Order.

### C.   The '984 Patent is Unenforceable for Inequitable Conduct During Reexamination Proceedings of the '984 Patent

438.     Accordingly, on information and belief and in light of the allegations in paragraphs 382-437 above, the '984 Patent is unenforceable due to inequitable conduct

committed by John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani during the '984 Reexamination.

439.     Based on the foregoing, Philips Electronics seeks a declaratory judgment that the '984 patent is unenforceable due to inequitable conduct.

440.     This case qualifies as an exceptional case under 35 U.S.C. § 285.

## COUNTERCLAIM 44:  DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '272 PATENT, '850 PATENT, '222 PATENT, 917 PATENT, 060 PATENT, '958 PATENT, '741 PATENT AND '154 PATENT

441.     Philips Electronics repeats and realleges Paragraphs 110-440 above as if fully set forth herein.

442.     Based on the inequitable conduct committed by Messrs. John M. Grover, Stephen C. Jensen, Jarom Kesler and Joe. E. Kiani during the '984 Reexamination, any and all patents or patent applications that are in the same patent family and claim the same priority date as the '984 patent are also unenforceable due to inequitable conduct under the doctrine of infectious unenforceability. *See, e.g., Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir. 1990). The basis to extend unenforceability to other patents in the same patent family as the '984 Patent is particularly strong here as this is the second time Masimo, and Mr. Jensen in particular, has committed inequitable conduct with respect to patents in the same family by failing to inform the PTO of significant related District Court activity.

443.     Each of the '272 Patent, '850 Patent, '222 Patent, '917 Patent, '060 Patent, '958 Patent, '741 Patent and '154 Patent are related to the '984 Patent. Each of the patents recited herein claims priority to one or more of the same parent applications and/or patents. Thus each of these patents is in the same patent family and/or claim the same priority date as the '984 Patent.

444.     Based on the foregoing, Philips seeks declaratory judgment that each of the '272 Patent, '850 Patent, '222 Patent, '917 Patent, '060 Patent, '958 Patent, '741 Patent and '154 Patent are also unenforceable due to inequitable conduct.

445.     This case qualifies as an exceptional case under 35 U.S.C. § 285.

**PRAYER FOR RELIEF ON PHILIPS ELECTRONICS' COUNTERCLAIMS**

WHEREFORE, Philips Electronics prays for the following relief:

A.     deny any and all relief requested by Masimo, as set forth in the Complaint and dismiss the Complaint with prejudice;

B.     enter judgment that Masimo infringes the '165, '791, '550, '786, '233, '588 '535, '074 and '745 patents;

C.     declare that Philips Electronics does not infringe the '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents;

D.     declare that the '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents are invalid;

E.     declare that the '272, '952, '850, '222, '065, '917, '194, '060, '028, '984, '958, '741, '154, and '949 patents are unenforceable;

F.     award Philips Electronics a permanent injunction restraining Masimo, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, from further infringement of the '550, '786, '233, '588 '535, '074 and '745 patents;

G.     award Philips Electronics damages from Masimo adequate to compensate for Masimo's infringement, including interest and costs;

H.     award Philips Electronics treble damages as a result of Masimo's willful infringement of the '165, '535, '074, '786, and '588 patents;

I.     declare that Masimo has violated the Antitrust laws;

J.      award Philips Electronics the damages to which it is entitled under the Antitrust laws, including treble damages, costs, and attorneys fees pursuant to 15 U.S.C. § 15(a);

K.      enjoin Masimo from engaging in the anticompetitive conduct alleged herein;

L.      declare this case to be exceptional and award Philips Electronic its reasonable attorneys fees and costs; and

M.      grant Philips Electronics such other relief as this Court deems just and proper.

**JURY DEMAND**

Philips requests a jury trial for those issues so triable herein.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel:  (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated:  September 3, 2014
1153791/33976

By:  */s/ David E. Moore*
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com
     bpalapura@potteranderson.com

*Attorneys for Philips Electronics North America
Corporation and Philips Medizin Systeme
Böblingen GmbH*