# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

———

(302) 658-9200
(302) 658-3989 fax

Julia Heaney
(302) 351-9221
(302) 425-3004 fax
jheaney@mnat.com

Original Filing Date: September 3, 2014
Redacted Filing Date: September 10, 2014

"""""""""TGFCEVGF
RWDNKE'XGTUKQP

The Honorable Judge Leonard P. Stark
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re: *Masimo Corp. v. Philips Elecs. N. Am. Corp. et al.,* C.A. No. 09-080 (LPS)

Dear Chief Judge Stark:

In accordance with this Court's Order at the August 28, 2014 Pretrial Conference, Masimo addresses below: (1) Philips' failure to pursue an indirect infringement claim; (2) Philips' lack of standing to seek pre-assignment damages; and (3) the scope of Phase I.

### I.  Philips' Failure to Pursue Any Indirect Infringement Claim

When preparing the joint pretrial papers, Masimo was surprised to learn that Philips wants to prove that Masimo indirectly infringed Claims 1 and 5 of the '074 Patent. Masimo had sought years ago to learn if Philips was asserting an indirect infringement theory on the '074 Patent. Specifically, in September 2009, Masimo served its Interrogatory No. 6 that requested Philips to identify "whether such alleged infringement by the Masimo product is direct, contributory, or induced." Ex. 1 at 27. In response, Philips merely identified accused products and said nothing about Masimo allegedly inducing or contributing to another's infringement. *Id*. In fact, despite supplementing its response to Interrogatory No. 6 *eight times* over four years of discovery, Philips never once alleged that Masimo indirectly infringed the '074 Patent. *Id.* at 27-45. Moreover, none of Philips' experts ever opined on indirect infringement, or even referenced the legal standard for such a claim.

Philips' failure to pursue any indirect infringement claim cannot be excused as an inconsequential oversight. Unlike direct infringement, indirect infringement requires much more than simply making and selling a product. Induced infringement requires that (1) there is direct infringement, and that Masimo (2) knew of the '074 Patent and (3) encouraged another to engage in acts Masimo knew infringed the '074 Patent, or (4) was willfully blind to that infringement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068-69 (2011). Contributory

infringement requires that (1) there is direct infringement, (2) Masimo had knowledge of the '074 Patent, (3) Masimo's products have no substantial non-infringing uses, and (4) Masimo's products constitute a material part of the invention of the '074 Patent. *See Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Here, Philips identified no indirect infringement, let alone the facts relevant to those infringement theories. Ex. 1 at 27-45. Indeed, Philips never alleged that Masimo intended to cause others to infringe. Nor did it identify the acts Masimo knew would cause another to directly infringe the '074 Patent, or who that other entity was. At the Pretrial Hearing, Philips' counsel merely argued that Philips had evidence of **Masimo's** direct infringement. Ex. 2 at 58:2-16. However, because Claims 1 and 5 are method claims, any indirect infringement requires that a third party, not Masimo, directly infringe by performing the claimed method. *See, e.g., RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1268 (Fed. Cir. 2003).

At the Pretrial Conference, Philips argued that it preserved indirect infringement merely because it appears in Philips' counterclaims. Ex. 2 at 58:24-59:3. But merely alleging indirect infringement in a pleading does not preserve the claim. *See Cytyc Corp v. TriPath Imaging, Inc.*, 505 F. Supp. 2d 199, 213 (D. Mass. 2007) (excluding indirect infringement theory mentioned in pleading because patentee "made no mention of it in its interrogatory responses or expert reports and [defendant] has had no fact or expert discovery on this issue"); *see also Lucent Techs. Inc. v. Gateway, Inc.*, No. 02-CV-2060-B(CAB), 2007 WL 925502, at *3 (S.D. Cal. Mar. 19, 2007) (excluding infringement theory not identified in interrogatory responses). Because Philips never pursued any indirect infringement theory, despite an interrogatory specifically asking about any such theory, Masimo would be prejudiced by having to now defend against such a theory. Thus, this Court should not allow Philips to cobble together an indirect infringement theory at trial.

## II.  Philips' Lack of Standing To Pursue Pre-Assignment Damages

At the Pretrial Conference, Philips incorrectly maintained that "when you transfer a patent that along with that patent comes the right to sue for past infringement." Ex. 2 at 57:9-15. The Supreme Court, however, has long held that "it is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment." *Moore v. Marsh*, 74 U.S. 515, 522 (1869). Where a patent assignment does not clearly transfer past damages, the assignee lacks standing to seek patent infringement damages from the period prior to the assignment. *Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454, 1458 (Fed Cir. 1998).

