IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MASIMO CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 09-80 (LPS) |
| v. ) | |
| ) | |
| PHILIPS ELECTRONICS NORTH ) | |
| AMERICA CORPORATION and PHILIPS ) | |
| MEDIZIN SYSTEME BÖBLINGEN GMBH, ) | |
| ) | |
| Defendants. ) | |

**PRELIMINARY JURY INSTRUCTIONS**

1. **INTRODUCTION**

    Members of the jury:

    Now that you have been sworn, I have the following preliminary instructions for guidance on your role as jurors in this case.

2. **THE PARTIES AND THEIR CONTENTIONS**

    Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

    You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States. The parties in this case are the plaintiff, Masimo Corporation, which I will refer to as "Masimo," and the Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH, which I will refer to together as "Philips." Both Masimo and Philips manufacture and sell medical devices, including pulse oximetry devices that are the

1

subject of this lawsuit.

Masimo is the owner of United States Patent No. 6,263,222 and United States Patent No. 7,215,984. The attorneys and witnesses may sometimes refer to these patents collectively as the "Masimo Patents." For convenience, patents are usually referred to by the last three digits of their patent number. For example, United States Patent No. 6,263,222 may be referred to as "the '222 Patent." Masimo alleged that Philips infringed two claims of the '222 Patent and thirteen claims of the '984 Patent. The attorneys and witnesses may refer to these claims collectively as the "Masimo Claims." Masimo alleged that Philips infringed the Masimo Claims because Philips made, used, sold, and/or offered for sale pulse oximetry products with the "FAST" algorithm.

Philips has agreed that its FAST algorithm infringes each of the Masimo Claims. However, Philips contends that the Masimo Claims are invalid. To fulfill your duty as jurors, you must decide whether Claims 17 and 18 of the '222 Patent and Claims 1-5, 15-16, 19-20, 22 and 52-54 of the '984 Patent are invalid. Each individual claim must be considered separately to determine whether any particular claim is invalid.

Philips also is the owner of United States Patent No. 6,725,074. The attorneys and witnesses may sometimes refer to this patent as the "Philips Patent," or "the '074 Patent." Philips alleges that Masimo infringes two claims of the '074 patent, which the attorneys and witnesses may refer to as the "Philips Claims."

Philips contends that Masimo infringes the Philips Claims because Masimo makes, uses, sells, or offers for sale pulse oximetry products with Signal IQ, a feature of certain Masimo SET pulse oximeters. The attorneys and witnesses may refer to these products as the "Accused Masimo Products."

Masimo contends that it has not infringed the '074 Patent because the Accused Masimo Products do not meet the limitations of the Philips Claims. To fulfill your duty as jurors, you must decide whether Claims 1 and 5 of the '074 Patent have been infringed.

I will instruct you as to infringement and defenses to a charge of infringement in my instructions to you at the close of the evidence.

### 3. DUTY OF THE JURY

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

You are the judges of the facts. I will decide which rules of law apply to this case.

Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

### 4. EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses, and documents and other things admitted into evidence. In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

(1) Statements, arguments, and questions by lawyers are not evidence.

(2) Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence

3

are not admissible under the rules of evidence. You should not be influenced by a lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection and find the matter is not admissible, you should ignore the question or document. If I overrule an objection and allow the matter into evidence, you should treat the testimony or document like any evidence. If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only. If this does occur during the trial I will try to clarify this for you at that time.

(3) Anything you see or hear outside the Courtroom is not evidence and must be disregarded. You are to decide this case solely on the evidence presented here in the Courtroom.

In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

## 5. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining outside.

It is your job to decide how much weight to give the direct and circumstantial evidence.

The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 6. BURDEN OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

The parties are accusing each other of patent infringement. Masimo and Philips are each the "patent holder" with respect to their own patents and the "accused infringer" with respect to each other's patents. The patent holder has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of the evidence. That means that the patent holder has to produce evidence which, when considered in light of all of the facts, leads you to believe that what they claim is more likely true than not. To put it differently, if you were to put the evidence of each party concerning infringement on opposite sides of a scale, the evidence supporting the patent holder's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the accused infringer, you must find for the accused infringer.

