IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80 (LPS) |
| v. | ) | |
| | ) | |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION and PHILIPS | ) | |
| MEDIZIN SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

## CORRECTED JOINT [PROPOSED] FINAL JURY INSTRUCTIONS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiff Masimo Corporation*

POTTER ANDERSON & CORROON LLP
Richard L. Horwitz (#2246)
David E. Moore (#3983)
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants
Philips Electronics North America
Corporation and Philips Medizin Systeme
Böblingen GMBH*

September 28, 2014

# TABLE OF CONTENTS

**Page**

1.0   GENERAL INSTRUCTIONS – END OF TRIAL …………………………………..1

1.1   INTRODUCTION………………………………………………………………….1

1.2   DUTY OF THE JURY………………………………………………………………..2

1.3   EVIDENCE DEFINED…………………………………………………………………3

1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE……………………………………5

1.5   CONSIDERATION OF EVIDENCE ……………………………………………..6

1.6   STATEMENTS OF COUNSEL……………………………………………….. 7

1.7   CREDIBILITY OF WITNESSES ………………………………………………… .8

1.8   NUMBER OF WITNESSES …………………………………………… 10

1.9   EXPERT WITNESSES …………………………………………………………..11

1.10  DEPOSITION TESTIMONY ……………………………………………………12

1.11  DEMONSTRATIVE EXHIBITS …………………………………………………...13

1.12  BURDENS OF PROOF ……………………………………………………………14

1.13  USE OF NOTES …………………………………………………………………16

2.0   THE PARTIES AND THEIR CONTENTIONS ………………………………………17

2.1   THE PARTIES ……………………………………………………………………17

2.2   THE PARTIES' CONTENTIONS …………………………………………………..18

2.3   SUMMARY OF ISSUES …………………………………………………………19

2.4   STIPULATION …………………………………………………………………20

2.5   THE PATENT LAWS …………………………………………………………..22

3.0   PATENT INFRINGEMENT ……………………………………………………23

3.1   INFRINGEMENT OF PATENT CLAIMS ………………………………………..23

3.2     CLAIM CONSTRUCTION FOR THE CASE ………………………………………24

3.3     INDEPENDENT AND DEPENDENT CLAIMS ………………………………………27

3.4     OPEN ENDED OR "COMPRISING" CLAIMS………………………………………… 28

3.5     PATENT INFRINGEMENT GENERALLY ………………………………………..…… 29

3.6     DIRECT INFRINGEMENT – LITERAL INFRINGEMENT ………………………… 30

3.7     INDIRECT INFRINGEMENT –  INDUCING PATENT INFRINGEMENT ………… 31

3.8     INDIRECT INFRINGEMENT –  CONTRIBUTORY INFRINGEMENT …………….33

4.0     PATENT INVALIDITY …………………………………………………………………..34

4.1     ANTICIPATION – GENERALLY …………………………………………………………35

4.2     ANTICIPATION – PREVIOUSLY KNOWN OR PUBLISHED ……………………..36

4.3     OBVIOUSNESS …………………………………………………………………………..37

4.4     OBVIOUSNESS – SCOPE AND CONTENT OF THE PRIOR ART …………………39

4.5     DIFFERENCES BETWEEN THE CLAIMED INVENTION
        AND THE PRIOR ART....…………………………………………………………………40

4.6     OBVIOUSNESS – LEVEL OF ORDINARY SKILL …………………………………43

4.7     OBVIOUSNESS – OBJECTIVE CRITERIA CONCERNING
        NON-OBVIOUSNESS …………………………………………………………………44

4.8     WRITTEN DESCRIPTION …………………………………………………………46

4.9     INDEFINITENESS …………………………………………………………………..49

4.10    ENABLEMENT …………………………………………………………………...51

5.0     PATENT DAMAGES…………………………………………………………………… 54

5.1     PATENT DAMAGES GENERALLY …………………………………………………54

5.2     DATE PATENT DAMAGES BEGIN AND END [AGREED PORTION] ……………56

5.3     METHODS FOR COMPUTING PATENT DAMAGES ………………………………57

5.4     PATENT LOST PROFITS – BUT-FOR TEST …………………………………………...58

5.5     PATENT LOST PROFITS FROM LOST SALES (PANDUIT FACTORS) …………..59

5.6     LOST PROFITS – DEMAND …………………………………………………..60

5.7     LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES…………… 61

5.8     LOST PROFITS – MARKET SHARE ………………………………………………63

5.9     LOST PROFITS – CAPACITY ……………………………………………….64

5.10    COLLATERAL SALES – CONVOYED OR DERIVATIVE SALES ……………..65

5.11    LOST PROFITS – DOUBTS RESOLVED AGAINST INFRINGER………………… 66

5.12    REASONABLE ROYALTY – DEFINITION …………………………………………67

5.13    FACTORS FOR DETERMINING REASONABLE ROYALTY ……………………...68

5.14    REASONABLE ROYALTY – TIMING …………………………………………..71

5.15    PATENT DAMAGES INTEREST ………………………………………………...72

5.16    CLOSING STATEMENT – DAMAGES ……………………………………………73

6.0     DELIBERATION AND VERDICT …………………………………………………74

6.1     INTRODUCTION …………………………………………………………………74

6.2     UNANIMOUS VERDICT …………………………………………………………75

6.3     DUTY TO DELIBERATE…………………………………………………….. 77

6.4     SOCIAL MEDIA …………………………………………………………………78

6.5     DO NOT CONSIDER WHAT WILL HAPPEN AFTER TRIAL……………………… 79

6.6     COURT HAS NO OPINION …………………………………………………………80

**1.0    GENERAL INSTRUCTIONS – END OF TRIAL**

**1.1    INTRODUCTION[1]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

I will explain some rules that you must use in evaluating particular testimony and evidence.

I will then explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have your written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[1] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.1).

## 1.2     DUTY OF THE JURY[2]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[2] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.2).

