# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80-LPS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION and PHILIPS MEDIZIN | ) | |
| SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR MOTION FOR A NEW TRIAL

OF COUNSEL:

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Clinton H. Brannon
Brian K. Andrea
MAYER BROWN LLP
1999 K Street, NW
Washington, DC  20006
Tel:  (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Gregory A. Castanias
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939

I. Sasha Mayergoyz
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
Tel: (312) 782-3939

Dated:  January 16, 2015
1178477 / 33976

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Philips Electronics North
America Corporation & Philips Medizin
Systeme Böblingen GmbH*

OF COUNSEL:

William Rooklidge
GIBSON DUNN
3161 Michelson Drive
Irvine, CA 92612-4412
Tel: (949) 451-3800

# TABLE OF CONTENTS

I.  THE INVENTORS DID NOT POSSESS AND DID NOT ENABLE THE
    FULL SCOPE OF CLAIMS 17 AND 18 OF THE '222 PATENT ...............................1

    A.  No Reasonable Jury Could Have Found From The Specification That The
        Inventors Described Anything More Than Correlation Cancellation ....................1

    B.  The Full Scope Of The Claims Was Not Enabled By The Specification...............5

II.  "WITHOUT SIGNIFICANT INTERFERENCE" IS INDEFINITE .........................7

III.  PHILIPS PRESERVED ITS INVALIDITY DEFENSES ..........................................10

IV.  THE '222 PATENT IS ANTICIPATED AS A MATTER OF LAW.........................11

V.  THE COURT SHOULD GRANT JMOL THAT ASSERTED CLAIMS OF
    THE '984 PATENT ARE INVALID ...........................................................................11

    A.  Clear and Convincing Evidence Establishes that Claims 1-5, 15, 19, 20,
        22, 52-53 are Anticipated ...................................................................................11

        1.  Dr. Stone's Entire Testimony Must be Considered .................................12

        2.  Demonstratives Are Appropriate For Assessing Philips' Evidence .........13

        3.  Masimo Presented No Evidence Rebutting Anticipation by the N-
            200 ...........................................................................................................14

        4.  Masimo Ignores Evidence Establishing that Hall Anticipates .................14

    B.  Clear and Convincing Evidence Establishes Obviousness....................................15

VI.  THE COURT SHOULD GRANT A NEW TRIAL .....................................................15

    A.  Masimo's Improper Arguments Warrant a New Trial .........................................15

    B.  Masimo's Prejudicial Arguments About Philips' Concession of
        Infringement Warrant a New Trial .....................................................................18

VII.  MASIMO FAILED TO ESTABLISH THAT NONIN PURESAT IS NOT AN
     ACCEPTABLE ALTERNATIVE..............................................................................19

VIII.  MASIMO DID NOT ESTABLISH THE FACTS NECESSARY TO
      SUPPORT THE  $467 MILLION VERDICT ............................................................20

IX.  CONCLUSION ...........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anascape, Ltd. v. Nintendo of Am., Inc.*,
  601 F.3d 1333 (Fed. Cir. 2010) ...................................................................................4

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  560 F.3d 1366 (Fed. Cir. 2009), *vacated,* 595 F.3d 1329 (en banc) and *aff'd,*
  598 F.3d 1336 (Fed. Cir. 2010) (en banc) ...............................................................2, 3

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  406 F.3d 1365 (Fed. Cir. 2005) .................................................................................12

*Auto Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
  501 F.3d 1274 (Fed. Cir. 2007) ...............................................................................6, 7

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) .................................................................................11

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971) ..................................................................................................10

*Boyle v. United Techs., Corp.*,
  487 U.S. 500 (1988) ....................................................................................................5

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) .................................................................................................4, 5

*Chiron Corp. v. Genentech, Inc.*,
  363 F.3d 1247 (Fed. Cir. 2004) ...................................................................................1

*CIF Licensing, LLC v. Agere Sys. Inc.*,
  727 F. Supp. 2d 337 (D. Del. 2010) ..........................................................................13

*Coleman Motor Corp. v. Chrysler Corp.*,
  525 F.2d 1338 (3d Cir. 1975) ..............................................................................15, 17

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005) .........................................................................7, 9, 10

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009) .................................................................................19

*Dow Chem. Co. v. Mee Indus., Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003) .................................................................................17

*Fineman v. Armstrong World Indus., Inc.,*
   980 F.2d 171 (3d Cir. 1992) ....................................................................................11

*Finjan, Inc. v. Symantec Corp., C.A. No. 10-cv-593 (GMS),*
   *2013 WL 5302560 (D. Del. Sept. 19, 2013), aff'd,* 577 F. App'x 999 (Fed. Cir.
   2014)......................................................................................................................12

*Halliburton Energy Servs., Inc. v. M-I LLC,*
   514 F.3d 1244 (Fed. Cir. 2008) ..............................................................................8, 9

*Honeywell Int'l., Inc. v. ITC,*
   341 F.3d 1332 (Fed. Cir. 2003) ...........................................................................8, 9, 10

*Interval Licensing LLC v. AOL, Inc.,*
   766 F.3d 1364 (Fed. Cir. 2014) ..............................................................................10

*IPPV Enters., LLC v. Echostar Commc'ns Corp.,*
   191 F. Supp. 2d 530 (D. Del. 2002) ........................................................................14

*Koito Mfg. Co. v. Turn-Key-Tech, LLC,*
   381 F.3d 1142 (Fed. Cir. 2004) ..............................................................................13

*Krippelz v. Ford Motor Co.,*
   667 F.3d 1261 (Fed. Cir. 2012) ..............................................................................14

*L'Etoile v. New England Finish Sys., Inc.,*
   575 F. Supp. 2d 331 (D.N.H. 2008) ........................................................................18

*Leader Techs. v. Facebook, Inc.,*
   770 F. Supp. 2d 686, 714-15 (D. Del. 2011), *aff'd,* 678 F.3d 1300 (Fed. Cir.
   2012)......................................................................................................................11

