IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MASIMO CORPORATION,           )
                              )
            Plaintiff,        )
                              )
      v.                      )
                              )   C.A. No. 09-80 (LPS)
PHILIPS ELECTRONICS NORTH     )
AMERICA CORPORATION and PHILIPS )
MEDIZIN SYSTEME BÖBLINGEN GMBH, )
                              )
            Defendants.        )

**OPENING BRIEF IN SUPPORT OF MASIMO CORPORATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
  *Attorneys for Plaintiff, Masimo Corporation*

OF COUNSEL:

Joseph R. Re
Karen Vogel Weil
Jon W. Gurka
Perry D. Oldham
KNOBBE, MARTENS, OLSON
  & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
(949) 760-0404

February 21, 2015

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.     SUMMARY OF THE ARGUMENT ...............................................................................1

III.    STATEMENT OF FACTS ..............................................................................................3

      A.      Philips' Deficient Pleadings...............................................................................3

      B.      Philips Insists Its Antitrust Claims Are Not Patent Dependent .............................3

      C.      Philips' Admission of Infringement And The Jury Trial .......................................5

IV.     ARGUMENT .................................................................................................................6

      A.      Philips' Pleadings Are Deficient And Fail To State Any Valid
             Patent Misuse Defense .......................................................................................7

      B.      Law of the Case Bars Philips' Patent-Misuse Defense........................................10

      C.      Philips' Patent-Misuse Defense Requires Inappropriate
             Modification To Law .........................................................................................11

V.      CONCLUSION.............................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. California*,
 460 U.S. 605 (1983) ........................................................................................................ 10

*B. Braun Med, Inc. v. Abbott Labs.*,
 124 F.3d 1419 (Fed. Cir. 1997) ....................................................................................... 12

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
 157 F.3d 1340 (Fed. Cir. 1998) ......................................................................................... 9

*Elliott v. Marist Bros. of the Schools, Inc.*,
 2010 WL 4954357 (D. Del. Nov. 30, 2010) ...................................................................... 7

*In re Hijacking of Pan Am. World Airways, Inc.*,
 920 F. Supp. 408 (S.D.N.Y. 1996) .................................................................................. 11

*Huntt v. Gov't of Virgin Is.*,
 339 F.2d 309 (3d Cir. 1964) .............................................................................................. 6

*L-3 Communications Corp. v. Jaxon Eng'g & Maintenance, Inc.*,
 2013 WL 1231875 (D. Colo. Mar. 27, 2013) .................................................................... 7

*Monsanto-Company v. McFarling*,
 363 F.3d 1336 (Fed. Cir. 2004) ..................................................................................... 2, 4

*Newborn Bros. Co., Inc. v. Albion Eng'g Co.*,
 299 F.R.D. 90 (D.N.J. 2014) ............................................................................................. 6

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
 601 F.3d 1359 (Fed. Cir. 2010) ......................................................................................... 7

*Pace Intern., LLC v. Indus. Ventilation, Inc.*,
 No. C08-1822 RSL, 2009 WL 2460999 (W.D. Wash. Aug. 6, 2009) ................................ 9

*In re Pharm, Benefit Managers Antitrust Litig.*,
 582 F.3d 432 (3d Cir. 2009) ............................................................................................ 10

*PNC Fin. Servs. Grp., Inc. v. Comm'r*,
 503 F.3d 119 (D.C. Cir. 2007) ........................................................................................ 10

*Princo Corp. v. ITC*,
 616 F.3d 1318 (Fed. Cir. 2010) ................................................................................ *passim*

*Revell v. Port Auth.*,
 598 F.3d 128 (3d Cir. 2010) .............................................................................................. 6

*S. Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.*,
 181 F.3d 410 (3d Cir.1999)...............................................................................................7

*Schor v. Abbott Labs.*,
 457 F.3d 608 (7th Cir. 2006) .........................................................................................12

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
 630 F. Supp. 2d 395 (D. Del. 2009).................................................................................7

