## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80-LPS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION and PHILIPS MEDIZIN | ) | |
| SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

## PHILIPS' OPENING BRIEF IN SUPPORT OF FINDING THE '984 PATENT UNENFORCEABLE DUE TO INEQUITABLE CONDUCT

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
Cody I. Gillians
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel:  (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

William C. Rooklidge
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Tel:  (949) 451-4009

Dated:  February 25, 2015
1182406 / 33976

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteraderson.com

*Attorneys for Defendants/Counterclaim Plaintiffs Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen GmbH*

OF COUNSEL:

Sasha Mayergoyz
JONES DAY
77 W. Wacker
Chicago, IL  60601
Tel:  (312) 782-3939

## TABLE OF CONTENTS

I.      Introduction ................................................................................................- 1 -

II.     Applicable Legal Principles..........................................................................- 1 -

III.    Messrs. Kesler And Grover Committed Inequitable Conduct......................- 2 -

    A.      To Overcome The Rejection Of Claim 1, Mr. Kesler Made Definitive
        Representations That He Later Knew Were Demonstrably False....................- 2 -

    B.      The Demonstrably False Statements Are Material...........................- 5 -

    C.      Messrs. Kesler and Grover Acted With Intent To Deceive The PTO ...............- 6 -

IV.     Mr. Jensen Committed Inequitable Conduct ...............................................- 9 -

# TABLE OF AUTHORITIES

Page

CASES

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
    768 F.3d 1185 (Fed. Cir. 2014) .................................................................................7, 8

*Apotex, Inc. v. UCB, Inc.*,
    970 F. Supp. 2d 1297 (S.D. Fla. 2013) ...................................................................10

*Global-Tech, Inc. v. SEB SA*,
    131 S. Ct. 2060 (2011)................................................................................................1

*In re Cochise College Park, Inc.*,
    703 F.2d 1339 (9th Cir. 1983) ..................................................................................4

*Intellect Wireless Inc. v. HTC Corp.*,
    732 F.3d 1339 (Fed. Cir. 2013) .......................................................................7, 8, 10

*KangaROOS U.S.A. Inc. v. Caldor, Inc.*,
    778 F.2d 1571 (Fed. Cir. 1985) ................................................................................9

*Kingsland v. Dorsey*,
    338 U.S. 318 (1950) ..................................................................................................6

*Precision Instrument Mfg. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) ..................................................................................................2

*Rohm & Haas Co. v. Crystal Chem. Co.*,
    722 F.2d 1556 (Fed. Cir. 1983) ............................................................................6, 7

*Synthon IP, Inc. v. Pfizer Inc.*,
    472 F. Supp.2d 760 (E.D. Va. 2007), *aff'd without opn*, 281 F. App'x 995
    (Fed. Cir. 2008) .........................................................................................................1

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .....................................................................4, 5, 6, 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    864 F. Supp. 2d 856 (N.D. Cal. 2012) .....................................................................8

*Worldwide Home Prods., Inc. v. Time Inc.*,
    2015 WL 568710 (S.D.N.Y. Feb. 11, 2015) ...........................................................................7

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
    2012 WL 600715 (D. Del. Feb. 3, 2012)...........................................................................2, 3, 4

*Young v. Lumenis, Inc.*,
    492 F.3d 1336 (Fed. Cir. 2007) ...............................................................................................2

**OTHER AUTHORITIES**

37 C.F.R. § 1.555(a) .................................................................................................................2, 10

37 C.F.R. § 1.555(b) .......................................................................................................................2

Restatement (2nd) of Contracts § 161 cmt. c ................................................................................4

## TABLE OF ABBREVIATIONS

*Parties*

| Philips | Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen Gmbh |
|---------|------------------------------------------------------------------------------------------------------|
| Masimo | Plaintiff Masimo Corporation |

