**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-80-LPS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION and PHILIPS MEDIZIN | ) | |
| SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO MASIMO**
**CORPORATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c)**

OF COUNSEL:
Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Clinton H. Brannon
Brian K. Andrea
Cody I. Gillians
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel:  (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

Dated: March 2, 2015
1182717/33976

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Philips Electronics North Amer-*
*ica Corporation & Philips Medizin Systeme*
*Böblingen GmbH*

# TABLE OF CONTENTS

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

    A.    The Markets for Monitors, Cables, and Sensors.................................................... 2

    B.    The '222 and '984 Patents ..................................................................................... 3

    C.    Philips Has Properly Alleged That Masimo Engaged in Patent Misuse By Expanding the Scope of Its Patents........................................................................ 3

        1.    Philips Alleges That Masimo Has the Requisite Market Power in the Monitor Market. ......................................................................... 4

        2.    Philips Alleges that Masimo's Licensing and Distribution Agreements Extend the Scope of Its Patents and Exclude Competing Cables and Sensors............................................................... 4

        3.    Philips Alleges That Masimo Uses Technological Tying to Extend the Scope of Its Patents. ................................................................. 5

        4.    Philips Alleges That Masimo's Bundled Discounts Extend the Scope of Its Patents. .............................................................................. 6

LEGAL STANDARD................................................................................................................... 6

ARGUMENT ............................................................................................................................... 7

I.    Philips Has Properly Pled Its Patent Misuse Defense...................................................... 7

    A.    Masimo's Heightened Pleading Standard Does Not Apply.................................... 7

    B.    Philips Satisfies Any Conceivable Pleading Standard........................................... 8

II.    Masimo's Asserted System Claims Do Not Preclude A Misuse Defense. ...................... 12

    A.    A Patentee's Monopoly Does Not Extend to All Components in a System.......... 13

    B.    Cables and Sensors Are Outside Any Monopoly Based on Masimo's Systems Claims.................................................................................................... 16

    C.    Masimo's Arguments Based on the Record Are Baseless.................................... 19

CONCLUSION.......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   365 U.S. 336 (1961)......................................................................................................13, 17

*B. Braun Med., Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997).......................................................................................9, 16

*Bayer CropScience AG v. Dow AgroSciences LLC*,
   2011 WL 6934557 (D. Del. 2011) ...................................................................................7, 8

*Beal Corp. Liquidating Trust v. Valleylab, Inc.*,
   927 F. Supp. 1350 (D. Colo. 1996)......................................................................................17

*Cadence Pharm., Inc. v. Paddock Labs., Inc.*,
   2012 WL 4565013 (D. Del. 2012) ...................................................................................7, 8

*Caldera, Inc. v. Microsoft Corp.*,
   72 F. Supp. 2d 1295 (D. Utah 1999) ...................................................................................10

*Carbice Corp. of America v. American Patents Development Corp.*,
   283 U.S. 27 (1931)........................................................................................................14, 15

*Dawson Chem. Co. v. Rohm & Haas Co.*,
   448 U.S. 176 (1980)...............................................................................................14, 15, 16

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009).....................................................................................19, 20

*Green v. Fund Asset Mgmt., L.P.*,
   245 F.3d 214 (3d Cir. 2001)..................................................................................................6

*Houser v. Fox Theaters Mgmt. Corp.*,
   845 F.2d 1225 (3d Cir 1988)...............................................................................................12

*Husky Injection Molding Sys. Ltd. v. R & D Tool Eng'g Co.*,
   291 F.3d 780 (Fed. Cir. 2002).......................................................................................17, 18

*Intellectual Ventures I LLC v. Symantec Corp.*,
   2014 WL 4773954 (D. Del. 2014) .........................................................................................7

*Internet Media Corp. v. Hearst Newspapers, LLC*,
   2012 WL 3867165 (D. Del. 2012) .........................................................................................7

*Kendall Co. v. Progressive Med. Tech., Inc.*,
85 F.3d 1570 (Fed. Cir. 1996)...............................................................18

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)...................................................................11

*Malibu Media, LLC v. Does 1*,
2013 WL 1702549 (E.D. Pa. 2013) ...................................................... 7-8

*Mallinckrodt, Inc. v. Medipart, Inc.*,
976 F.2d 700 (Fed. Cir. 1992)............................................................9, 10

*Medtronic Minimed Inc. v. Smiths Med. MD Inc.*,
371 F. Supp. 2d 578 (D. Del. 2005)....................................................5, 10

*Morton Salt Co. v. G.S. Suppiger Co.*,
314 U.S. 488, 491 (1942), *abrogated on other grounds by Ill. Tool Works Inc.*
*v. Independent Ink, Inc.*, 547 U.S. 28 (2006) ....................................9, 10

*Motion Picture Patents Co. v. Universal Film Manufacturing Co.*,
243 U.S. 502 (1917).....................................................................14, 15, 17

*Novo Nordisk A/S v. Caraco Pharmaceutical Laboratories, Ltd.*,
601 F.3d 1359 (Fed. Cir. 2010), *rev'd by* 132 S. Ct. 1670 (2012)...........8

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)...................................................................11

*Princo Corp. v. Int'l Trade Comm'n*,
616 F.3d 1318 (Fed. Cir. 2010).....................................................9, 11, 15

*Ricoh Co. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008)..............................................................16

*Rosenau v. Unifund Corp.*,
539 F.3d 218 (3d Cir. 2008)...............................................................6, 12

*Sage Prods., Inc. v. Devon Indus., Inc.*,
45 F.3d 1575 (Fed. Cir. 1995)...........................................................17, 18

