## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MASIMO CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 09-80-LPS |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| PHILIPS ELECTRONICS NORTH AMERICA | ) |
| CORPORATION and PHILIPS MEDIZIN | ) |
| SYSTEME BÖBLINGEN GMBH, | ) |
| | ) |
| Defendants. | ) |

### PHILIPS' RESPONSE BRIEF IN SUPPORT OF FINDING
### THE '984 PATENT UNENFORCEABLE DUE TO INEQUITABLE CONDUCT

OF COUNSEL

Alan M. Grimaldi
Brian A. Rosenthal
Ann Marie Duffy
Brian K. Andrea
Cody I. Gillians
MAYER BROWN LLP
1999 K St. NW
Washington DC 20006
Tel: (202) 263-3000

Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600

William C. Rooklidge
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Tel: (949) 451-4009

Dated: March 4, 2015
1182989

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteraderson.com

*Attorneys for Defendants/Counterclaim Plaintiffs
Philips Electronics North America Corporation and
Philips Medizin Systeme Böblingen GmbH*

OF COUNSEL:

Sasha Mayergoyz
JONES DAY
77 West Wacker
Chicago, IL 60601
Tel: (312) 269-1572

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. KESLER AND GROVER COMMITTED INEQUITABLE CONDUCT ......................... 2

    A. Kesler And Grover Violated Their Duty Of Candor By Not Advising The Examiner About Representations That Became Demonstrably False ................... 2

    B. Kesler's And Grover's Misrepresentations And This Court's March 31st Order Were Material ............................................................................................. 5

    C. Kesler And Grover Acted With Intent To Deceive The Examiner ........................ 6

III. JENSEN COMMITTED INEQUITABLE CONDUCT ..................................................... 8

IV. MASIMO'S PROCESS ENCOURAGED WILLFUL BLINDNESS RATHER THAN FULL DISCLOSURE ............................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*1st Media, LLC v. Elec. Arts, Inc.*,
  694 F.3d 1367 (Fed. Cir. 2012).....................................................................................7

*Apotex Inc. v. UCB, Inc.*,
  763 F.3d 1354 (Fed. Cir. 2014).....................................................................................7

*Fiskars, Inc. v. Hunt Mfg. Co.*,
  221 F.3d 1318 (Fed. Cir. 2000).....................................................................................8

*FMC Corp. v. Hennessy Indus., Inc.*,
  836 F.2d 521 (Fed. Cir. 1987).....................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011)................................................................................................10

*Innogenetics N.V. v. Abbott Laboratories*,
  512 F.3d 1363 (Fed. Cir. 2008).....................................................................................3

*Intellect Wireless Inc. v. HTC Corp.*,
  732 F.3d 1339 (Fed. Cir. 2013).....................................................................................3

*Life Technologies, Inc. v. Clontech Laboratories, Inc.*,
  224 F.3d 1320 (Fed. Cir. 2000).....................................................................................3

*Lipman v. Dickinson*,
  174 F.3d 1363 (Fed. Cir. 1999).....................................................................................2

*Molins PLC v. Textron, Inc.*,
  48 F.3d 1172 (Fed. Cir. 1995).......................................................................................5

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
  614 F.3d 1354 (Fed. Cir. 2010).....................................................................................3

*Rohm & Haas Co. v. Crystal Chem. Co.*,
  722 F.2d 1556 (Fed. Cir. 1983)............................................................................ *passim*

*Rothman v. Target Corp.*,
  556 F.3d 1310 (Fed. Cir. 2009).....................................................................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)................................................................................................4, 6

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
   2012 WL 600715 (D. Del. Feb. 3, 2012) ...................................................................................3

*Young v. Lumenis, Inc.*,
   492 F.3d 1336 (Fed. Cir. 2007)..................................................................................................3

**OTHER AUTHORITIES**

37 C.F.R. § 1.555(a).......................................................................................................1, 9, 10

MPEP § 2001.06(c)..................................................................................................................4

MPEP § 2207 ...........................................................................................................................7

MPEP § 2256 ...........................................................................................................................8

# TABLE OF ABBREVIATIONS

*Parties*

| Philips | Defendants Philips Electronics North America Corporation and Philips Medizin Systeme Böblingen Gmbh |
|---|---|
| Masimo | Plaintiff Masimo Corporation |

