```
1                IN THE UNITED STATES DISTRICT COURT

2                IN AND FOR THE DISTRICT OF DELAWARE

3                            - - -
   MASIMO CORPORATION,
4                                    :    CIVIL ACTION
            Plaintiff,               :
5   v                                :
                                     :
6   PHILIPS ELECTRONICS NORTH AMERICA :
   CORPORATION and PHILIPS MEDIZIN   :
7   SYSTEME BOBLINGEN GMBH,          :
                                     :    NO. 09-80-LPS
8            Defendants.             :
   ------------------------------------
9   AND RELATED COUNTERCLAIMS.       :
   ------------------------------------
10
                           Wilmington, Delaware
11                      Monday, February 9, 2015
                           Pretrial Conference
12
                                - - -
13
   BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge
14
                                - - -
15
   APPEARANCES:
16

17             MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
               BY:  JULIA HEANEY, ESQ.
18
                   and
19
               KNOBBE, MARTENS, OLSON & BEAR, LLP
20             BY:  JOSEPH R. RE, ESQ.,
                   JON W. GURKA, ESQ., and
21                 STEPHEN LARSON, ESQ.
                   (Irvine, California)
22
                   and
23

24

25                             Brian P. Gaffigan
                               Official Court Reporter
```

1    APPEARANCES:   (Continued)

2

3                   KNOBBE, MARTENS, OLSON & BEAR, LLP
                    BY:   KAREN VOGEL WEIL, ESQ.

4                         (Los Angeles, California)

5                             Counsel for Masimo Corporation

6                   POTTER, ANDERSON & CORROON, LLP
                    BY:   RICHARD L. HORWITZ, ESQ.

7
                          and

8
                    MAYER BROWN, LLP

9                   BY:   BRIAN A. ROSENTHAL, ESQ.,
                          ALAN M. GRIMALDI, ESQ., and

10                        BRIAN K. ANDREA, ESQ.
                          (Washington, District of Columbia)

11
                          and

12
                    GIBSON DUNN & CRUTCHER, LLP

13                  BY:   WILLIAM C. ROOKLIDGE, ESQ.
                          (Irvine, California)

14
                              Counsel for Philips Electronics North

15                            America Corporation and Philips
                              Medizin Systeme Boiblingen GmbH

16

17

18

19

20

21

22

23

24

25

```
 1                          - oOo -

 2                    P R O C E E D I N G S

 3               (REPORTER'S NOTE:  The following pretrial

 4     conference was held in open court, beginning at 9:02 a.m.)

 5               THE COURT:  Good morning, everyone.

 6               (The attorneys respond, "Good morning, Your

 7     Honor.")

 8               THE COURT:  We'll have you put your appearances

 9     on the record for us, please.

10               MS. HEANEY:  Good morning, Your Honor.

11               THE COURT:  Good morning.

12               MS. HEANEY:  Julie Heaney for Masimo

13     Corporation.  With me today from Knobbe Martens are Joe Re.

14               MR. RE:  Good morning.

15               MS. HEANEY:  Karen Weil.

16               MRS. WEIL:  Good morning.

17               MS. HEANEY:  Jon Gurka.

18               MR. GURKA:  Good Morning, Your Honor.

19               MS. HEANEY:  Stephen Larson.

20               And our client, Joe Kiani from Masimo.

21               MR. KIANI:  Good morning.

22               THE COURT:  Thank you.  Welcome back to all of

23     you.

24               MR. HORWITZ:  Good morning, Your Honor.

25               THE COURT:  Good morning.
```

1                    MR. HORWITZ:  Rich Horwitz from Potter, Anderson

2     & Corroon on behalf of Philips.

3                    With me today at counsel table from Mayer Brown,

4     Brian Rosenthal.

5                    (Mr. Rosenthal nods in greeting.)

6                    MR. HORWITZ:  Alan Grimaldi.

7                    MR. GRIMALDI:  Good morning.

8                    MR. HORWITZ:  And also from Gibson, Dunn &

9     Crutcher, Bill Rooklidge.

10                    MR. ROOKLIDGE:  Good morning, Your Honor.

11                    THE COURT:  Good morning.

12                    MR. HORWITZ:  Brian Andrea, also from Mayer

13     Brown.

14                    THE COURT:  Welcome to all of you as well.

15                    So we are here for the pretrial conference

16     for the bench trial that will begin on Wednesday which I

17     understand is limited to just inequitable conduct with one

18     Masimo patent.  Happily, I have very few things on my agenda

19     to discuss with you but let me first start by seeing what it

20     is you all want to make sure we talk about today.

21                    Mr. Rosenthal, you are sort of the plaintiff

22     here, so let's have you go first.

23                    MR. ROSENTHAL:  Thank you, Your Honor.  Good

24     morning.

25                    THE COURT:  Good morning.

1           MR. ROSENTHAL:  I dropped my pen.

2           We also have pretty few things on our list.  Let

3   me go through them in no particular order.  We have a couple

4   of housekeeping matters and then one or two substantive

5   things.

6           The first housekeeping matter has to do with

7   expert reports.  The parties have agreed the only expert

8   testimony will be the submission of particularly identified

9   expert reports of each side.  The pretrial order suggests

10  that these will be admitted subject to objections.

11          We just heard this morning for the first time

12  there are, in fact, some objections to portions of Dr.

13  Stone's expert report.  I don't know what those are yet.

14  We've asked for Masimo to identify them for us.

15          We haven't agreed on a procedure for how to

16  deal with them.  My suggestion was going to be, before I

17  learned of the objections, that the parties simply move the

18  admission of the expert reports when the trial begins.

19          THE COURT:  My understanding from letters or

20  some proceedings we had some time ago was that the expert

21  reports were going to be Philips' third supplemental report

22  of Dr. Stone regarding invalidity; correct?

23          MR. ROSENTHAL:  That's correct.

24          THE COURT:  And Masimo, the supplemental report

25  of Dr. Baura regarding validity, and in both cases simply I

1    think related to the '984 patent.

2              MR. ROSENTHAL:  Yes.  So I think both expert

3    reports also deal with other parties.  We'll redact the

4    other stuff when we submit it.

5              THE COURT:  Right.

6              MR. ROSENTHAL:  It turns out Masimo has

7    objections to some portion of what Dr. Stone opines on, so

8    we haven't worked out a procedure to deal with that.

9              THE COURT:  Right.

10             MR. ROSENTHAL:  I'm sorry.

11             THE COURT:  My first question that is the full

12   scope of the expert testimony you envision admitting;

13   correct?

14             MR. ROSENTHAL:  Yes, Your Honor.

15             THE COURT:  So we need to figure out how to

16   deal with that.  You know what?  Rather than get your list,

17   let's take it from there.  Let me see what the objection is

18   because my understanding was this was decided some time ago

19   that these were the expert reports coming in.  So if I'm

20   mistaken about that, let me understand.

21             MR. RE:  Go ahead.

22             THE COURT:  Good morning.

23             MS. WEIL:  Good morning, Your Honor.  There is

24   no dispute that those are the expert reports, that's the

25   universe.  I think the issue that we have is we have some

1    objections to portions of Dr. Stone's report.  I understand

2    that the parties have agreed we are going to meet and see if

3    we can resolve objections.  But to the extent that we can't,

4    we just wanted to know how Your Honor would like us to

5    inform you of these objections.

6              THE COURT:  Okay.  First off, there is no

7    further expert reports that you think should be part of this

8    trial; correct?

9              MR. RE:  (Shaking head no.)

10             MS. WEIL:  No.

11             THE COURT:  Okay.  Excellent.  Well, here is

12   the thing.  I would like to have a chance to read the expert

13   reports, to the extent they're admitted, before we get

14   together on Wednesday.  So you all need to meet and confer

15   later today and let's say you will write me a letter by

16   first thing tomorrow morning and tell me if there are

17   objections.  And if there are objections, then just very

18   briefly put in there what the objections are, and I'll try

19   to resolve them.  Because, again, I was hoping to read these

20   expert reports before I see you on Wednesday.

21             So the first thing, let me say 10:00 a.m.

22   tomorrow morning, joint letter.  Okay?

23             MS. WEIL:  (Nodding yes.)  Joint letter.

24   Perfect.  Thank you.

25             THE COURT:  Next issue.

1                    MR. ROSENTHAL:  Thank you, Your Honor.

2                    The second I believe is an easy one.  That is

3     that the parties have agreed that there are going to be

4     certain documents.  This is a pretty narrow case, and there

5     are certain documents that everybody is going to want to use

6     in opening and otherwise.

7                    What we thought we ought to do is tomorrow

8     exchange a list of documents to pre-admit and then read

9     those into the record first thing on Wednesday and just get

10    them preadmitted for the trial without a sponsoring witness.

11    They are reexam files and things like that.  Unless the

12    Court has a problem with that?

13                   THE COURT:  I think you said that is agreed to.

14                   MR. ROSENTHAL:  That's correct.

15                   THE COURT:  Is that correct?

16                   MS. WEIL:  Yes, I agreed to that process.

17                   THE COURT:  To the process.  Right.

18                   MR. RE:  Whether we agree on the pre-admitted

19    exhibits is another issue.

20                   THE COURT:  What is on the list is what we'll

21    see on Wednesday; correct?

22                   MR. ROSENTHAL:  Correct, and only the things we

23    agreed to will be on the list.

24                   THE COURT:  Fair enough.  In case that I was

25    not entirely clear, I don't think I was, but 10:00 a.m.

1    tomorrow, which is what I think I said, give me the reports

2    as well.  Certainly if there are no objections, then you are

3    giving me the reports because they're basically going to be

4    on that list on Wednesday and they will be admitted.

5             If there are objections, I'm still going to need

6    to see the reports in order to rule on the objections, so I

7    would like to have them tomorrow.

8             Are there any questions about that, Mr. Rosenthal?

9             MR. ROSENTHAL:  Not from me, no.

10            THE COURT:  Ms. Weil, any questions about that?

11            MS. WEIL:  No, Your Honor.

12            THE COURT:  Okay.  Thank you.

13            MR. ROSENTHAL:  Down on my list, the next thing

14   seems to be, there continues to be just a slight disparity

15   in the parties' views on how many pages ought to be given to

16   post-trial briefs.