Here, on June 15, 2009, Philips Electronics North America Corp. ("Philips") filed its counterclaim against Masimo, asserting infringement of the '074 Patent. [REDACTED] This language does not transfer the right to sue for pre-assignment damages. *See Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 42 (1923) (language transferring "full title to the patent and its enjoyment" does not include past damages); *Arachnid Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1576 (Fed Cir. 1991) (language transferring "all of its right, title, and interest in and to" the patent does not include right to sue for past damages); *Messagephone, Inc. v. SVI Sys.*, No. 99-

1471, 2000 WL 1141046 *5 (Fed. Cir. Dec. 13, 2000) (language transferring "entire right, title, and interest" does not include past damages"). Because Philips Netherlands did not assign the right to sue for past damages, Philips does not have standing to assert the '074 Patent for any infringement before the assignment.

### III. The Scope of Phase I

The Court ordered the parties to try to "come to any kind of agreement and/or focus" "the disputes as to what should come in in Phase I." Ex. 2 at 117:22-118:3. Accordingly, Masimo sent Philips a detailed letter tentatively identifying eleven categories of evidence that Masimo contends are the proper subject of Phase I. Ex. 4. On September 2, 2014, the parties discussed the letter and Philips would not agree to three topics discussed below.

**Masimo's assertions of infringement against Philips.** Philips seeks to exclude evidence that Masimo asserted infringement against Philips during the parties' negotiations. But it makes no sense to exclude from *licensing* discussions the basic fact that Masimo was asserting infringement, which necessitated the need for the license. Doing so would severely distort Masimo's evidence and prejudice Masimo. For example, the jury might logically assume that Masimo engaged in numerous negotiations with Philips because Masimo was highly motivated to license its patents, decreasing the reasonable royalty. In fact, as shown by the evidence Philips seeks to exclude, Masimo was trying to *stop* infringement and maintain its patent monopoly. Philips' exclusion would thus prejudice Masimo with regard to *Georgia Pacific* factor number 5: "The commercial relationship between the licensor and licensee" and *Georgia Pacific* factor number 4: "The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention . . ." *Georgia–Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

Notably, Philips does not dispute that the parties' negotiations, in which Masimo made its infringement assertions, are relevant. Masimo listed "negotiations" as a separate topic in its letter, and Philips agreed that the parties' negotiations are a proper subject of Phase I. Ex. 4 at 7 (topic 8).[1] Philips' attempt to carve out Masimo's infringement assertions would result in an incomplete and confusing presentation of evidence. Indeed, Philips' proposal would illogically keep from the jury the basic facts regarding the dispute between the parties and the reason the parties were negotiating in the first place. Philips' proposal would exclude the truth regarding the parties' underlying dispute, in favor of a highly sterilized, fragmented and ultimately misleading presentation. That would hamper the jury's understanding of the facts.

Philips contends that Masimo's assertions of infringement should be precluded because Philips has conceded infringement. However, it is well established that a defendant "may not

---

[1] A reasonable royalty results from a hypothetical "negotiation." Here, the parties had numerous actual negotiations highly probative of what would occur during a hypothetical negotiation. *See, e.g., AVM Techs., Inc. v. Intel Corp*, 927 F. Supp. 2d 139, 146-47 (D. Del. 2013) (refusing to exclude testimony regarding "negotiations" with alleged infringer).

stipulate or admit his way out of the full evidentiary force of the case" as the plaintiff chooses to present it. *Old Chief v. United States*, 519 U.S. 172, 186 (1997); *see In re Gabapentin Patent Litig.*, MDL Docket No. 1384, 2011 WL 1807448 at *11 (D.N.J. May 12, 2011). The Third Circuit has cautioned that "[u]nduly sterilizing a party's trial presentation [because of a stipulation] can unfairly hamper her ability to shape a compelling and coherent exposition of the facts." *In re: Diet Drugs*, 369 F.3d 293, 314 (3d Cir. 2004). The Court should heed that caution and reject Philips' attempt to exclude evidence and disrupt Masimo's presentation at trial.

**Masimo's litigation with Nellcor**. Masimo's litigation with Nellcor provides important context for the chronology of the parties' dispute and Masimo's 2006 settlement agreement with Nellcor. Philips cannot argue this litigation is irrelevant to damages. ***Both*** parties' damages experts rely on the Nellcor settlement agreement as the basis for their damages calculations. While Masimo does *not* intend to argue or suggest that the jury should defer to prior decisions in the Nellcor litigation, the litigation itself is relevant to Masimo's damages claim. Indeed, both parties' damages experts discuss various details of the Nellcor litigation, explaining the circumstances that led to the agreement. Ex. 5 at ¶¶ 325-50; Ex. 6 at ¶¶ 73-74 & n.130. For example, Masimo's damages expert Wagner relies on Joe Kiani's testimony regarding these circumstances. Ex. 5 at ¶ 338. Philips' own damages expert Keeley also discusses the Nellcor litigation. *See, e.g.,* Ex. 6 at ¶¶ 73-74 & n.130. He even lists as materials "considered in forming [his] opinions," *id*. at 4, the Federal Circuit's decision, Nellcor expert reports, and all Nellcor trial transcripts. *Id*., Appx. C at 6-7, 30. The Nellcor litigation is a proper topic for Phase I.