In this case, in addition to denying infringement, Philips contends that Masimo's patents are invalid. The accused infringer has the burden of proving that the patents asserted against them are invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.

Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Those of you familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Masimo or Philips have met their burden of proof.

### 7. PATENT VIDEO

Before I describe the parties' contentions further, at this time, we are going to show a 17-minute video that will provide background information to help you understand what patents are, why they are needed, the role of the Patent Office, and why disputes over patents arise. This video was prepared by the Federal Judicial Center, not the parties in this case, to help introduce you to the patent system. During the video, reference will be made to a sample patent. A copy of this patent has been given to you in your jury binder so that you may follow along with the video.

[The video will be played.]

### 8. GENERAL GUIDANCE REGARDING PATENTS

I will now give you a general overview of what a patent is and how one is obtained. You may have heard some of this in the patent video we just watched.

#### A. CONSTITUTIONAL BASIS FOR PATENT GRANT

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and useful arts, by securing, for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

#### B. EXCLUSIONARY RIGHT AND TERM OF A PATENT

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents. Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.

A person who, without the patent owner's authority, makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a patent, infringes the patent. A person also can induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement. This is called inducing infringement. A person also can contribute to another's infringement of a patent, which is called contributory infringement.

#### C. THE PARTS OF A PATENT

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms I will use in this description are contained in a "Glossary of Patent Terms" that I have given to you along with a copy of these preliminary

7

instructions. I will read this Glossary to you and you should also feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter of the patent pertains.

Under the Patent Laws, the Patent Office examines patent applications and issues patents. A person applying for a patent must include a number of matters in his or her application, including (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; and (2) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent Office, it is assigned to an examiner, who examines the application, including the claims, to ascertain whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Documents found in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched.

The compilation of the papers concerning the proceedings before the Patent Office is

called the "prosecution history," "file wrapper," or "file history." The Patent Office does not have its own laboratories or testing facilities. The examiner may "reject" the patent application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art, the examiner concludes that the claims presented by the applicant patentably define the applicant's claimed invention over the most relevant known prior art, the application is granted a U.S. Patent.

### D.  INFRINGEMENT DISPUTES AND INVALIDITY

The PTO and its examiners do not decide infringement issues. If there is a dispute about infringement, it is brought to the Court to decide. Here, you also are asked to decide about validity, that is, whether the patent should have been allowed by the PTO. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or nonobvious in light of the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

### 9.  SUMMARY OF PATENT ISSUES

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will not need to decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean.

The word "claims" is a term of art and I will instruct you on its meaning at the end of the trial. Meanwhile, you will find a definition in the Glossary attached to these preliminary

instructions.

Because Philips is no longer contesting that it has infringed each of the Masimo patents, you are presently being asked to decide:

1. Whether Philips has proven by clear and convincing evidence that one or more of the asserted claims of the '222 Patent and the '984 Patent are invalid;

2. What damages, if any, Masimo is entitled to receive from Philips;

3. Whether Philips has proven by a preponderance of the evidence that Masimo infringed one or more of the asserted claims of the '074 Patent;

4. Whether Masimo has proven by clear and convincing evidence that one or more of the asserted claims of the '074 Patent are invalid; and

5. What damages, if any, Philips is entitled to receive from Masimo.

## 10. CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about the case, bring the matter to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your

own.

Let me elaborate. During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or any other electronic means. Also, should there happen to be a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. It is important that you decide this case based solely on the evidence presented in the courtroom. Please do not try to find out information from any other sources.

I know that many of you use cell phones, tablets, the internet, and other tools of technology. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone or post any information about the case on or through your cell phone, through e-mail, your tablet, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, MySpace, LinkedIn, and YouTube.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impressions of witnesses, or other things related to the proceedings. A word of caution is in order. There is generally, I think, a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light

of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Also, keep in mind that you will not have a transcript of the testimony to review. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

In addition, please make sure that note taking does not distract you from your tasks as jurors. You must listen to all the testimony of each witness. You also need to decide whether and how much to believe each witness. That will require you to watch the appearance, behavior, and manner of each witness while he or she is testifying. You cannot write down everything that is said and there is always a fear that a juror will focus so much on note taking that he or she will miss the opportunity to make important observations. If you do take notes, you must leave them in the jury deliberation room, which is secured at the end of each day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. I also ask that you wear your juror identification tags where people can see them, so persons involved in the case don't accidentally engage you in conversation. Even if it is innocent conversation, it might draw into question your impartiality. So please make sure that people can identify you as jurors in the case.