### 1.3     EVIDENCE DEFINED[3]

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to, which I read to you at the beginning of this case, just after the opening statements.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must follow my orders and completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must follow my instructions to completely disregard such things you saw or heard, and completely ignore those things struck from the record.  Do not even

---

[3] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.3).

think about them.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE[4]

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[4] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.4).

## 1.5     CONSIDERATION OF EVIDENCE[5]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[5] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.5).

### 1.6      STATEMENTS OF COUNSEL[6]

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

---

[6] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.6).

## 1.7 CREDIBILITY OF WITNESSES[7]

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony. If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was

---

[7] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.7).

simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

## 1.8    NUMBER OF WITNESSES[8]

One more point about the witnesses.   Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based on the number of witnesses who testified.   What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.   Concentrate on that, not the numbers.

---

[8] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.8).

### 1.9      EXPERT WITNESSES[9]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

---

[9] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.9).

## 1.10    DEPOSITION TESTIMONY[10]

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.  The deposition may also be recorded on videotape.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition.  If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony.  However, the parties and the Court have conferred regarding what portions of deposition videos are to be played.  You should therefore not attribute any significance to the fact that deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

---

[10] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.10).

## 1.11   DEMONSTRATIVE EXHIBITS[11]

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  During the course of this case you have seen some exhibits (including charts and animations) that the parties used to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," may not have been offered and admitted as evidence in this case.  If they have not been admitted, they should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial.  You may use these charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them only such weight as you think they deserve.

---

[11] *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 1.11).

### 1.12    BURDENS OF PROOF[12]

Masimo has accused Philips of infringing two Masimo patents.  Philips now concedes that it has infringed, literally and under the doctrine of equivalents, both of Masimo's patents, directly and indirectly.   Philips has accused Masimo of infringing one Philips patent, and Masimo contests that accusation.  Philips has the burden of proving its infringement claims by what is called a preponderance of the evidence.  Preponderance of evidence means that a party has to produce evidence which, when considered in light of all of the facts, leads you to believe that what they claim is more likely true than not.  To put it differently, if you were to put the evidence of each party **[MASIMO—"concerning infringement"]** on opposite sides of a scale, the evidence supporting the claim of **[MASIMO—"Philips"] [PHILIPS—"the party with the burden of proof"]** must make the scales tip somewhat on its side.  If the scale should remain equal or tip in favor of **[MASIMO—"Masimo"] [PHILIPS—"the party without the burden of proof"]**, you must find for **[MASIMO—"Masimo"] [PHILIPS—"the party without the burden of proof on the issue"]**.

In addition, both parties need to prove the amount of its money damages, if any, by a preponderance of the evidence.

In this case, Philips contends that the asserted claims of the Masimo Patents are invalid. Philips has the burden of proving that the asserted claims of the Masimo patents are invalid by clear and convincing evidence.   Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

---

[12] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.11).

Those of you familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Masimo or Philips have met their burden of proof.

### 1.13    USE OF NOTES[13]

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  You should not be overly influenced by your notes or those of your fellow jurors. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[13] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 1.12).

## 2.0    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES[14]

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The Plaintiff is Masimo Corporation, which I will refer to as "Masimo."

Masimo is the owner of United States Patent No. 6,263,222 and United States Patent No. 7,215,984.  I will refer to those patents as the '222 Patent and the '984 Patent, respectively, or collectively as the "Masimo Patents."

The Defendants are Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GMBH.  When I refer to the Defendants collectively, I will refer to them together as "Philips."

Philips also is asserting a counterclaim of patent infringement against Masimo based on its own patent.  Philips is the owner of United States Patent No. 6,725,074.  I will refer to that patent as the '074 Patent or the "Philips Patent."

Philips is also the counterclaim plaintiff and Masimo is the counterclaim defendant.

---

[14] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 2.1).

**2.2      THE PARTIES' CONTENTIONS**[15]

Philips agrees that it infringed Claims 17 and 18 of the '222 Patent and Claims 1-5, 15-16, 19-20, 22 and 52-54 of the '984 Patent, so you will not be asked to address infringement of those claims.   I will refer to these claims collectively as the "Masimo Claims."   However, Philips contends that the Masimo Claims are invalid.

Philips also is asserting a counterclaim of patent infringement against Masimo based on its own patent.   Philips contends that Masimo infringes Claims 1 and 5 of the '074 Patent.   I will refer to these claims collectively as the "Philips Claims."   Masimo denies that it has infringed the Philips Claims.

---

[15] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 2.2).

### 2.3     SUMMARY OF ISSUES[16]

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  The issues you must decide are as follows:

1.     Whether Philips has proven by clear and convincing evidence that any of Claims 17 or 18 of the '222 Patent or Claims 1-5, 15-16, 19-20, 22 or 52-54 of the '984 Patent are invalid.

3.     What damages, if any, Masimo is entitled to receive from Philips.

4.     Whether Philips has proven by a preponderance of the evidence that Masimo infringed Claims 1 and 5 of the '074 Patent.

5.     What damages, if any, Philips is entitled to receive from Masimo.

---

[16] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 3.1).

### 2.4 STIPULATION

A stipulation of fact is an agreement between the parties that a certain fact is true.

**[MASIMO—" During the course of the trial:  Philips has admitted that it directly and indirectly infringed all of the Masimo asserted patent claims, both literally and under the doctrine of equivalents, under the meanings of the claim terms that have been included in your jury notebooks.  Those Masimo asserted patent claims are Claims 17 and 18 of the '222 Patent and Claims 1-5, 15-16, 19-20, 22 and 52-54 of the '984 Patent.**

**By the stipulation of literal infringement,  Philips admits its products containing the FAST algorithm include every requirement set forth in Masimo's asserted patent claims.**

**By the stipulation of infringement under the doctrine of equivalents, Philips admits that its products containing FAST are also at least equivalent to Masimo's asserted patent claims. This means that any differences between Masimo's asserted patent claims and the Philips products with  FAST are, at a minimum, insubstantial.  Another way to describe this is that Philips' products with FAST perform substantially the same function, in substantially the same way, to achieve substantially the same result, as the inventions set forth in Masimo's asserted patent claims.**

**By the stipulation of indirect infringement, Philips admits it knew about Masimo's asserted patent claims, and knowingly caused, urged or encouraged third parties to use its FAST algorithm in a manner that Philips specifically intended to cause infringement of Masimo's asserted patent claims.  The stipulation of indirect infringement also means Philips supplied its FAST algorithm to third parties knowing that it was especially made to be used in a manner that infringed Masimo's asserted patent claims, and that it had no**

substantial non-infringing use.   Because of these stipulations, you will not be asked to determine whether and how Philips infringed Masimo's patents."]