*Liquid Dynamics Corp. v. Vaughan Co.,*
   355 F.3d 1361 (Fed. Cir. 2004) ................................................................................8

*Lockwood v. Am. Airlines, Inc.,*
   107 F.3d 1565 (Fed. Cir. 1997) ................................................................................3

*MagSil Corp v. Hitachi Global Storage Techs., Inc.,*
   687 F.3d 1377 (Fed. Cir. 2012) ..............................................................................6, 7

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)......................................4, 5

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
   134 S. Ct. 2120 (2014)..........................................................................................8, 9, 10

*Network Commerce, Inc. v. Microsoft Corp.*,
   422 F.3d 1353 (Fed. Cir. 2005) ...........................................................................4

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
   723 F.3d 1336 (Fed. Cir. 2013) .........................................................................5

*Old Chief v. United States*,
   519 U.S. 172 (1997) ......................................................................................18

*Schering Corp. v. Geneva Pharms., Inc.*,
   339 F.3d 1373 (Fed. Cir. 2003) .......................................................................11

*Sitrick v. Dreamworks, LLC*,
   516 F.3d 993 (Fed. Cir. 2008) .......................................................................5, 6

*Smithkline Beecham Corp. v. Apotex Corp.*,
   403 F.3d 1331 (Fed. Cir. 2005) ...................................................................14, 15

*SSL Servs., LLC v. Citrix Sys.*,
   769 F.3d 1073 (Fed. Cir. 2014) .......................................................................14

*Thompson v. Sullivan*,
   987 F.2d 1482 (10th Cir. 1993) ......................................................................19

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) .......................................................................13

*United States v. Schwartz*,
   325 F.2d 355 (3d Cir. 1963) ...........................................................................17

*Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) .........................................................................3

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004) ........................................................................1, 2

*Versata Software, Inc. v. Internet Brands, Inc.*,
   902 F. Supp. 2d 841 (E.D. Tex. 2012), *aff'd*, 550 F. App'x 897 (Fed. Cir.
   2014)...............................................................................................13, 20

*In re Wilder*,
   736 F.2d 1516 (Fed. Cir. 1984) .........................................................................3

*Wyeth & Cordis Corp. v. Abbott Labs*,
   720 F.3d 1380 (Fed. Cir. 2013) .........................................................................7

**Statutes**

35 U.S.C. § 112 ..................................................................................................3, 7

35 U.S.C. § 112(b)..................................................................................................9

**Other Authorities**

Rule 50(a) .......................................................................................................10, 11

## I.   THE INVENTORS DID NOT POSSESS AND DID NOT ENABLE THE FULL SCOPE OF CLAIMS 17 AND 18 OF THE '222 PATENT

To ensnare Philips' products, Masimo sought and obtained a broad claim construction. Too broad, it turned out:  Even Masimo's own expert testified that the claims, as construed, were so sweeping that "something completely different that Masimo didn't invent … would still be covered." Trial Tr. at 2237:2-8.  It is as simple as that:  The claims are invalid as a matter of law because the patent neither describes nor enables their full breadth.  "[B]y definition [a patentee] could not have possession of, and disclose, the subject matter … that did not even exist at the time" of filing. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1255 (Fed. Cir. 2004).

### A.   No Reasonable Jury Could Have Found From The Specification That The Inventors Described Anything More Than Correlation Cancellation

At trial, Philips established that the claims fail the written-description requirement because of the wide disparity between the broad claim scope and the limited disclosure.  As to claim scope, Masimo's expert conceded that the claims cover "<u>any</u> technique" that works without substantial interference, including techniques that Masimo <u>did not even invent</u>, much less possess. *See* Trial Tr. at 2234:20-4, 2235:20-2236:2, 2237:2-8 (emphasis added).  While the claims have been construed to cover techniques other than correlation cancellation, the '222 patent discloses nothing beyond correlation cancellation.  Far from a "battle of experts" (D.I. 939 at 4), both Dr. Baura and Dr. Stone agreed that the patent discloses no technique other than correlation cancellation. *See* Trial Tr. at 2231:2-13 & 2232:9-20; 1727:23-1728:17 & 1731:1-13.

The "purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, <u>does not overreach</u> the scope of the inventor's contribution … <u>as described in the patent specification</u>.'" *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (emphasis added) (quoting *Reiffin v Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000).  Thus, the Federal Circuit holds claims invalid as a matter

of law "based solely on the language of the patent specification." *Id.* at 927. This rule applies

with special force here because the written-description requirement "plays a vital role in

curtailing claims ... that have not been invented, and thus cannot be described." *Ariad Pharms.,*

*Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc). Masimo does not and

cannot meaningfully dispute these rules. Yet it fails to come to grips with the fact that Dr. Baura

agreed that "something completely different that Masimo didn't invent…would still be covered."

Trial Tr. at 2237:2-8. That is nearly a *verbatim* violation of *Ariad*'s command that the written

description requirement "curtail[s] claims…that have not been invented." 598 F.3d at 1352.

　　None of Masimo's arguments in its Opposition are legally relevant. First, Masimo relies

on testimony that the '222 patent "laid down the foundation" for future developments and was

"pioneer[ing]." D.I. 939 at 2, 7-8. Perhaps so, but that is no help to Masimo. Patents "are not

awarded for academic theories, no matter how groundbreaking or necessary to the later

patentable inventions of others." *Ariad*, 598 F.3d at 1353. No matter how foundational an

invention might be, the patent may not claim undisclosed future developments built on that

foundation. The written description still "must demonstrate possession" of the full scope of the

claimed invention within "the four corners of the specification." *Id.* at 1351-52.

　　Second, Masimo relies on the inventors' testimony that: (1) "'the crux of our invention, []

is the signal model' that 'taught the world that arterial and venous are present'" (Kiani); (2) the

"invention included techniques that don't use correlation cancelling techniques" (Weber); and

(3) "correlation canceling 'does not describe the full invention at all'" (Diab). *See* D.I. 939 at 2-

3. This testimony is unmoored to (and does not even cite or refer to) the text of the '222 patent.

At most, the testimony represents the inventors' *post hoc* subjective belief of what they invented.