*Takeda Pharm. Co v. Zydus Pharms. USA Inc.*,
 No. 10-1723 (JAP), 2011 WL 2115819 (D.N.J. May 25, 2011) ......................................7

*Teague v. Mayo*,
 553 F.3d 1068 (7th Cir. 2009) .......................................................................................10

*Virginia Panel Corp v. MAC Panel Co.*,
 133 F.3d 860 (Fed. Cir. 1997).......................................................................................12

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
 782 F.2d 995 (Fed. Cir. 1986).........................................................................................7

**Rules and Statutes**

35 U.S.C. § 271...................................................................................................... 5, 9-10

Fed. R. Civ. P. 12 ..............................................................................................................6

Plaintiff Masimo Corporation ("Masimo") submits this Opening Brief in support of its Motion for Judgment on the Pleadings on Defendants' Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen's (collectively, "Philips'") Tenth Defense of Patent Misuse.

## I.  NATURE AND STAGE OF THE PROCEEDINGS

Masimo filed a complaint for patent infringement on February 3, 2009.  D.I. 1.  Philips answered, denying infringement and asserting numerous defenses, including patent misuse, and numerous antitrust counterclaims.  D.I. 15.  On April 19, 2010, the Court bifurcated trial and stayed discovery on Philips' patent-misuse defense and antitrust counterclaims.  D.I. 86 at 12.

On August 18, 2014, Philips admitted direct, induced and contributory infringement of Masimo's U.S. Patent No. 6,263,222 (the "'222 Patent") and 7,215,984 (the "'984 Patent"). D.I. 834 at 4-5.  On September 30, 2014, the parties completed a ten-day jury trial regarding these patents and one Philips patent.  On October 1, 2014, the jury returned a verdict upholding the validity of Masimo's '222 and '984 Patents and awarding damages to Masimo.  D.I. 913 at 1-5.  The jury found no infringement of Philips' patent.  *Id.* at 6.  On February 11, 2015, the Court conducted a two-day bench trial to address Philips' inequitable-conduct defense.  On February 18, 2015, before arguments on post-trial motions, Philips informed Masimo that Philips' only remaining defense to Masimo's '222 and '984 Patents is patent misuse.

## II.  SUMMARY OF THE ARGUMENT

1.      Philips' pleadings are woefully deficient and state no valid patent-misuse defense. To the extent they can be understood, they are based on the legally erroneous premise that antitrust violations establish patent misuse.  That is incorrect.  Philips' antitrust counterclaims are affirmative claims for monetary relief, not equitable defenses.  Moreover, the Federal Circuit has

made clear, most recently in *Princo Corp. v. ITC*, 616 F.3d 1318, 1329 (Fed. Cir. 2010) (*en banc*), that an antitrust violation alone does not establish patent misuse.  Rather, there must be misconduct restricting use of the invention of the specific patent in suit, the misconduct must be a type of conduct previously held to be outside of the broad scope of the patent grant, and the conduct must have an anticompetitive effect.  *Id*.  Philips' pleadings do not come close to alleging any such conduct.  Philips merely parrots the definition of patent misuse and incorporates by reference hundreds of paragraphs from its counterclaims, including antitrust counterclaims based on the Sherman and Clayton Antitrust Acts.  That shows no misuse of any patents, much less misuse of the '984 and '222 Patents.

2.      Philips has recently indicated it will now seek to allege patent misuse based on Masimo's purported conduct with regard to cables and sensors.  But Philips never pled patent misuse on that basis.  Regardless, such a defense would be barred by the law of the case.  Specifically, Philips admitted that it infringed Masimo's patents by its sales of FAST products and sensors.  Additionally, the jury awarded damages based on pulse oximeters, cables and sensors.  Thus, law of the case establishes that sensors and cables are within the scope of Masimo's patented subject matter.  Where the alleged conduct relates to subject matter "reasonably within the patent grant, the patent misuse defense can never succeed."  *Monsanto-Company v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004).