*Defined Terms*

| The '984 patent | U.S. Patent No. 7,214,984 (DX2379) |
|-----------------|-------------------------------------|
| Corenman | U.S. Patent No. 4,934,372 (DX3064) |
| DFF ___ | Refers to Defendants' Fact Finding; "___" refers to specific fact finding |
| Markman Report | D.I. 210, Feb. 18, 2011 Report & Recommendation re: Claim Construction |
| Markman Order | D.I. 319, Jan. 17, 2012 Order re: Claim Construction |
| Order Granting Reexamination | October 10, 2012 Order Granting Reexamination (DX2740.2 at PHIL03334281-303) |
| Response | March 25, 2013 Response to Office Action (DX2740.8 at PHIL03334934-93) |
| April 29th IDS | April 29, 2013 Information Disclosure Statement (DX2740.9 at PHIL033345071-080) |
| April 2nd Report | D.I. 662, April 2, 2013 Report and Recommendation re: Summary Judgment (DX2784) |
| NIRC | April 10, 2104 Notice of Intent to Issue Reexamination Certificate (DX2740.10 at PHIL03335239-262) |

Emphasis added throughout, unless indicated otherwise.

iv

## I.      INTRODUCTION

There is no dispute that Masimo's attorneys—three experienced partners with nearly five decades of prosecution experience and a client mandate to be transparent with the PTO—failed to disclose critical information to the Examiner.  Messrs. Kesler and Grover never specifically informed the Examiner of Judge Thynge's claim constructions despite knowing that those constructions rendered demonstrably false the representations made to overcome unpatentability. Mr. Jensen never disclosed this Court's Order adopting those constructions, despite his duty to do so and the fact that he urged Masimo's rejected constructions during the Examiner interview.

For its lack of disclosure, Masimo offers a bevy of excuses: too busy; too slow; on vacation; bad timing; not my job; someone else's responsibility; the '984 patent was not that important; never read the entire NIRC or Philips' letter to the Court.  This litany shows that the most reasonable inference—in fact, the only reasonable inference—is that Kesler, Grover, and Jensen deliberately withheld information to mislead the Examiner and obscure the fact that Masimo's patentability position depended entirely on representations rejected by this Court.  The attorneys created a system enabling each of them to consciously shirk responsibility for disclosing information altogether, or in the most timely way.  Such willful blindness evidences intent.  *Global-Tech, Inc. v. SEB SA,* 131 S. Ct. 2060, 2068-69 (2011).  "[T]he duty of candor cannot be avoided by willful ignorance or compartmentalization of knowledge … in an effort to insulate the … patent attorneys from information unfavorable to patentability."  *Synthon IP, Inc. v. Pfizer Inc.*, 472 F. Supp.2d 760, 779 (E.D. Va. 2007), *aff'd without opn*, 2008 WL 2416903.

## II.     APPLICABLE LEGAL PRINCIPLES[1]

Patent applicants owe an uncompromising duty of honesty and candor to the PTO:

---

[1] The elements of inequitable conduct are set forth in the Court's Order in D.I. 854.

> [P]arties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue. This duty is not excused by reasonable doubts as to the sufficiency of the proof of the inequitable conduct nor by resort to independent legal advice.

*Precision Instrument Mfg. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 818 (1945).   This requirement applies to reexaminations, where "each individual … has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.555(a).   Such disclosure must be made promptly, "within two months of the date of the order for reexamination, or as soon thereafter as possible." *Id.*   Thus, patentees must disclose information that "refutes, or is inconsistent with, a position that a patent owner takes in opposing an argument of unpatentability relied on by the Office." 37 C.F.R. § 1.555(b).

The duty of candor also demands that patentees specifically advise the PTO about attorney statements that are "demonstrably false." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007).   As "this Court recently affirmed … attorney arguments can give rise to an actionable claim of inequitable conduct." *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at *11 (D. Del. Feb. 3, 2012).