*Schor v. Abbott Laboratories*,
457 F.3d 608 (7th Cir. 2006) ..................................................................16

*Senza-Gel Corp. v. Seiffhart*,
803 F.2d 661 (Fed. Cir. 1986)............................................................9, 20

*Surfco Haw. v. Fin Control Sys. Pty, Ltd.*,
264 F.3d 1062 (Fed. Cir. 2001)........................................................17, 18

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*,
    2011 WL 2115819 (D.N.J. 2011) ........................................................7

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)...................................................16, 17

*Turbe v. Gov't of the Virgin Islands*,
    938 F.2d 427 (3d Cir. 1991).......................................................6

*Tyco Fire Prods. LP v. Victaulic Co.*,
    777 F. Supp. 2d 893 (E.D. Pa. 2011) .........................................7

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
    424 F.3d 1179 (Fed. Cir. 2005)...............................................6, 11

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ....................................................11

*Va. Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997)...................................................9, 16

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
    395 U.S. 100 (1969).......................................................... *passim*

**Statutes & Rules**

35 U.S.C.
    § 271(a) .............................................................................13
    § 271(b) .............................................................................19
    § 271(c) .............................................................13, 14, 16, 19
    § 271(d) .............................................................4, 5, 12, 14

Fed. R. Civ. P. 8(a) ..............................................................7, 8

Fed. R. Civ. P. 8(c) ....................................................................8

Fed. R. Civ. P. 12(c) ........................................................ *passim*

Fed. R. Civ. P. 12(d) .............................................................17

**Other Authorities**

Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles
    Applied to Intellectual Property Law* (2d ed. 2014) ..........................8, 10

Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Application* (4th ed. 2014) ...................................10

Philips pleads a well grounded and powerful patent misuse defense: its detailed allegations, if proven, show that Masimo has engaged in unlawful licensing activities by tying its patented articles to sales of commodity cables and sensors; that it has employed an anticompetitive technology tie; and that it has improperly bundled together sales of commodity products with sales of products that practice the patents-in-suit. Masimo may not enforce its asserted patents for each of these independent reasons. In an effort to avoid a defense that fits squarely within the patent misuse doctrine, Masimo concocts a "law of the case" argument that finds no support in the record and offers a legal theory inconsistent with a century of precedent.

## NATURE AND STAGE OF THE PROCEEDINGS

The current suit involves patent claims asserted by Masimo against Philips and patent and antitrust counterclaims asserted by Philips against Masimo. In its initial answer, Philips asserted patent misuse as an affirmative defense. D.I. 15 ¶¶ 105-06; *see also* D.I. 884 ¶¶ 105-06. On April 19, 2010, Philips' patent misuse defense was bifurcated from issues related to patent validity and discovery related to patent misuse was stayed. D.I. 86 at 11-12. In September 2014, the parties tried issues related to the validity of Masimo's '222 and '984 patents to a jury. In February 2015, the Court held a two-day bench trial on Philips' inequitable conduct defense. Neither of these trials resolved the legal or factual disputes regarding Philips' patent misuse defense. Accordingly, Masimo's motion for judgment on the pleadings should be denied, and Philips' patent misuse defense should proceed to discovery.

## SUMMARY OF THE ARGUMENT

Masimo presents two principal arguments in its Rule 12(c) motion—that Philips has failed to adequately plead a patent misuse defense, and that a patent misuse defense is *per se* unavailable because the articles at issue—Masimo's sensors and cables—are purportedly within the ambit of some of its system claims. Both arguments fail.

As to Masimo's first argument, Philips has properly alleged three separate theories of patent misuse, each of which would serve as a full defense to Masimo's patent infringement verdict. Philips asserts that Masimo improperly expanded the scope of its patent rights by tying its sales of monitors to sales of staple goods—cables and sensors. It did so by using (1) patent licensing and distribution agreements, (2) a technological lock-out, and (3) bundled discounts—all of which foreclose competition from non-infringing cables and sensors.

As to the second argument, these commodity cables and sensors are outside Masimo's lawful exclusive rights under the '222 and '984 patents because sales of these products separately from the patented monitor, including as aftermarket replacements, do not constitute contributory infringement.

## STATEMENT OF FACTS

### A.    The Markets for Monitors, Cables, and Sensors

Pulse oximetry is a non-invasive method of measuring oxygen levels in a patient's blood. D.I. 884 ¶ 117. Pulse oximetry measurements are generated by three distinct products: monitors,[1] cables, and sensors. *Id.* A sensor detects the amount of light that is not absorbed through a patient's tissue. *Id.* This information is transmitted from the sensor through a patient cable into a monitor. *Id.* Using one or more algorithms, the monitor converts the signal from the sensor into a measurement of a patient's blood oxygen level. *Id.* Pulse oximetry—including the use of sensors, cables, and monitors—was invented in the 1970's and introduced into the United States in the early 1980's, well before Masimo was founded. *Id.* ¶ 117; *see also* D.I. 923 ¶ 117.

Monitors can function for up to 10 years before needing replacement. D.I. 884 ¶ 118. On the other hand, cables and sensors are "consumables"—staple commodity products that frequently need to be replaced over that ten-year period. *Id.* ¶ 119.

---

[1] Monitors are also referred to as "boards," "sockets," and, generally, "pulse oximeters."