*Defined Terms*

| The '984 patent | U.S. Patent No. 7,214,984 (DX2379) |
|---|---|
| Corenman | U.S. Patent No. 4,934,372 (DX3064) |
| DFF ___ | Refers to Defendants' Fact Finding; "___" refers to specific fact finding |
| *Markman* Report | D.I. 210, Feb. 18, 2011 Report & Recommendation re: Claim Construction |
| *Markman* Order | D.I. 319, Jan. 17, 2012 Order re: Claim Construction |
| Order Granting Reexamination | October 10, 2012 Order Granting Reexamination (DX2740.2 at PHIL03334281-303) |
| Response | March 25, 2013 Response to Office Action (DX2740.8 at PHIL03334934-93) |
| April 29th IDS | April 29, 2013 Information Disclosure Statement (DX2740.9 at PHIL033345071-080) |
| April 2nd Report | D.I. 662, April 2, 2013 Report and Recommendation re: Summary Judgment (DX2784) |
| NIRC | April 10, 2104 Notice of Intent to Issue Reexamination Certificate (DX2740.10 at PHIL03335239-262) |

Emphasis added throughout, unless indicated otherwise.

I.     INTRODUCTION

Philips' Brief established by clear and convincing evidence that Kesler, Grover, and Jensen withheld material information with intent to deceive the Examiner to gain confirmation of claims that were heading to trial. (D.I. 974.) In the face of that evidence, Masimo offers arguments rejected by the Federal Circuit and excuses that solidify deceptive intent.

Masimo argues that Kesler and Grover's "duty was satisfied when [they] submitted the R&R to the USPTO." (D.I. 976 at 4.) Not so. Masimo ignores the facts that: (1) Kesler and Grover never specifically advised the Examiner about Judge Thynge's constructions; (2) it never informed the Examiner that those constructions rendered false Kesler's representations to overcome unpatentability; and (3) Kesler was aware of this falsity within weeks of making his representations. Accordingly, "it does not suffice" to disclose merely the April 2nd Report "without calling [the Examiner's] attention to the untrue or misleading assertions." *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983).

Masimo also pleads that Jensen "was 'completely consumed' in non-patent matters" and therefore could not disclose this Court's March 31st Order. (D.I. 976 at 8.) Federal regulations, however, mandate a duty to disclose that cannot be subordinated to a busy schedule. 37 C.F.R. § 1.555(a). Masimo seeks pardon of Jensen's non-disclosure by arguing that Masimo "submitted" the Court's Order "in other pending reexaminations." (D.I. 976 at 9.) In *Nellcor*, the Federal Circuit rejected that same argument: "Jensen's subsequent disclosure in other pending applications <u>does not mitigate his failure</u> to disclose the … claim construction ruling [ ] to the PTO during the pendency of the application." (DX2522 at 44.) Masimo's position thus collapses to arguing that this March 31st Order was "of <u>no moment</u>" (D.I. 976 at 4), even though that Order's constructions undercut the very basis on which the PTO confirmed claim 1.

As explained below, Masimo's other arguments fare no better.

## II. KESLER AND GROVER COMMITTED INEQUITABLE CONDUCT

### A. Kesler And Grover Violated Their Duty Of Candor By Not Advising The Examiner About Representations That Became Demonstrably False

The PTO relies "upon attorneys registered to practice before it to act in an honest and forthright manner in their dealings with the PTO." *Lipman v. Dickinson*, 174 F.3d 1363, 1371 (Fed. Cir. 1999). Here, responding to the Examiner's unpatentability rejections, Kesler's central argument was that claim 1 requires determining two ratios. (DFF 71.) In the Response to Office Action, Kesler dedicated over twelve pages to this issue, represented a dozen times that claim 1 must determine two ratios, and submitted an expert declaration to support those representations. (DX2740.8 at PHIL PHIL03334954-66; DF 39.) Kesler made unequivocal representations that claim 1 "<u>cannot be construed</u> as allowing only one calculator to make a determination," and "<u>[a]ny other interpretation</u> would render the claims at issue <u>meaningless</u>." (DFF 40-41.)