17            Philips' proposal, and also on schedule it looks

18   like, Philips' proposal is 30 pages for proposed findings of

19   fact and conclusions of law to be submitted on March 13th.

20   On the same day, we propose a 25 page opening brief by the

21   parties.  And on April 10th, a 15 page responsive brief.

22            Masimo's proposal, I don't have dates for their

23   proposal other than that they want the whole thing to be

24   wrapped up by the first week of April and they propose

25   25 pages instead of our 30, 20 instead of our 25, and 10

1    instead of our 15.

2              THE COURT:  All right.  Well, let's talk about

3    this.  I'm not sure I need anything near what either of you

4    are proposing in terms of either size or time.  Among other

5    things, my law clerk is leaving me at the end of March.  He

6    was here for the first trial, so while there are no guarantees

7    at all that I'm going to get this wrapped up before the end

8    of March, I certainly have a desire to see if I can.  It's a

9    narrow issue, as you have already said.

10             We're going to have a short trial.  I'm not

11   going to make final decision as to what briefing or how

12   quickly it's going to be done I think until we're through

13   the evidence and whatever arguments there are, but I would

14   like you all to keep in mind as you try this case, can you

15   do it in a way whereby I might need very short briefs, short

16   findings of fact, and something on the order of two to three

17   weeks at most to get it to me so that I may be in a position

18   to resolve the issue before the end of March.

19             But, first of all, I'm not making a decision on

20   any of it.

21             Second of all, I'm more than happy to have a

22   discussion about this.

23             So any thoughts you have for me, I'm happy to

24   hear.

25             MR. ROSENTHAL:  We very much appreciate the

1    input.  What I would suggest is at the conclusion of the

2    trial that we set aside a few minutes to discuss this issue.

3                THE COURT:  That is certainly is something I am

4    very comfortable with.  What do you think, Mr. Re?

5                MR. RE:  That sounds perfect.

6                MR. ROSENTHAL:  Okay.  Another housekeeping

7    issue.  The question has arisen as to when we should -- we

8    would like to do a closing argument and actually in view of

9    your comments, it might be helpful to do so because that

10   might be the bigger opportunity for us to wrap the evidence

11   up and present to you our views of how it ought to be read.

12               We wanted to make sure that there was at least a

13   little bit of a gap in between the close of evidence and the

14   closing to make sure we can assimilate it.  Our thought

15   was -- and we talked with the other side, it seems like we

16   were in general agreement -- if we wrap up in the morning on

17   Thursday, then we would like to have an extended lunch and

18   do it on Thursday afternoon.  If we wrap up on Thursday

19   afternoon, our thought was with the Court's indulgence,

20   perhaps we can do the closings on Friday morning.  That

21   would give us a chance to assimilate the evidence, make sure

22   we're giving you an on-point presentation with respect to

23   the evidence.

24               THE COURT:  Is there any objection to that?

25               MR. RE:  Subject to your approval, that's fine.

1          THE COURT:  Right.  Conceptually, I'm in full

2    agreement with that.  Precisely when we will do it, whether

3    it be late Thursday or some time Friday will be subject

4    to developments at trial.  And there is always a chance

5    something will come up on my schedule, but I agree

6    conceptually that will be helpful to you and to me.

7          MR. ROSENTHAL:  Thank you, Your Honor.  I

8    suggest maybe we check in on this issue at the end of

9    Wednesday.

10         THE COURT:  That sounds good.

11         MR. ROSENTHAL:  The second-to-last issue on my

12   list.  The question has arisen as far as how do we deal

13   with witnesses?  It turns out our witnesses are 100 percent

14   aligned.  We intend to call four witnesses, they intend to

15   call four witnesses.  They're all Masimo witnesses:  Mr.

16   Kiani, and then three prosecuting attorneys.  So we don't

17   have a disagreement as far as the list of witnesses.

18         We have discussed, and I think helpfully so,

19   it's a bench trial.  It's the same list of witnesses.  We

20   ought to have the witnesses come up once as opposed to

21   having them come up multiple times.  There is a slight

22   disagreement as to, if that happens, how will the questioning

23   proceed.

24         We believe since we have the burden of proof,

25   it's our issue, we have, in theory, the right to have a

1    rebuttal case and to recall witnesses.  We thought that it

2    would make sense for us to have the last word when it comes

3    to questioning the witnesses; but Masimo has stated that

4    they think they ought to have the last word with respect to

5    questioning witnesses.  In other words, have a four stage

6    questioning process where there is a direct, a cross, a

7    redirect, and a recross.

8              We don't care whether it's a three stage or a

9    five stage, but either way, since we're foregoing our

10   rebuttal case, we ought to have the last word.

11             THE COURT:  Right.  So you would present opening

12   first, and you would call all four witnesses, and you just

13   want there to be an odd number of question opportunities so

14   that you go first and last; right?

15             MR. ROSENTHAL:  Yes, Your Honor.  And the

16   possibility of doing five is so far from the possible that

17   I -- I think it's going to be three.

18             THE COURT:  You are not asking for seven or

19   nine.

20             MR. ROSENTHAL:  I'm not.  I'm not.

21             THE COURT:  All right.  What is Masimo's view,

22   please?

23             MR. RE:  We did discuss that this morning.  I

24   prefer five rather than three.  The reason is as follows.

25   This is unusual for a few reasons.

1          One, I only voluntarily offered to bring live

2     the witnesses he wants to call.  Okay?  So now I feel I'm

3     getting penalized a bit for bringing the three lawyers live.

4     They didn't have to come.  They designated testimony to play

5     in their prima facie case; and I said rather than play the

6     testimony, we will bring them live; and he accepted.

7          Second, they weren't going to call Mr. Kiani

8     until I said I was going to call Mr. Kiani because when they

9     dropped laches, Mr. Rosenthal said to me I assume now we

10    don't need to bring Mr. Kiani; and I said, no, we're still

11    going to bring Mr. Kiani.  So to the extent he is calling

12    all four of our witnesses, that was total reaction to our

13    case.

14          I don't want to be penalized for bringing my

15    witnesses all live for them to call in their prima facie

16    case.

17          So Mr. Horwitz made the point that they should

18    be able to go last and call the last witness.  I don't

19    disagree with that.  They have a chance to bring a rebuttal

20    case.  I just don't see it practical in this case.  So I

21    just felt that we should be able to go at least twice if

22    we're going to try to do "one and done."

23          If the Court says no, it's their case and they

24    are last, then I would have the right to call the witness

25    back in my prima facie case, which I thought was kind of

1    silly.  So since we're merging the two cases together, I

2    thought we should get at least two rounds of questioning.

3                    THE COURT:  So from all that, I understand you

4    don't object if I go with five rounds -- correct? -- per

5    witness?

6                    MR. RE:  I think that is fair.  That's fine.  If

7    we do five rounds, they get to go last, at least we then get

8    to narrow it down.  I don't feel a need to call a witness

9    back.

10                    THE COURT:  Mr. Rosenthal, you don't object to

11   that either?

12                    MR. ROSENTHAL:  That's fine.

13                    THE COURT:  That's how we'll do.  I appreciate

14   you working that out.  It will be helpful to the witnesses

15   and to me to see them once, and everybody will be thoroughly

16   questioned or at least you will have the opportunity to

17   thoroughly question them.

18                    MR. ROSENTHAL:  Thank you, Your Honor.  The last

19   issue on my list is a substantive one.

20                    We noted in the pretrial order, and we also

21   wrote a letter to the Court identifying that there is a

22   continuing issue with respect to Masimo's production of

23   documents and identification of documents on the privilege

24   log.  I want to update the Court on where we are on that

25   and let the Court know where we still have a disagreement.

1          We identified two issues in a letter to Masimo.

2    The first, and just to remind the Court, you ordered Masimo

3    to produce or log all documents that related from the

4    reexamination file to our inequitable conduct allegations

5    noting that Masimo had unduly interpreted our inequitable

6    conduct allegations and ordered them to have a more

7    expansive view of those allegations and produce documents

8    related thereto or log them.  They did so.

9          So the first thing we asked Masimo to do was to

10   produce for in camera review all the additional documents

11   that they had identified on their log.  There weren't very

12   many of them, and we thought they seemed like they were in

13   the nature of the documents that they already provided to

14   you for in camera review.  And while Masimo initially

15   disagreed, some days later, they in fact produced those to

16   the Court.  I assume the Court is in possession of those

17   documents now.

18          THE COURT:  Well, let's just make sure.  As I

19   understand it, the universe of documents we're talking about

20   are those logged as 1365 through 1379.  And I'm looking at

21   the log attached to the February -- no, the February 2nd

22   letter from Mr. Horwitz.  Do I have the right universe at

23   least?

24          MR. ROSENTHAL:  I'm sorry, Your Honor.  I was

25   opening my privilege log.

1          THE COURT:  Sure.  Take your time.

2          MR. ROSENTHAL:  I now have, on the log that I

3    have, I have identified 1365 through 1379 as the full list

4    of documents that are on the log.  Our understanding is you

5    have all of those.

6          THE COURT:  We have all of those.  My further

7    belief, but help me out if I'm wrong, is 1365 through

8    1373 we had in an initial batch and looked at in order to

9    generate an order, which I believe is D.I. 947 on January

10    12th, and then only very recently received a second batch

11    being 1374 through 1379.  Does that sound correct?

12          MR. ROSENTHAL:  That is exactly the facts as I

13    understand them.

14          THE COURT:  Is there any disagreement those are

15    the facts?

16          MR. RE:  Those are the facts.

17          THE COURT:  Then we have all of those documents;

18    and you may continue.

19          MR. ROSENTHAL:  All right.  So it seems like

20    we resolved the first issue.  Of course, we haven't talked

21    at all about what to do if the Court believes any of those

22    documents are not subject to work product immunity or

23    privilege and should be produced but presumably the Court

24    will let the parties know if there is a determination that

25    has an effect on what is to be presented at trial in that

1   regard.