Philips acknowledges the relevance of the Nellcor litigation, as it must. But it seeks to limit that topic to a few abstract propositions, namely that there was such a lawsuit, and that it resulted in findings of infringement and validity. That excludes a large amount of relevant evidence, including evidence relied on by both parties' damages experts. Indeed, Masimo's litigation with Nellcor impacted the chronology and content of the parties' negotiations. Moreover, the Nellcor litigation impacted the pulse-oximetry industry as a whole and increased the value of Masimo's technology. All of this is relevant to the hypothetical negotiation.

In addition, exclusion would deprive the jury of the history and circumstances of the Nellcor settlement agreement, which is the focal point of both parties' damages calculations. Where a settlement agreement is at issue in a damages case, "the litigation that led to the settlement" is relevant to damages. *AVM Techs.,* 927 F. Supp. 2d at 143, 245. Here, the parties' experts discussed much more than just the findings of infringement and invalidity in the abstract. Ex. 5 at ¶¶ 337-50; Ex. 6 at ¶¶ 73-74 & n.130. And, pursuant to the agreed-upon jury instructions, the jury "may consider any relevant fact in determining the reasonable royalty for the use of a patented invention . . . ." (D.I. 846 at 77.)

If Philips contends specific evidence is unduly prejudicial, the Court should resolve such objections at trial. The "process of evidentiary balancing is nuanced and contextual. For that reason, excluding evidence under Fed R. Evid. 403 at the pretrial stage is an extreme measure." *In re: Diet Drugs*, 369 F.3d at 314. As Philips stated at the Pretrial Conference: "If there is a desire on Masimo's part [to use the Nellcor litigation at trial], which we don't agree is appropriate, we can deal with it then." Ex. 2 at 80:22-23. This Court also observed that "there are going to be very specific disputes [regarding the Nellcor litigation] that I am only going to be able to rule on at trial." *Id.* at 81:4-6. The Court should not preemptively exclude nearly all

evidence of the Nellcor litigation, as Philips proposes, without the context of specific evidence, witnesses and testimony.

**Philips' copying, hiding its use of Masimo's inventions, and misrepresentations.** Any copying by Philips of Masimo's patented inventions is strong evidence of the value of those inventions and the demand for those inventions. *See, e.g., Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2014 WL 549324, at *5 (N.D. Cal. Feb 7, 2014) (evidence that infringer studied and adopted features of patents-in-suit was relevant to demand). Moreover, evidence that Philips concealed and misrepresented its use of Masimo's inventions is also extremely probative of the importance and value of those inventions. Such evidence supports that Philips went to great efforts to avoid ceasing its use of Masimo's technology, showing that Philips simply had to have Masimo's pioneering technology. *See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 936 F. Supp. 2d 30, 82 (D. Conn. 2013) (defendant's "need" for the patent and "the value of the patented technology" relevant to hypothetical negotiation).

Philips cannot dispute that such evidence is relevant to a hypothetical negotiation. Such evidence is relevant to the *Georgia Pacific* factors, including "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." *Georgia–Pac. Corp.*, 318 F. Supp. at 1120. Indeed, *Georgia Pacific* itself involved similar facts: "Noteworthy is the fact that . . . GP deliberately **decided to duplicate** Weldtex . . .." *Id.* at 1123 (emphasis added). "The very circumstance that GP decided to manufacture and sell infringing striated fir plywood reflects its sanguine view that this was a **profitable item** despite the almost certain litigation that would ensue." *Id.* at 1126 (emphasis added).

Such evidence also undermines Philips' contention that there were acceptable non-infringing alternatives to Philips' infringement. Rather than switch to a purportedly readily available non-infringing alternative, Philips copied Masimo's inventions and went to great lengths to hide that copying from Masimo. *See, e.g., AMP Inc. v. Lantrans, Inc.*, No. CV 90-1525-DWW (JRX), 1991 WL 253796, at *7 (C.D. Cal. Nov. 7, 1991) (copying supports an absence of acceptable noninfringing alternatives). Philips' copying also provides a causal connection for lost profits damages. Where an "infringing product is an identical copy, or a virtually identical copy of the commercial version of the patented invention," it is "reasonable to infer that the patentee probably would have made the sale but for the infringing sale." *AMP Inc.*, 1991 WL 253796, at *6. Thus, Masimo's copying evidence is relevant to Masimo's damages claims and is the proper subject of Phase I.

                                                Respectfully,

                                                */s/ Julia Heaney*

                                                Julia Heaney (#3052)

JH:lh
Enclosures
cc:     Clerk of Court (By Hand Delivery)