11. **SIDEBAR**

During the trial, it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference, which is also called a sidebar. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, feel free to stand up and stretch and walk around the jury box, if you wish.

I may not always grant an attorney's request for a sidebar. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

12. **COURSE OF THE TRIAL**

The trial will now begin. First, each side may make an opening statement. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, Masimo will present its witnesses, and Philips may cross-examine them. Then Philips will present its witnesses, and Masimo may cross-examine them. Masimo will then be allowed to present additional witnesses, and Philips will cross-examine them. Finally, Philips will present additional witnesses, and Masimo will cross-examine them.

After all the evidence is presented, the attorneys will make their closing arguments to

summarize and interpret the evidence for you, and I will give you instructions on the law and describe for you the matters you must resolve. I will give you a copy of those final instructions. You will then retire to the jury room to deliberate on your verdict.

### 13. TRIAL SCHEDULE

Though you may have heard me say this during voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 10 days to try. We will normally begin the day at 9:00 A.M. We will go until around 12:30 P.M. and, after a 30 minute break for lunch, from about 1:00 P.M. to 4:30 P.M. There will be a fifteen minute break in the morning and another fifteen minute break in the afternoon. If you need a break at some additional time – perhaps to use the restroom, or perhaps because you are feeling drowsy – you should try to get my attention or my staff's attention by waving or standing, and we'll do our best to accommodate you.

One significant exception to our schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 4:30 P.M.

As I also mentioned, there will be other exceptions to this schedule, given other commitments I have as well as the upcoming Jewish holiday of Rosh Hashanah. Here is the schedule I expect us to follow:

(a) Tuesday, Wednesday, Thursday, Sept. 16-18: 9 a.m. until 4:30 p.m.

(b) Friday, Sept. 19: 9 a.m. until 3:30 p.m.

(c) Monday, Sept. 22: 9 a.m. until 4:30 p.m.

(d) Tuesday, Sept. 23: 1:30 p.m. until 4:30 p.m.

(e) Wednesday, Sept. 24, 9 a.m. until 3:00 p.m.

(f) Thursday and Friday, Sept. 25-26: no trial

(g) Monday, Sept. 29: 9 a.m. until 4:30 p.m.

(h) Tuesday, Sept. 30: 10 a.m. until 4:30 p.m.

(i) Wednesday, Oct. 1: 11 a.m. until 4:30 p.m.

(j) Thursday, Oct. 2: 10 a.m. until 4:30 p.m.

(k) Friday, Oct. 3: 9 a.m. until 12:00 p.m.

Finally, please understand that this is a timed trial. That means the Court has allocated to each party a maximum number of hours in which to present all portions of its case. This allows me to assure you that we expect to be completed with this case by no later than October 3. Of course, to keep on schedule, it is important that you be here promptly each morning and be ready at the end of each of our scheduled breaks.

## GLOSSARY OF PATENT TERMS

**Applicants**

The named inventors who are applying for the patent.

**Assignment**

Transfer of ownership rights in a patent or patent application from one person or company to another.

**Claims**

That part of a patent which defines the metes and bounds of the invention. These are found at the end of the patent specification in the form of numbered paragraphs.

**Disclosure or description**

The part of the patent specification which explains how the invention works and usually includes a drawing.

**Elements / limitations**

The required parts of a device or the required steps of a method as set forth in a patent claim. A device or method infringes a patent if it contains each and every element of a patent claim.

**File wrapper / File history**

The written record of proceedings in the U.S. Patent and Trademark Office ("Patent Office" or "PTO") including the original patent application and subsequent communications between the Patent Office and the applicant.

**Ordinary skill in the art**

The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent application**

The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, claims, and the oath (Declaration) of the applicant.

**Patent Examiners**

Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and disclosure adequately describes the invention.

**Prior art**

Any information that is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to his/her application.

**Prior art reference**

Any item of prior art (publication, patent or product) used to determine patentability.

**Specification**

The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do.