[PHILIPS—"Philips concedes that it has directly and indirectly infringed Claims 17 and 18 of the '222 Patent and Claims 1-5, 15-16, 19-20, 22, and 52-54 of the '984 Patent under the Court's claim construction and summary judgment orders.

Specifically, this concession includes that Philips' infringement has occurred literally and under the doctrine of equivalents for all the asserted claims. In addition, Philips' concession of indirect infringement includes induced infringement, and contributory infringement. The infringing acts include the making, using, selling, offering for sale, and importing of all products containing the FAST algorithm (and sensors used therewith). Philips concedes these infringing acts have been occurring continuously since the issuance of the two asserted patents."]

## 2.5     THE PATENT LAWS[17]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

---

[17] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 3.2).

**3.0**   **PATENT INFRINGEMENT**

**3.1**   **INFRINGEMENT OF PATENT CLAIMS**[18]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The claims of a patent are the numbered paragraphs at the end of the patent.  The claims are important because it is the words of the claims that define what a patent covers.  Only the claims of a patent can be infringed.  Each claim is a separate statement of the patented invention, and each of the asserted claims must be considered individually, comparing that claim to a particular product or method.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, I will explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims and you must accept my definitions of these words in the claims as correct.

It is your job to take these definitions and apply them to the issues you are deciding, such as infringement and validity.

---

[18] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 3.3).

### 3.2     CLAIM CONSTRUCTION FOR THE CASE[19]

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of claim terms.  You must use the meaning that I give you for each claim term to make your decision as to whether the claim is infringed or invalid, and you must apply the same meaning for purposes of both your infringement and your invalidity analyses.  You must ignore any different definitions used by the witnesses or the attorneys.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and validity.  For a claim term for which I have not provided you with a definition, you should apply the plain and ordinary meaning.  These issues are yours to decide.

I instruct you that the following claim terms have the following definitions:

The following words and groups of words from the '222 Patent claims have the following meanings:

1.      The term "motion" means "movement of body tissue which causes erratic noise, that, in the absence of a filter, would cause the ratio of red to infrared signals to not accurately reflect the arterial oxygen saturation."

2.      The term "without significant interference" means "the calculated oxygen saturation is accurate enough for the purposes of which the calculation is being employed."

3.      The term "signal processor" means "a device that processes an input or output signal."

---

[19] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 3.4).

The following words and groups of words from the '984 Patent claims have the following meanings:

1.      The term "motion" means "movement of body tissue which causes erratic noise, that, in the absence of a filter, would cause the ratio of red to infrared signals to not accurately reflect the arterial oxygen saturation."

2.      The term "significantly free of an influence" means "the calculated oxygen saturation is accurate enough for the purposes of which the calculation is being employed."

3.      **[MASIMO—"The term "a first calculator capable of" means "the ability of 'a first calculator' to 'determine at least a first ratio,' not that both the first and second calculators are required to actually calculate a physiological characteristic every time a calculation is performed" and the term "a second calculator capable of" means "the ability of 'a second calculator' to 'determine at least a second ratio,' not that both the first and second calculators are required to actually calculate a physiological characteristic every time a calculation is performed.""] [PHILIPS – "The term "calculator capable of" means "the ability of 'a first [or second] calculator' to 'determine at least a first ratio,' not that both the first and second calculators are required to actually calculate a physiological characteristic every time a calculation is performed.""]**

4.      The term "at least one of the one or more intensity signals" means "not all of the detected intensity signals are required to be used and, therefore, each calculator is not required to use the same intensity signals."

5.      The term "utilize at least one of the first and second calculators" "does not require the processing module to utilize both calculators . . . output from both calculators might be utilized by the processing module, but the claim does not include that requirement."

The following words and groups of words from the '074 Patent claims have the following meanings:

1.      The term "uncertain logic" means "logic that is non-binary."

2.      The term "fuzzy logic" means "multivalued (as opposed to binary) logic developed to deal with imprecise or vague data. Fuzzy logic allows for partial membership in a set, values between 0 and 1, shades of gray and maybe; it introduces the concept of the 'fuzzy set.'"

### 3.3     INDEPENDENT AND DEPENDENT CLAIMS[20]

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, for the Masimo Patents, Claim 17 of the '222 Patent, and Claims 1, 52, and 53 of the '984 Patent are independent claims.  For the Philips Patent, Claim 1 of the '074 Patent is an independent claim.

The remaining claims are dependent claims.  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements.  In this way, the claim "depends" on another claim or claims.  A dependent claim incorporates all of the requirements of the claims to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

---

[20] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 3.5).

### 3.4      OPEN ENDED OR "COMPRISING" CLAIMS[21]

The beginning portion, or preamble, of several of the asserted claims have the word "comprising."  The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that an accused product includes all of the elements of a particular claim, the fact that an accused product might include additional elements would not avoid infringement of the claim.

---

[21] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 3.6).

### 3.5     PATENT INFRINGEMENT GENERALLY[22]

I will now instruct you on the rules you must follow when deciding whether the party asserting infringement has proven by a preponderance of the evidence that the party accused of infringing has infringed the asserted claims.

Patent law gives the owner of a patent the right to keep others from making, using, selling, or offering to sell a patented product or perform a patented method within the United States during the term of the patent.  Any person or business entity that has made, used, sold, or offered to sell a patented product or performed the patented method in the United States during the term of the patent without the patent owner's permission, infringes the patent, so long as the patent is not found to be invalid.