None of this testimony says that the patent describes such inventions. "[A]ctual 'possession' or

2

reduction to practice <u>outside of the specification</u> is not enough.… [I]t is the specification itself that must demonstrate possession." *Ariad*, 598 F.3d at 1352 (emphasis added). The Federal Circuit has long held that "<u>subjective desire</u> does not establish that the broader invention being claimed in this… application is adequately described." *In re Wilder*, 736 F.2d 1516, 1520 (Fed. Cir. 1984). Rather, the written-description requirement "requires an <u>objective</u> inquiry" of the actual disclosure. *Ariad*, 598 F.3d at 1351 (emphasis added).

Third, Masimo argues that written-description support exists because of inventor Diab's testimony that non-correlation cancellation techniques "<u>could</u>" have been used, and the patent's statements that "the present invention <u>may</u> be applied in any situation" and "[t]he signal processor <u>may</u> comprise a correlation canceler." D.I. 939 at 2-3. Here, again, *post hoc* inventor testimony does not suffice; "it is the specification itself that must demonstrate possession." *Ariad*, 598 F.3d at 1352. As to the "could" and "may" language, the Court has ruled that those references demonstrate that the <u>claims</u> are not to be construed as limited, but such bare references do not demonstrate that the inventors <u>described</u> an invention broader than correlation cancellation. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 560 F.3d 1366, 1376-77 (Fed. Cir. 2009) (noting that claim construction and written description require distinct analysis), *vacated,* 595 F.3d 1329 (en banc) and *aff'd,* 598 F.3d 1336 (Fed. Cir. 2010) (en banc) . Section 112 "requires a description of an invention, not an indication of a result that <u>one might</u> achieve if one made that invention." *Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997) (emphasis added). Thus, "[i]t is <u>not sufficient</u> for purposes of the written description requirement … that the disclosure, when combined with the knowledge in the art, <u>would lead one to speculate</u> as to modifications that the inventor might have envisioned, <u>but failed to disclose</u>." *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1571–72 (Fed. Cir. 1997) (emphasis added). Masimo's citation to

the patent at 49:36-42 is equally unavailing because that passage only describes different types of correlation cancellers and nothing more, as Baura admitted. *See* Trial Tr. at 2242:16-20.

Fourth, Masimo contends that the inventors coined the term "correlation canceler" and ascribed to it a broad meaning. *See* D.I. 939 at 3, 8. But the patent sets forth a specific, limited definition: "[t]he correlation canceler is a device which takes a first and second input and removes from the first input all signal components which are correlated to the second input." PTX 124 at 4:10-12. Every example in the specification falls within that definition. Indeed, Masimo's expert conceded that she disagreed with the patent's definition, and instead testified based on her own broad understanding of the term. *See* Trial Tr. at 2243:17-2245:21. "[E]xpert testimony at odds with the intrinsic evidence must be disregarded," *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005), and Dr. Baura's testimony "cannot override the objective content of the[] [patent]." *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1339 (Fed. Cir. 2010). The same is true for Masimo's citation to inventor testimony: "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). This rule has special force in a written-description analysis because the *quid pro quo* of receiving a patent is public disclosure, not an inventor's secret, undisclosed thoughts.

At bottom, the testimony on which Masimo relies is irrelevant, is contrary to the patent, or was subsequently impeached on cross-examination. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). Otherwise, a party could always defeat JMOL by proffering unsupported or irrelevant testimony. The

Supreme Court has confirmed that that is not the law. *Id.* Moreover, Masimo's assertion that Dr. Stone provided no opinion on invalidity under the written-description requirement is plainly incorrect. *See* D.I. 939 at 4. Dr. Stone repeatedly explained how and why the claims lack adequate support, including specifically opining that the specification does not convey possession of the full scope of the claims. *See* Trial Tr. at 1814:13-1815:17, 1727:23-1728:17, 1731:1-13.

Finally, Masimo's references to written description being a fact question and the jury instructions cannot sustain the verdict. *See* D.I. 939 at 2, 4-5. "[A] verdict on written description is no more immune from review than any other factual issue, and we have in past cases held that the entry of judgment as a matter of law on written description grounds was appropriate." *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1348 n.5 (Fed. Cir. 2013). Masimo's assertion that an unobjected-to jury instruction insulates a verdict from evidentiary review also has been roundly rejected. "The general rule is that in reviewing the law on a properly laid and renewed motion for JMOL, the appellate court is not bound by the instructions given the jury, even if they were not objected to." *Markman*, 52 F.3d at 975 n.5; *Boyle v. United Techs., Corp.,* 487 U.S. 500, 513-14 (1988). In any event, this argument is a red herring. Masimo tellingly omits the portion of the agreed-to instruction that requires the specification disclose possession of the "full scope" of the claimed invention. *See* D.I. 908 at 41-42. No such disclosure is found in the patent.

**B.**     **The Full Scope Of The Claims Was Not Enabled By The Specification**

The "full scope of the claimed invention must be enabled" by the specification. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). Philips established that the patent's disclosure is restricted to correlation cancellation techniques, whereas the claims broadly cover any technique, even those not invented or described by the inventors. *See* Trial Tr. at 2234:20-

2235:4, 2235:20-2236:2, 2237:2-8.  The enablement requirement exists for this specific purpose: "This important doctrine <u>prevents</u> both inadequate disclosure of an invention and <u>overbroad claiming that might otherwise attempt to cover more than was actually invented.</u>"  *MagSil Corp v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1381 (Fed. Cir. 2012) (emphasis added).  The '222 patent fails as a matter of law to enable the full scope of the claims.