3.      Apparently recognizing its lack of any valid patent-misuse theory, Philips seeks a modification to existing law.  Specifically, Philips asked Magistrate Judge Thynge to certify the following question to the Federal Circuit: "Whether, a patent holder, wielding economic monopoly power over a patented article, may rely on a 'system claim' to exclude aftermarket competition from commodity components of the claimed system."  Thus, Philips apparently

seeks to pursue patent misuse based on subject matter admittedly *within* the scope of a "claimed system." Philips' proposed expansion of patent misuse is contrary to settled precedent and should be rejected. The Court should grant judgment on the pleadings.

### III.  STATEMENT OF FACTS

**A.    Philips' Deficient Pleadings**

In its pleadings, under the heading of "Tenth Defense – Patent Misuse," Philips incorporates by reference all 335 paragraphs from its counterclaims, including those alleging patent invalidity, inequitable conduct and violations of the Sherman and Clayton Antitrust Acts. D.I. 884 at ¶¶ 105-106. Philips then alleges Masimo misused *all fourteen* of its originally asserted patents by engaging "in a systematic campaign to broaden the scope of its patent rights with anticompetitive effect." *Id.* at ¶ 106.

Philips' antitrust counterclaims contain only a few scattered references to patents. Philips alleges that Masimo abused its "technology position" and collected revenue for the "sale of both patented and unpatented goods." D.I. 884 at ¶ 129. Philips' counterclaims also allege that Masimo has "collect[ed] anticompetitive profits" from products that "do not infringe Masimo's patents," *id.* at ¶ 147. Philips further alleges that Masimo has sued and threatened to sue competitors such as Nellcor. *Id.* at ¶ 131, 143, 188. Philips never identifies any conduct specific to Masimo's '222 and '984 Patents, nor the supposedly unpatented goods at issue.

**B.    Philips Insists Its Antitrust Claims Are Not Patent Dependent**

In 2009, Masimo moved to bifurcate trial and stay discovery on Philips' antitrust counterclaims and patent-misuse defense. D.I. 23. Masimo argued that resolution of the validity and scope of its patent claims would resolve Philips' antitrust and patent-misuse allegations. *Id.* at 11-12, 17. Philips opposed, emphasizing it was *not* asserting patent-dependent antitrust

claims, like *Walker Process* and "sham litigation" claims.  D.I. 31 at 1.  Philips stated it was asserting traditional antitrust counterclaims regarding sales of cables and sensors.  *Id*.  Philips argued that such "anticompetitive conduct," if proven, "would not only constitute an actionable antitrust violation but also patent misuse, negating any patent liability findings."  *Id*. at 2.

Judge Thynge bifurcated Philips' antitrust claims and stayed antitrust discovery.  D.I. 67 at 10.  Judge Thynge reasoned that Masimo's patents may provide a complete defense to Philips' antitrust counterclaims:

> The scope of Masimo's patents will be determined at trial. Although a patent does not permit a patentee to condition use of the patented product on the surrender of a monopoly in some other unpatented product, should Masimo's patents on signal extraction technology and pulse oximetry equipment cover using such patented products in concert with unpatented products (say, sensors and cables) in pulse oximetry systems, then Masimo may be entitled to monopolize those systems.

*Id*. at 8.  Judge Thynge found that "a trial on Masimo's patent claims will potentially ***eliminate*** or simplify Philips' antitrust counterclaims alleging anticompetitive licensing restrictions."  *Id*. (emphasis added).

Philips moved for reconsideration, again emphasizing that it was asserting "traditional" and "non-patent-specific" antitrust theories.  D.I. 72 at 6 & n.4.  Philips distinguished Masimo's cases on the ground that they were based on "patent-specific antitrust theories, such as 'sham litigation' and Walker Process cases, two liability theories that are not alleged here."  *Id*.  Philips again argued that its antitrust counterclaims would not only establish antitrust violations, but would also "provide a complete defense to Masimo's patent claims under the misuse doctrine."  *Id*. at 9.  Philips also sought clarification of whether the bifurcation and stay included patent misuse.  *Id*. at 1 n1.