## III.   MESSRS. KESLER AND GROVER COMMITTED INEQUITABLE CONDUCT

### A.   To Overcome The Rejection Of Claim 1, Mr. Kesler Made Definitive Representations That He Later Knew Were Demonstrably False

After rejecting claim 1 as anticipated by Corenman, the Examiner conducted an interview with Masimo's Kiani, Grover, and Jensen. (DFF 24.)   At the interview, Jensen presented Masimo's positions on claim construction and Corenman. (DFF 25, 28.)   Afterwards, Grover and Jensen called Kesler to provide him with a summary of the interview. (DFF 26.)   Kesler understood that during the interview, Jensen had represented that Masimo's constructions were the same constructions that a district court would adopt. (DFF 33-34.)   On February 22, 2013,

the Examiner issued an Interview Summary, recording that "Patent Owner's representative" stated that "Corenman teaches two techniques to calculate oxygen levels, however they are not executed simultaneously, but instead, either first or second calculation is carried out." (DFF 27.)

On March 25, 2103, Kesler submitted Masimo's Response to the Office Action ("Response"), in which he repeatedly represented to the Examiner that claim 1 required that both calculators actually determine ratios—rather than allowing a first or second ratio to be calculated. (DFF 39.) He unequivocally stated to the Examiner that: "The claim language … regarding each calculator being 'capable of utilizing' a calculation technique **cannot be construed** as allowing only one calculator to make a determination for a particular measurement…. The claims require both calculators 'to determine' ratios or values." (DFF 40.) Kesler also definitively represented that "[a]ny other interpretation would render the claims at issue meaningless." (DFF 41.)

To support the Response, Kesler submitted a declaration from Dr. Baura, in which she echoed his representation that claim 1 requires "two calculators that determine a ratio or value" and "outputs from each calculator be available to the processing module." (DFF 42.) Baura also distinguished Corenman as lacking "parallel, alternative calculations to determine first and second ratios," which she stated claim 1 required. (DFF 43.)

Seven days after Kesler submitted the Response, Judge Thynge issued the April 2nd Report in which she rejected the same constructions and prior-art distinctions that Masimo presented to the PTO. Judge Thynge noted that "Masimo concludes the claim requires that the calculators actually determine their respective ratios," but she rejected that position. (D.I. 662 at 47-48.) Judge Thynge also rejected Masimo's position that the processing module must utilize output from both calculators, finding that "the claim does not include that requirement." (*Id.* at 50-51.) Judge Thynge noted Dr. Baura's distinction of the prior art as lacking "parallel,

alternative calculations of a signal to determine first and second ratios," which required determining both ratios. (*Id.* at 45-46.) Judge Thynge then recognized that "Dr. Baura purportedly admits her validity opinions regarding the independent claims are based entirely on those claim interpretations." (*Id.* at 46 & n.219.) Although Masimo filed objections to the April 2nd Report, it did not object to Judge Thynge's constructions.

Within weeks of submitting the Response, Kesler knew that his unqualified statements to the PTO were rendered false. (DFF 47-50.) He knew that his representation that claim 1 "cannot be construed" to calculate only one ratio was demonstrably false because Judge Thynge construed the claim as such. (DFF 49.) He knew that Judge Thynge adopted a construction that he represented would render the claim "meaningless." (*Id.*) And Judge Thynge rejected Dr. Baura's sole basis for distinguishing Corenman—that claim 1 requires "parallel, alternative calculations of a signal to determine first and second ratios." (DFF 47-50; D.I. 662 at 46-48.)

"[H]onesty at the PTO is essential." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Thus, representations to the PTO that are subsequently rendered false are no different than other areas of law, where "[e]ven if a person does not know that a misrepresentation is false and, in fact, believes the misrepresentation to be true, if the speaker subsequently learns that the statement is false, he is liable in fraud for failure to correct the misrepresentation." *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1359 n.31 (9th Cir. 1983) (addressing real estate contract); *see* Restatement (2nd) of Contracts § 161 cmt. c ("If a person fails to correct his earlier assertion in these situations, the result is the same as it would have been had he had his newly acquired knowledge at the time he made the assertion.").

### B.     The Demonstrably False Statements Are Material

The demonstrably false statements in the Response—left unaddressed by Kesler and Grover after the April 2nd Report—are but-for material, as explained below.  They also constitute egregious misconduct that is inherently material.  *See Therasense*, 649 F.3d at 1292.