### B.     The '222 and '984 Patents

At this stage of the litigation, Masimo has two patents in suit: the '222 and '984 patents, both titled "Signal Processing Apparatus."[2] The '222 patent, for example, claims "[a] physiological monitor that computes arterial oxygen saturation in tissue material having arterial and venous blood." D.I. 12-7. According to claim 17 of the '222 patent, this physiological monitor uses "a light emitter" and a "light detector" to determine how much light has passed through body tissue with arterial and venous blood. *Id.* Likewise, the claims of the '984 patent discuss "an optical probe" and "a signal processing device." D.I. 12-15. The operative claims of the '984 and '222 patents do not mention cables. *Id.*; *see also* D.I. 12-7. In addition, "light emitters" and "light detectors," *i.e.*, sensors, were well known in the prior art at the time the '222 and '984 patents were filed. D.I. 884 ¶ 117.

Masimo has not asserted that Philips' sales of sensors and cables infringe any apparatus claims in these or any other patents.[3] Apparently recognizing that this failure is damaging to its position, Masimo now broadly asserts that sales of otherwise non-infringing sensors and cables violate the system claims—a contention discussed at pages 12-20, below.

### C.     Philips Has Properly Alleged That Masimo Engaged in Patent Misuse By Expanding the Scope of Its Patents.

The doctrine of patent misuse bars a patentee from using the "patent's leverage" to "extend the monopoly of his patent to derive a benefit not attributable to the use of the patent's

---

[2] Philips' patent misuse defense is pled and applies equally with respect to all of Masimo's other asserted patents. The misuse analysis for each of those patents may differ depending on the language of the asserted claims. Here, Masimo moves for judgment on the pleadings only with regard to the '222 and '984 patents, which are the focus of Philips' answering brief.

[3] Masimo does not invoke patent claims other than those asserted at trial because that would pose significant factual questions relating to invalidity (regarding anticipation, obviousness, and other invalidity assertion) as well as non-infringement. It is for this reason that Masimo attempts to shoehorn the sensors and cables into only the claims it has already asserted.

teachings." *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 135-36 (1969). Philips' pleadings allege that Masimo has done just that: using multiple means to leverage the market power resulting from its patents relating to monitors and signal processing in order to exclude competition in the separate markets for sensors and cables. Masimo's alleged anti-competitive conduct includes: (1) patent licensing and distribution agreements that restrict the manufacture, sale and distribution of non-infringing rival cables and sensors; (2) technological tying that makes non-infringing rival cables and sensors incompatible with Masimo's monitors for no pro-competitive reason; and (3) bundling and below-cost pricing that prevents competition from non-infringing rival cables and sensors.

### 1.    Philips Alleges That Masimo Has the Requisite Market Power in the Monitor Market.

The misuse defenses alleged here require proof that "the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned." 35 U.S.C. § 271(d)(5). Competitors in the United States market for monitors include Masimo, Philips, Nellcor, and Nonin. *See* D.I. 884 ¶ 123. Masimo controls at least 80% of the market for monitors. *Id.* ¶¶ 124, 126.

### 2.    Philips Alleges that Masimo's Licensing and Distribution Agreements Extend the Scope of Its Patents and Exclude Competing Cables and Sensors.

Philips explains in its answer that:

> [Masimo's] licensing and distribution agreements . . . preclude the sale of competing cables and sensors for use with Masimo [monitors], even though these are commodity products for which Masimo would otherwise face competition from a variety of branded and generic products.

D.I. 884 ¶ 132. In addition, through a patent settlement agreement, Masimo forces Nellcor to tie sales of Nellcor monitors to sales of Nellcor sensors and cables, on which Masimo collects a high royalty. *Id.* ¶¶ 143-48. The Patent Act prohibits "condition[ing] the license of . . . rights to

the patent [and] the sale of the patented product on the . . . purchase of a separate product," 35 U.S.C. § 271(d)(5)—and Philips' pleadings thus allege that Masimo did just that: conditioning sales of its monitors on customers' agreements to purchase Masimo sensors and cables, and by conditioning licenses of its monitor-related patents (in litigation settlement agreements) on the licensees' agreement to require customers to purchase Masimo sensors and cables. D.I. 884 ¶¶ 132, 137. These agreements harm competition by excluding non-Masimo sensors and cables from the marketplace, raising prices, restricting output, and reducing customer choice. *Id*. They therefore constitute patent misuse.

### 3. Philips Alleges That Masimo Uses Technological Tying to Extend the Scope of Its Patents.

Courts have recognized that "[f]unctionally tying one product to another through the use of technology," is another means by which the market power conferred by a patent in one market can be extended unlawfully by the patentee into separate markets for unpatented goods. *See Medtronic Minimed Inc. v. Smiths Med. MD Inc.*, 371 F. Supp. 2d 578, 585 n.8 (D. Del. 2005). Masimo's "ProCal" system functions as a technological tie that expands the scope of its monitor and signal processing patents by excluding competing, non-infringing sensors and cables. D.I. 884 ¶¶ 138-48. ProCal prevents Masimo's monitors from functioning unless the monitor's software detects the presence of a ProCal resistor in the sensor. *Id.* ¶ 138. There is no valid technological need for ProCal; it functions as a means of "locking out" the competition and protecting Masimo's sensor and cable revenue. *Id.* ¶¶ 140-41.

Masimo's technological tying harms competition by increasing switching costs, raising barriers to entry, and effectively excluding competing sensors and cables. D.I. 884 ¶¶ 142, 147. Customers who purchase Masimo or Nellcor monitors are "locked in," and effectively prevented from purchasing any competing sensor or patient cable, regardless of its price or quality. *Id.* ¶

142. As a consequence, Masimo can extract supra-competitive profits and royalties from its sales of sensors and cables to customers who are "locked" to those products. *Id.* ¶ 147.