Within weeks of submitting that Response, Kesler understood that Judge Thynge's April 2nd Report rendered false his representations to the Examiner. (DFF 47-50.) In such circumstances, the Federal Circuit instructs that:

> The first requirement to be met by an applicant, aware of misrepresentation in the prosecution of his application and desiring to overcome it, is that he <u>expressly advise the PTO of its existence, stating specifically wherein it resides</u>. The second requirement is that, if the misrepresentation is of one or more facts, <u>the PTO be advised what the actual facts are, the applicant making it clear that further examination in light thereof may be required</u> if any PTO action has been based on the misrepresentation. Finally, <u>on the basis of the new and factually accurate record, the applicant must establish patentability</u> of the claimed subject matter.

*Rohm*, 722 F.2d at 1572. Kesler and Grover never took any of these necessary steps. They never advised the Examiner of their misrepresentations; never advised the Examiner of the actual facts—that claim 1 could be construed to allow calculating one ratio; and never established patentability of claim 1 over Corenman under Judge Thynge and this Court's construction, which they had asserted would render the claims meaningless. (DFF 57-59, 86-89.)

2

Instead, Kesler and Grover submitted an IDS that was deliberately "high-level" and purposefully restricted any discussion of Judge Thynge's claim constructions to providing only a page range. (DFF 56-57.) Grover consciously limited discussion in the April 29th IDS because of litigation concerns. (*Id*.) Kesler and Grover cannot sweep away false statements by merely "disclos[ing] the R&R." (D.I. 976 at 4.) Rather, the law is clear that:

> It does not suffice that one knowing of misrepresentations in an application or in its prosecution merely supplies the examiner with accurate facts without calling his attention to the untrue or misleading assertions sought to be overcome, leaving him to formulate his own conclusions.

*Rohm*, 722 F.2d at 1572; *Intellect Wireless Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013) (finding deceptive intent when "a replacement declaration that, rather than expressly admitting the earlier falsity, dances around the truth").

Masimo tries to escape this precedent by recasting Kesler's statements as "classic attorney argument." (D.I. 976 at 5-6.) Masimo is wrong. *Rohm* recognized that "untrue or misleading <u>assertions</u>" give rise to inequitable conduct. 722 F.2d at 1572. And Masimo's cited cases confirm that an attorney's "demonstrably false" statements support inequitable conduct. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007)*; Ring Plus, Inc. v. Cingular Wireless Corp.,* 614 F.3d 1354, 1359-60 (Fed. Cir. 2010) (attorney mischaracterization of prior art constituted "misrepresentations").[1] Likewise, this District has "affirmed … that attorney arguments can give rise to an actionable claim of inequitable conduct." *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at *11 (D. Del. Feb. 3, 2012).

---

[1] Masimo's cases are inapposite. *Rothman v. Target Corp*. addressed whether an attorney was sufficiently experienced to characterize prior art. 556 F.3d 1310 (Fed. Cir. 2009). *Innogenetics N.V. v. Abbott Laboratories* involved potentially inaccurate boilerplate statements when the attorney did not read the references. 512 F.3d 1363 (Fed. Cir. 2008). In *Life Technologies, Inc. v. Clontech Laboratories, Inc.*, there was no misrepresentation because the disputed statement was legally irrelevant to an obviousness inquiry. 224 F.3d 1320 (Fed. Cir. 2000).

Further, when, as here, an attorney learns that his categorical statements have become false, failure to specifically inform the Examiner about such facts crosses the line from zealous advocacy to a violation of the duty of candor. Thus, while a patentee "is free to advocate its interpretation of its claims" (D.I. 976 at 5) (quoting *Innogentics*, 512 F.3d at 1379), he does not have license to maintain statements made to overcome a rejection after learning that such statements were rendered false by district-court opinions. Simply put, "honesty at the PTO is essential." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

Masimo's effort to analogize Kesler's representations as arguments akin to positions taken during this litigation also fails. (D.I. 976 at 5-6.) Kesler acknowledged that he made representations to the PTO in his Response. (Bench Trial Tr. 150:16-154:17.) Even putting aside the labels of representations or arguments, the MPEP explains that "material information <u>is any assertion</u> that is made during litigation <u>which is contradictory to assertions made to the examiner</u>." MPEP § 2001.06(c). This same reasoning applies to a patentee's statements made to the Examiner that are contradicted in litigation by court decisions.