2          The second issue that we asked Masimo about is

3   we said if you look at this privilege log, what you see is

4   that every single one of these documents is dated either

5   April 15th -- April 15th is the day that we sent the letter

6   to the Court identifying and to Masimo identifying the issue

7   that we saw with the NIRC, and that date there was a flurry

8   of e-mails and that was the first batch of documents in the

9   privilege log -- and then there are a series of e-mails

10  dated April 24th.  We don't know what is in those documents

11  because those have all been withheld as privileged.

12         What we didn't see here, and we didn't see any

13  production, is anything else.  Masimo has yet to produce any

14  documents, not a single document, nor a log on its privilege

15  log, any documents prior to April 15th that pertain to the

16  reexam.

17         So, for instance, during the reexamination of the

18  '984 patent, Masimo received the Report and Recommendation of

19  Judge Thynge in which the claim construction that was being

20  advanced to the PTO was rejected and shortly thereafter there

21  was an IDS submitted.

22         It is all over our inequitable conduct allegations

23  that at that time Masimo needed to do more than simply submit

24  the IDS and point out where the claim construction was but

25  to identify the fact that there was a rejection of the claim

1    construction.  That is fundamental to our inequitable conduct

2    allegations.

3              That is, among the things, that we expect that

4    there would be drafts of the IDS, communications internally

5    regarding what to say about this Report and Recommendation,

6    and we have asked Masimo to produce that.  That is part of

7    the reexam file that pertains to our inequitable conduct

8    allegations that have been ordered.  And Masimo has refused

9    to provide them.

10             In our view, you are the fact-finder.  You are

11   being tasked with the task of determining what their state

12   of mind was, the lawyer's state of mind with respect to

13   the disclosure or nondisclosure of the arguments and the

14   rejection of the arguments that this Court had.

15             We don't understand why the facts and the

16   documents that pertain to those submissions, which are

17   central to our case, are still being withheld in view of

18   the Court's Order.  We think they ought to at least be

19   logged.  And if they are logged, and they look like they are

20   germane, at least put in front of Your Honor to determine

21   whether in fact they are privileged or they ought to be

22   produced to us.  But we're sitting here with a very, very

23   small piece of the story actually having been disclosed.

24             THE COURT:  And this dispute is coming up today?

25             MR. ROSENTHAL:  No, this dispute is stemming

1    from something we raised in December.  In December, we went

2    to Masimo and said you have produced nothing from your

3    reexamination file that pertains to the submission of all of

4    this stuff.  Produce the information.

5         That is when they took this narrow view and they

6    said, well, the reexam file is just the publicly available

7    reexam file and, that is all you are entitled to discovery

8    on.

9         So we had process of meeting and conferring.

10   And, ultimately, on January 7th, we wrote to the Court and

11   said, Judge, they're withholding all these documents and

12   they already waived privilege on certain documents, and we

13   asked for an order ordering them to produce documents or

14   log documents broader than what they had done.

15        The Court agreed with us and issued an order,

16   which I think was 947, in which there was a statement that

17   Masimo was unduly narrowly interpreting the inequitable

18   conduct allegations, and it was supposed to produce or log

19   all documents that were so related from the reexam, that

20   were so related to the inequitable conduct allegations.

21        Our inequitable conduct allegations, as the

22   Court recognized, and as set forth in our complaint, deal

23   with the continued failure to point out to the Patent Office

24   the fact that the claim construction that was being advanced

25   had been rejected by the Court, but they have limited their

1    production to just what happened after the NIRC issued.

2    That is not what our inequitable conduct allegations are

3    limited to.

4                THE COURT:  So if I understand you correctly,

5    you are here today asking me to do something further to

6    enforce D.I. 947, which I have in front of you, that ordered

7    Masimo to comply with the Order by January 20th.

8                MR. ROSENTHAL:  Yes, Your Honor.  It is

9    regrettable to me that we're raising it today because

10   obviously this is not when we want to be dealing with

11   discovery issues.

12               THE COURT:  I don't think it was even in the

13   pretrial order, was it --

14               MR. ROSENTHAL:  I believe it was not ripe yet

15   because January 20th -- it may actually be in the pretrial

16   order as an identified issue.  Mr. Andrea is going to check

17   on that.

18               But January 20th that was the day that they had

19   to submit this information.  We reviewed that information

20   and very quickly thereafter wrote Masimo and said:  Hey, you

21   still haven't produced these two things.  Please do so.

22               And then at the time of the submission of the

23   pretrial order, Masimo informed us, it was I think by phone,

24   the last day of the pretrial order, Masimo informed us no,

25   we are not going to provide those two pieces of information,

1   so you can identify this as an issue for the Court.  So we

2   did so.

3            Now, I don't know if it actually made it into

4   the pretrial order or we submitted a letter that day or the

5   day after to the Court saying this is an issue that we want

6   to raise.

7            We contemplated calling the Court for a

8   telephone conference, but given the proximity between then

9   and the pretrial conference, our letter said we are happy

10  to address this at the pretrial conference or if the Court

11  wants to address this earlier, we are happy to do that as

12  well.

13           THE COURT:  All right.  Well, let me hear from

14  Masimo, please.

15           MR. ROSENTHAL:  And that letter, by the way, was

16  D.I. 954 was our letter, submitted on the 2nd of February.

17           THE COURT:  Do you have more, Mr. Rosenthal?

18           I'm sorry, Mr. Re.

19           MR. ROSENTHAL:  I'm sorry.  I just wanted to

20  make clear that we did identify this issue on page 23 of the

21  Pretrial Order.

22           THE COURT:  Hold on one second, Mr. Re.

23           (Pause.)

24           THE COURT:  All right.  Mr. Rosenthal, my

25  reading and now re-reading of the February 2nd letter and

1   page 23 is that we're talking about the documents that have

2   been submitted for in camera review.  I don't read that to

3   tell me that there is anything else that you feel you

4   haven't gotten.

5                MR. ROSENTHAL:  Sorry, Your Honor.  The two

6   things that are identified in the February 2nd letter, it

7   says there are remaining disputes.  The disputes concern in

8   camera submission of Document Nos. 1374-1379.  That has now

9   been resolved.  And whether Masimo must further supplement

10  its privilege log.  That is the second issue.

11               And there is an e-mail correspondence between

12  the two parties identifying those issues.  We didn't send

13  all that correspondence to the Court, but those are two

14  issues.

15               These are also in the Pretrial Order on page 23.

16  It says there is two issues.  It says Masimo has completed

17  discovery on January 30, 2015.  Philips asked Masimo to

18  supplement its privilege log to identify additional documents

19  related to Philips' inequitable conduct allegations.  That

20  is the issue that is yet to be addressed.

21               Philips also requested that Masimo submit

22  additional documents for in camera review.  That has been

23  resolved.  It's the first issue in the Pretrial Order there

24  that has not.

25               THE COURT:  All right.  Thank you.

1          MR. ROSENTHAL:  Thank you, Your Honor.

2          THE COURT:  Mr. Re, now we will hear from you.

3          MR. RE:  Let's address the timing question

4    first, Your Honor.  That seems to be your primary concern.

5    And that is a concern of mine because I was surprised by all

6    of this when I saw Mr. Horwitz's letter of February -- last

7    week, the letter that Mr. Rosenthal referred to.

8          First of all, the reason why, the easiest way

9    to show you that this is a newly trumped up issue is we

10   received the final copy of the Pretrial Order on January

11   29th from Philips.  And on January 29th, Philips sent us a

12   redline and they highlighted or redlined a sentence that

13   they wanted to highlight as changed on page 23 of the

14   Pretrial Order which they gave us at 1:38 p.m.  It says:

15   Discovery.  Both parties have completed discovery, period.

16         That was January 29th.  That is what Mr. Rosenthal

17   failed to tell you.  And so I was at the AILPA meeting in

18   Florida and thought discovery had closed, so as of January

19   29th this issue was gone.

20         It was on January 30th that Mr. Rosenthal then

21   raised the issue in an e-mail to me that he had problems

22   with our compliance with your order, but his e-mail to me

23   did not at all reflect your order.  So the issue was whether

24   or not we complied with your order.

25         We complied with your order on the date you

1    specified.  That was January 20th.  And on January 20th, we

2    complied, gave the revised log in accordance with what you

3    said.

4         We did not hear from them at all about this

5    issue until January 30th.  But on January 29th, they told

6    us discovery had closed.

7         So my big problem I have here is I don't know

8    what they seek to accomplish with regard to discovery on a

9    Monday before Wednesday of trial when on January 29th they

10   said discovery had closed.

11        But then when I look at what Mr. Rosenthal wrote

12   to me about, he did not really remain faithful to your order

13   at all.  We complied with your order to the letter.  Let's

14   take a look exactly what you asked us to do.

15        The order is Docket NO. 947.  You said that we

16   might have looked at the issue too narrowly.  And you wrote:

17   "Philips is entitled to discovery on the recent history of

18   the '984 reexamination as it relates to its inequitable

19   conduct allegations which have always relied upon not only

20   on the alleged nondisclosure of the Court's March 31, 2014

21   order regarding claim construction" -- which is what we

22   thought was the primary issue, but you added "but also" --

23   this is the key phrase -- "but also on an alleged failure by

24   Masimo to correct the PTO" -- key phrase, correct the PTO.

25   That is who the correction was occurring.  These allegations

1    have always been we should have corrected the PTO, and that

2    was also a temporal clause -- "after the NIRC issued and

3    made clear that the Examiner mistakenly believed she was

4    adopting the Court's claim construction."

5              So, to us, it was very, very clear where this

6    is boiling down to.  Because obviously we have the motion to

7    leave in the back of our minds, and in the motion to leave

8    the whole argument was that this just came up because of a

9    NIRC.  And that is why the motion for leave couldn't have

10   been brought earlier.

11             And Mr. Rosenthal explained that because of a

12   NIRC, Philips couldn't give the information to the Examiner

13   themselves because of the NIRC.

14             So I think it's very, very clear from your

15   order where the nub or the rub is, and that is it's very,

16   very clear that we fully complied with the order.

17             Now, when Mr. Rosenthal wrote to me on January

18   30th and raised the issue for the first time, he didn't

19   raise it on the 21st, 22nd, 23rd, 24th, 25th, and on the

20   29th he said discovery was closed.  He now wrote me an

21   e-mail which in no way reflected your order.