To prove infringement, the party asserting infringement must prove by a preponderance of the evidence that each accused product or method, standing alone, contains each and every one of the elements of the patent claim that is asserted against that product or method.  If a particular product or method does not contain each and every element of the claim, you must find that the product or method does not infringe.

If, as here, a patent owner asserts multiple patent claims against the same product or method, then you must compare each claim separately against the product or method to determine whether the product or method infringes that individual patent claim.

---

[22] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 4.1).

### 3.6      DIRECT INFRINGEMENT – LITERAL INFRINGEMENT[23]

Philips alleges that Masimo literally infringed the Philips Patent and Philips must prove that by preponderance of the evidence.

For Philips to prove literal infringement, it must prove that it is more probable than not that Masimo's products containing Signal IQ performs every requirement in at least Claim 1 of the '074 Patent.   The presence of other elements beyond those claimed does not avoid infringement, as long as each and every claimed element is present in the accused product or method.  However, if the accused product or method omits a single requirement recited in one of the asserted claim, then that accused product or method does not directly infringe that claim.

---

[23] Adapted from *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 3.6).

### 3.7    INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT[24]

A party induces patent infringement if it cause, urges or encourages another to infringe a claim of the patent which it is aware of or of which it is willfully blind.  Inducement to infringe a claim cannot occur unintentionally.  This is different from direct infringement, which, as I have told you, can occur unintentionally.  Philips has alleged Masimo has induced infringement of the Philips Patent and Philips must prove that induced infringement by a preponderance of the evidence.

To be liable for inducement to infringe, the accused inducer must have known of the patent and encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the asserted claims and must have had knowledge, or have acted with willful blindness, that the induced acts constituted patent infringement.  Willful blindness exists where an alleged inducer believed there was a high probability that its acts, if taken, would constitute infringement, but the alleged inducer deliberately avoided confirming that belief.

As with direct infringement, active inducement occurs on a claim-by-claim basis.

A party is liable for active inducement of infringement of a claim only if the party asserting infringement proves by a preponderance of the evidence that:

1.    The acts actually carried out by the third party directly infringed the claim;

2.    the party accused of inducement took action during the time the patents were in force intending to cause the infringing acts by the third party; and

3.    The party accused of inducement was aware of the Patents and: (i) knew that the acts, if taken, would constitute infringement of those patents; or (ii) believed there was a high

---

[24] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 4.3).

probability that the acts, if taken, would constitute infringement of the Patents but deliberately avoiding confirming that belief.

In order to establish active inducement of infringement, it is not sufficient that the third party directly infringed the claim.  Nor is it sufficient that the party accused of inducement was aware of the act or acts by the third party that allegedly constitute the direct infringement. Rather, a party is liable for inducement if it specifically intended that the third party infringe the Patents or that it believed there was a high probability the third party would infringe the Patents, but remained willfully blind to the infringing nature of the third party's acts, in order to find inducement of infringement.

For example – assuming all of the other requirements of inducing infringement that I have described to you are satisfied – an accused infringer can indirectly infringe a patent by selling the accused product with instructions leading end-users to use the product as claimed in the patent, since it is inferred that the end-users follow those instructions with respect to the accused product.

When considering whether a party accused of inducement knew, or acted with willful blindness, that the induced actions would constitute infringement, you may consider all of the circumstances, including whether or not it obtained the advice of a competent lawyer.  There is no affirmative duty to seek opinion of counsel regarding infringement.  However, opinion of counsel evidence – or lack of such evidence – may be probative of whether the party knew, or acted with willful blindness, that its actions would cause direct infringement.  While the decision not to obtain an opinion of counsel may be probative circumstantial evidence that a defendant knew, or acted with willful blindness, that its action would cause direct infringement, that fact cannot replace any of the requirements to prove inducement.

### 3.8    INDIRECT INFRINGEMENT –  CONTRIBUTORY INFRINGEMENT[25]

Contributory infringement occurs when a party with knowledge of the patent supplies a part, or a component, to another for use in a product, machine, or process that infringes a patent claim.  Contributory infringement arises only if one who received the component actually infringes a patent claim.  Philips alleges that Masimo has contributorily infringed its patent and it must prove that infringement by a preponderance of the evidence.

 In order to prove contributory infringement of a patent, a party must show:

1.    the party accused of contributory infringement sells, offer to sell, or imports within the United States a component for use in a product or process that infringes a claim of the patent;

2.    The component is a significant part of the invention of at least one claim of the patent, and the party accused of contributory infringement knew that the component was especially made to be used in a manner which infringed one or more of the claims of the patent and that such use would cause infringement; and

3.    The component does not have a significant non-infringing use.

All three of the requirements above must be proven by direct or circumstantial evidence, by a preponderance of the evidence, before you may find that a party contributed to patent infringement.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

---

[25] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 4.4).

**4.0    PATENT INVALIDITY[26]**

Patent invalidity is a defense to patent infringement.  Even though the United States Patent Office has allowed the claims of a patent, you have the ultimate responsibility for deciding whether or not the claims of the asserted patent are valid.

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious.  A patent cannot take away from the right of anyone who wants to use what was already known or would have been obvious to those of skill in the art at the time when the invention was made.

Philips has challenged the validity of the asserted claims of the Masimo Patents.  In making your determination as to invalidity, you should consider each patent claim separately.

---

[26] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.0).

### 4.1    ANTICIPATION – GENERALLY[27]

A person cannot obtain a patent on an invention if someone else has already disclosed the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," a party must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.

---

[27] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.2); AIPLA Model Patent Jury Instruction 6.5 (2012 ed.); *Suffolk Technologies, LLC v. AOL Inc.*, 752 F.3d 1358, 1364 (Fed. Cir. 2014).

## 4.2     ANTICIPATION – PREVIOUSLY KNOWN OR PUBLISHED[28]

Philips alleges that the asserted Masimo Claims are invalid because all elements of each asserted claim existed in a single device or method that predates the claimed invention, or were described in a single previous publication or patent that predates the claimed invention.  In patent law, such a previous device, method, publication or patent is called a "prior art reference."  If a patent claim was disclosed by a prior art reference, we say it is "anticipated" by a prior art reference.  Philips must prove by clear and convincing evidence that the claim was anticipated.