Masimo relies on testimony from inventor Diab and Dr. Baura, while neglecting the disclosure of the patent itself.  Masimo's arguments are legally irrelevant because the "enablement analysis begins with the disclosure in the specification," *Sitrick*, 516 F.3d at 1000, and "[i]t is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention in order to constitute adequate enablement."  *Auto Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997)).  Here, both experts agreed that the specification discloses only correlation cancellation techniques, even though the claims sweep much more broadly.  *See* Trial Tr. at 2231-32; 1727-28; 1731.  Diab's and Baura's testimony that skilled artisans would have known how to expand the invention beyond correlation cancellers is no substitute for an actual enabling disclosure—"the rule that a specification need not disclose what is well known in the art is 'merely a rule of supplementation, not a substitute for a basic enabling disclosure.'"  *Auto Techs.*, 501 F.3d at 1283 (quoting *Genentech,* 108 F.3d at 1366).

Masimo asserts that "the issue is whether the disclosure enables those skilled in the art to practice the invention … not some unidentified 'non-correlation canceler.'"  D.I. 939 at 10.  That argument misses the point because, at Masimo's urging, the claims encompass both correlation cancellers and "non-correlation cancellers," but enable only the former.  In such circumstances, a "patentee chooses broad claim language at the peril of losing any claim that cannot be enabled

across its full scope of coverage." *MagSil*, 687 F.3d at 1381.

Attempting to sidestep the absence of any teaching of non-correlation cancellers, Masimo argues that enablement is met so long as <u>any</u> mode of practicing the invention is taught. *See* D.I. 939 at 10. No so. The Federal Circuit "reject[s] [the] argument that because the specification enables one mode of practicing the invention, *viz.*, mechanical side impact sensors the enablement requirement is satisfied… [T]he scope of the claims includ[e] both mechanical and electronic side impact sensors. Disclosure of only mechanical side impact sensors does not permit one skilled in the art to make and use the invention as broadly as it was claimed." *Auto Techs.*, 501 F.3d at 1285.

Masimo argues that the patent provides "several algorithms," techniques, block diagrams, and source code. *See* D.I. 939 at 8. Those "detailed explanations," however, pertain solely to correlation cancellation. *See* PTX 124 at 49:36-42. Far from providing "full, clear, concise, and exact terms as to enable" use of non-correlation cancellers as required by Section 112, the specification is entirely silent on the matter. Thus, viewed most favorably to Masimo, the specification "offers no guidance or predictions" about implementing anything other than correlation cancellation. *Wyeth & Cordis Corp. v. Abbott Labs*, 720 F.3d 1380, 1386 (Fed. Cir. 2013). The issue is appropriate for JMOL.

## II.    "WITHOUT SIGNIFICANT INTERFERENCE" IS INDEFINITE

Philips established that: (1) the term "without significant interference" is indefinite; and (2) the indefiniteness conclusion is reinforced by the construction that "the calculation is accurate enough for the purpose being employed" because the intrinsic evidence is devoid of "an objective standard" by which to determine whether a calculation is accurate enough. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

Masimo concedes that the application of the claim term and its construction is a moving

target that varies based on circumstances and contexts.  *See* D.I. 939 at 12; Trial Tr. 2211:19-25.

Intrinsic evidence, however, must provide for "a fixed, unambiguous, legally operative meaning

to the claim," *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004)

(emphasis added), in order to "inform the public of the bounds of the protected invention."

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  To that end,

when a "construction requires that an artisan make a separate infringement determination for

every set of circumstances in which the [invention] may be used, and when such determinations

are likely to result in differing outcomes (sometimes infringing and sometimes not), that

construction is likely to be indefinite." *Id.* at 1255.

   Kiani's testimony cements the conclusion that the patent fails to provide any "reasonable

certainty" as to claim scope.  Without identifying any testing metric in the patent or elsewhere,

Kiani testified that Masimo evaluated the Nonin product and determined that it was not "accurate

enough" to work in the presence of motion.  *See* Trial Tr. at 524-26.  Yet, on cross-examination,

Kiani conceded that the FDA certified that Nonin was accurate enough to work in the presence

of motion.  *See Id.* at 620-40; DX 1202-1204.  The definiteness requirement protects against this

sort of malleability, where competitors are "unable to discern the bounds of the invention."

*Honeywell Int'l., Inc. v. ITC*, 341 F.3d 1332, 1341 (Fed. Cir. 2003).  The concerns that animate

the definiteness requirement—avoiding the "zone of uncertainty" for competitors and precluding

patentees from "inject[ing] ambiguity into their claims"—are at their apex here given Masimo's

position that "accurate enough" has different meanings for different circumstances.  *Nautilus,*

*Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).

   Masimo asserts that the claims are not indefinite because Philips agreed to a construction.

*See* D.I. 939 at 10-11.  *Nautilus* rejected that argument:  "[i]t cannot be sufficient" to satisfy the

definiteness requirement simply because "a court can ascribe <u>some</u> meaning to a patent's claims." 134 S. Ct. at 2129 (emphasis in original); *see Halliburton*, 514 F.3d at 1251 ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

Masimo's reliance on extrinsic documents which postdate the filing date and are unrelated to the patent carries no weight. *See* D.I. 939 at 10-11. *Nautilus* stressed the primacy of intrinsic evidence "in assessing definiteness," mandating that "claims are to be read in light of the patent's specification and prosecution history" and "definiteness is measured from the viewpoint of a person skilled in the art <u>at the time the patent was filed</u>." 134 S. Ct. at 2128 (emphasis in original). Indeed, Section 112(b) requires that "<u>[t]he specification</u> shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter." Definiteness must be satisfied based on the patent itself, not reliance on extrinsic *post hoc* documents. *Id.* at 2128; *see Honeywell*, 341 F.3d at 1341 (rejecting "construction [that] is only supported by [patentee's] expert declaration" and finding claims indefinite).