Judge Thynge denied Philips' motion, again reasoning that a trial may simplify the issues raised by Philips' antitrust counterclaims.  D.I. 86 at 9.  Judge Thynge also modified her prior Order to bifurcate and stay discovery on Philips' patent-misuse defense.  *Id*. at 12.  Judge Farnan overruled Philips' objections to Judge Thynge's Order.  D.I. 118.

**C.      Philips' Admission of Infringement And The Jury Trial**

In the August 18, 2014 Pretrial Order for the jury trial, Philips admitted infringement of Masimo's '222 and '984 Patents:

> Philips concedes that it has ***directly and indirectly*** infringed Claims 17 and 18 of the '222 Patent and Claims 1-5, 15-16, 19-20, 22 and 52-54 of the '984 Patent under the Court's claim construction and summary judgment orders.
>
> Specifically, this concession includes that Philips' infringement has occurred literally for all the asserted claims. In addition, Philips' concession of indirect infringement includes induced infringement, and ***contributory infringement***, as set forth in 35 U.S.C. § 271(b) and (c). The infringing acts include the making, using, selling, offering for sale, and importing of all products containing the FAST algorithm (and ***sensors*** used therewith). Philips concedes these infringing acts have been occurring ***continuously since the issuance of the two asserted patents***.

D.I. 834 at 4-5 (emphasis added).

At trial, Masimo presented unrebutted testimony that the '222 and '984 Patents cover a pulse oximeter, cable and sensor as part of a single functional unit.  *See* D.I. 966-1, Ex. 2 (Trial Tr.) at 1090:2-1091:25 (Claim 17 of the '222 Patent covers pulse oximeter, cable and sensor); 1094:1-1095:14 (Claim 1 of the '984 Patent covers pulse oximeter, cable and sensor); 1128:8-16 ("[B]oth Claim 17 of the '222 patent and Claim 1 of the '984 patent discuss sensors. And they are all part of a functional unit . . . You need the sensor and cable.  It is one functional unit").

Philips likewise calculated damages based on pulse oximetry boards, cables and sensors.  *Id.* at 2052:18-21 (Keely) ("I just took the board sales of Philips and added to that their

- 5 -

consumable sales; that is, their revenue on cables and sensors."); *see also id*. at 2118:5-8.  Philips objected to the amount of sensor sales that should be included in the calculation, and argued that lost profits were not available at all because of Nonin.  *Id*. at 2484:4-21 and 2490:15-24. However, Philips did not dispute that, if Masimo were entitled to lost profits, lost profits should be based on sales of boards, cables and sensors.  *Id*.

On October 1, 2014, the jury upheld the validity of the '222 and '984 Patents and awarded damages for lost profits based on boards, cables and sensors.  D.I. 913 at 1-5.

On February 2, 2015, the parties filed a proposed Pretrial Conference Order to govern the trial on Philips' equitable defenses.  D.I. 953.  In that document, Philips wrote that it still has a patent-misuse defense, listed various types of prohibited antitrust conduct, and argued that ***all*** of the conduct violated the Sherman Antitrust and Clayton Acts.  *Id*. at 2-3.  Absent was any mention of any Masimo patent.  *Id*.

## IV.  ARGUMENT

Failure to "state a legal defense to a claim may be raised . . . by a motion under Rule 12(c)" for judgment on the pleadings.  Fed. R. Civ. P. 12(h)(2); *see Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 299 F.R.D. 90, 96 n.3 (D.N.J. 2014).  Such a motion may be made anytime "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."  *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).  The court views the pleadings in the light most favorable to the non-moving party and grants judgment if the moving party is clearly entitled to judgment.  *See Huntt v. Gov't of Virgin Is.*, 339 F.2d 309 (3d Cir. 1964).