On April 10, 2014, the Examiner issued a NIRC, which allowed claim 1 over Corenman. (DFF 68.)  The NIRC stated that the "claims considered herein are interpreted in accordance with the court decision resulting from the litigation."  (*Id.*)   Then, copying claim charts from Masimo's Response, the NIRC adopted verbatim the constructions from the Markman Report and Order.  (DFF 69.)  Next, adhering to the "Magistrate and District Court['s]" determination that "['calculation technique'] needed no further construction to its ordinary meaning," the NIRC likewise declined to construe the term.   (DFF 70.)  Critically, <u>nowhere</u> did the NIRC acknowledge, much less discuss, the constructions in the April 2nd Report and March 31st Order.

Unaware that Judge Thynge and this Court construed claim 1 as allowing calculation of only one ratio (and in a manner Masimo stated the claim "cannot be construed" and would be "meaningless"), the Examiner determined that claim 1 was patentable over Corenman.  The Examiner credited Masimo's "arguments as persuasive" and "conclud[ing] that <u>Corenman teaches only a single ratio … in contrast to the two ratios required in claim 1</u>."  (DFF 71.) Accordingly, Judge Thynge's and this Court's constructions are "but-for" material because they reveal the false basis on which the Examiner allowed claim 1.  *Therasense*, 649 F.3d at 1291 (information is "but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed [information]").  As Dr. Stone's report confirms, the Examiner's "determination is inconsistent with the Court's construction because claim 1 does not require the calculation of two ratios each time a calculation is performed."  (DFF 90.)

5

Contrary to Masimo's assertion, the Examiner did not distinguish Corenman as failing to teach two different calculation techniques. Throughout reexamination, the Examiner unswervingly found that Corenman teaches the two claimed "calculation techniques." When ordering reexamination and issuing the Office Action, the Examiner found that the "first calculation technique corresponds to [Corenman's] ECG synchronization mode" and the claimed "second calculation technique corresponds to unintegrated mode." (DFF 18, 20.) The Examiner confirmed that same position in the NIRC, stating that "Corenman teaches two techniques for obtaining oxygen saturation, i.e., unintegrated and ECG modes." (DFF 72.) The Examiner's position is consistent with her Interview Summary, noting that "according to the Patent Owner's representative, Corenman teaches two techniques to calculate oxygen levels." (DFF 27-32.)

### C.      Messrs. Kesler and Grover Acted With Intent To Deceive The PTO

Courts "may infer intent from indirect and circumstantial evidence." *Therasense,* 649 F.3d at 1290. For example, when an applicant becomes "aware of misrepresentation in the prosecution," he must "expressly advise the PTO of its existence, stating specifically wherein it resides" and apprise the PTO of "the actual facts." *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983). The need to advise the PTO about statements that have become false is magnified in *ex parte* proceedings because "[i]n its relation to applicants, the [Examiner] must rely upon their integrity and deal with them in a spirit of trust and confidence." *Kingsland v. Dorsey*, 338 U.S. 318, 319 (1950).

Here, the most reasonable inference is that Kesler and Grover intended to deceive the PTO about the facts concerning Masimo's representations. Despite knowledge of the false statements, the attorneys never specifically informed or "openly advise[d]" the Examiner about Judge Thynge's construction; "nowhere expressly stated the actual facts" to the Examiner; never addressed, much less "expressly negated," the representations in view of the April 2nd Report;

and never explained how Judge Thynge's constructions and analysis affected Kesler's representations by asserting another basis for patentability over Corenman and explaining why Claim 1 was not "meaningless." *Intellect Wireless Inc. v. HTC Corp.*, 732 F.3d 1339, 1343 (Fed. Cir. 2013); DFF 52-59, 86-89. Such "selective[] with[holding] from the PTO examiner of the most relevant information … is indicative of a clear intent to deceive." *Worldwide Home Prods., Inc. v. Time Inc.*, 2015 WL 568710, at *11 (S.D.N.Y. Feb. 11, 2015).