### 4.  Philips Alleges That Masimo's Bundled Discounts Extend the Scope of Its Patents.

Another method patentees use to unlawfully extend a patent is to bundle sales of the patented article with sales of unpatented goods: such bundling practices "force customers to purchase a product in a separate market that the customer might otherwise purchase from a competitor." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1189 (Fed. Cir. 2005).

Masimo offers some of its monitors to hospitals at no cost or substantially below Masimo's production cost in exchange for a commitment that the hospital will purchase a minimum number of sensors and cables from Masimo over the course of a long-term contract. D.I. 884 ¶ 150. Philips alleges that Masimo's bundled discounts expand the scope of its patents into the sensor and cable markets and excludes competition in those markets by locking hospitals into long-term sensor and patient cable supply agreements. *Id.* ¶¶ 149-55. These long-term bundled discount agreements raise barriers to entry for competing cables and sensors. *Id.* ¶ 152.

### LEGAL STANDARD

When deciding a motion for judgment on the pleadings, a district court should view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001). A motion for judgment on the pleadings should be granted only if no relief can be afforded under any set of facts. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Moreover, the moving party must "'clearly establish[] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quotation omitted).

6

A court may resolve an affirmative defense prior to discovery only in exceedingly narrow circumstances. As this Court has put it, "a court should refrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped," unless "the insufficiency of the defense is 'clearly apparent.'" *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, 2012 WL 4565013, at *2 (D. Del. 2012) (internal quotation marks omitted).

## ARGUMENT

**I.     Philips Has Properly Pled Its Patent Misuse Defense.**

### A.     Masimo's Heightened Pleading Standard Does Not Apply.

Masimo premises its argument on a misstatement of the governing pleading standard, incorrectly implying that *Iqbal* and *Twombly* apply to an affirmative defense. *See* Mot. 7. This Court, in line with "a majority of the District Courts within the Third Circuit that have addressed the issue," has expressly held that *Twombly* and *Iqbal* "do not apply to the pleading of affirmative defenses." *Cadence Pharm.*, 2012 WL 4565013, at *1.[4] A defendant need only provide notice of an affirmative defense. *See, e.g.*, *Internet Media Corp. v. Hearst Newspapers, LLC*, 2012 WL 3867165, at *3 (D. Del. 2012) (an affirmative defense "must merely provide fair notice of the issue involved."); *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 901 (E.D. Pa. 2011) ("the requisite notice is provided where the affirmative defense in question alerts the adversary to the existence of the issue for trial.").

This conclusion stems from the text of the governing rules. *See, e.g.*, *Malibu Media, LLC*

---

[4]     *See also Intellectual Ventures I LLC v. Symantec Corp.*, 2014 WL 4773954, at *1 (D. Del. 2014) ("A majority of the District Courts within the Third Circuit that have addressed the issue have determined that the pleading requirements of [*Twombly*] and [*Iqbal*] do not apply to the pleading of affirmative defenses."); *Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 WL 6934557, at *4 (D. Del. 2011). To the extent that *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 2011 WL 2115819, at *6 (D.N.J. 2011), holds that a heightened pleading standard applies to affirmative defenses, it is out of step with the predominant view of district courts in the Third Circuit, even within the District of New Jersey.

*v. Does 1*, 2013 WL 1702549, at *2 (E.D. Pa. 2013). Rule 8(a) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(c), by contrast, requires only that a defendant "affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). It does *not* require a statement "showing that the [defendant] is entitled to" judgment on the defense. *Id.*

Masimo is also wrong to suggest that patent misuse is subject to a heightened "particularity" pleading standard. Mot. 7. Again, this Court has already rejected this argument, noting that it "is unaware of any cases that hold that patent misuse claims inherently sound in fraud." *Cadence Pharm.*, 2012 WL 4565013, at *2 (quoting *Bayer CropScience AG*, 2011 WL 6934557, at *4). *Novo Nordisk A/S v. Caraco Pharmaceutical Laboratories, Ltd.*, 601 F.3d 1359, 1367 (Fed. Cir. 2010), *rev'd by* 132 S. Ct. 1670 (2012), which expressly "decline[d] to adjudicate" patent misuse, did not adopt a contrary standard.

For the foregoing reasons, an answer must merely state a patent misuse defense. Because Philips has satisfied this standard, it should be permitted to take discovery on its defense.

### B.      Philips Satisfies Any Conceivable Pleading Standard.

Even if, contrary to the law, Philips were held to a higher standard, its allegations properly state a patent misuse defense. Philips' answer contains extensive, highly-specific factual allegations relating to Masimo's anticompetitive activity—all of which Philips incorporated into its patent misuse defense. *Id*. ¶ 105.[5]

The doctrine of patent misuse bars a patentee from using the "patent's leverage" to "ex-

---

[5]      Masimo faults Philips for relying on the same allegations for its antitrust counterclaims. Mot. 8. However, "[m]isuse is closely intertwined with antitrust law, and most findings of misuse are conditioned on conduct that would also violate the antitrust laws." Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law* § 3.1 (2d ed. 2014). There is thus nothing surprising about Philips' incorporation by reference.

tend the monopoly of his patent to derive a benefit not attributable to the use of the patent's teachings." *Zenith Radio Corp.*, 395 U.S. at 135-36; *see also Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (patent misuse occurs when "the patentee has impermissibly broadened the physical or temporal scope of the patent with anticompetitive effect") (internal quotation marks omitted).