Masimo argues that Kesler and Grover's conduct is ultimately irrelevant because "the PTO made clear it would determine for itself what claim construction should govern." (D.I. 976 at 4.) This self-serving testimony lacks any documentary evidence. The Examiner's and Masimo's Interview Summaries <u>never</u> stated that the PTO would not follow the Court's constructions. In fact, the only objective evidence—the Examiner's statements and actions in the NIRC—establishes that the Examiner closely followed the Court's constructions. (D.I. 974 at 5.) Masimo also argues that it fully informed the Examiner that "neither party objected to" Judge Thynge's constructions. (D.I. 976 at 7.) That fact, however, was buried in a single sentence in one paragraph in a brief that was submitted with multiple other filings to the PTO. DFF 59;

4

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("'Burying … can be probative of bad faith."). The April 29th IDS never called the Examiner's attention to that specific fact; rather it misled the Examiner by stating that "[b]oth parties Objections and the Report and Recommendation are currently under consideration by the District Court." (DX2740.9 at PHIL03335073.)

Finally, Masimo contends that "[t]here is [] no duty to 'correct the Patent Examiner's mistakes.'" (D.I. 976 at 4.) That argument jumbles the issues by mistakenly placing the onus on the Examiner. Kesler, not the Examiner, made unequivocal representations that subsequently became false. Thus, it was Kesler and Grover's duty to bring the untrue and misleading representations to the Examiner's attention. *Rohm*, 722 F.2d at 1572.

**B.     Kesler's And Grover's Misrepresentations And This Court's March 31st Order Were Material**

Masimo's brief avoids any mention of the basis on which the Examiner actually allowed claim 1 over Corenman (D.I. 976 at 6-7), and abandons its pre-trial position that "the NIRC distinguished the prior art based on the failure to disclose two different calculation techniques." (D.I. 953, Ex. 1 at 5; D.I. 854 at 9 n.5)[2] The reason for Masimo's silence is simple: The Examiner withdrew the Corenman rejection by relying on the very misrepresentation that Kesler and Grover never addressed, much less corrected. The NIRC stated that "Corenman teaches only a single ratio … in contrast to the two ratios required in claim 1." (DFF 71.) Given Judge Thynge's and this Court's construction of claim 1 as allowing a single ratio, Kesler's misrepresentation is plainly but-for material.

---

[2] Philips' Opening Brief established that the Examiner did not allow claim 1 over Corenman based on two calculation techniques, and in fact rejected that argument. (D.I. 974 at 5-6.)

5

To shift focus away from the Examiner's stated basis, Masimo seizes on the litigation and original prosecution. (D.I. 976 at 6.) However, "even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance." *Therasense*, 649 F.3d at 1292. The original prosecution is similarly irrelevant. During reexamination, the Examiner found a substantial new question of patentability despite Corenman being considered in the original prosecution and allowed claim 1 for a reason unrelated to the original prosecution. (DX2740 at PHIL03334286-88.)

Masimo's reliance on Dr. Baura's July 7, 2014 report underscores "but-for" materiality. The 2014 report came long after Kesler submitted Dr. Baura's March 22, 2013 declaration in reexamination. The 2014 report contained new opinions regarding Corenman that were never presented to, or relied on by, the Examiner. Furthermore, Masimo avoids the substance of Dr. Stone's report by looking at a fragment of his analysis and arguing that the "NIRC never construed" calculating two ratios "each time a calculation is performed." (D.I. 976 at 7.) The Examiner, however, allowed claim 1 over Corenman by accepting Masimo's representation that the claim requires two ratios, and Dr. Stone explained that such a "determination is inconsistent" with the Court's construction. (DFF 71, 90.) Indeed, Mr. Kesler admitted this himself even though he tried to evade it when first asked by the Court. (Tr. 250:11-251:8.)

C.     **Kesler And Grover Acted With Intent To Deceive The Examiner**

Philips' Opening Brief established that the most reasonable inference is that Kesler and Grover acted with specific intent to deceive and mislead the Examiner. (D.I. 974 at 6-9.) Indeed, Kesler and Grover's testimony that they were "totally transparent" with the PTO is belied by their actions during reexamination. (Tr. 212:19-213:8, 329:20-330:3.)