22             It is clear to us starting on January 30th

23   that now Philips is retreading old ground and is trying to

24   advance some inequitable conduct theories that are really

25   not before the Court.

1          So I could spend the next 15 minutes showing you

2     that these allegations are shifting.  I'm more than happy to

3     get into that.  That is in the pretrial conference order

4     where we raised the fact that we continue to object to the

5     extent that they are raising inequitable conduct theories

6     not properly advanced in this case, not properly pled under

7     9(b).  I can show you that.  But if the Court is satisfied

8     on the timing issue, I'll forego that, but I could show you,

9     and I do have a little handout to show how the inequitable

10    conduct theory is shifting.

11         We always understood that the inequitable

12    conduct theory, the actual theory was our failure to correct

13    the PTO.  That was the theory they advanced.  Now it seems

14    to be shifting, and Mr. Rosenthal's e-mail to me of January

15    30th now just talks about we should have corrected our own

16    misstatements, and that is what is in the Pretrial Order,

17    which is incorrect.

18         There has never been an allegation that Masimo

19    made misstatements at the time any statements were made.  I

20    want that to be very clear.  There is no allegation that we

21    made a misstatement.  That crept into your Pretrial Order

22    for the first time, and that is why we objected.  And those

23    are paragraphs 4 and 6 of Exhibit 2 that they attached to

24    the Pretrial Order.  Those need a lot of clarification, and

25    I don't know if the Court wants to get into that now.

1          But as far as this issue, and I'll stop if we're

2    done on the discovery issue, but I do want an opportunity to

3    address those objections in the Pretrial Order with regard

4    to the scope of the inequitable conduct case.

5          THE COURT:  All right.  We will come to that.

6          Mr. Rosenthal, probably we're going to come to

7    that pretty quickly, but before we move on to that, there

8    was some reference in your earlier argument I think to two

9    documents or two categories of documents.

10         If I were to order whatever it is you are asking

11   me to order before Wednesday, is there something concrete

12   that I would be ordering them to produce to you?

13         MR. ROSENTHAL:  Yes, Your Honor.  There is a

14   description that is general, and then I can give you some

15   specific examples of what that would include.

16         The general description is the same description

17   we've been asking for since December, which is those documents

18   in Knobbe's possession that relates to the allegations set

19   forth in our inequitable conduct allegations.

20         Specifically, that would include -- and this is

21   in our letter to the Court that was teed up, this discovery

22   issue, back in January -- that would include notes, e-mails,

23   drafts, and other documents that reflect their decision

24   about how to tell the Patent Office or not tell the Patent

25   Office that the claim construction they had advanced had

1     been rejected.  There is nothing that they produced in that

2     regard so that is specifically what we would include.

3              So the timing of those documents, there ought

4     to be a bunch of documents surrounding the time that the R&R

5     came out and the time that they submitted it to the Patent

6     Office.  There ought to be a whole bunch of documents around

7     that time frame.

8              And there shouldn't be -- when I say a whole

9     bunch, I'm not thinking about hundreds.  There should be a

10    handful of documents where the lawyers discussed what are

11    we going to do to tell the Patent Office that our claim

12    construction has just been rejected?

13             The idea that Mr. Re just conveyed that this

14    is a new issue is absolutely incorrect.  This is in e-mails

15    from December.  It's in the January motion.  We made a

16    motion to the Court.  We have a four page letter.  In that

17    motion, we asked for these documents.

18             This is something that was always an issue.  On

19    January 30 -- Mr. Re just said I didn't reference the order.

20    I am reading:  "We have reviewed the privilege log you

21    provided January 20th pursuant to the Court's January 12th,

22    2015 order."

23             And then I say, "First the privilege log

24    includes six new documents."  And then I say, "Additionally,

25    it appears you have very narrowly read the Court Order and

1    excluded from production or log identification any documents

2    that relate to aspects of our inequitable conduct case other

3    than failure to submit the Court Order or failure to correct

4    the Examiner after the NIRC."

5             So we have been following up on this issue

6    diligently with both the party -- with Masimo and the Court

7    since December.  And at the end of the day, we remain in

8    precisely the same boat we were in in December, which is

9    we have accused Masimo of inequitable conduct for failure

10   to correct the claim construction that it urged on the

11   Patent Office since we added this claim.  We've been seeking

12   documents pertaining to their state of mind and they have

13   refused to give us and the Court the documents that show

14   what they were thinking.  And that remains the case.

15            We've been pursuing this from the beginning.  To

16   say that this is something that we have recently have come

17   up with is absolutely incorrect and belied by the record

18   that you have seen.

19            THE COURT:  So, let's broaden it out.  There may

20   not be more to add, but in terms of the allegations that you

21   seek to put on at this trial, they don't -- if we had to say

22   what date did those allegations begin, you think that they

23   have in mind a date that is much later than what you think

24   you have pled with particularity.

25            MR. ROSENTHAL:  If they are interpreting our

1    allegations to be restricted to conduct that occurred after

2    the April 10th NIRC, they are absolutely incorrect.  Our

3    allegations from the complaint through your order granting

4    our leave to amend, through our statement of equitable

5    issues that they had for the better part of a month with

6    respect to what we put in the Pretrial Order consistently

7    has talked about their failure to tell the Patent Office

8    that the claim construction they urged had been rejected by

9    the Court a week later.  That allegation involves conduct

10   that begins the day that the claim construction was rejected.

11           Mr. Re is absolutely correct --

12           THE COURT:  The R&R.

13           MR. ROSENTHAL:  I'm sorry.  The R&R was issued,

14   correct.  That date is the date on which they knew that what

15   they had urged to the Court -- to the Patent Office had been

16   rejected.

17           Mr. Re is absolutely correct, we are not

18   alleging, nor have we ever alleged, that at the time they

19   made the statement to the Patent Office, when they told the

20   Patent Office these claims cannot be construed any other

21   way, this is the only way they can be construed, at that

22   time we're not alleging that that, at that time, was a

23   misrepresentation.  What we're alleging is that a week

24   later, when that was rejected, that claim construction was

25   rejected by the Court that they knew from that time and

1    every day thereafter that the Patent Office was laboring

2    under the impression that there was no other way to construe

3    the claims, and, in fact, there was.  The Court had rejected

4    that claim construction.  And at all points from that point

5    thereafter, they did not correct that error.

6              Now, this is evident from our original -- from

7    our answer when we talk about, at paragraph 424, that Masimo

8    failed to note that the summary judgment R&R had rejected

9    the interpretation of the claims they urged the Patent

10   Examiner adopt during the interview.  That is in paragraph

11   424 of our complaint.

12             THE COURT:  424?

13             MR. ROSENTHAL:  424.

14             THE COURT:  Of the complaint on inequitable

15   conduct?

16             MR. ROSENTHAL:  Of our amended and counterclaim

17   on inequitable conduct, exactly.  And that is D.I. 884.

18             Masimo failed to note that the summary judgment

19   R&R had rejected the interpretation of the claims they

20   urged the Patent Office Examiner to adopt.  That is not the

21   only example in our complaint, there are others, but that

22   allegation is repeated.

23             In your order allowing us to amend our

24   counterclaim, you understood this.  In D.I. 854, at 3, your

25   order wrote:  "In its amended answer, Philips alleges

1    specific Masimo representatives" -- and you list those

2    representatives -- "each failed on several occasions to

3    inform the PTO that the interpretation of the asserted

4    claims of the '984 Masimo urged the PTO to adopt had been

5    rejected by this Court."  And you cited at D.I. 854, at 5,

6    the fact that Masimo had told the PTO that the claims cannot

7    be construed in any other way, nor in a different way.

8              So the idea that somehow we had not made this

9    allegation is contradicted by our complaint, by the order

10   allowing us to amend our complaint.  And, by the way, Masimo

11   took no discovery.  They proudly said no discovery is

12   necessary.  They didn't take any discovery.  They didn't ask

13   for any -- they didn't submit an interrogatory asking for

14   our contentions.

15             We took it upon ourselves to make it very

16   clear what our allegations were going to be, to submit to

17   the Court as part of the Pretrial Order process, and we

18   submitted a draft long before that to Masimo, a statement of

19   equitable issues.  And in our statement of equitable issues,

20   we repeat again that Masimo made misrepresentations to the

21   PTO, that they argued in its submissions to the PTO that the

22   "capable of" language required each calculator to determine

23   a ratio.  And Masimo never withdrew its representations

24   regarding the "capable of" claim language, never corrected

25   the misrepresentations in the response to the Office Action.

1          So in the complaint, your order allowing the

2     complaint, and the statement of equitable issues, we have

3     consistently maintained the same theory of inequitable

4     conduct.  It was very simple.  They told the Patent Office

5     the claims could be construed only one way, could not be

6     construed any other way.

7          A week later, this Court rejected.  In the Report

8     and Recommendation, Judge Thynge rejected that interpretation.

9     From that day forward, Masimo failed to correct itself, failed

10    to correct the Patent Office, failed to tell the Patent Office

11    that what it had urged was not true and had been rejected.

12         And so Masimo has been hiding the documents that

13    it has that pertain to why it didn't say those things to the

14    Patent Office, why it didn't correct itself, why it chose to

15    simply submit the R&R with no explanation and no statement

16    that it had made an error.  And it hasn't produced any of

17    those documents, and we have been seeking them now for two

18    months.

19         THE COURT:  All right.  Let's hear from Masimo.

20         MR. RE:  Let me just wrap up the discovery, and

21    then I'm going to pass to Ms. Weil to the extent we're

22    getting into the allegations of Rule 9(b).  I just wanted

23    to wrap up on the discovery.

24         Mr. Rosenthal is correct, we had extensive

25    communications back in early December concerning any

1    obligation we had to produce documents in the reexamination

2    file.

3              First of all, we produced the reexamination file.

4    And after we produced the Knobbe Martens reexamination file

5    which is not limited by date; let me make that clear, too; we

6    gave the entire Knobbe reexamination file as we seen it in the

7    ordinary course as I understand it.