The disclosure in the prior art reference does not have to be in the same words as the claim.  Instead, it is sufficient if all requirements of the claim are in the prior art, either disclosed or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.  To meet this requirement Philips must prove that the prior art reference would allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation.  Prior art patents, however, are presumed to be enabling.

Philips alleges that U.S. Patent No. 4,955,379 to Hall anticipates Claims 17 and 18 of the '222 Patent.

Philips alleges that the Hall patent anticipates Claims 1-5, 15, 19-20, 22, 52 and 53 of the '984 Patent.  Philips also alleges that Nellcor's N-200 pulse oximeter anticipates Claims 1-4, 20, 22, and 52 of the '984 Patent.

---

[28] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.3); AIPLA Model Patent Jury Instruction 6.5 (2012 ed.); *Infosint, S.A. v. H. Lundbeck A/S*, 612 F. Supp. 2d 405, 416 (S.D.N.Y. 2009); *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 2010 WL 2403041, *3 (E.D. Mich. June 9, 2010).

### 4.3     OBVIOUSNESS[29]

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  A claimed invention is invalid as obvious if it would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness must be shown by clear and convincing evidence considering one or more than one item of prior art.  Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention.  The issue is not whether the claimed invention would be obvious to you as layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.  Thus, the question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention?  If the answer to that question is yes, then the patent claims are invalid.

Philips has alleged that Claims 16 and 54 of the '984 Patent are invalid for obviousness.  Philips has the burden of proving obviousness by the clear and convincing evidence standard.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not itself prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  Accordingly, you must be careful not to determine obviousness using hindsight to reconstruct or piece together the invention; many true inventions can be seen as obvious after the fact.  You should not consider what is known today or what was learned from the teachings of the patent.  You should not use the patent as a road map for selecting and combining items of

---

[29] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.5).

prior art.   You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather, whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.   In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claim of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

### 4.4    OBVIOUSNESS – SCOPE AND CONTENT OF THE PRIOR ART[30]

As I have just instructed you, in arriving at your decision on the issue of whether or not the claimed inventions were obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve.  Philips relies on the following prior art to show obviousness of Claims 16 and 54 of the '984 Patent:

1.    The Hall patent; and

2.    U.S. Patent No. 5,934,277 to Mortz.

---

[30] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.6).

**4.5    DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART[31]**

You must next consider the differences, if any, between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building

---

[31] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.7); *Personalized User Model, L.L.P., v. Google, Inc.*, Civ. No. 09-525-LPS, D.I. 663 (D. Del. March 19) (Jury Instruction No. 4.4.3).

blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.   Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does, taking into account such factors as:

1.   whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

2.   whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.   whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4.   whether the prior art teaches away from combining elements in the claimed invention;

5.   whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified predictable solutions; and

6.   whether the change resulted more from design incentives or other market forces.

Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that the accused infringer contends is obvious.

**4.6     OBVIOUSNESS – LEVEL OF ORDINARY SKILL[32]**

Obviousness is determined from the perspective of a person of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  This person is presumed to know all the prior art that you have determined to be reasonably relevant.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include: (1) the educational level and experience of people working in the field; (2) the types of problems faced by workers in the art at the time of the invention and the solutions found to those problems; (3) the prior art patents, products or devices, and publications; and (4) the sophistication of the technology in the field at the time of the invention, including how rapid innovations were made in the art at the time of the invention.

Masimo contends that a person of ordinary skill in the art to which the '984 Patent pertains would have at least a Bachelor's degree in mathematics, engineering, or computer science with education or training in physiological monitoring and at least one year of industry experience working with physiological monitoring devices.

Philips contends that a person of ordinary skill in the art to which the'984 Patent pertains would have at least a Bachelor's degree in electrical engineering plus about 5 years of experience in the medical device or signal processing fields, or equivalent.

---

[32] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.8).

**[PHILIPS BELIEVES THAT BASED ON THE EVIDENCE OF RECORD NO EVIDENCE OF SECONDARY CONSIDERATIONS HAS BEEN PRESENTED AND THUS NO INSTRUCTION SHOULD BE GIVEN ON SECONDARY CONSIDERATIONS; PHILIPS PROPOSES REVISITING THIS AFTER THE CLOSE OF EVIDENCE]**

**4.7    OBVIOUSNESS – OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS[33]**

In evaluating the issue of obviousness, you must also consider certain factors which, if established by the patent owner, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  Some of these indications are:

1.    Commercial success of products that practice the claims of the patent-in-suit;

2.    A long-felt need in the art that was satisfied by the invention of the patent-in-suit;

3.    Failed attempts by others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field;

7.    The taking of licenses under the patents by others;

8.    Expressions of surprise by experts and those skilled in the art at the making of the invention; and

9.    The patentee proceeded contrary to accepted wisdom of prior art.

---

[33] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 6.8).

There must be a connection, or nexus, between the evidence showing any of these factors and either the claimed invention, or the advantages that result from practicing the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the non-obviousness issue.  For example, if commercial success of products that practice the asserted patents is due to brand recognition, company goodwill, advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, then any commercial success may have no relation to the issue of non-obviousness.

### 4.8    WRITTEN DESCRIPTION[34]

Philips contends that Claims 17 and 18 of the '222 Patent and Claims 1-5, 15, 16, 19, 20, 22, 52, 53, and 54 of the '984 Patent are invalid because they lack an adequate written description.   The patent law requires that a patent **[PHILIPS—"application"]** contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed. **[MASIMO—"Philips has the burden of proving a lack of written description by clear and convincing evidence."]**

The specification **[PHILIPS—"and claims as originally filed"]** must convey to persons skilled in the art that the inventors had invented the subject matter that is spelled out in the claims that ultimately issued as a patent.   The description must be sufficiently clear that persons skilled in the art will recognize that inventors made the invention having each of the elements described in the claims.   In the patent application process, the applicant may keep the originally filed claims, or expand, narrow or change the claims between the time the patent application is first filed and the time a patent is issued.   An applicant may amend the claims or add new claims. These changes may broaden the scope of the claims to cover later developed modifications or improvements of the invention even if the later modifications or improvements are covered by a later patent.   **[PHILIPS—"The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.**

**In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the**

---

[34] Adapted from *Tarkus Imaging, Inc. v. Adobe Systems, Inc. et al.,* No. 10-063-LPS, D.I. 479 (D. Del. June 27, 2012) (Jury Instruction No. 4.6).