Masimo's citations to the patent underscore the absence of any "objective anchor" necessary to make the claims definite. *Datamize*, 417 F.3d at 1350. The citation to 3:37-43 and Figure 3 notes the objective that "motion artifacts [] must be removed from the measured signal." Nothing in that snippet defines the bounds of "without significant interference." The citation to 13:12-17 states that "[i]f something is known about the erratic signal ... it could be removed.... However <u>it is often the case that no information is known</u>" and "traditional filtering techniques <u>are usually insufficient</u>." This passage confirms the absence of any "objective anchor" that would have been known by skilled artisans. The citation to 36:48-52 states that "erratic motion induced noise typically cannot be predetermined.... Thus, determining the oxygen saturation of

arterial blood and venous blood <u>becomes more difficult</u>."  Rather than "provid[ing] some

standard for measuring th[e] degree" of interference, *Datamize*, 417 F.3d at 1351 (quoting

*Seattle Box Co. v. Indus. Crating & Packing, Inc.,* 731 F.2d 731, 826 (Fed. Cir. 1984)), this

passage notes the difficulty of making such measurements, which only further blurs any

boundaries of the claims.  Masimo's citations, and the rest of the patent, only confirms that the

patent is silent on how much motion is "significant."  Masimo's reliance on Dr. Baura's

conclusory statement regarding definiteness cannot save the claims.  *See* D.I. 939 at 12-13.  Dr.

Baura's entire testimony on indefiniteness rested on inapposite patent citations and irrelevant

extrinsic evidence created after the patent filing.  An objective anchor in the patent itself is

necessary.  *Nautilus*, 134 S. Ct. at 2128; *Honeywell*, 341 F.3d at 1341.

Masimo's reliance on the jury verdict is meritless.  *See* D.I. 939 at 12.  Indefiniteness is a

pure question of law.  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir.

2014).  The jury's verdict is, at most, advisory, and cannot serve as substantial evidence.

Masimo's argument that indefiniteness is controlled by *stare decisis* from *Nellcor* is

likewise meritless.  See D.I. 939 at 11.  That nonprecedential decision—by definition—has no

*stare decisis* effect.  Moreover, a party not privy to an earlier litigation is not bound by prior

decisions regarding invalidity "despite one or more existing adjudications of the identical issue."

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

## III.   PHILIPS PRESERVED ITS INVALIDITY DEFENSES

Philips properly moved for JMOL before the case was submitted to the jury, "under Rule

50(a) on its invalidity defenses for the reasons…stated in defense to Masimo's motion in

addition to testimony that was heard from Dr. Baura."  Trial Tr. at 2326:12-15.  In doing so,

Philips offered to "go into more detail," and the Court indicated that going "into more detail"

was "not necessary for [its] purposes."  *Id.* at 2326:15-19.  As such, "the context in which

[Philips'] motions were made, including the district judge's prompt statement that he would take both motions under advisement, make clear that no more was necessary to serve the purposes of Rule 50(a)." *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1379-80 (Fed. Cir. 2009); *Leader Techs. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 714-15 (D. Del. 2011) ("[T]he communicative content, specificity and notice-giving function of an assertion should be judged in context." (quoting *Acosta v. Honda Motor Co.*, 717 F. 2d 828, 832 (3d Cir. 1983))), *aff'd,* 678 F.3d 1300 (Fed. Cir. 2012). Here, Philips' oral motion made clear that it was moving for judgment on "its invalidity defenses," not just some of its invalidity defenses. The pretrial order sets forth those defenses, and Philips' oral motion succinctly referred to those defenses. Philips' was prepared to address each defense, but did not do so when the Court said it was not necessary.

Unlike the *i4i* decision that Masimo cites, Masimo had notice of Philips' invalidity defenses and it had the opportunity to cure any defects on those defenses, or to request more specificity. There can be no waiver when, as here, "plaintiffs' counsel was clearly on notice of the legal rubric under which [defendants] planned to proceed." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 184 (3d Cir. 1992). In fact, Masimo cannot identify any evidence it would have introduced had it better understood that Philips sought JMOL on anticipation.

## IV. THE '222 PATENT IS ANTICIPATED AS A MATTER OF LAW

Masimo's response does nothing to disturb Philips' showing that the claims are anticipated as a matter of law by Hall. Philips stands on the showings made in its opening brief. *See* D.I. 928 at 13-14; Ex. B.

## V. THE '984 PATENT IS ANTICIPATED AS A MATTER OF LAW

### A. **Clear and Convincing Evidence Establishes that Claims 1-5, 15, 19, 20, 22, 52-53 are Anticipated**

Anticipation exists when a prior art reference discloses every claim limitation. *Schering*

*Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1379-80 (Fed. Cir. 2003).  Philips presented clear and convincing evidence that every limitation of claims 1-5, 15, 19, 20, 22, and 52-53 is disclosed by the N-200 pulse oximeter and the Hall patent.  That evidence included the prior art device/reference (*see* DX 10, DX 972), Dr. Stone's testimony regarding the operation of the prior art, his opinion that each limitation was met by the prior art (*see* Trial Tr. at 1754-1766, 1772:21-1776:17, 1815-20, 1825-28), and exhibits supporting that testimony (including manuals and source code) (*see* DX 16, DX 17, and DX 1785).  Dr. Stone supported and illustrated his testimony with demonstrative exhibits, including claim charts identifying where each limitation was disclosed.  *See* Ex. C at DDX 202-231.

### 1.    *Dr. Stone's Entire Testimony Must be Considered*

Masimo's only substantive opposition is the assertion that Dr. Stone provided "conclusory" testimony because he used demonstrative exhibits.  *See* D.I. 939 at 16-19.  Dr. Stone's use of demonstratives is not surprising given that Masimo: (1) never disputed that the references disclosed most of the limitations, and (2) provided no evidence rebutting Dr. Stone's testimony.  Moreover, Masimo's argument ignores the record as a whole and instead focuses solely on Dr. Stone's demonstrative claim charts.  Anticipatory evidence is not limited solely to expert testimony, nor is expert testimony even necessary to establish anticipation when the operation of the prior art is not in dispute.  *See Finjan, Inc. v. Symantec Corp., C.A. No. 10-cv-593 (GMS), 2013 WL 5302560, at \*30 (D. Del. Sept. 19, 2013), aff'd,* 577 F. App'x 999 (Fed. Cir. 2014) ; *Arthrocare Corp. v. Smith & Nephew, Inc.,* 406 F.3d 1365, 1374 (Fed. Cir. 2005) (when the prior art "speaks for itself," there is no requirement that an expert reiterate the point).