"[A] court is not required to accept affirmative defenses that are mere 'bare bones conclusory allegations,'" and may appropriately resolve "such inadequately pleaded defenses." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009). Because the judicial doctrine of patent misuse creates "an unusual circumstance where an infringer can escape the consequences of its infringing conduct," the Federal Circuit examines patent-misuse allegations "with particularity.*" Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 601 F.3d 1359, 1367 (Fed. Cir. 2010), *reversed in non-relevant part by* 132 S. Ct. 1670 (2012). Accordingly, courts dismiss patent-misuse allegations where, as here, they lack sufficient factual allegations and/or are legally erroneous. *See, e.g. Takeda Pharm. Co v. Zydus Pharms. USA Inc.*, No. 10-1723 (JAP), 2011 WL 2115819 at *9 (D.N.J. May 25, 2011) ("bald and conclusory assertions [of patent misuse] simply fail to state a claim under the appropriate standard"); *L-3 Communications Corp. v. Jaxon Eng'g & Maintenance, Inc.*, 2013 WL 1231875 at *5 (D. Colo. Mar. 27, 2013) (dismissing patent misuse where allegations "[do] not appear to be the proper invocation of that doctrine").

In considering a motion on the pleadings, the Court may consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *See S. Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir.1999). The Court may also apply "law of the case" to grant judgment on the pleadings. *See Elliott v. Marist Bros. of the Schools, Inc.*, 2010 WL 4954357 at *1 (D. Del. Nov. 30, 2010).

A.      **Philips' Pleadings Are Deficient And Fail To State Any Valid Patent Misuse Defense**

Patent misuse is an affirmative defense that "requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir.

1986) (internal quotation omitted).   Philips' Answer alleges no facts that could show this. Philips' Answer merely parrots the definition of patent misuse and incorporates hundreds of paragraphs from its counterclaims, including Sherman and Clayton Act antitrust counterclaims. None of the incorporated paragraphs state any valid patent-misuse defense.   To the contrary, during the briefing on the Motion to Stay, Philips characterized these allegations as "***non-patent***-specific" traditional antitrust counterclaims.  D.I. 72 at 6 & n.4.

Thus, Philips' patent-misuse defense is based on a legally erroneous theory—that antitrust violations alone give rise to a valid defense of patent misuse.  That is incorrect.  Philips' antitrust counterclaims are claims for monetary relief, not equitable defenses.  As the Federal Circuit explained in *Princo*, while an "antitrust violation shows that the patentee has committed wrongful conduct having anticompetitive effects, that does ***not*** establish misuse of the ***patent in suit*** unless the conduct in question restricts the use of ***that patent*** and does so in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant." 616 F.3d at 1329 (emphasis added).[1]   Thus, "[p]atent misuse will not be found when there is ***no connection*** between the patent right and the misconduct in question or ***no use*** of the patent."  *Id.* at 1331 (internal citations and quotations omitted) (emphasis added).

Philips has stated unequivocally that its antitrust counterclaims are not patent specific. Philips, therefore, has pled no "misconduct" or "use" of the '222 and '984 Patents, much less any "connection" between those patents and any alleged misconduct.  *See id.* at 1329.   Philips' counterclaims merely allege antitrust violations, and the few scattered references to patents do not come close to connecting the '222 and '984 Patents to any alleged misconduct.

---

[1] The Federal Circuit cited "courts and commentators [who] have questioned the continuing need for the doctrine of patent misuse, which had its origins before the development of modern antitrust doctrine."  *Princo*, 616 F.3d at 1329 n.2.

For example, Philips alleges that Masimo abused its "technology position" and collected revenue for the "sale of both patented and unpatented goods." D.I. 884 at ¶ 129. Absent some patent-related misconduct, however, it is not patent misuse to receive revenue on unpatented goods. Instead, there must be misconduct involving "'patent leverage,' i.e., the use of the patent power to impose overbroad conditions on the use of the patent in suit that are not within the reach of the monopoly granted by the Government." *Princo,* 616 F.3d at 1323, 1331 (internal quotations omitted).