Moreover, in these circumstances, "[i]t <u>does not suffice</u> that one knowing of misrepresentations … in its prosecution merely supplies the examiner with accurate facts without calling his attention to the <u>untrue or misleading assertions</u> sought to be overcome, leaving him to formulate his own conclusions." *Rohm,* 722 F.2d at 1572. Yet, one month after making unqualified representations that Kesler knew had become false, Kesler and Grover submitted the April 29th IDS that merely provided high-level reference to claim constructions in the April 2nd Report and limited the discussion to referencing page ranges. (DFF 52-59.) Thus, by stating no more than "claim constructions can be found at least" in a 10-page range and submitting voluminous objections with the April 2nd Report, Masimo cultivated the impression that Judge Thynge had actually adopted Masimo's position while obscuring the false statements in the Response. (*Id.*) Such "[p]artial disclosure of material information about the prior art to the PTO cannot absolve the patentee of intent" when, as here, "the disclosure is intentionally selective." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014).

Kesler and Grover deliberately avoided advising the Examiner of Judge Thynge's construction because it was fatally inconsistent with representations in Masimo's Response. (DFF 48-50.) Indeed, Grover intentionally limited the IDS discussion due to concerns about litigation. (DFF 56.) As a result, the April 29th IDS was inadequate, misleading, and sought to

"obfuscate[] the truth." *Intellect*, 732 F.3d at 1343. Had the attorneys provided the Examiner with the Court's actual construction, "the examiner would have seen through [Masimo's] representations to [her]. In that event, the examiner would have persisted in the … rejections. This is an inference but it has been shown by clear and convincing evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 864 F. Supp. 2d 856, 863 (N.D. Cal. 2012).

The deliberateness of Kesler and Grover's effort to shield the Examiner from the actual facts is further evidenced by comparing Masimo's Response with the April 29th IDS. (DFF 36-38, 52-59.) In the Response, Kesler informed the Examiner about constructions favorable to Masimo by providing pinpoint cites to the Markman Report, the Markman Order, and the stipulated constructions. (DFF 36) Kesler also provided detailed claim charts setting forth each term and the corresponding construction. (DFF 37-38.) However, when faced with unfavorable constructions in the April 2nd Report, Kesler and Grover submitted an IDS that made only passing reference to the existence of the constructions. The contrast between the Response and the IDS "demonstrates a deliberative process, not an accident or mistake." *Am. Calcar*, 768 F.3d at 1191. "After all, a patentee is unlikely to go to great lengths to deceive the PTO" by withholding specific information "unless it believes that the [information] will affect issuance of the patent." *Therasense,* 649 F.3d at 1292.

Kesler knew that his representations about claim construction to the Examiner became false, and he knew that the Examiner's decision to allow claim 1 over Corenman rested on those false representations. Yet, he deliberately chose not inform the Examiner about his misrepresentation, despite his duty to do so. The single most reasonable inference from this evidence is an intent to deceive by concealing highly material information. This conclusion is cemented by the facts that: (1) after the NIRC, Kesler knew the Examiner had not considered the

April 2nd Report, and (2) he decided not to bring the Report to the Examiner's attention, remarking "what would we say." (DFF 78, 84-85)  A "lapse on the part of the [E]xaminer does not excuse the applicant.... There is no reprieve from the duty of square dealing and full disclosure that rests on the patent practitioner in dealings with the PTO.... [T]his duty is not done by one who knowingly takes advantage of an error by the PTO." *KangaROOS U.S.A. Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985).  This is especially true given the Examiner's repeated instruction that the "patent owner is reminded of the continuing responsibility ... to apprise the Office of any litigation activity ... *throughout the course of this reexamination.*" (DFF 19, 21, 73.)  Indeed, Kesler's testimony that it was too late to submit information to the Examiner cannot be squared with his concession that, as of April 15, 2014, he did not remember whether the reexamination had entered the printing cycle. (DFF 79.)

## IV.    MR. JENSEN COMMITTED INEQUITABLE CONDUCT

Jensen was the only Masimo attorney involved in both this litigation and the reexamination, he was the only attorney who verbally addressed Masimo's positions to the Examiner, and he was involved in depositions, hearings, and developing strategy during this litigation.  (DFF 1-5.)  He was aware of the April 2nd Report and advised the client about it, he learned of the March 31st Order on the same day it issued, and he received a summary of the Order and addressed it with the client.  (DFF 51, 61.)