The patent misuse defense encompasses all commercial practices "that draw anticompetitive strength from the patent right." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992). Some practices, however, "constitut[e] *per se* patent misuse, including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good." *Va. Panel Corp.*, 133 F.3d at 869; *see also B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) (patent misuse occurs when a patentee uses its patent "which enjoys market power in the relevant market . . . to restrain competition in an unpatented product.") (internal citation omitted). The remedy for patent misuse is clear: "the underlying patents become unenforceable, and the patentee loses its right to sue for infringement." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010); *see also Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 668 n.10 (Fed. Cir. 1986) (same).

Philips properly alleges that Masimo engaged in patent misuse for three independent reasons. *First*, through its license and distribution agreements and its settlement with Nellcor, Masimo ties the sale of cables and sensors to its monitor patents. As alleged in the answer:

> [Masimo's] licensing and distribution agreements . . . preclude the sale of competing cables and sensors for use with Masimo [monitors], even though these are commodity products for which Masimo would otherwise face competition from a variety of branded and generic products.

D.I. 884 ¶ 132; *see also id.* ¶¶ 143-46. Masimo thus "extends the monopoly of [its] patent" over signal processing apparatuses "to suppress competition in the sale of an unpatented article"—

cables and sensors. *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 491 (1942), *abrogated on other grounds by Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006).[6]

*Second*, Masimo has imposed a technological tie, ProCal, that blocks customers from using competing sensors and cables with Masimo's monitors. D.I. 884 ¶¶ 138-48. This technological tie, which "draw[s] anticompetitive strength from the" '222 and '984 patents, locks out competing sensors and cables. *Mallinckrodt, Inc.*, 976 F.2d at 704. This kind of arrangement, "[f]unctionally tying one product to another through the use of technology," often qualifies as anticompetitive when accompanied by the market power Masimo has here. *Medtronic Minimed Inc.*, 371 F. Supp. 2d at 585 n.8.

When, as here, "the design features rendering rival complementary product incompatible confer no technological benefit, or . . . the incompatibility is not essential to the improvement," there is no offsetting benefit to competition and consumers to justify the technological tie. Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1757c (4th ed. 2014). A business justification for technological tying "requires not merely a showing that [the tie] works well or serves some beneficial purpose, but that [the tie] is essential to this result." Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law* ¶ 21.8a (2d ed. 2014); *see also Caldera, Inc. v. Microsoft Corp.*, 72 F. Supp. 2d 1295, 1325 (D. Utah 1999) (a technological tying claim may be rebutted only by evidence that "a valid, not insignificant, technological improvement has been

---

[6]   The record from the patent validity phase confirms these allegations. For example, in Masimo's Procurement and License Agreement with Draeger Medical AG & Co. KG ("Draeger"), Masimo licensed its pulse oximetry patents to Draeger on the explicit condition that Masimo's monitors, cables, and sensors would be "Draeger's primary and default motion tolerant pulse oximetry and pulse co-oximetry technology." PTX-954 at 9003. To that end, on pain of penalties, the agreement required Draeger to purchase 79% or more of its cables and sensors from Masimo. *Id.* at 9004.

achieved by the integration of two products").

Because Philips unmistakably alleges that this tie lacks any valid technology basis, D.I. 884 ¶¶ 140-41, it has stated a proper theory of patent misuse. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 59, 66-67 (D.C. Cir. 2001) (where a plaintiff rebuts a defendant's justification for a tie, a balancing test determines whether the tie harms competition).

*Third*, by virtue of its patent rights in its monitors and signal processing apparatuses, Masimo offers monitors with bundling plans (which, in essence, give the monitor at no cost or below cost) that effectively lock hospitals into long-term supply agreements for sensors and cables. D.I. 884 ¶¶ 149-55. These agreements leverage Masimo's patent rights in monitors to "compel customers to purchase a product in a separate market that the customer might otherwise purchase from a competitor." *U.S. Philips Corp.*, 424 F.3d at 1189. Whether such bundling is anticompetitive is inherently a question of fact, not appropriate for resolution on the pleadings. *See, e.g.*, *LePage's Inc. v. 3M*, 324 F.3d 141, 154-55 (3d Cir. 2003) (issue of whether bundled discounts were anticompetitive was tried to a jury).[7]

Each of these practices expands the scope of the '222 and '984 patents to improperly force purchases of sensors and cables. As Philips' pleadings allege, Masimo's "conduct in question" (tying the sales of monitors to sales of sensors and cables by contract, technological ties, and bundling) "restricts the use of the patent" (*i.e.*, prohibits Masimo monitors from being used with non-Masimo sensors and cables) "and does so in one of the specific ways that have been held to be outside the . . . scope of the patent grant." *Princo*, 616 F.3d at 1329.

---

[7]   Masimo's securities filings, which may be referenced in a Rule 12(c) setting, *see Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000), add further support. *See* Masimo 2014 Annual Report at 69 ("Our sales under long-term sensor purchase contracts are generally structured to provide at no up-front charge certain monitoring equipment. . . in exchange for the hospital's purchase of sensors over the term of the agreement.").

In addition to these three specific theories of patent misuse, Philips' answer alleges that Masimo has the necessary "market power" within the meaning of 35 U.S.C. § 271(d)(5). For example, Philips alleges that Masimo controls approximately 80% of the relevant market for monitors, thus giving Masimo substantial market power. D.I. 884 ¶¶ 124, 128; *see also Houser v. Fox Theaters Mgmt. Corp.*, 845 F.2d 1225, 1230 (3d Cir 1988) (inferring at the pleading stage that defendant, which controlled between 66% to 71% of relevant market, had market power).

While there are likely dozens of disputed questions of fact with respect to Philips' patent misuse claim, many of which will require significant expert testimony, three broad categories highlight the factual disputes at issue:

- **Whether sensors and cables are staple commodity goods.** Philips alleges that cables and sensors are staple goods that may be sold as stand-alone products. D.I. 884 ¶ 132. Masimo disputes this, contending that the cables and sensors are not commodity staple goods. Mot. 9-10.