Kesler and Grover's intentional bare-bone disclosure of the existence of claim constructions in the April 2nd Report together with their complete failure to share the substance

6

of those constructions with the Examiner and address how those constructions contradicted Kesler's representations in favor of patentability, provides clear and convincing evidence of intent. (D.I. 974 at 6-9; *supra* II.A.) By submitting the April 2nd Report with only a reference to the page range where "claim constructions can be found" (DFF 56-57), Kesler and Grover selectively deployed facts to mislead the Examiner. Their deliberately limited discussion of the April 2nd Report in the IDS—contrasted with their detailed discussion of Judge Thynge's *Markman* Report and this Court's *Markman* Order in the Response to Office Action— demonstrates that Kesler and Grover did not want the Examiner to delve into the April 2nd Report and learn the basis of Judge Thynge's constructions. *Apotex Inc. v. UCB, Inc.,* 763 F.3d 1354, 1362 (Fed. Cir. 2014) (deceptive intent when applicant knew that "assertions … regarding the prior art were at least misleadingly incomplete, if not plainly inaccurate"); *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375(Fed. Cir. 2012) ("selective manipulation of where, when, and how much of the most material information to disclose" establishes deceptive intent).

Kesler and Grover's intent to deceive is reinforced by Masimo's scattershot efforts to explain away their conduct. Masimo's contention that Kesler and Grover lacked the ability to provide commentary regarding the April 2nd Report is legally and factually erroneous. (D.I. 976 at 4, 9.) Masimo pins its legal argument to MPEP § 2207. That section, however, limits description of litigation documents only if the PTO "deems the volume of the papers filed from litigation or other proceedings to be too lengthy." MPEP § 2207. The opposite was true here, as the Examiner repeatedly stressed Masimo's "continuing responsibility … to apprise the Office of any litigation activity." (DFF 19, 21, 73.) In addition, *Rohm* compels attorneys to provide the necessary commentary to the Examiner. 722 F.2d at 1572. Moreover, Kesler and Grover's actions betray Masimo's litigation-fueled position. Throughout reexamination, Kesler and

Grover submitted IDSs with sections titled "Explanations of Relevance," where they provided commentary on litigation events. (*E.g.*, DX2740.4 at PHIL03334671-72; DX2740.9 at PHIL03335072-76; DX2740 at PHIL03335082-84.)[3]

Masimo argues that the attorneys lacked intent to deceive because they "intended to disclose everything" and submitted nine separate IDSs. (D.I. 976 at 2, 8-9.) That, however, only makes Kesler, Grover, and Jensen's failure to provide the Examiner with critical information about Judge Thynge's and this Court's claim constructions more conspicuous and solidifies that intent to deceive is the most reasonable inference.

Finally, even after receiving Philips' April 14th letter noting that Masimo did not apprise the Examiner of this Court's constructions, Masimo argues that it was unable to submit any information "without an unequivocal statement" that one claim "was invalid." (D.I. 976 at 8-9.) However, an "unequivocal statement" is applicable (if at all) only after "the reexamination has entered the Reexamination Certificate printing cycle." MPEP § 2256. Kesler conceded that as of April 15, 2014, he did not know whether the reexamination entered the printing cycle and thereafter he made no effort to find out. (DFF 79.) Thus, notwithstanding Masimo's mantra of disclosing everything "if there [i]s any doubt" (Tr. 212:19-213:8), Kesler made an affirmative decision not provide the Examiner with information about Judge Thynge's claim constructions despite knowing that the Examiner had not considered the April 2nd Report. (DFF 78, 87-89.)

## III. JENSEN COMMITTED INEQUITABLE CONDUCT

Philips' Opening Brief established by clear and convincing evidence that Jensen committed inequitable conduct during reexamination of the '984 patent given his knowledge of

---

[3] Masimo's citation to *Fiskars, Inc. v. Hunt Mfg. Co.*, misses the point because that case involved calling the Examiner's attention to a cited prior-art reference rather than correcting misrepresentations. 221 F.3d 1318, 1327 (Fed. Cir. 2000).

8

the Court's March 31st Order and decision to take no affirmative steps to ensure disclosure of that Order the Examiner. (D.I. 974 at 9-10.)