8              But to the extent there was any ambiguity about

9    that, we had some motion practice in front of the Court over

10   the use of experts.  We claimed foul on experts.  That is

11   another sore subject.  And in order to show the minimal

12   prejudice to Masimo, Philips represented to the Court that

13   there is, in footnote 3 of Docket No. 934, dated December

14   12th, 2014, they wrote:

15             "To help alleviate any prejudice claimed by

16   Masimo, Philips dropped its pursuit of third-party deposition

17   of the Examiner and agreed to Masimo's narrow reading of the

18   Court Order regarding document production."

19             As far as I was concerned, this whole

20   reexamination file issue ended on December 12th.  I wasn't

21   able to speak -- I think Mr. Gurka handled that argument.

22   It was at 6:00 o'clock in the morning, 9:00 your time, and

23   we had a hearing on early January.  I think it was January

24   9th.

25             One thing that was not conveyed in that call was

1    this whole issue about the reexamination file, reexamination

2    history.  I remember you and Mr. Gurka having a discussion

3    over the file history.  That this issue had closed as far

4    as we were concerned December 12th.  It was resuscitated in

5    that hearing on January 9th.  Now it appears to be getting

6    resuscitated again.  This issue has been closed several

7    times, that we have no obligation to produce.

8              Now, let the record reflect I don't know what

9    documents he is referring to.  We don't have any knowledge

10   of withholding documents that he is referring to.

11             THE COURT:  Do you know, as you stand here,

12   whether there were e-mails and similar documentation of

13   communications among Knobbe attorneys, perhaps with and

14   without your client, in and around the time of Judge

15   Thynge's R&R and going forward about are we going to

16   submit the R&R?  Are we going to say something about the

17   claim construction?

18             MR. RE:  The only e-mail I'm aware of about

19   submitting the R&R we gave to you, I think it's one of the

20   exhibits in the case, and the patent prosecutors discussed

21   it after Mr. Rosenthal wrote his letter in April of 2014.

22   But I am aware of there was never any decision to withhold

23   anything from the Patent Office.  Let's get that clear, too.

24             So since there was no decision whether to

25   withhold or produce, because you will see the testimony and

1    you can ask the witnesses themselves, Mr. Grover, Mr.

2    Kesler, there was never any decision whatsoever about what

3    to disclose or not to disclose.  It was always automatic

4    disclosure, and you will hear about that.  So I am aware of

5    no document.

6            Now, granted, we haven't done the kind of search

7    we did for the recent, according to the Court's Order, the

8    kind of post-March 31.  That was a much more thorough search.

9    But the initial cut -- and Mr. Larson is here who actually

10   took care of the document issue.  He can explain in detail

11   what he did.

12           But as I understood it, the automated computer

13   search did reveal some other documents, and I am aware of no

14   document that could fit in the very narrow category that he

15   is referring to.  He makes it sound like a broad category,

16   but I am aware of no documents that would fit in whether

17   or not to correct the Patent Office or whether or not to

18   disclose the R&R, whether or not what to say about the R&R.

19   You will hear testimony on that.  But I know of no document

20   that would even fit in that category.

21           THE COURT:  All right.  Well, let me hear your

22   response on the breadth of the allegations of this trial on

23   Wednesday.

24           MS. WEIL:  And I have a couple of issues to talk

25   about on the breadth, but I will start on the issue that

1   Mr. Rosenthal and Mr. Re were already addressing.

2           I do have a few PowerPoints, if I could hand up

3   those to kind of illustrate this.

4           THE COURT:  Okay.

5           (Documents passed forward.)

6           MS. WEIL:  This goes to the issue that was

7   teed up, whether there has been properly pled an allegation

8   that we made misrepresentations and that we have a duty to

9   correct statements, misstatements that we made to the Patent

10  Office.  And,

11          Our position is that that is new.  We understand

12  that Philips has always claimed that Masimo should have

13  said more about the R&R, but that argument now seems to have

14  expanded to that we should have corrected statements that we

15  made.

16          Now, in Mr. Rosenthal's presentation a few

17  moments ago, he said that they're not claiming, they never

18  claimed that we made misstatements when made.  That's good,

19  I'm glad to hear that.  But then he used the word

20  "misstatements" again so now I'm a little bit confused.

21          So if you look at the PowerPoint, what I want to

22  show here is what they seem to be saying now versus what

23  they pled on this issue.

24          On the first page, we have some excerpts from

25  Exhibit 2 of the Pretrial Conference Order.  This is

1    Philips' statement of contested facts.  And you see here in

2    paragraph 4, they talk about whether Masimo's attorneys

3    corrected representations in the response to the Office

4    Action.  So this is talking about correcting representations

5    that Masimo's attorneys made.

6              Similarly, in paragraph 6, which pretty much

7    mirrors paragraph 4, they're again talking about not

8    correcting representations in the response to the Office

9    Action.

10             If you go to the next page.

11             This is excerpts from Exhibit 4 to the Pretrial

12   Conference Order.  This is Philips' statements of issues of

13   equity.

14             Here, and we believe that these are the first

15   time they ever made these allegations, they say that "the

16   attorneys never withdrew their representations ..."

17             "the attorneys never corrected the," and here

18   they say, "misrepresentations."

19             So I just want to make -- and just to complete

20   that, then at the bottom, the quote is:  "Despite this

21   knowledge, Masimo's attorneys never corrected their

22   misrepresentations."

23             If a statement or an argument, when made, was not

24   false, it's not a misrepresentation.  This characterization of

25   misrepresentation is new, reiterated by Mr. Rosenthal right

1    after he said we're not talking about any misrepresentations.

2              Now, let's compare that to what has been pled.

3              And if you go to page three of the handout, this

4    is from Philips' counterclaim, and what we understood that

5    Philips has always been claiming was not that we violated

6    some duty to correct statements or arguments that we made to

7    the Patent Office but to correct the PTO.

8              Their allegations as we have understood it have

9    always been that when the NIRC issued, the PTO made errors

10   and that we should have corrected the PTO.  And that's borne

11   out in what was in Philips' pleadings and in their

12   interrogatory response.

13             So on page 3, we have an excerpt from Philips'

14   counterclaim.  This is D.I. 884 at page 78.  And this is

15   the heading of a section, and this is exemplary.  This kind

16   of language appears throughout the counterclaims.  It talks

17   about the lawyers and Mr. Kiani's failure to correct the

18   PTO.  No referenced failure to correct any statements or

19   arguments we made at the Patent Office.

20             Similarly on the next slide, page 4, we have

21   excerpts from Philips' interrogatory response.  And it's at

22   pages 30, 43, and 47 of the interrogatory responses.  Again,

23   we have three quotes here.  And what we have highlighted is

24   their language.  Their allegation was that we failed to

25   "correct the PTO."

1          So this argument that we should have corrected

2    what we did, suggesting that we should have withdrawn our

3    arguments or we should have done a mea culpa to the Patent

4    Office.  You know, Patent Office we were wrong.  We retract

5    what we said.

6          They also contend in Exhibit 4 to the pretrial

7    conference that we should have withdrawn Dr. Baura's

8    declaration.  All of those things that we should have done

9    something to say we screwed up, we made misstatements, that

10   is all new and never before pled.

11         THE COURT:  What about the materials that

12   Mr. Rosenthal referred to?  He said paragraph 424 of the

13   amended counterclaim.

14         MS. WEIL:  Okay.  Those all go to informing the

15   PTO that the claim construction was rejected in the R&R.

16   That is different than correcting statements.  We understand

17   that their position has always been that we should have said

18   more about the substance of the R&R.

19         That is fair game.  That is their allegation.  But

20   that is different than what we're now seeing in the exhibits

21   to the Pretrial Order is that we should have gone beyond just

22   giving more information and said we were wrong.  We withdraw

23   our argument.  We withdraw Dr. Baura's declaration.  We take

24   back what we said.  That idea of correcting what we said is

25   new.

1          THE COURT:  Well, as I understand it, you said a

2    couple things.  One thing was this is what the proper claim

3    construction is, and the other is a suggestion that this is

4    the only way these claims can be construed.  Is it fair to

5    say that you represented both of those things to the PTO as

6    part of the reexamination?

7          MS. WEIL:  We said, I believe there was some

8    statement that this is the only way the claims could be

9    construed.  And what was the first thing you said?

10          THE COURT:  Well, here is how they should be

11    construed would be point one.

12          MS. WEIL:  Sure.

13          THE COURT:  You must have said that.

14          MS. WEIL:  Sure.  During the reexam, we made the

15    same claim construction arguments to the PTO that we made to

16    this Court.

17          THE COURT:  So the allegation I think is, it

18    turned out that it was possible to interpret the claims in

19    a different way and, therefore, to the extent you made

20    something along the lines of a prediction that no one could

21    ever possibly interpret this differently, that turned out

22    to be incorrect.  That is part of the allegation, isn't it?

23    You have understood that.

24          MS. WEIL:  That is part of the allegation, but

25    what is new is them saying in the past, which we understood,

1    that we committed inequitable conduct by not saying the R&R

2    rejected these claim constructions, here is what the R&R

3    said, here is the content of the R&R.  That we understand is

4    fair game.  But what they seem to be saying now is we should

5    have gone one step further and said to the Patent Office we

6    were wrong when we said this.  We were wrong when we said

7    that.  We withdraw that.  We take it back.  That is the

8    stuff that we think is new, was never pled.

9                   THE COURT:  Okay.  I think I understand.

10                  MS. WEIL:  So that is one example.  I have got

11   a couple of other issues that we are questioning whether

12   they're allegations and I think may be beyond the scope of

13   what they claimed.  I can address those now or do you want

14   to hear from Mr. Rosenthal on this issue?

15                  THE COURT:  Let me hear from him on this issue

16   first.

17                  MS. WEIL:  Okay.

18                  THE COURT:  Thank you.

19                  MR. ROSENTHAL:  Your Honor, I would love to show

20   you in our complaint and in the order granting our complaint,

21   allowing us to amend our complaint, exactly where we made

22   these allegations.

23                  I just heard Ms. Weil say we understood that it

24   was part of the allegations that we were supposed to have

25   told the Patent Office that the claim construction that we

1    urged had been rejected.  I think I just heard that, which

2    I think resolves this issue.  That is in fact what we have

3    alleged from the beginning of this.  It is in fact what we

4    are alleging today.