**field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application."]** The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the **[MASIMO—"inventors had possession of the claimed invention when filing their"] [PHILIPS—"full scope or missing requirement is in the written description in the"]** patent application.[35]

**[MASIMO—"A patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed.[36] Simply because the description of the invention in the specification is narrower than that in the claim does not mean there has been a failure to fulfill the written description requirement.[37] The written description requirement only requires that the specification reasonably convey to those skilled in the art that the inventor had possession of the claimed**

---

[35] From Federal Circuit Bar Association Model Patent Jury Instructions (2012), Instruction 4.2a Written Description Requirement.

[36] D.I. 776 at 13-14.

[37] *Id.* at 14.

47

subject matter as of the filing date.[38]  Moreover, the written description requirement does not require the specification to have disclosed the accused technology or device.[39]  The written description requirement also does not require that the description in the specification include every conceivable and possible future embodiment of the claimed invention.[40] In evaluating whether the specification has provided an adequate written description, you may take into account such factors as (i) the nature and scope of the patent claims, (ii) the complexity, predictability, and maturity of the technology at issue, (iii) the existing knowledge in the relevant field, and (iv) the scope and content of the prior art.[41] ”]To prove an asserted claim invalid for lack of an adequate written description, [MASIMO—“Philips”] [PHILIPS—“the challenger”] must prove by clear and convincing evidence that the patent application does not reasonably convey to a person skilled in the art that the inventors had possession of the [PHILIPS—“full scope of the”] invention, at the time of the application, as that invention was finally claimed in the issued patent.  No particular form of written description is required.

---

[38] *Id.* at 15.

[39] *Inline Connection Corp. et al. v .Earthlink, Inc.*, 684 F. Supp. 2d 496, 528 (D. Del. 2010),
   *citing Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1321 (Fed. Cir. 2003).
[40] *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003); *Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1344 (Fed. Cir. 2001)

[41] AIPLA Model Patent Jury Instruction 9 (2012 ed.).

4.9     INDEFINITENESS[42]

[MASIMO—"Philips contends that Claim 17 of the '222 Patent and Claim 5 of the '984 Patent are invalid as indefinite."]   The patent laws have requirements for the way in which patent claims are written.   [PHILIPS—"Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover with reasonable certainty.   If a patent claim does not provide clear notice of what is claimed and convey to the public what is still available to them, then the claim is said to be indefinite, and the claim is invalid."]

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. [MASIMO— "If the claims, read in light of the disclosure, inform those skilled in the art about the scope of the invention with reasonable certainty, then the claims are not indefinite.   Philips has the burden of proving indefiniteness by clear and convincing evidence."][PHILIPS—"This evaluation of definiteness by one having skill in the art is to be measured as of the time of the original patent application."] Simply because claim language may not be precise does not automatically mean that the claim is indefinite. [MASIMO—"When a word or phrase of degree is used, it must be determined whether the patent disclosure provides some standard for measuring that degree.   One must then determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the disclosure.   Even if one needed to experiment so as to determine the limits of the claims of

---

[42] Based upon 2002 version of Federal Circuit Bar Association Model Patent Jury Instructions and *Nautilus v. Biosig. Instruments, Inc.*, 134 S. Ct. 2120 (2014).

**the patent, that would not necessarily be a basis for holding the claims invalid."]**  The claim language need only be as precise as the subject matter permits**.**

### 4.10   ENABLEMENT[43]

Philips also contends that Claims 17 and 18 of the '222 Patent are invalid because the specification of that patent lacked an enabling disclosure. Philips has the burden of proving non-enablement of a claim by clear and convincing evidence.

The patent laws also require that the patent's specification be sufficiently detailed to enable those skilled in the art to practice the invention. This is known as the "enablement" requirement. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the **[MASIMO—"claimed"]** invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation. Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art. Similarly, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention. **[MASIMO—"Also, enablement does not require that the specification enable the accused product.[44]"]** Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling. A specification is enabling so long as undue experimentation is not needed.

---

[43] Adapted from *Tarkus Imaging, Inc. v. Adobe Systems, Inc. et al.,* No. 10-063-LPS, D.I. 479 (D. Del. June 27, 2012) (Jury Instruction No. 4.7).

[44] *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d. 1298, 1306 (Fed. Cir. 2001); *Inline Connection Corp. et al. v .Earthlink, Inc.*, 684 F. Supp. 2d 496, 526-27 (D. Del. 2010)

**[PHILIPS—"In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of the original filing date without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable."]** In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

**[MASIMO –"**

1.  **The quantity of experimentation necessary;**

2.  **The amount of direction or guidance disclosed in the patent;**

3.  **The presence or absence of working examples in the patent;**

4.  **The nature of the invention;**

5.  **The state of the prior art;**

6.  **The relative skill of those in the art;**

7.  **The predictability of the art; and**

8.  **The breadth of the claims."]**

**[PHIILIPS—"**

**(1) the time and cost of any necessary experimentation;**

**(2) how routine any necessary experimentation is in the field;**

**(3) whether the patent discloses specific working examples of the claimed invention;**

**(4) the amount of guidance presented in the patent;**

**(5) the nature and predictability of the field;**

**(6) the level of ordinary skill in the field; and**

**(7) the scope of the claimed invention."]**

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of the claimed invention at issue and the state of the art at the time of the application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.[45]

---

[45] Federal Circuit Bar Association Model Patent Jury Instructions (2012), Instruction 4.2b Enablement.