Dr. Stone's testimony focused on limitations that the experts agreed were in dispute— limitations regarding the use of two calculators/techniques.  Dr. Baura herself noted that "the disputes in this case are going to be centered around the last two paragraphs" of the claim.  *See*

Trial Tr. at 1113:13-19.  Dr. Stone explained to the jury that both the N-200 and Hall included

the two calculators/techniques recited in the claims.  *See, e.g., id.* at 1759-63, 1773-74.  Dr.

Stone explained the meaning of the claims, applied the operation of the prior art to the disputed

limitations, and then provided demonstratives setting forth his analysis.  *Versata Software, Inc. v.*

*Internet Brands, Inc.*, 902 F. Supp. 2d 841, 847 (E.D. Tex. 2012) (finding expert testimony that

did not include a "lengthy, limitation-by-limitation analysis of each of the asserted claims," was

sufficient evidence of anticipation), *aff'd,* 550 F. App'x 897 (Fed. Cir. 2014).

The cases Masimo cites are inapposite.  In *Koito*, the prior art reference relied upon was

"merely submitted . . . into evidence" along with other references, and the expert "made no

specific mention of it at trial," despite the fact that inherent anticipation was apparently argued as

to certain limitations.  *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1151 (Fed. Cir.

2004).  The court held that "Koito needed some explanatory testimony or other evidence to

compare [the reference] with the patent at issue."  *Id.* at 1152 n.4.  Similarly, in *CIF Licensing*,

the expert provided a "bare recitation of excerpts" from the prior art, but no "explanation of how

or why each of the claim elements were disclosed in the cited portions."  *CIF Licensing, LLC v.*

*Agere Sys. Inc.*, 727 F. Supp. 2d 337, 361 (D. Del. 2010).  Dr. Stone explained, holding the N-

200 in his hand for demonstration, how the product works, including use of one calculation

technique to calculate oxygen saturation if the ECG leads are connected to a patient, and another

technique if the leads are not connected.  *See* Trial Tr. at 1773:5-1774:10.  That is precisely what

the claims require, which he demonstrated through demonstratives.  *Id.* at 1817:5-1820:9; Ex. C.

### 2.      *Demonstratives Are Appropriate For Assessing Philips' Evidence*

The Federal Circuit repeatedly approves consideration of an expert's demonstrative

exhibits when assessing the evidentiary record.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632

F.3d 1292, 1298 (Fed. Cir. 2011) (substantial evidence included expert's "demonstrative

13

animation, which gives a clear, detailed and uncontested explanation" of infringing product);

*SSL Servs., LLC v. Citrix Sys.*, 769 F.3d 1073, 1088 (Fed. Cir. 2014) (same). "[A] demonstrative

exhibit such as a claim chart may have value in illuminating testimony." *IPPV Enters., LLC v.*

*Echostar Commc'ns Corp.*, 191 F. Supp. 2d 530, 565 (D. Del. 2002).

### 3.   *Masimo Presented No Evidence Rebutting Anticipation by the N-200*

Masimo ignores the totality of the evidence relating to anticipation by the N-200.  Dr.

Stone's testimony included:  (a) introduction of the N-200, its manuals, and source code (*see*

Trial Tr. at 1757-59, 1774-76, 1815-16); (b) explanation of how the N-200 operates, including

use of different calculators/calculation techniques (*see id.* at 1773-74, 1816), and (c) presentation

of his opinions that the claims were anticipated (*see id.* at 1772-73, 1817-20, 1825-26), which

included the use of demonstrative charts with an explanation that he "looked at the N-200 and

the documents and found [the] particular requirements [of the claims] in the N-200" (*id.* at

1817:17-20; Ex. C at DDX 223-230).  This evidence establishes anticipation as a matter of law,

especially since it was unrebutted.

Masimo offered nothing to rebut Philips' showings on all but two claims.  Dr. Baura's

testimony consisted solely of one-line conclusions stating that she disagreed with Dr. Stone.

"[C]onclusory testimony of an expert witness . . . cannot create an issue of fact if none otherwise

exists." *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1269 (Fed. Cir. 2012).  The situation here is

no different than if Philips had sought summary judgment, and Masimo did not respond or

identify any disputed facts. "[W]ithout genuine factual disputes underlying the anticipation

inquiry, the issue is ripe for judgment as a matter of law." *Smithkline Beecham Corp. v. Apotex*

*Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

### 4.   *Masimo Ignores Evidence Establishing that Hall Anticipates*

Masimo also ignores the totality of the evidence relating to anticipation by Hall.  As with

his testimony regarding the N-200, Dr. Stone explained Hall's algorithm, including its use of

multiple calculators/techniques and multiple ratios. *See* Trial Tr. at 1759-63.  He also presented

opinions that the claims were anticipated (*id.* at 1764-1766), which included use of claim charts

with an explanation of where he found "[e]ach and every of those requirements [of the claims] in

the Hall." *Id.* at 1764:7-8; Ex. C at DDX 208-217.  In contrast, Dr. Baura's scant rebuttal

opinions contradicted her prior testimony that she could not distinguish Hall under the Court's

construction. *See* Trial Tr. at 2250:14-21 (indicating that she "revised" her prior opinions), 2251.