Philips also alleges that Masimo has sued and threatened to sue competitors. *Id.* at ¶¶ 131, 143, 188. However, the Patent Statute specifically provides that a patent owner's attempts to enforce its patent rights cannot be patent misuse. 35 U.S.C. § 271(d)(3). "[T]he Federal Circuit has determined that allegations of wrongful enforcement are insufficient to establish patent misuse, [and thus such a] defense is insufficient and fails to state a defense upon which relief can be granted." *Pace Intern., LLC v. Indus. Ventilation, Inc.*, No. C08-1822 RSL, 2009 WL 2460999 at *1 (W.D. Wash. Aug. 6, 2009) (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998)).

After closing arguments on its inequitable-conduct defense, Philips described its patent-misuse defense as follows: "The claim, very briefly, is Masimo has been using their monopoly power granted by these patents to extend beyond the oximeters. They locked out people from the sensor and cable market. That is not what the patents cover." D.I. 966-1, Ex. 1 at 490:13-17. But Philips never pled such a patent-misuse defense. Philips' "Tenth Defense – Patent Misuse" is silent on the topic of sensors and cables. While Philips' antitrust counterclaims reference competition in the "pulse oximeter, sensor, and patient cable markets," they do not connect these allegations to any patent-related conduct, much less conduct involving Masimo's '222 and '984

Patents.  *See* D.I. 884 at ¶ 129.  As Philips has emphasized, the counterclaims are "non-patent-specific."  *See* D.I. 31 at 1; D.I. 953 at 2-3.  Therefore, Philips does not state a valid patent-misuse defense.  The Court should grant judgment on the pleadings.

**B.      Law of the Case Bars Philips' Patent-Misuse Defense**

Philips' new attempt to argue patent-misuse based on sensors and cables is not only unpled, but is affirmatively barred by the law of the case.  "The law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."  *In re Pharm, Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (internal quotation omitted).  "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted).  This principle applies to "issues decided both explicitly and by necessary implication."  *PNC Fin. Servs. Grp., Inc. v. Comm'r*, 503 F.3d 119, 126 (D.C. Cir. 2007) (internal quotation omitted); *see also Teague v. Mayo*, 553 F.3d 1068, 1072-73 (7th Cir. 2009) (jury verdict is law of the case).

Here, Philips has admitted that its sales of FAST products and sensors infringed the '222 and '984 Patents.  D.I. 834 at 4-5.  Philips even admitted that such sales were acts of contributory infringements.  *Id.*  Having admitted it infringed by selling components of the patented invention, Philips cannot now argue that such components are not within the scope of Masimo's claimed inventions.  Under § 271(d)(3), Masimo cannot engage in patent misuse by enforcing its patents to stop infringement.

Philips' patent-misuse theory is also barred by the jury's verdict.  At trial, Masimo presented unrebutted testimony that the '222 and '984 Patents cover pulse oximeters, cables and sensors, and that these components work together as part of a single claimed system.  *See, e.g.*,

D.I. 966-1, Ex. 2 at 1090:2-1091:25; 1094:1-1095:14; 1128:11-16.   Like Masimo, Philips calculated lost profits based on pulse-oximetry boards with sensors and cables, but argued that lost profits should not be available because of Nonin.   *Id.* at 2052:18-21; 2118:1-16; 2484:4-21.[2] The jury rejected Philips' Nonin argument, upheld the validity of Masimo's patents and awarded damages based on pulse oximeters, cables and sensors.

Philips' admissions, Philips' damages calculations, and the jury's verdict establish that cables and sensors are within the scope of Masimo's claims.   Law of the case bars patent misuse directed to such claimed subject matter.   *See In re Hijacking of Pan Am. World Airways, Inc.*, 920 F. Supp. 408, 414 (S.D.N.Y. 1996) (granting motion to dismiss where jury verdict foreclosed remaining claims).   Thus, Judge Thynge wisely stayed Philips' patent-misuse defense because the patent case could eliminate it.   Because that defense has now been resolved, it should be dismissed.