Despite knowing of the March 31st Order and despite a purported policy of disclosing everything to the PTO, Jensen took no actions to submit the March 31st Order to the PTO.  (DFF 61-65.)  He did not submit the Order, advise Messrs. Grover and Kesler about the Order, or instruct anyone on the litigation team to apprise the prosecution team about the Order.  (*Id.*) Even after Philips wrote to the Court on April 14, 2014 about Masimo's failure to inform the Examiner of this Court's construction, he took no steps to disclose the Order.  (DFF 83.)  Instead,

9

he determined it was not his job to disclose information to the PTO and "okayed" Grover and Kesler's decision that it was too late to submit information. (DFF 83.) His duty of candor could not be delegated, especially under the system he had set up, which triggered disclosure by a second-year associate responding to prosecution deadlines, rather than litigation events to ensure the prompt disclosure required by 37 C.F.R. § 1.555(a). (DFF 14.)

Jensen's conduct closely parallel his Nellcor conduct, which the district court and the Federal Circuit found to be inequitable conduct. (DFF 2-5, 8-11, 61-67.) Here, as in *Nellcor*, Jensen was concurrently involved in litigation and prosecution of Masimo patents. Here, as in *Nellcor*, Masimo urged the same construction to the district court and the PTO. Here, as in *Nellcor*, the court rejected Masimo's constructions. Here, as in *Nellcor*, Jensen never informed the PTO that the court rejected Masimo's constructions. Here, as in *Nellcor*, Jensen committed inequitable conduct because he "failed to take even the most minimal steps toward any form of disclosure, all the while knowing that the [] litigation had to be material." (DFF 11.)

Jensen's conduct is consistent with his belief that "in terms of the prosecution, no, there was nothing that I felt like I should have done differently" in the *Nellcor* litigation. (DFF 12.) Given a prior finding of inequitable conduct for the same actions, the single most reasonable inference is that Jensen intended to deceive by PTO by withholding the March 31st Order. His past misconduct demonstrates intent to deceive. *See Intellect*, 732 F.3d at 1344 ("Further, [the attorney] engaged in a pattern of deceit which, makes the inference stronger."); *Apotex, Inc. v. UCB, Inc.*, 970 F. Supp. 2d 1297, 1326 (S.D. Fla. 2013) ("The conduct evidenced in [prior] litigation further supports my finding with respect to motive, scheme, and intent to deceive.").[2]

---

[2] "But-for" materiality of the March 31st Order is established in Section III.B.

Respectfully submitted,

OF COUNSEL                          POTTER ANDERSON & CORROON LLP

Alan M. Grimaldi
Brian A. Rosenthal                  By:  */s/ Richard L. Horwitz*
Ann Marie Duffy                          Richard L. Horwitz (#2246)
Brian K. Andrea                          David E. Moore (#3983)
Cody I. Gillians                         Bindu A. Palapura (#5370)
MAYER BROWN LLP                          Hercules Plaza, 6th Floor
1999 K St. NW                            1313 N. Market Street
Washington DC 20006                      Wilmington, DE  19801
Tel:  (202) 263-3000                     Tel:  (302) 984-6000
                                         rhorwitz@potteranderson.com
Steven Yovits                            dmoore@potteranderson.com
MAYER BROWN LLP                          bpalapura@potteraderson.com
71 South Wacker Drive
Chicago, IL 60606                   *Attorneys for Defendants/Counterclaim Plaintiffs*
Tel: (312) 782-0600                 *Philips Electronics North America Corporation and*
                                    *Philips Medizin Systeme Böblingen GmbH*
Sasha Mayergoyz
JONES DAY
77 W. Wacker
Chicago, IL  60601
Tel:  (312) 782-3939

William C. Rooklidge
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive,
Suite 1200
Irvine, CA 92612
(949) 451-4009

Dated:  February 25, 2015
1182406 / 33976

11