- **Whether ProCal is an unlawful technological tie.** Philips contends that Masimo unlawfully leverages its patent rights through the ProCal lock-out, as it is not justified by technical necessity or industry practice. D.I. 884 ¶ 140. Masimo denies this. D.I. 23 at 10; D.I. 923 ¶ 140.

- **Whether Masimo's bundling is anti-competitive.** Philips argues that Masimo leveraged its patents to create bundled discounts in order to extend the scope of its patents and exclude competition. D.I. 884 ¶ 150. Masimo denies that its bundling agreements were anti-competitive. D.I. 923 ¶ 150.

Such factual disputes preclude judgment on the pleadings. *Rosenau*, 539 F.3d at 221.

## II.   Masimo's Asserted System Claims Do Not Preclude A Misuse Defense.

Masimo contends that, because it asserts a "system" claim, and sensors and cables are part of the claimed "system," any anticompetitive activity regarding sensors and cables *cannot* qualify as patent misuse. Mot. 10-13. If that extraordinary contention were correct, patentees could immunize themselves against misuse claims by drafting expansive system claims including every non-patented article that might possibly interact with the patented article. They then would

be free to use the market power conveyed by the patent to take control of markets for the other non-patented products. That is not the law.

### A. A Patentee's Monopoly Does Not Extend to All Components in a System.

Masimo's argument rests on the faulty premise that its asserted system claims provide it monopoly rights over *all* components of the claimed system. Masimo contends that it may "lawfully police sales of a component of a patented invention," Mot. 12, which includes the cables and sensors because they "work together as part of a single claimed system." *Id.* at 10. That is flatly incorrect.

A system claim authorizes a patentee to prevent another from manufacturing or selling the *entire* system, because that would constitute direct infringement. 35 U.S.C. § 271(a). Separately, the doctrine of contributory infringement provides a patentee with monopoly rights as to components that are "especially made or especially adapted for use in an infringement" and that are "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c).

That is the extent of the patentee's monopoly. It does not extend to *all* components of a claimed system; "if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961). "No element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be." *Id.* at 345.

Because patent misuse turns on a patentee's effort to leverage a patent to create anticompetitive effects beyond the "scope" of the patent claims, *Zenith Radio*, 395 U.S. at 136, the extent of the patentee's lawful monopoly determines the boundaries of patent misuse. A patentee may

tie its patented article only to "nonstaple goods that are capable only of infringing use in a patented invention, and that are essential to that invention's advance over prior art." *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 213 (1980). It thus is not "misuse" of a patent to "derive[] revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent." 35 U.S.C. § 271(d). For this reason, Section 271(c)'s definition of contributory infringement supplies "the basic dividing line between contributory infringement and patent misuse." *Dawson Chem.*, 448 U.S. at 200.

The principle that a patentee may not restrict *all* components recited in a system—including non-staple articles with substantial non-infringing uses—is reflected in a century of precedent. In *Motion Picture Patents Co. v. Universal Film Manufacturing Co.*, 243 U.S. 502, 505 (1917), for example, the Court considered whether a patentee holding a claim on a motion picture projector could tie its use to certain films. The Court concluded that it could not: "a film is obviously not any part of the invention of the patent in suit," and, therefore, such a tying attempt constituted patent misuse. *Id.* at 518. Notably, the claim at issue—claim 7 of U.S. Patent 707,934—was a "***combination*** with devices adapted to support the bulk of a ***flexible film*** and supply it for exposure and receive it after exposure." U.S. Patent No. 707,934 (emphasis added). Like the claims here, the asserted claim was a system claim that specifically required the use of a "film" medium to operate. Yet the Court nonetheless found unlawful tying.

Similarly, in *Carbice Corp. of America v. American Patents Development Corp.*, 283 U.S. 27, 29 (1931), a patentee held a claim for a "refrigerating transportation package," which was a specially-designed package to be used with dry ice. The Court considered claim 6, which claimed a "transportation package consisting of a protective casing of insulating material having packed therein a quantity of ***frozen carbon dioxide*** in an insulating container." *Id.* (emphasis

added; internal quotation marks omitted). Once again, this was a system claim that specifically recited use of dry ice. Yet the Supreme Court held it patent misuse for a patentee to tie sales of its patented packaging to purchases of dry ice—a patentee "may not exact as the condition of a license that unpatented materials used in connection with the invention shall be purchased only from the licensor." *Id*. at 31.

By contrast, in *Dawson Chermical*, a patentee had the right to exclude others from selling propanil *because*, as the accused infringer admitted (448 U.S. at 185-86), propanil was "a nonstaple commodity which has no use except through practice of the patented method." *Id*. at 199. The decision turned on the factual finding that "propanil is a *nonstaple* product, **and** its herbicidal property is the *heart* of respondent's invention." *Id*. at 214 (emphasis added).

In sum, a patentee has a lawful monopoly as to (1) the system sold as a whole, and (2) articles whose manufacture or sale would constitute contributory infringement. *Dawson Chem.*, 448 U.S. at 213. The rights conferred by a system claim extend no further.