Masimo argues that Jensen is blameless because "Masimo set up a process to ensure submission of litigation documents to the USPTO." (D.I. 976 at 7.) Masimo's process was designed to insulate against inequitable conduct rather than ensure disclosure of material information. (*Infra* Section IV.) Further, the duty of candor is absolute and cannot be delegated simply because Jensen was too busy or did not want it. 37 C.F.R. § 1.555(a); DFF 64. Given a prior finding of inequitable conduct for failure to disclose a claim-construction order and given the Federal Circuit's observation that Jensen "failed to take even the most minimal steps toward any form of disclosure" (DX2522 at 44), the fact that Jensen decided to rely on a process he did not fully understand and took no affirmative steps to disclose this Court's Order (DFF 14, 63), establishes that intent to deceive is the only reasonable inference. Masimo also relies on Jensen's email stating "We should send everything to the pto." (D.I. 976 at 9.) Jensen, however, sent that email only to litigator Oldham, tellingly not to Kesler or Grover. (DFF 82.)[4]

Masimo asserts that Jensen could not disclose the March 31st Order because such disclosure "took longer than days or weeks." (D.I. 976 at 10.) Tellingly, when Jensen had information that he perceived as positive, timing posed no impediment to disclosure. Jensen informed Kiani about the March 31st Order and its impact on the '222 patent on the same day the Order issued. (DFF 61.) And, in less than 24 hours, Masimo's prosecution team informed the litigation team about the NIRC and Masimo submitted a letter to this Court. (DFF 74.) Yet when information was harmful to Masimo's positions, such information was never disclosed.

---

[4] Masimo cites Kiani's testimony that he wanted "disclosure of 'anything that was even remotely relevant." (D.I. 976 at 7.) But Kiani had no specific involvement in decision-making regarding reexamination of the '984 patent. (Tr. 91:2-16.)

9

### IV. MASIMO'S PROCESS ENCOURAGED WILLFUL BLINDNESS RATHER THAN FULL DISCLOSURE

In contending that Knobbe's process was the "opposite of willful blindness" (D.I. 976 at 9-10), Masimo argues against the testimony of its own witnesses and statements in its brief. Masimo's brief admits that "[p]er his usual practice, Jensen did not read the [Court's March 31st] Order." (*Id.* at 8.) As a result, Masimo asserts that Jensen could not have purposefully withheld material information. (*Id.*) But Jensen admitted he knew about the Order; an Order formally adopting the very claim construction he argued against at the Examiner interview . (DFF 51,61). Such conduct runs counter both to the duty of candor in 37 C.F.R. § 1.555 and to the Federal Circuit's instruction that "one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art." *FMC Corp. v. Hennessy Indus., Inc.,* 836 F.2d 521, 526 n.6 (Fed. Cir. 1987). Here, Knobbe's process which Jensen helped create was not a result of negligence or gross negligence (D.I. 976 at 8), rather it purposeful and deliberate.

"[W]illful blindness … surpasses recklessness and negligence." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011). The doctrine prevents persons from "shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances." *Id.* at 2068-69. That is precisely what Jensen, Kesler and Grover sought to do, by shielding themselves against the most timely disclosure of this Court's Order or selectively reading only portions of the NIRC to avoid knowledge of material information and responsibility for its disclosure. Under the willful blindness doctrine, however, "persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts." *Id.* at 2069.

10

|  |  |
|---|---|
| | Respectfully submitted, |
| OF COUNSEL | POTTER ANDERSON & CORROON LLP |
| Alan M. Grimaldi | |
| Brian A. Rosenthal | By:  */s/ Richard L. Horwitz* |
| Ann Marie Duffy | Richard L. Horwitz (#2246) |
| Brian K. Andrea | David E. Moore (#3983) |
| Cody I. Gillians | Bindu A. Palapura (#5370) |
| MAYER BROWN LLP | Hercules Plaza, 6th Floor |
| 1999 K St. NW | 1313 N. Market Street |
| Washington DC 20006 | Wilmington, DE  19801 |
| Tel:  (202) 263-3000 | Tel:  (302) 984-6000 |
| | rhorwitz@potteranderson.com |
| | dmoore@potteranderson.com |
| Steven Yovits | bpalapura@potteraderson.com |
| MAYER BROWN LLP | |
| 71 South Wacker Drive | |
| Chicago, IL 60606 | *Attorneys for Defendants/Counterclaim Plaintiffs* |
| Tel: (312) 782-0600 | *Philips Electronics North America Corporation and* |
| | *Philips Medizin Systeme Böblingen GmbH* |

Sasha Mayergoyz
JONES DAY
77 West Wacker Drive
Chicago, IL  60601
(312) 269-1572

William C. Rooklidge
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
(949) 451-4009

Dated:  March 4, 2015
1182989 / 33976