5              I'm not sure was what the difference is between

6    that and saying that you owed a duty to the Patent Office to

7    correct your statement to the Patent Office, but we had been

8    alleging that as well.  I'm going to show examples of that.

9              THE COURT:  Are you saying that they had a duty

10   to abandon their claim construction and say we've been wrong

11   all along in the claim construction we are proposing?

12             MR. ROSENTHAL:  They had a duty to correct the

13   statement that they made to the Patent Office when they said

14   that these claims cannot be construed in any way other than

15   the one that we are advanced today.

16             THE COURT:  And the evidence is going to show, as

17   I understand it, that they provided that alternative claim

18   construction to the Court in the form of Judge Thynge's

19   Report; correct?

20             MR. ROSENTHAL:  To the Patent Office.

21             THE COURT:  That's what I meant.

22             MR. ROSENTHAL:  They did in fact provide the R&R.

23   They did not explain to the Patent Office that the R&R had

24   rejected the claim construction that they proposed, that they

25   said no other claim construction would be possible.  Nor did

1    they submit in any way, shape or form your order that actually

2    construed the claims.

3              THE COURT:  Right.  But you are not saying

4    that they had an obligation to say now, having seen Judge

5    Thynge's claim construction, we need to tell you, Examiner,

6    we were wrong when we said here is how the term should be

7    construed.

8              MR. ROSENTHAL:  No, that is part of our

9    allegation as well.

10             THE COURT:  Where is that?

11             MR. ROSENTHAL:  So let me -- I don't know if

12   the Elmo is going to work here.  If you have the complaint.

13             MR. ANDREA:  Here is a copy.

14             MR. ROSENTHAL:  If you don't have a copy, I can

15   hand it up.

16             THE COURT:  That would be helpful.  I don't.

17             MS. WEIL:  Counterclaim you mean.

18             MR. ROSENTHAL:  Counterclaim.  I'm sorry.  I

19   keep saying complaint.  Counterclaim.

20             May I hand this up?

21             THE COURT:  Yes, you may.

22             (Document passed forward.)

23             MR. ROSENTHAL:  That is not only our

24   counterclaims, that is a lot of other documents.

25             THE COURT:  Sure.  I'm looking at your

1    counterclaim.

2              MR. ROSENTHAL:  All right.  I want to start,

3    actually I mentioned 424.  Let's start at 413.  As I

4    mentioned, it appears many times in our counterclaims.

5              Starting at 413, this is of our counterclaims.

6    I'm going to start about halfway through the paragraph.

7    Specifically, what is being referred to here is the April

8    29, 2013 IDS.  This is the IDS where they included the Judge

9    Thynge claim construction.

10             Remember, the question here is did we allege --

11   not have we proven, that is for later this week -- have we

12   properly alleged that they failed to correct this.

13             The April 29, 2013 IDS failed to point out

14   to  the PTO that the summary judgment R&R had explicitly

15   rejected the claim interpretation that the lawyers argued

16   during the interview with the Examiner and that Mr. Kesler

17   had argued in the expense, nor did the IDS point out to

18   the PTO that the R&R had, on the basis of the rejection of

19   Masimo's claim interpretation, explicitly rejected the only

20   purported distinctions between the asserted claims and the

21   prior art, and it goes on.

22             So, here, we have explicitly said and alleged

23   that not after the NIRC, not after the Patent Office did

24   something, but at the time of the IDS that they failed to

25   point out that the IDS had rejected the claim construction

1    that they had previously advanced.

2              On 424, which I referred to earlier -- and I

3    want to actually go back to 423 because it puts 424 into

4    context.  It actually goes all the way back to 422, but I'm

5    going to start at 423.

6              In 423, we are setting forth what Masimo told

7    the Patent Office, and specifically we said:  "Masimo does

8    not dispute that the PTO was obligated to use this Court's

9    interpretation as Mr. Grover, Jensen, and Kesler and Kiani

10   pointed out.  The claims must be construed in the same way a

11   District Court construed the claims."  This was clearly

12   understood by the Patent Examiner.

13             So what is being set forth there is what was

14   told to the Patent Office during the interview.  That is the

15   time period.

16             And then 424 picks up:  "Upon information and

17   belief, Grover, Jensen, Kesler, and Kiani failed to note that

18   the summary judgment R&R had rejected the interpretation of

19   the claims they urged the Patent Examiner to adopt during both

20   the interview and in the response."  And then it goes on to

21   talk about the other complaints.

22             So there is no question, I don't disagree with

23   Ms. Weil that there are allegations in our counterclaim that

24   refer to a failure to correct the PTO's error.  But these two

25   examples in 424 and 413 clearly set forth our allegation that

1    we believe that they failed to correct their own

2    representations about how the claims should be construed.

3    They failed to say that their interpretations that had been

4    advanced had been rejected.

5              Very importantly, this was so clear from our

6    counterclaims that when the Court granted our motion to

7    amend, and I referred to this earlier but now I will read

8    it:  On several occasions, an order that you granted on D.I.

9    854, you referred to these allegations.  In paragraph 6 on

10   page 3, you say:  "In its amended answer, Philips alleges

11   that specific Masimo representatives" -- you name them --

12   "each failed on several occasions to inform the PTO that the

13   interpretation of the claims of the '984 that Masimo urged

14   the PTO to adopt had been rejected by this Court, including

15   when Magistrate Judge Thynge issued her Report and

16   Recommendation regarding summary judgment."

17             It was clear to you, in granting the motion,

18   that one of our allegations was at that time, when the R&R

19   came out, there was a failure to inform the PTO.

20             You also mentioned, as we did in our complaint,

21   that there was a further failure when the PTO issued its

22   NIRC.  When the order came out, when we wrote our letter,

23   those are additional times at which they failed in their

24   duty, but front and center in all of these allegations has

25   been that they failed when the Report and Recommendation

1    came out.

2              And then further, in paragraph 10 of your order

3    on page 5, you specifically referred to what we alluded to

4    in our complaint, which is, "In March of 2013, Masimo

5    responded to an Office Action advocating before the PTO the

6    same claim construction it was pressing on Magistrate Judge

7    Thynge, that both calculators must actually determine a

8    ratio."  And then you quote and bolded the language that

9    Masimo put in their response to the Office Action that the

10   claim language cannot be construed as allowing only one

11   calculator to make a determination, et cetera.

12             And then you, correctly in our view, summarized

13   our allegations on paragraph 13 where you say Masimo did

14   not explain how Judge Thynge's construction or explanation

15   related to claim construction positions Masimo had advocated

16   before Judge Thynge and was continuing to advocate before

17   the PTO.

18             This has been part of our allegation from the

19   beginning.  You recognized it in the motion to amend the

20   order.

21             And if there was any doubt, which we don't think

22   that there is from what I read, but if there was any doubt,

23   despite not having served any discovery, we supplemented

24   interrogatory responses to put in the allegations from our

25   complaint or from our counterclaims and we submitted long

1   ago to the other side our statement of equitable issues

2   to be tried which included explicitly the statements that

3   Ms. Weil had on her presentation which talks about the

4   misrepresentations that were made and the failure to

5   correct those, which is exactly what the complaint -- the

6   counterclaim refers to, and until today, literally until

7   today when I saw the argument that was raised, I had no idea

8   that Masimo is complaining or contending that this is a new

9   allegation.

10          In the Pretrial Order, what Masimo wrote was, we

11   don't want Philips to go outside of its inequitable conduct

12   allegations, for example, by arguing that Masimo was under

13   an obligation to submit Philips' letter to the PTO.

14          We're not arguing that.  We have never argued

15   that.  We're not going to argue that.  That is the only

16   thing they identified in the Pretrial Order as a dispute.

17          Today, for the very first time, we heard this

18   allegation that they're somehow surprised by the allegation

19   that we are making that they failed to correct their state-

20   ments to the Patent Office about the proper claim construction.

21          We're surprised that this is the argument that

22   they're making.  There is no basis for it in the record.

23          THE COURT:  All right.  Ms. Weil, on that but

24   not on other things, you can respond to that if you wish.

25          MS. WEIL:  I think that what Mr. Rosenthal

1    pointed you to exactly proves the point that I was trying

2    to make earlier.  And if we look at the paragraphs in the

3    counterclaims that he points to, he points to 413 and 424,

4    and what both of these paragraphs talk about is an

5    allegation that we failed to point out or failed to inform.

6            We don't have any dispute that we understand

7    that that is what they're claiming.  We understand a failure

8    to inform, a failure to point out as they pled is we should

9    have said more -- this was their allegation -- about what

10   the content, the substance of the R&R was.  We fully

11   understand that they have pled that.  That is not at all

12   what I was talking about.

13           And, similarly, in your order, just before I

14   move on, in paragraphs 6 and 13, again, the language that

15   you use is "inform, explain."

16           Again, we fully understand that that is their

17   allegation.  What is new, again, just to try to emphasize

18   the distinction here, is that we made a misrepresentation

19   and that we had to do more than just inform or point out.

20   We had to withdraw, admit that there was a misstatement.

21           That is the thing that is new.  That is the

22   thing that was never pled.  And while Mr. Rosenthal earlier

23   said we never alleged that there were misstatements, just

24   now he said again that there were misstatements.  So I do

25   want clarity on whether there is an allegation that we made

1    misstatements.  I don't think that that has ever been pled.

2    I think the first time that that came up is in the Pretrial

3    Order.

4              The other issue that had came up for the first

5    time in the Pretrial Order is this alleged duty that we had

6    to tell the Patent Office that statements that we made were

7    wrong, withdraw those statements, withdraw Dr. Baura's

8    declaration, correct statements that we made.  That is the

9    thing that is new.

10             THE COURT:  All right.  Thank you.

11             Well, let me say a few things, and I will

12   touch on the discovery as well as what the scope of the

13   allegations at the trial are going to be.