5.0    **PATENT DAMAGES**

5.1    **PATENT DAMAGES GENERALLY**[46]

If you find that a party is liable for infringement of one or more of the asserted claims, by making, using, selling, or offering for sale any of their accused products, you must determine the amount of money damages to be awarded to the party asserting infringement.  The amount of damages must be adequate to compensate the party asserting infringement for the infringement.  If you do not find patent infringement liability by any party's accused products, you will not consider patent damages at all.

The party asserting infringement is entitled to damages that it has proven with "reasonable certainty."  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to the patent owner.  On the other hand, the patent owner is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guess.  You may base your evaluation of "reasonable certainty" on any evidence, including expert or opinion evidence.

The party asserting infringement has the burden of proving each element of its damages by a preponderance of the evidence.  In other words, you should award only the amount of lost profits that the party asserting infringement establishes that it more likely than not would have received in profit but for the accused infringer's infringement of the asserted patents.  The damages award should be based on sound economic proof of the nature of the market.

---

[46] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.1).

In determining the amount of damages, you are not necessarily limited by whether the accused infringer benefited from, realized profits from, or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate the party asserting infringement for the other party's patent infringement. Adequate compensation should return the party asserting infringement to the position it would have been in had there been no patent infringement.

**5.2     DATE PATENT DAMAGES BEGIN AND END[47] [AGREED PORTION]**

Because the patent law allows damages for only six-years before the filing of suit, the damages period for Masimo's '222 patent is from February 3, 2003 and ends when the patent expired on March 7, 2011.

For Masimo's '984 patent, the damages period begins on May 8, 2007 when the patent issued and ends when the patent expired on March 7, 2011.

**[MASIMO—**

**"For Philips' '074 Patent:**

A) **If you find that Masimo has directly infringed the '074 Patent, the damages period begins on April 20, 2004 and ends on March 31, 2014, but damages are only available for Masimo's own use of its products and not the customer's use; and**

B) **If you find that Masimo has infringed the '074 Patent indirectly (i.e. by inducement as explained in instruction 3.8 or contributorily as explained in instruction 3.9) the damages period begins on the date on which all the requirements of such infringement had been satisfied and ends on March 31, 2014."]**

**[PHILIPS--**

**"For Philips' '074 Patent, the damages period begins on April 20, 2004 and ends on March 31, 2014."]**

---

[47] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.2).

### 5.3    METHODS FOR COMPUTING PATENT DAMAGES[48]

There are two common methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages.  In this case, Masimo is seeking lost profits and/or a reasonable royalty for Philips' infringement. Philips is seeking a reasonable royalty for Masimo's alleged infringement.

Lost profits damages compensate the patent owner for the additional profits it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.  A reasonable royalty is the reasonable amount that someone wanting to use the patented invention would have agreed to pay to the patent holder and the patent holder would have accepted.  A reasonable royalty is the minimum amount of damages that a patent holder can receive for an infringement.

---

[48] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.3).

### 5.4    PATENT LOST PROFITS – BUT-FOR TEST[49]

Masimo is seeking its lost profits as part of its patent damages.

Masimo must prove the amount of its lost profits.  To recover lost profits for the infringing sales, Masimo must show by a preponderance of evidence that, but for the infringement, Masimo would have made additional profits.  The lost profits may be profits that would have resulted if Masimo had made sales instead of the sales Philips actually made of the infringing product.  Thus, part of your job is to determine what the customers who purchased the infringing product from Philips would have done if the infringement had not occurred.  The profits I have been referring to are the profits allegedly lost by Masimo, not the profits, if any, made by Philips.

---

[49] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.5).

### 5.5    PATENT LOST PROFITS FROM LOST SALES (PANDUIT FACTORS) [50]

Masimo has proven its lost profits if you find that Masimo has proven each of the following factors by a preponderance of the evidence:

1.       There was demand for the patented product;

2.       There was an absence of acceptable non-infringing substitutes or alternatives;

3.       That Masimo had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by Philips; and

4.       The amount of profit Masimo would have made if it were not for Philips' infringement.

I will now explain each of these factors.

---

[50] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.6).

### 5.6     LOST PROFITS – DEMAND[51]

The first Panduit factor asks whether there was demand for the patented product in the relevant market.  Masimo can prove demand for the patented product by showing significant sales of Masimo's own patented product.  Masimo also can prove demand for the patented product by showing significant sales of Philips' products or third-party products that are covered by the patents in suit.  To use sales of Philips' products as proof of this demand, however, Masimo's and Philips' products must be sufficiently similar to compete against each other in the same market or market segment.  You also should not consider sales of products that are mainly due to advertising and marketing, or due to unpatented features of the products as evidence of demand for the patented product.

---

[51] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.7).

### 5.7     LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES[52]

The second factor asks whether there were non-infringing, acceptable substitutes or alternatives for the patented products in the marketplace.  If the realities of the marketplace are that competitors other than Masimo, that otherwise do not infringe the Masimo Patents, would likely have captured some or all of the sales made by Philips, even despite a difference in the products, then Masimo is not entitled to lost profits on those sales.

To be an acceptable substitute or alternative, the products must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products (not necessarily to the public in general).  The acceptable substitutes or alternatives also must not infringe the patent – it may not infringe, for example, because they were licensed under the patent or they did not include all the features required by the patent.  The acceptable substitutes or alternatives, in addition, must have been available during the damages period.

**[MASIMO—"If an alleged substitute or alternative was not available on the market during the damages period, Philips has the burden of showing that the substitute was available during the damages period.[53]"]**

An acceptable non-infringing substitute is available if, during the damages period, a competitor or Philips had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing products at the time the sales of the infringing products were made.  If you determine that some of Philips'

---

[52] Modified from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.8).

[53] *Grain Processing Corp. v. American Maize-Products Co.,* 185 F.3d 1341, 1353 (Fed. Cir. 1999).

customers would just as likely have purchased a non-infringing acceptable product, then Masimo has not shown it lost those sales but-for Philips' sales.