### B.   Clear and Convincing Evidence Establishes Obviousness

Masimo argues that Dr. Stone failed to explain why claims 16 and 54 would have been

obvious over Hall in view of Mortz. *See* D.I. 939 at 19-20.  To the contrary, Dr. Stone explained

how correlation could be used to utilize one of two calculators (*see* Trial Tr. at 1768-70), why a

skilled artisan would look to Mortz to supplement Hall (*id.* at 1767, 1770), and how Hall would

be modified to include Mortz's correlation (*id.* at 1770).  Dr. Stone demonstrated that claims 16

and 54 would have been obvious. *Id.* at 1767.  Masimo failed to provide any rebuttal.

## VI.   THE COURT SHOULD GRANT A NEW TRIAL

### A.   Masimo's Improper Arguments Warrant a New Trial

Masimo does not even try to deny that it did exactly what it told the Court it would not

do:  lead the jury to believe that the *Nellcor* jury already decided the issues before this jury.  In

the most clear example, Masimo told the jury in the closing argument that a prior jury had

decided "once and for all" who the true inventor of read-through motion was.  As the Third

Circuit has long recognized, "[a] jury is likely to give a prior verdict against the same defendant

more weight than it warrants.  The admission of a prior verdict creates the possibility that the

jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before

it." *Coleman Motor Corp. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975).  Masimo's

violation of the Court's orders can be remedied only by a new trial.

Masimo attempts to minimize its references to the *Nellcor* litigation by arguing that the references were limited to only informing the jury of the "value of Masimo's technology." Masimo does so by seizing on a fragmentary five-word phrase—"and everyone was signing up." D.I. 939 at 24. Masimo's claim is preposterous. "[*After the win against Nellcor*, and everyone was signing up *once it was resolved once and for all* that [Masimo's inventors] *were truly* the first inventors of measure- [through]- motion" plainly conveyed that the industry lined up for licenses <u>because</u> of Masimo's win on patent validity in the *Nellcor* litigation. It had everything to do with improperly leveraging the validity win in the *Nellcor* case to taint the jury in this case. Masimo's statement was a blatant violation of the Court's Order. *See* D.I. 878.

Masimo also attempts to justify its conduct by rewriting the Court's Order regarding what could be said about the *Nellcor* litigation. *See* D.I. 939 at 23. Contrary to Masimo's assertion that the order only precluded "'additional details' regarding the <u>negotiations</u>, but said nothing about the *Nellcor* jury," the Court expressly forbade, as unduly prejudicial, (1) "leading the jury to believe that Philips' invalidity challenges have already been resolved;" and (2) providing "[a]ny additional details of the *Nellcor* Litigation" beyond the fact that the '222 patent was found infringed and not invalid, and the impact on the industry. *See* D.I. 878. Importantly, the Court added: "[a]ny additional details of the *Nellcor* litigation, however, would substantially risk confusing the jury (including by leading the jury to believe that Philips' invalidity challenges have already been resolved)." *Id.* The facts that the *Nellcor* case was decided by a jury and affirmed by the Federal Circuit were those "additional details" expressly objected to by Philips before trial; a party seeking to obey the Court's order would not have found this ambiguous. *See* Hearing Tr. (8/28/14) at 76:20-24, 78:11-16.

16

Masimo fails to identify any expert testimony tying the *Nellcor* litigation and settlement amount to its damages case. *See* D.I. 939 at 20-24.  Rather, Masimo admits that Mr. Wagner "did not discuss all of the Nellcor evidence," and instead points to attorney argument and Kiani's testimony.  Philips noted this failure not to suggest that a damages expert must opine on a fact for it to be relevant to damages; instead, Masimo's complete failure to connect this prejudicial evidence to its damages theory belies Masimo's stated reason for its relevance.  Masimo's reliance on *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370 (Fed. Cir. 2003) to excuse its expert's failure to mention *Nellcor* is untenable:  Masimo's references to *Nellcor* were prejudicial because they violated the Court's Order and because Masimo misled the Court by asserting that the *Nellcor* litigation was relevant to its damages case.

Finally, the jury instructions did not remedy the prejudice.  "There are times when no admonition or instructions of the court can remove from the jury's mind the effect of improper conduct and remarks of counsel."  *United States v. Schwartz*, 325 F.2d 355, 358 (3d Cir. 1963) (quoting *Robinson v United States,* 32 f.2d 505, 508 (8th Cir. 1928)).  So it was here, where Philips was forced to object repeatedly the first day of trial on the ground that Masimo was improperly publishing facts about the Nellcor litigation (*see* Trial Tr. at 260:2-19, 435:10-16), drawing more attention to the Nellcor verdict.  No instruction could erase from the jury's mind the fact that another jury previously resolved the invalidity issues and awarded substantial damages.  As in Coleman Motor, this impermissibly swayed the jury to decide this case by reference to the Nellcor verdict, instead of fairly evaluating the evidence presented to it.[1]

---

[1] Quoting *Coleman Motor*, 525 F.2d at 1351:  "Even if the jury had been adequately informed of the issues and evidence in [the prior litigation], we would disapprove of the introduction of that verdict…. We will not speculate about the role the [prior] verdict played in this jury's deliberations, especially since there is another reason why we must grant defendants a new trial.

**B.     Masimo's Prejudicial Arguments About Philips' Concession of Infringement Warrant a New Trial**

Masimo's only real opposition to Philips' new trial motion is, nonsensically, that Philips did not cite all of Masimo's misconduct. *See* D.I. 939 at 24-26. As established in Philips' opening brief, Masimo made the infringement concession a centerpiece of its case nearly every day of trial. *See, e.g.*, Trial Tr. at 253, 256, 267, 268-72, 277-78, 429, 469-70, 485-97, 530-33, 540-41, 750-53, 860-62, 1243-44, 1246-47, 1427-29, 1436-38, 1836, 1972-73, 2229, 2297-99, 2397-402. By doing so, Masimo violated the Court's Order prohibiting reference to Philips' concession beyond the fact that "infringement was alleged and denied during the time of negotiations." D.I. 878 at 2. Masimo's assertion that the Court's Order only "addressed Philips' concern about additional details about the parties' negotiations" is meritless. The Order addressed Philips' concern that Masimo would use the concession precisely as it did at trial: to cast Philips in a negative light. *See* D.I. 856 at 2-3.