C.      **Philips' Patent-Misuse Defense Requires Inappropriate Modification To Law**

Recognizing the lack of any viable legal theory, Philips asked Judge Thynge to certify to the Federal Circuit a "controlling question of law" as to which there is "substantial ground for difference of opinion."   D.I. 72 at 10.   That question was "Whether, a patent holder, wielding economic monopoly power over a patented article, may rely on a 'system claim' to exclude aftermarket competition from commodity components of the claimed system."   *Id.*

---

[2]      The Court may also take judicial notice of the patents themselves, which are attached to Masimo's Complaint and discuss the sensors as part of the invention, explaining that "[t]he detector in the aspect of the signal processor of the present invention described above may further comprise a sensor for sensing a physiological function."   D.I. 12-7 ('222 Patent) at 6:35-37; *see also* D.I. 12-15 ('984 Patent) at 35:27-37; 37:57-62; 38:27-30.   Indeed, much of the asserted claims is directed to the cables and sensors.   *See, e.g.,* D.I. 12-7 at 74:57-67; D.I. 12-15 at 66:25-29.

Judge Thynge correctly denied Philips' request for certification.   D.I. 86 at 11-12. Philips' proposed expansion of law would be contrary to precedent.   Indeed, after Philips requested certification, the Federal Circuit addressed patent misuse *en banc* and confirmed that this defense is of "narrow scope" and limited to the "***specific*** ways that have been ***held*** to be outside the otherwise broad scope of the patent grant."   *Princo*, 616 F.3d at 1329 (emphasis added).   Philips has identified no precedent authorizing a patent-misuse defense directed to components admitted and adjudicated to be within the scope of the claimed subject matter. Philips' attempt to extend patent misuse is prohibited by *Princo*.

Moreover, it is settled law that "a patentee may lawfully police a market that is effectively defined by its patent."   *Virginia Panel Corp v. MAC Panel Co.*, 133 F.3d 860, 873 (Fed. Cir. 1997).   Thus, if a practice "relates to subject matter within the scope of the patent claims . . . . the practice does ***not*** have the effect of broadening the scope of the patent claims and thus ***cannot*** constitute patent misuse."   *Id.* at 869 (emphasis added).   A patentee may therefore lawfully police sales of a component of a patented invention.   *See, e.g., B. Braun Med, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 n.4 (Fed. Cir. 1997) (Braun's patent on a valve for use with an IV line gave Braun the "right to exclude competition altogether" from two separate markets: the market for the valve alone and the market for an extension set incorporating the valve); *Schor v. Abbott Labs.*, 457 F.3d 608, 614 (7th Cir. 2006) (Easterbrook, J.) ("[T]he product 'ritonavir in combination with another protease inhibitor' ***is*** patented to Abbott, which therefore is entitled to monopolize the combination.") (emphasis in original).

Regardless, Philips' theory does not "connect" any specific alleged misconduct with any patent, much less the '222 and '984 Patents.   Instead, it merely asserts "monopoly power" and an alleged "exclusion" of competition.   D.I. 72 at 10.   As explained above, antitrust violations do

not establish patent misuse.  *See Princo*, 616 F.3d at 1329.  While Philips may attempt to pursue

its dubious theory in conjunction with its antitrust claims, Philips has disclosed no valid patent-

misuse defense to the '222 and '984 Patents.  Philips' request for certification is recognition that

it lacks any viable legal basis to assert a defense of patent misuse.

## V.  CONCLUSION

For the foregoing reasons, the Court should grant Masimo's Motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*
_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
  *Attorneys for Plaintiff, Masimo Corporation*

OF COUNSEL:

Joseph R. Re
Karen Vogel Weil
Jon W. Gurka
Perry D. Oldham
KNOBBE, MARTENS, OLSON
  & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
(949) 760-0404

February 21, 2015
8909570

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused to be served copies of the foregoing document on February 21, 2015, upon the following in the manner indicated:

## <u>BY ELECTRONIC MAIL</u>

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
Clinton H. Brannon
John X. Zhu
Cody I. Gillians
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC  20006

Steven Yovits
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606

Sasha Mayergoyz
JONES DAY
77 West Wacker Drive
Chicago, IL  60601

*/s/ Julia Heaney*
Julia Heaney (#3052)