Were the rule otherwise, the monopoly power conferred by a system claim would be boundless. A patentee can virtually always add gratuitous elements to a system claim. A software patent system claim, to take one example, frequently recites as elements a computer processor, computer input devices, and computer displays. Taken to its logical extreme, Masimo's wayward theory would allow the inventor of a new steering wheel to freely monopolize the markets for tires, shocks, and struts simply by claiming that its steering wheel was designed to be part of a car. Such a result is contrary to the well-settled principles of patent misuse law.[8]

---

[8]   Masimo's authority is not to the contrary. Masimo begins with *Princo*, 616 F.3d at 1329, Mot. 12, but, as explained above, *supra* 11-12, *Princo* supports our claim of patent misuse. And nothing in *Princo* suggests—Masimo surely points to no aspect of it—that *all* elements recited in a claimed system are categorically outside a patent misuse defense. *Motion Picture*, *Carbice*, *Dawson Chemical*, and their progeny prohibit such a result.

### B.   Cables and Sensors Are Outside Any Monopoly Based on Masimo's Systems Claims.

Masimo has not here asserted any patent claim with respect to the cables or sensors themselves, and thus Masimo has no contention that sales of such devices qualify as *direct* infringement. And, for two independent reasons, Masimo cannot contend that unauthorized sales of cables or sensors constitute contributory infringement.

*First*, Philips sufficiently alleges that cables and sensors are "unpatented staple article[s] of commerce" that fall outside the patent monopoly, because a patentee's control is limited to "*nonstaple* articles used in their inventions." *Dawson Chem.*, 448 U.S. at 193, 201.

Whether an article qualifies as a staple item with substantial non-infringing use is a question of fact. *See*, *e.g.*, *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1340 (Fed. Cir. 2008) (whether goods have "no substantial noninfringing use other than to practice … claimed methods" is a "material issue of fact"). To assess whether goods have "substantial non-infringing uses" within the meaning of Section 271(c), the fact-finder must consider "the use's frequency, the use's practicality, the invention's intended purpose, and the intended market." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012) (internal quotation marks omitted). Noninfringing uses encompass all uses except those that are "unusual, far-fetched, illusory, impracti-

---

Masimo next cites *Virginia Panel Corp.*, 133 F.3d at 873, for the contention that a patentee may police the "scope of the patent claims." Mot. 12. While that proposition is certainly true, it fails to address the question relevant here—determining the scope of *these* claims. As we have shown, system claims are not nearly as broad as Masimo contends.

Masimo then offers a string-cite, first citing *B. Braun Med., Inc.*, 124 F.3d at 1427 n.4. Mot. 12. *B. Braun*, by way of footnote, simply noted that a patentee is authorized to sell its patented valve as well as its valve with an "extension" set. *Id*. There was no holding that the patentee can control *all* constituent elements of a system claim. Likewise, in *Schor v. Abbott Laboratories*, 457 F.3d 608, 614 (7th Cir. 2006), the court explained that a patentee has a monopoly to the *entire* system; it did not extend that to individual, constituent elements. And *Schor* specifically explained that there were no allegations of "any of the normal exclusionary practices," including "tie-in sales (or another form of bundling)." *Id*. at 610. Indeed, *Schor* recognized that a "patent does not permit its owner to condition use of the patented product on the surrender of a monopoly in some other unpatented product." *Id*. at 614.

cal, occasional, aberrant, or experimental." *Id.* (alteration omitted).

This fact-intensive determination cannot be made in the absence of a record, and therefore cannot be made on a Rule 12(c) motion. *See* Fed. R. Civ. P. 12(d).

The answer alleges that sensors and cables are "commoditized products." D.I. 884 ¶ 119; *see also id.* ¶¶ 125, 132. And such broadly commoditized devices are typically found to be staple items. *See*, *e.g.*, *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F. Supp. 1350, 1362 (D. Colo. 1996) (part, which could be used with other devices and thus in a substantially non-infringing matter, was staple). That is sufficient to satisfy Rule 12(c).[9]

*Second*, even assuming *arguendo* the cables and sensors are non-staple, "the permissible repair" doctrine functions as an "exception" to contributory infringement. *Husky Injection Molding Sys. v. R & D Tool Eng'g*, 291 F.3d 780, 785-86 (Fed. Cir. 2002). "The right of 'repair' follows from the exhaustion of a patentee's right to control the disposition of a patented article after it has been sold." *Surfco Haw. v. Fin Control Sys. Pty*, 264 F.3d 1062, 1066 (Fed. Cir. 2001).

There is a "bright-line test," where "replacement of a spent part of a combination patent, which is not separately patented, is not impermissible reconstruction no matter how 'essential it may be to the patented combination and no matter how costly or difficult replacement may be.'" *Husky Injection*, 291 F.3d at 784 (quoting *Aro I*, 365 U.S. at 345). In this context, "replacement [is] not limited to worn out articles, but also include[s] articles that [are] effectively spent." *Id*. Thus, "when it is neither practical nor feasible to continue using an element that is intended to be

---

[9]    Masimo cannot attempt to assert that replacement cables and sensors are non-staple because of the ProCal technology tie. Where a technological lock-out is non-functional and instituted for anti-competitive purposes, as Philips alleges, it cannot foil a staple/non-staple analysis. Any other result would have the impermissible result of *insulating* the patent misuser. *Cf. Motion Picture Patents Co.*, 243 U.S. at 514 (distinguishing between "rights given to the inventor by the patent law . . . and rights which he may create for himself" by other means for purposes of patent misuse analysis).

replaced, that element is effectively spent." *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1578 (Fed. Cir. 1995). Moreover, this "permissible 'repair'" doctrine "also includes replacement of parts that are neither broken nor worn." *Surfco Haw.*, 264 F.3d at 1065.