14             Listening carefully to the recitation by

15   Mr. Rosenthal, I remain unconvinced that you have ever

16   clearly alleged, and I'm not even sure you are alleging

17   today, but if you are, I haven't seen it before, at least

18   I'm not persuaded I have seen it before, that the plaintiff

19   had an obligation to withdraw the claim construction it

20   was relying on as part of the reexamination at some time

21   beginning or after Judge Thynge issued her R&R or that they

22   had to explain at minimum that, oh, by the way, our claim

23   construction was wrong.  Our expert was wrong.  I have not

24   understood that to be part of the allegation.  I don't think

25   it's in the allegations that have been read to me today.

1          So it follows from that that I'm not persuaded

2     that discovery, to the extent the plaintiff has withheld

3     discovery, and again I'm not sure that they have, that would

4     somehow show their thinking as to whether or not they had

5     an obligation to tell the PTO our claim construction we now

6     realize is wrong.  We now realize our expert is wrong.  To

7     the extent that is the allegation and that is the discovery

8     being sought, I don't see that as part of the case.

9          Now, that said, it's a bench trial.  You all are

10    parsing things incredibly finely in your argument today.

11    It's hard for me to keep track of exactly what you are all

12    arguing and what you are not arguing.

13         If anybody thinks something is being alleged on

14    Wednesday, Thursday, Friday that shouldn't be part of the

15    case, you will make your objections, but the overwhelming

16    likelihood with the witnesses here, I am going to let you

17    all, in your series of five opportunities, to question each

18    witness, ask them what you want to ask them.  And if it

19    turns out that some of it is beyond the scope of what very

20    narrowly was alleged or not alleged, we'll together figure

21    out a way to deal with that.

22         Further, I'm not ordering any more discovery at

23    this point, it being Monday with a Wednesday trial.  On

24    that, going back to where we started on all this, to the

25    extent Philips is here today asking me to order Masimo to do

1    something further to comply with my January 20th order,

2    I'm denying that request.

3            I don't think that Masimo's interpretation of my

4    January 20th order is unreasonable in light of the timing that

5    has been recited today and that you all lived, including the

6    fact that we had a discovery call in the midst of all of this,

7    including I've been reminded of that footnote in D.I. 934

8    which I think to Masimo reasonably suggested that the scope

9    of what documents need to be produced was a dead issue.  And

10   in light of my reading, which I don't think was unreasonable,

11   of the letter from I think it was Mr. Moore and the Pretrial

12   Order which led me to think maybe I was wrong but I don't

13   think I was unreasonably wrong, that the only document issue,

14   the only privilege log issue was these last six documents

15   that have now been submitted for in camera review which I

16   understand I now need to review and let you know whether or

17   not they need to be produced in unredacted fashion.

18           I don't believe I have anything further to do on

19   the first set of documents that were submitted for in camera

20   review.  We reviewed them and that was by January 24th.  I

21   understand I have these other six documents to look at,

22   which I will, and if any relief is going to be forthcoming,

23   we'll let you know that as soon as we can, but I'm not

24   ordering any further discovery.

25           One more thing I will say, again, it's a bench

1    trial.  With a jury, I wouldn't let you ask questions that

2    clearly are related just to discovery.  Here, I will give

3    you a little bit more leeway.

4            Mr. Rosenthal, if you think that in light of how

5    all this has developed you have some questions to ask any of

6    the four witnesses about were there e-mails, you know, were

7    there communications, were there things that are really

8    going to discovery arguably, I'll hear an objection but it's

9    likely that I'm going to overrule the objection and you will

10   get answers potentially to those questions.  But that is

11   where we are.

12           Mr. Rosenthal.

13           MR. ROSENTHAL:  Your Honor, I just have a point

14   of clarification.

15           THE COURT:  Of course.

16           MR. ROSENTHAL:  I think I understand everything.

17           So in our counterclaim, we said that the IDS

18   "failed to point out to the PTO that the R&R had explicitly

19   rejected the claim interpretation that they had advanced."

20           I presume we will have full leeway to explore

21   that allegation that is set forth in our complaint in the

22   trial; is that right?

23           THE COURT:  Yes.

24           MR. ROSENTHAL:  Thank you, Your Honor.

25           THE COURT:  Okay.  Ms. Weil, I think, first of

1     all, any questions about that; and, second of all, anything

2     further on your list that we need to discuss.

3                 MS. WEIL:  I do, Your Honor.

4                 THE COURT:  Okay.

5                 MS. WEIL:  Thank you, Your Honor.

6                 So my list originally had three things, but I

7     think we just resolved one.  I am very happy to hear Mr.

8     Rosenthal say it is not part of their case that we committed

9     inequitable conduct by not submitting their April 14th

10    letter, so I don't need to talk about that.

11                So the last issue that I wanted to talk about

12    relates to the prior art Corenman, the Corenman patent.

13                What we see now for the first time in Exhibit 4

14    to the Pretrial Order is an allegation that Masimo committed

15    inequitable conduct by allegedly distinguishing Corenman on

16    a basis rejected in the R&R and not informing the Patent

17    Office that that basis was rejected.

18                In the pleadings, Philips only referenced

19    Masimo's arguments regarding Hall and Ukawa.  In fact,

20    Mr. Rosenthal, in discussing the other issue, pointed to

21    paragraph 413 of the counterclaims.  And in the portion on

22    page 69, he read:  "Nor did the IDS point out to the PTO

23    that the R&R had rejected the only purported distinctions

24    between the asserted claims," and he said, "and the prior

25    art."

1          But you can see that the prior art that is

2     referenced there is Hall and Ukawa.  There is no mention of

3     Corenman at all.  So the first time we hear any allegation

4     of inequitable conduct based on our characterization of

5     Corenman appears for the first time in Exhibit 4 to the

6     Pretrial Order.

7          THE COURT:  All right.  Thank you.

8          MR. ROSENTHAL:  Your Honor, again, this is the

9     first time we're hearing again of this issue, which is again

10    inappropriate for us to be dealing with us on the fly given

11    us the extensive process that we have had for pretrial

12    submissions.

13         Never once have we heard that we somehow only

14    recently alleged materiality with respect to the Corenman

15    argument.  In our complaint, we specifically said that their

16    failure to correct the claim construction led the Examiner

17    to improperly distinguish the cited prior art references

18    including, inter alia, among others, Hall and Ukawa.

19         Every single time that we referred to the

20    cited prior art, we always referred to the cited prior art

21    references.  There are five of them.  We didn't list them

22    all.  But we always intended to make the argument and always

23    set forth here the fact that the materiality of the failure

24    to disclose the claim construction bore on the fact that the

25    Examiner improperly distinguished the prior art references.

1            All of the prior art was distinguished on the

2    same grounds.  They were all distinguished on the fact that

3    they failed to disclose parallel alternative algorithms.

4    They were all based on this claim construction.  That is why

5    we said the cited prior art references.

6            THE COURT:  So there are five of them.

7            MR. ROSENTHAL:  Yes.

8            THE COURT:  Do you envision all five of them

9    being part of your evidentiary showing?

10            MR. ROSENTHAL:  No.  I mean I think we can make

11    our case with Hall and Corenman.  So I expect we wouldn't go

12    beyond those two.

13            THE COURT:  So it is just Hall and Corenman that

14    you intend to be part of your evidence?

15            MR. ROSENTHAL:  Correct.

16            THE COURT:  Okay.  Is there anything else in

17    response?

18            MR. ROSENTHAL:  No, Your Honor.

19            THE COURT:  Ms. Weil, any rebuttal?

20            MS. WEIL:  So the problem with this is Corenman

21    was not specifically referenced anywhere.  Maybe it's,

22    you know, they intended, I don't know, to include it in

23    inter alia.

24            THE COURT:  Yes.  Did they say inter alia and

25    references, plural?

1          MS. WEIL:  They said inter alia, but the only

2     ones they ever identified were Hall and Ukawa.  And during

3     the jury trial that we had on validity, the prior art that

4     was discussed, I mean Corenman was not one of the prior art.

5          THE COURT:  Why is this coming up today?  Is it

6     true that you haven't raised this issue or concern with them

7     previously?

8          MS. WEIL:  We have not.

9          THE COURT:  All right.  Well, it's too late.

10    I'm content this is within the scope of their allegation, so

11    the objection is overruled.

12         MS. WEIL:  Okay.  Thank you, Your Honor.

13         THE COURT:  Are there any other issues on

14    anything from Philips?

15         MR. ROSENTHAL:  We are done, Your Honor.

16         THE COURT:  Okay.  And Masimo?

17         MR. RE:  I have one.

18         THE COURT:  Okay.

19         MR. RE:  I'm disappointed in that last ruling

20    for one very simple reason.  Ninety percent of this trial

21    was going to be about laches.

22         THE COURT:  Was going to be.

23         MR. RE:  Ninety-five percent of the exhibits

24    were on laches.  They knew, I believe, for some time they

25    were going to drop laches.  Our focus on this trial was

1    predominantly laches.  It's a much more complicated issue.

2    And you would have seen what I believe was a long pattern of

3    delay by Philips which I think is still continuing.

4            And so I'm disappointed that this little issue

5    on Corenman we were supposed to have raised when we just saw

6    their attachments to the Pretrial Order a week ago.  And so

7    it wasn't until Wednesday that we knew that laches was out

8    of the case, and then we zeroed in on what was remaining.

9            So I want the Court to fully appreciate our

10   position that I find it ironic that they wrote to the Court

11   about when the JMOL hearing should be in order to save them

12   expenses for the War Room.

13           Well, we had already entered our contract.

14   This laches withdrawal has cost us, easy, deep into the six

15   figures, and they pulled out on Wednesday.  That is the

16   first time I heard about that.

17           So for us to get dinged for not raising this

18   little tiny Corenman issue when they waited on laches until

19   Wednesday to withdraw what was the bulk of the case I think

20   is really unfortunate.

21           Now, let me continue with why I wish we could

22   have tried laches.  I really feel the Court doesn't fully

23   appreciate the relationship between the parties without the

24   laches piece.  The laches piece would have shown this delay.

25           And this raises the last issue.  The part of the

1    Pretrial Order that surprised Masimo by far the most is this

2    paragraph which at first looks gratuitous in the front page

3    of the Pretrial Order.  I don't know if the Court noticed.

4    They included a section about antitrust counterclaims and

5    patent misuse.