Even if you find that Masimo's and Philips' products were the only ones with the advantages of the patented invention, it still remains Masimo's burden to prove that it in fact would have made Philips' infringing sales.

**5.8      LOST PROFITS – MARKET SHARE**[54]

If a patent holder establishes that it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available.   In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other.   Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

---

[54] Adapted from Federal Circuit Bar Association Model Jury Instruction 6.2 (2012 ed.).

### 5.9     LOST PROFITS – CAPACITY[55]

The third factor asks whether Masimo had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Philips' infringement.  Masimo must prove that it could have supplied the additional products needed to make the sales Masimo said it lost, or that someone working with Masimo could have supplied the additional products.  Masimo also must prove that it had the ability to market and sell those additional products.

---

[55] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.9).

### 5.10    COLLATERAL SALES – CONVOYED OR DERIVATIVE SALES[56]

In this case, Masimo contends that its OEM boards are ordinarily sold along with other products, namely Masimo's sensors and cables.   Masimo also contends that some of the customers who buy equipment with its OEM boards also buy additional Masimo stand-alone pulse oximeters.   These other products are called "collateral products," and the sales of these types of collateral products are usually referred to as "convoyed sales."   Another type of collateral product is spare or replacement parts.   The sales of these types of collateral products are usually referred to as "derivative sales."   It is part of your job to determine if Masimo has proven that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, Masimo must prove two things.   First, Masimo must prove that it is more likely than not that it would have sold the collateral products but for the infringement.   Second, the collateral products and the OEM boards must be so closely related that they effectively act or are used together for a common purpose. Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the OEM boards.

---

[56] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.10).

**5.11    LOST PROFITS – DOUBTS RESOLVED AGAINST INFRINGER[57]**

**[PHILIPS DOES NOT BELIEVE THAT THIS INSTRUCTION IS PROPER IN THIS CASE AS THERE IS NO ALLEGATION THAT PHILIPS HAS FAILED TO KEEP PROPER RECORDS]**

Any doubts that you may have on the issue of lost profits due to Philips' failure to keep proper records should be decided in favor of Masimo.

---

[57] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.11); D.I. 776 at 35 (citing *Lam, Inc. v. Johns-Mansville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)).

### 5.12    REASONABLE ROYALTY - DEFINITION[58]

Masimo and Philips are both seeking damages in the amount of a reasonable royalty.  A royalty is a payment or series of payments made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations.  You should also assume that both parties to that hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating a reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits an alleged infringer made.

---

[58]Adapted from *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 5.2).

### 5.13    FACTORS FOR DETERMINING REASONABLE ROYALTY[59]

In determining the value of a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1.      The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.      The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.      The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.      The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.      The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

---

[59]Modified from *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 5.3); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. NY 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

7.      The duration of the patent and the term of the license.

8.      The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.     The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty

and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one of these factors is dispositive in every case, and you can and should consider the evidence that has been presented to you on any of these factors.  You may also consider any other factors that in your mind would have increased or decreased the royalty the accused infringer would have been willing to pay and the patent holder would have been willing to accept.

### 5.14   REASONABLE ROYALTY - TIMING[60]

The relevant date for the hypothetical reasonable royalty negotiation is at the time the infringement began.  However, you may consider in your determination of reasonable royalty damages any actual profits by the alleged infringer after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.

The damages period may not coincide with the date of the first infringement.  That is so because the patent law limits damages to a six-year period before the filing of the complaint or counterclaim for infringement.

Remember, however, you may only award damages for any infringement you have found occurred during the damages periods I previously provided to you.

---

[60]Modified from *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 5.4).

71

**5.15   PATENT DAMAGES INTEREST**[61]

Neither Masimo's nor Philips' calculations include interest.   Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

---

[61] Adapted from *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 10.12).

**5.16    CLOSING STATEMENT - DAMAGES**[62]

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of a party asserting infringement.  Finally, if you find that a party asserting infringement is entitled to damages, you may not include or add to the award any sum for purposes of punishing the accused infringer or to set an example.

---

[62] Adapted from *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 5.6).

**6.0    DELIBERATION AND VERDICT**

**6.1    INTRODUCTION[63]**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No.1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

---

[63] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 14.1).

## 6.2    UNANIMOUS VERDICT[64]

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you, and you have been provided a copy.  I will read it to you shortly.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict to my deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what

---

[64] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 14.2).

verdict I think you should find.   What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### 6.3     DUTY TO DELIBERATE[65]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[65] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 14.3).

**6.4     SOCIAL MEDIA**[66]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet, or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

---

[66] Modified from *Depuy Synthes Products, LLC. v. Globus Medical, Inc.* No. 11-652-LPS, D.I. 315 (D. Del. June 13, 2013) (Jury Instruction No. 6.4).

**6.5      DO NOT CONSIDER WHAT WILL HAPPEN AFTER TRIAL**[67]

Members of the jury, in this case you may have heard or noticed inferences as to what may happen after this trial.  You are to disregard any inferences as to what may happen after you have rendered your verdict.

---

[67] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 14.4).

## 6.6     COURT HAS NO OPINION[68]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.

As I mentioned earlier, the lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.  You must decide the case yourselves based only on the evidence presented.

My legal rulings are not evidence, although you are required by your oath to follow my instructions and apply them to the evidence.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney
_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiff Masimo Corporation*

POTTER ANDERSON & CORROON LLP

/s/ David E. Moore
_____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants
Philips Electronics North America
Corporation and Philips Medizin Systeme
Böblingen GMBH*

_____
[68] *Ateliers De La Haute Garonne, et al. v. Broetje Automation-USA Inc. et al.,* No. 09-598-LPS, D.I. 415 (D. Del. April 11, 2014) (Jury Instruction No. 14.5).

OF COUNSEL:

Joseph R. Re
Karen Vogel Weil
Jon W. Gurka
Perry D. Oldham
Michelle E. Armond
KNOBBE, MARTEN, OLSON & BEAR, LLP
2040 Main Street, 14h Floor
Irvine, CA 92614
(949) 760-0404

OF COUNSEL:

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC  20006

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606