Masimo summarily dismisses Philips' policy arguments and provides no counterargument. The Court cannot ignore the precedent set by allowing Masimo to use Philips' (entirely proper) decision to streamline its case in order to paint Philips (impermissibly) as a bad actor. *L'Etoile v. New England Finish Sys., Inc.*, 575 F. Supp. 2d 331, 340 (D.N.H. 2008).[2]

---

It is sufficient that knowledge of the prior verdict could have influenced the jury's decision on either count so that the defendant was unduly prejudiced.

"As this court long ago stated in a similar context:

> [T]he statement made by counsel of the plaintiff in his argument to the jury as to what had been done by other juries in former trials of this case . . . are in a federal court deemed so improper as to warrant opposing counsel to request, and courts of their own motion to direct, the withdrawal of a juror and the continuance of a cause . . ..

*McKibben v. Philadelphia & R. Ry. Co.*, 251 F. 577, 578 (3d Cir. 1918)."

[2] Masimo cites to *Old Chief v. United States*, 519 U.S. 172 (1997), for the proposition that it could use Philips' concession to paint it as a bad actor. *See* D.I. 939 at 27. As previously explained, *Old Chief* is inapposite. *See* D.I. 863, fn. 1.

## VII.   MASIMO FAILED TO ESTABLISH THAT NONIN PURESAT IS NOT AN ACCEPTABLE ALTERNATIVE

Philips established that Masimo failed to carry its burden of showing that the absence of an acceptable, noninfringing alternative. *See* D.I. 928 at 27-29. Masimo's response relies on "the overwhelming weight of evidence" and mischaracterizes Philips' arguments as being directed to the "weight" of the evidence, *see* D.I. 939 at 27, 29, but identifies no relevant, admissible evidence that Philips' replacement of the FAST algorithm in its devices with Nonin's OEM board containing the PureSAT <u>algorithm</u> would not have been an acceptable alternative. *See* Trial Tr. 1381:7-1384:18; 2485:4-2490:15. Masimo instead relies on irrelevant testimony regarding Masimo's tests suggesting that the Nonin PureSAT <u>device</u> did not measure well through motion, and the Nonin PureSAT <u>device's</u> sales history in various markets, lack of availability in hospital monitors, and lack of peer-review studies or conference presentations, *see* D.I. 939 at 27-29), as if those alleged issues could be attributed to Philips' proposed alternative.

Masimo's evidence regarding Philips' alleged lack of information about or motivation to adopt the Nonin alternative, *see* D.I. 939 at 28, says nothing about whether Philips would have considered it in the damages analysis context, if it knew it needed an alternative. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("available" substitutes include "alternative actions that [defendant] reasonably could have taken to avoid infringement"). Masimo also relies on "lack of evidence" arguments—namely, that no evidence shows acceptability of the Nonin device. *See* D.I. 939 at 27-28. The "absence of evidence is not evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993).

Masimo's argument regarding Ms. Harake's Nonin testing rests on the false assertion that "Quill's statement concerned patient observations in hospitals – not controlled laboratory studies" D.I. 939 at 29. But his testimony that a one-subject study is not "evidence really of

anything" was not restricted to clinical or hospital studies; nor did it exclude laboratory studies. *See* Trial Tr. 934:23-935:4. Likewise, Masimo does not dispute that Kiani's testimony is inadmissible hearsay, but instead incorrectly argues that hearsay arguments cannot be raised in a JMOL, *see* D.I. 939 at 29. But the *Versata* case on which it relies holds only that JMOL may not be a proper vehicle for challenging a *Daubert* ruling.

## VIII.   THE EVIDENCE DOES NOT SUPPORT THE $467 MILLION VERDICT

Philips demonstrated that Masimo failed to establish the facts necessary to support the $467 million verdict. Masimo's response does nothing to disturb that showing. Masimo argues that its expert "explained the assumptions behind his profit-margin calculation and why he did not use regression analysis." D.I. 939 at 29. But Mr. Wagner conceded he did not know the underlying assumptions that went into the profit margin analysis. *See* Trial Tr. at 1197:10-13. Masimo also asserts that "Wagner used Masimo's historic sales data to quantify lost stand-alone sales." D.I. 939 at 30. But Mr. Wagner admitted that the method he used to quantify lost stand-alone unit sales was not anchored in reality. *See* Trial Tr. at 1198:14-1199:3. Masimo contends that the spreadsheet used by Mr. Wagner to calculate the percentage of FAST units using Philips sensors was "Philips' own sensor estimate." D.I. 939 at 30. But Mr. Wagner admitted that the spreadsheet "doesn't have any bearing on what sensors are used with those Philips FAST sockets on an ongoing basis." Trial Tr. at 1188:2-15. Thus, Mr. Wagner's contradictory, impeached testimony cannot support an award for lost sales.

## IX.   CONCLUSION

For these reasons and the reasons set forth in its Opening Brief (*see* D.I. 928), Philips requests that the Court grant judgment as a matter of law and/or a new trial and/or remittitur.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Clinton H. Brannon
Brian K. Andrea
MAYER BROWN LLP
1999 K Street, NW
Washington, DC  20006
Tel:  (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Gregory A. Castanias
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939

I. Sasha Mayergoyz
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
Tel: (312) 782-3939

Dated:  January 16, 2015
1178477 / 33976

By:   */s/ David E. Moore*
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com
     bpalapura@potteraderson.com

*Attorneys for Defendants/Counterclaim
Plaintiffs Philips Electronics North America
Corporation and Philips Medizin Systeme
Böblingen GmbH*

OF COUNSEL:

William Rooklidge
GIBSON DUNN
3161 Michelson Drive
Irvine, CA 92612-4412
Tel: (949) 451-3800