Here, Philips' allegations demonstrate that cables and sensors "must be replaced frequently," and are either "disposable" products or products reusable for a limited life. D.I. 884 ¶ 119. The pulse oximeter monitors, by contrast, "are reusable, durable pieces of equipment that typically function for up to 10 years before needing replacement." *Id*. ¶ 118. Because the cable and sensors are specifically designed as "'replaceable' parts," sales of aftermarket replacements cannot constitute contributory infringement. *Husky Injection*, 291 F.3d at 787. Indeed, there is "no infringement if the particular part is readily 'replaceable.'" *Id*.

The Federal Circuit's decision in *Kendall Co. v. Progressive Med. Tech., Inc.*, 85 F.3d 1570 (Fed. Cir. 1996) is directly on point. There, the patented device was a system "comprised of three basic components: a controller-pneumatic pump for supplying pressurized fluid, a pair of pressure sleeves that wrap around a patient's limbs, and connecting tubes." *Id.* at 1571. While customers purchased the "controller and tubing assembly with the understanding that they are to be used repeatedly and on different patients," the sleeves were "to be used only on a single patient and then discarded." *Id*. at 1572 (internal quotation marks omitted). The Federal Circuit rejected the patentee's contention that aftermarket sleeve replacements—notwithstanding that the sleeves were recited in the patent claims—constituted contributory infringement. *Id*. at 1573-75. Even though "the pressure sleeves were not physically worn-out when they were replaced," their replacement nonetheless "constituted permissible repair, not direct infringement." *Id*. at 1574.

Philips' answer, and the remainder of the record, thus sufficiently allege that the replacement of cables and sensors will qualify as permissible repairs, and Masimo's asserted sys-

tem claims therefore do not create monopoly rights with respect to these aftermarket components. Masimo's patent claims cannot, and do not, insulate it from patent misuse.

### C.      Masimo's Arguments Based on the Record Are Baseless.

Finally, Masimo tries to salvage its position by pointing to Philips' admission of infringement and its damages calculation, but those arguments too are unavailing.

Philips did not concede that aftermarket replacement sensors sold *without* a monitor containing the FAST algorithm constitute contributory infringement. The pre-trial order stated:

> Specifically, this concession includes that Philips' infringement has occurred literally for all the asserted claims. In addition, Philips' concession of indirect infringement includes induced infringement, and contributory infringement, as set forth in 35 U.S.C. § 271(b) and (c). The infringing acts include the making, using, selling, offering for sale, and importing of all products ***containing the FAST algorithm (and sensors used therewith)***. Philips concedes these infringing acts have been occurring continuously since the issuance of the two asserted patents.

D.I. 834 ¶ 11 (emphasis added). Philips, accordingly, conceded that the sales of monitors with the FAST algorithm and the sensors sold "therewith" constitute *direct* infringement as they are the complete system. And Philips also conceded that monitors containing the FAST algorithm constitute contributory infringement because (if Masimo's patents are valid) an oximeter monitor that contains the FAST algorithm would be a component especially adapted for an infringing use that cannot be used in a non-infringing way. Philips did *not* concede that aftermarket sales of sensors outside the complete system are infringing.

Philips could not have made the concession that Masimo claims because, during the infringement trial, whether or not sensors or cables contributorily infringed was irrelevant. Although Masimo sought and received damages based on its sales of the cables and sensors along with the oximeter monitors (Mot. 11), this was based on Masimo's damages theory under the doctrine of "convoyed sales"—"[a] patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale." *DePuy Spine, Inc. v. Medtronic Sofamor Danek*, 567

F.3d 1314, 1333 (Fed. Cir. 2009) (quotation omitted). At trial, Masimo specifically contended that sensors and cables were convoyed products, not separately or contributorily infringing products, which was reflected in the jury instructions. Trial Tr. 2382:22-2383:26. Masimo's theory of damages was that, had it sold its monitors, it could have locked in additional sales for replacement cables and sensors *because of* its tying agreements and its technological lock-out.

Philips' response to this assertion is that these agreements and technological ties are invalid *because* they are patent misuse. While Masimo's anticompetitive activities were, as a practical matter, successful in permitting Masimo to maintain control over the market for replacement cables and sensors, Philips contends that this conduct was wrongful, barring Masimo from obtaining *any* damages. But, because the Court bifurcated the patent misuse defense, Philips could not assert the illegality of Masimo's conduct as a rebuttal to Masimo's damages calculations. Instead, the bifurcation required the parties to litigate the infringement action with the assumption that these tying arrangements were *lawful* and thus provided an appropriate basis for measuring damages. The procedural posture here stems solely from the bifurcation.

Masimo's argument, moreover, is irrelevant to the outcome of this motion because nothing in the pre-trial order discusses cables. Unlike the sensors (which are referenced in some asserted claims, *see, e.g.*, '222 Claim 17), *none* of Masimo's claims mention a cable. There certainly has been no finding that cables are specially adopted to the monitors and have no non-infringing uses. Thus, apart from the sensor market, showing that Masimo engaged in patent misuse with respect to cables is a sufficient defense, as any patent misuse precludes a patentee from obtaining damages. *See, e.g.*, *Senza-Gel Corp.*, 803 F.2d at 668 n.10.

## CONCLUSION

For the foregoing reasons, Philips respectfully requests that the Court deny Masimo's motion for judgment on the pleadings.

20

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Clinton H. Brannon
Brian K. Andrea
Cody I. Gillians
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel:  (202) 263-3000

By:   _/s/ Richard L. Horwitz_____
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        bpalapura@potteraderson.com

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

*Attorneys for Defendants/Counterclaim Plaintiffs*
*Philips Electronics North America Corporation and*
*Philips Medizin Systeme Böblingen GmbH*

Dated: March 2, 2015
1182717/33976

21