6              Now, I understood that this trial was supposed

7    to be on the remaining equitable defenses.  And they had

8    the opportunity to present any equitable, truly equitable

9    defenses to the patents that we tried in September.

10             Now they throw in and say, hey, Court, we want

11   you to know we have other equitable defenses to these same

12   patents.

13             One, we disagree.

14             I understand the antitrust was stayed or

15   bifurcated by Judge Thynge, the antitrust claim, the

16   antitrust issues.  But what I don't know is what is this

17   inequitable defense or defense in equity that they think

18   they still have.

19             Now, to us, it's very simple why they put it in

20   there.  Now, we think it's wholly legal.  And if you look

21   at the Pretrial Order on pages 2, 3, and 4, what they're

22   alleging are purely legal claims that violate Sections 1

23   and 2 of the Sherman Act and the Clayton Act.  So those

24   issues are legal and are not part of this case.

25             And the reason why I raise this, because it's

1    very clear to me, the reason why they put that in the

2    Pretrial Order is to take away your ability to enter final

3    judgment.

4                Now, that, to me, is serious.  To me, it's the

5    most serious thing in the Pretrial Order.  It appears to me

6    that that was put in there for that sole purpose.  Why would

7    they be talking about antitrust in the Pretrial Conference

8    Order on a trial on inequitable conduct?

9                And I would like, if they really believed that

10   they have pled, and I don't think they have, I think we

11   should at least have the opportunity to knock it out on a

12   Rule 12 so that you at least have the ability to enter final

13   judgment so we can at least have an appeal from the trial

14   we had in September, and so I raise that for the Court's

15   awareness.

16               I don't know if you saw it.  I don't know if you

17   recognize why they did it.  I wanted the Court to know that

18   I think they did it to take away your ability to enter

19   final judgment.  And if that is really true, and if the

20   Court thinks they actually have a defense in equity under

21   misuse, we would like the opportunity to knock it out so

22   that we could get final judgment on this case eventually.

23               THE COURT:  All right.  Mr. Rosenthal.

24               MR. ROSENTHAL:  So there is two things that Mr.

25   Re addressed.  I want to address both of them.

1          First of all, the implication and flat out

2   statement that we thought we were going to drop laches and

3   we delayed is absolutely categorically false.

4          We had witnesses from Germany in my New York

5   office last week that I was preparing to testify in this

6   case.  The reason, among other things, that we didn't bring

7   the laches case, there were two factors:

8          One is that we had a witness that had a date

9   scheduled for some additional discovery to respond to some

10  of their allegations that cancelled.

11         The second was the Court denied the request for

12  nine hours a side and said the inequitable conduct should

13  take four to six hours.

14         We had a very, very substantial case to put on

15  for laches.  We had a lot of testimony that needed to go in as

16  to the delay that Masimo caused, as to the non-credibility of

17  their defenses regarding their alleged excuses when in fact

18  they were delaying filing suit because they didn't want to

19  disturb the business relationship that they had with us until

20  it was locked in.

21         We had witnesses that were going to testify at

22  length for several hours about the years of prejudice that

23  this delay caused.

24         We had to make a very, very difficult decision

25  as to whether or not, given the time the Court was allowing,

64

1    whether we had enough time to put on that case and do this

2    inequitable conduct case justice.  And we made the very

3    difficult decision not to.  And we had to tell all of the

4    witnesses who were here in town in New York that they had

5    to go home.

6              This was not a decision that we took lightly,

7    and it was certainly not a decision that we had made and

8    somehow not told them about.  That is absolutely incorrect.

9    We wouldn't do that to them, and we certainly didn't want to

10   do that to the Court.  I wanted to dissuade any notion that

11   this was something we sat on.

12             The second thing is the patent misuse defense.

13   Mr. Re just said that the antitrust counterclaims were

14   stayed.  But the patent misuse defense, I'm surprised he

15   would say that.  There is a history of this patent misuse

16   defense.

17             First of all, it's Masimo that sought to say

18   this defense, not us.  We have been sitting for five

19   years, five and-a-half years not able to pursue a well pled

20   antitrust complaint and a well pled patent misuse defense.

21             The way that this happened is Judge Thynge and

22   Judge Farnan approved, after our objection, stayed the

23   antitrust counterclaims saying that first we should see what

24   happens with the patents.  We disagree with that.  Many of

25   our antitrust counterclaims do not have anything to do with

1    whether or not the patents are valid or not, and nor do they

2    require construction of the claims.  Nonetheless, we got

3    that case stayed.

4         We then pursued discovery on our patent misuse

5    defense.  Our patent misuse defense bears a very strong

6    relationship to the antitrust claims, and we pursued

7    discovery.  And we went to the Court because there was an

8    issue.  I'm remembering now, five years ago, exactly how it

9    came up.  And the Court said, well, patent misuse, it's

10   also stayed.  The patent misuse defense has been stayed.  It

11   is a well plead equitable defense that we had, and it has

12   been stayed.

13        Now, we have wanted to pursue this defense from

14   the beginning.  We haven't taken a single deposition on it,

15   we haven't taken full document discovery on it, we haven't

16   taken third-party discovery on it; and there is a lot of

17   information we need in order to put this defense together

18   because it has a lot to do with Masimo's improper conduct in

19   tying patented articles to nonpatented articles.  It has to

20   do with their exclusionary conduct where they used these

21   patents as a weapon in order to force everybody else out of

22   this industry, we believe improperly given their market

23   position.  And it has do a lot with their relative market

24   share vis-à-vis *Nellcor* and how they control basically 90

25   percent of this market.  There is a huge amount of discovery

1    in this case, all of which was stayed.

2                Reluctantly, we went along with it.  We didn't

3    have a choice.  The Court stayed the issues.

4                Of course, we need to have resolution of all of

5    our defenses before we have a final judgment.  That is true.

6    That is basically appellate jurisdictional law.

7                When we submitted our Pretrial Order back in

8    September, I have to go back and check but I certainly

9    instructed that we need to make sure that when we talk about

10   our equitable defenses, we need to make sure we drop

11   something, some kind of a footnote to make it clear that we

12   still have pending our antitrust and patent misuse defenses.

13   That is not being tried.  How could it be?  It has been

14   stayed.  We haven't taken any discovery on it.  So we

15   referred to that.  I'm fairly sure we referred to it in our

16   September order.  I don't have it with us.  We'll check.

17               But we then thought it was prudent again, since

18   we're having an inequitable conduct trial, we thought it

19   prudent to remind the Court again that, yes, this is the

20   equitable defenses that are ripe for consideration, but we

21   wanted to remind the Court we still have an antitrust case

22   and a patent misuse case that, at Masimo's request, has been

23   stayed and remains stayed.

24               So somehow attributing this to us as like an

25   attempt to preclude a final judgment is absolutely incorrect.

1   This is the result of an unfortunate delay on our ability to

2   pursue our defense and to pursue our antitrust counterclaims.

3   We would love the opportunity to resume discovery on those

4   claims.  We would love the opportunity to get to the point

5   where we can try those claims.  But to this point, the Court

6   has stayed those claims.

7              THE COURT:  On the laches point, I'll accept

8   your representation about the timing and the reasoning.  No

9   one is asking for it, I'm not ordering discovery into that,

10  but I do want the record to be clear that we did not force

11  you to drop your laches defense.  That was your own

12  voluntary decision.

13             MR. ROSENTHAL:  Absolutely.  Absolutely, Your

14  Honor.

15             THE COURT:  Okay.  Thank you.  Mr. Re, is there

16  anything further you want to say?

17             MR. RE:  Yes, just mainly for the record because

18  I know we're not going to resolve anything right now on this

19  misuse.

20             One, it was not well pled.

21             Two, it was not independent of the antitrust

22  counterclaims which are legal in nature is my point.

23             Three, misuse was never mentioned in the order

24  staying.  And,

25             Four, to the extent it was stayed, it was only

1     stayed to the extent it was antitrust related.

2              And as the Pretrial Order shows that they

3     submitted, the misuse are violations of the Sherman Act and

4     the Clayton Act.  Well, those are legal remedies.  And to

5     the extent you think it's well pled, I'd like an opportunity

6     to knock it out so we can get final judgment.  Because if

7     what Mr. Rosenthal is saying is correct, we have to have

8     trials on all the other patents, and then we can have

9     antitrust discovery, and then we'll have the antitrust.

10             We are literally talking, I would predict,

11    seven, eight, nine years before we ever say "hello" to the

12    Federal Circuit.  So your law clerk will be a partner, I

13    promise he will be a partner by the time we see the Federal

14    Circuit, let alone his clerkship ending in March.

15             So I was just under the understanding, it was my

16    understanding when we set this trial up that we were trying

17    to wrap up the trial we had so that we could get this case

18    ready for final judgment under Rule 54(b), but apparently

19    if that is true what Mr. Rosenthal is saying, you might be

20    eligible for senior status.  That will be ten years from

21    now.

22             THE COURT:  Right.  All right.  Well, I don't

23    think this issue affects our trial this week with the one

24    exception that it is my hope that I can get some part of

25    this case at least wrapped up and get you to the Federal

1    Circuit, if that is what you want.

2              So I do direct you to meet and confer on this,

3    and let's talk further by the end of the week about what

4    everyone's position is as to whether or not, once we do rule

5    whenever it is on the pending motions which you're going to

6    argue next week as well as the inequitable conduct which is

7    going to be tried on Friday, whether or not there is a way

8    we can wrap up at least a portion of this case and send you

9    on your way to the Federal Circuit, if that is where you

10   want to be.  But that is only an order to the extent it

11   tells you that you need to talk about that further and bring

12   it up with me again some time during our time together over

13   the next week or so.

14             Is there anything else from Masimo?

15             MR. RE:  Nothing further, Your Honor.

16             THE COURT:  And from Philips?

17             MR. ROSENTHAL:  No, Your Honor.

18             THE COURT:  All right.  We'll see you on

19   Wednesday afternoon.

20             (Pretrial conference ends at 10:33 a.m.)

21

22        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

23

24                       /s/ Brian P. Gaffigan
                       Official Court Reporter
25                       U.S. District Court