## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-80-LPS |
| | : | |
| PHILIPS ELECTRONIC NORTH | : | |
| AMERICA CORPORATION and | : | |
| PHILIPS MEDIZIN SYSTEME | : | |
| BÖBLINGEN GMBH, | : | |
| | : | |
| Defendants. | : | |

Julia Heaney, Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, DE

Joseph R. Re, Karen Vogel Weil, Jon W. Gurka, Perry D. Oldham, KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, CA

    Attorneys for Plaintiff.

Richard L. Horwitz, David E. Moore, Bindu A. Palapura, POTTER, ANDERSON & CORROON, LLP, Wilmington, DE

Brian A. Rosenthal, Alan M. Grimaldi, Ann Marie Duffy, Brian K. Andrea, Cody I. Gillians MAYER BROWN, LLP, Washington, DC

Steven Yovits, MAYER BROWN, LLP, Chicago, IL

William Rooklidge, GIBSON DUNN, Irvine, CA

Gregory A. Castanias, JONES DAY, Washington, DC

Sasha Mayergoyz, JONES DAY, Chicago, IL

    Attorneys for Defendants.

## MEMORANDUM OPINION

May 18, 2015
Wilmington, Delaware

*Leaul P. Dos*

**STARK, U.S. District Judge:**

Plaintiff Masimo Corporation ("Masimo" or "Plaintiff") filed this patent infringement action on February 3, 2009, alleging that Defendants Philips Electronic North American Corporation and Philips Medizin Systeme Böblingen GMBH (collectively, "Philips" or "Defendants") infringed several patents, including U.S. Patent Nos. 6,263,222 (the "'222 patent") and 7,215,984 (the "'984 patent"). (D.I. 1) Philips contends, among other things, that it does not infringe Masimo's patents and, further, that the '222 and '984 patents are invalid. In addition, Philips alleges that Masimo infringes several of Philips' own patents, including U.S. Patent No. 6,725,074 (the "'074 patent"). (D.I. 15) In turn, Masimo asserts both non-infringement and invalidity of the '074 patent. (D.I. 17)

After a ten-day trial, the jury returned a verdict in favor of Masimo. (D.I. 912) With respect to Masimo's '222 patent, Philips did not contest infringement, and the jury found that Philips had not proven by clear and convincing evidence that claims 17 and 18 are invalid due to anticipation, lack of written description, or lack of enablement. (*Id.* at 1, 3, 4) The jury also determined that Philips had not proven by clear and convincing evidence that claim 17 of the '222 patent is invalid as indefinite. (*Id.* at 4) For Masimo's '984 patent, the jury found that Philips had not proven by clear and convincing evidence that claims 1, 2, 3, 4, 5, 15, 19, 20, 22, 52, and 53 are invalid as anticipated, or that claims 16 and 54 are invalid for obviousness based on the prior art. (*Id.* at 1-2) The jury also determined that Philips had not proven by clear and convincing evidence that claims 1, 2, 3, 4, 5, 15, 16, 19, 20, 22, 52, 53, and 54 are invalid for lack of written description, or that claim 5 of the '984 patent is invalid as indefinite. (*Id.* at 3-4) As for damages, the jury found Masimo had proven by a preponderance of the evidence that

1

Nonin PureSAT is not an acceptable non-infringing alternative. (*Id.* at 5) The jury determined

that as compensation for Philips' infringement of the '222 and '984 patents, Masimo is entitled

to $466,774,783 in damages. (*Id.*) With respect to Philips' '074 patent, the jury found that

Philips had not proven by a preponderance of the evidence that Masimo literally infringed,

induced infringement, or contributed to the infringement of claims 1 and 5; Masimo did not

contest validity. (*Id.* at 6) The jury awarded no damages.[1] (*Id.* at 7)

 On February 11 and 12, 2015, the Court conducted a two-day bench trial on Philips'

equitable defense and counterclaim alleging that Masimo committed inequitable conduct before

the United States Patent and Trademark Office ("PTO"). (*See* Bench Trial Transcript ("Tr.")

D.I. 983, 984) The parties completed post-trial briefing on March 4, 2015. (D.I. 976, 978, 980,

982) In connection with the briefing, the parties submitted proposed findings of fact and

conclusions of law. (D.I. 975, 977)

 Pursuant to Federal Rule of Civil Procedure 52(a), and after having considered the entire

record in this case and the applicable law, the Court concludes that Defendants have not shown

by clear and convincing evidence that any of Masimo's attorneys – Messrs. Kesler, Grover, and

Jensen – committed inequitable conduct.

 The Court's findings of fact and conclusions of law are set forth below.

## I. FINDINGS OF FACT[2]

### A. Background Relating to the '984 Patent

1. On May 8, 2007, the PTO issued the '984 patent. (D.I. 953 (Statement of

---

[1]Philips has filed a post-trial motion for Judgment as a Matter of Law and/or Motion for a New Trial (D.I. 926), which the Court addresses in a separate opinion issued this same day.

[2]Certain findings of fact are also provided in connection with the Court's conclusions of law.

2

Uncontested Facts) ("SUF") ¶ 10)

2.      On February 3, 2009, Masimo sued Philips asserting, among others, the '222 and the '984 patents. (SUF ¶ 12)

3.      On September 5, 2012, Philips filed an Ex Parte Reexamination request with respect to the '984 patent with the PTO. (SUF ¶ 16) Philips also filed several other reexamination requests as to other Masimo patents, as did other third parties. (Tr. at 52, 55-56, 267)

4.      The PTO granted Philips' '984 Ex Parte Reexamination request on October 10, 2012 ("the '984 Reexam"). (SUF ¶ 17) During the pendency of the '984 Reexam, Masimo was involved in approximately two dozen reexamination proceedings in connection with its patent portfolio. (Tr. at 52, 267, 378)

5.      The PTO confirmed the patentability of the '984 patent claims and issued a certificate on May 6, 2014. (PTX-9073)

### B.      Masimo Attorneys

6.      Philips alleges that Stephen Jensen, John Grover, and Jarom Kesler, partners at Knobbe, Martens, Olson & Bear ("Knobbe"), committed inequitable conduct during the '984 Reexam. All three of these individuals testified at trial, and the Court found them to be credible on all points on which they testified.

7.      Jensen is the client liaison and handles a variety of legal matters for Masimo. (*See, e.g.*, Tr. at 118-20, 271, 281, 373) Since before 2012, Jensen has not been responsible for the prosecution of Masimo patents – he has not drafted any patent applications, has not responded to any office actions, and has not supervised the prosecution of any Masimo patent.

3

(*Id.* at 374-75)

8.  Jensen does not receive electronic case file ("ECF") notices from the Court regarding this litigation and is not on Knobbe's internal email distribution list for this litigation. (*Id.* at 376)

9.  Grover manages Masimo's patent portfolio and has primary responsibility for some of the Masimo patent prosecution matters, including the reexamination of the '222 patent ("the '222 Reexam"). (*Id.* at 267, 271) Grover's involvement in the present litigation was limited to high-level updates. (*Id.* at 324-25)

10.  Kesler handles patent prosecution for Masimo and was primarily responsible for the '984 Reexam. (*Id.* at 126-27) Kesler had no involvement in this litigation. (*Id.* at 208-09)

## C.  '984 Patent Reexamination

11.  Masimo and Knobbe established a procedure aimed at ensuring that litigation documents were identified and submitted to the PTO as part of the nearly two dozen reexaminations, including the '984 Reexam. (*Id.* at 208-09) Jensen was sensitive to disclosure of litigation documents to the PTO because of a previous inequitable conduct finding in a different lawsuit in which he had represented Masimo. (*Id.* at 379-81) Jensen wanted a reliable process to ensure disclosure of information to the PTO. (*Id.*)

12.  Joe Kiani, CEO of Masimo and a named inventor on the '984 patent, instructed Jensen, Grover, and Kesler to submit to the PTO everything that was even remotely relevant to the prosecution of any Masimo patent application. (*Id.* at 96, 111-13, 308) Jensen told Grover and Kesler to set up a process and to submit everything. (*Id.* at 360-61, 402, 414) Grover and Kesler designated Kendall Loebbaka, a Knobbe associate, as the liaison between the litigation

4

team and the prosecution team, and instructed Loebbaka that "anything even remotely relevant to the merits of the case should be submitted" to the PTO. (*Id.* at 212-13; *see also id.* at 117, 209) Masimo's goal was to be transparent and not hold anything back from the PTO. (*Id.* at 117, 213)

13.    At Philips' request, this Court entered a Protective Order in the litigation that included a prosecution bar preventing individuals who receive highly confidential information in discovery from prosecuting Masimo's patents, including in reexaminations. (*Id.* at 208-09, 380) Masimo's patent prosecutors were, thus, prohibited from having direct access to litigation documents. (*Id.*) To ensure compliance with the Protective Order, Grover and Kesler tasked Loebbaka to act as the "go-between" for the attorneys representing Masimo in this litigation and the attorneys representing Masimo in patent prosecution and the ongoing reexaminations. (*Id.*)

14.    Whenever one of the patent prosecutors was going to file an office action response, he or she would ask Loebbaka to coordinate with the litigation team to obtain documents to be submitted to the PTO. (*Id.* at 209) Loebbaka would then prepare an Information Disclosure Statement ("IDS") and one of the prosecutors would sign and file it in all of Masimo's pending reexaminations and in other pending Masimo patent prosecutions. (*Id.* at 132) It was not uncommon for it to take a month or more to identify documents, eliminate purely procedural issues, check the status of the pending reexaminations and other patent applications, and then prepare, review, and finally file the IDS in each of the many reexams and other prosecutions. (*Id.* at 210-12)

15.    On November 19, 2012, Masimo submitted an IDS to the PTO that identified, among other things: (1) Magistrate Judge Thynge's Report and Recommendation Regarding Claim Construction; (2) the parties' objections to Magistrate Judge Thynge's Report and

5

Recommendation Regarding Claim Construction; (3) the parties' responses to each other's objections; (4) this Court's Markman Order; (5) Philips' Motion for Summary Judgment of Invalidity and Noninfringement of the '984 patent ("MSJ"); (6) Masimo's Opposition to the MSJ; and (7) Philips' Reply in Support of the MSJ. (SUF ¶ 22; PTX-9013; PTX-9014; PTX-9015)

16.     On January 23, 2013, the PTO issued a Non-Final Office Action in the '984 Reexam. (SUF ¶ 23; PTX-9016)

17.     On February 8, 2013, the PTO held an in-person interview with Grover, Jensen, and Kiani as part of the '984 Reexam and '222 Reexam. (SUF ¶ 24; Tr. at 93; PTX-9017) The interview primarily concerned the '222 Patent. (Tr. at 270) During the interview, Kiani discussed Masimo's technology, Grover discussed the '222 patent, and Jensen provided a summary of litigation on these patents. (*Id.* at 95, 271-73)

18.     Before the interview, Jensen generally got "up to speed" on the Philips litigation so that, during the interview, he could discuss the status of the litigation and the claim construction arguments that had been presented in the litigation. (*Id.* at 387-89) The Examiners made clear that they would perform their own claim construction analysis and would not defer to the Court's claim construction. (*Id.* at 231, 251, 392)

19.     Jensen explained the claim construction dispute remaining in this litigation regarding the '984 patent, including Philips' arguments, and argued that the examiners did not need to resolve this claim construction dispute because none of the prior art disclosed two calculators with each having a different calculation technique. (*Id.* at 387-91; *see also* D.I. 854 (describing claim construction dispute in granting Philips leave to add inequitable conduct))

Jensen also informed the PTO that Masimo had made additional arguments in this litigation, but that Masimo did not need to rely on those arguments to overcome the PTO's rejections. (*See* Tr. at 391-92) The PTO asked that Masimo include all of its arguments from this litigation in its Office Action response. (*Id.* at 393)

20.     Jensen had no additional substantive involvement in the '984 Reexam. (*Id.* at 397-98) Jensen only attended the interview because the claims were expired (i.e., not subject to amendment), which he believed minimized any risk of being accused of violating the prosecution bar in this case, and because Kiani requested that Jensen accompany him, based on Jensen's long involvement with Masimo. (*Id.* at 382-84)

21.     As part of its inequitable conduct claim, at trial Philips contended that the '984 patent is invalid as anticipated by the prior art Corenman reference. (*Id.* at 83-84) Corenman came up during Masimo's February 8, 2013 interview, and is mentioned in the Examiner's February 22, 2013 Interview Summary, which states: "In particular, according to the patent owner's representative, Corenman teaches two techniques to calculate oxygen levels, however they are not executed simultaneously, but instead, either first or second calculation is carried out." (PTX-9130 at PHIL03334874) Grover testified that, based on his recollection of the interview, this statement was not accurate, as Masimo had argued that all of the prior art "failed to teach the presence of two calculators, each using a different calculation technique." (Tr. at 314) Grover first noticed this discrepancy when he was asked about the statement during his deposition in this litigation in December 2014. (*Id.* at 315) Grover and Jensen explained that Masimo had made a different argument with respect to the '222 patent and speculated that the Examiner may have mixed up those conversations. (*Id.* at 315-16, 394-97)

7

22. Masimo also prepared an Interview Summary, dated March 25, 2013, and it states: "The Patentee discussed the importance of parallel alternative calculations in producing a robust pulse oximeter under the varied patient conditions encountered in the medical environment." (PTX-9051 at MASP0847973) Grover testified that this referenced a summary of Kiani's separate discussion of Masimo's commercial product and that "parallel alternative calculations" was the phrase that Masimo used to refer to "all the different engines that are in their commercial products." (Tr. at 317-19)

23. Also on March 25, 2013, Masimo filed a response to the PTO's Non-Final Office Action. (SUF ¶ 25; PTX-9048) Per the PTO's request, Masimo included several arguments regarding claim construction and distinguishing the prior art, including Corenman, just as Masimo had done in the litigation before this Court. (Tr. at 219-26; PTX-9048)

24. Masimo had argued in its Answering Brief in Opposition to Philips' Motion for Summary Judgment of Invalidity and Non-infringement of the '984 patent that, "The claims require that a first calculator 'determine at least a first ratio,' and a second calculator 'determine at least a second ratio.' Thus, the claims require the calculators actually determine their respective ratios . . . ." (D.I. 515 at 5) (internal citation omitted) As requested, Masimo repeated this argument nearly verbatim in the March 25, 2013 Office Action response. (PTX-9048 at MASP0847891)

25. In distinguishing Corenman in the Office Action response, Masimo also argued that Corenman "discloses only one calculator which uses a single calculation technique to determine a single ratio" and that Corenman has no disclosure "for determining a second ratio using a different calculation technique." (*Id.* at MASP0847906) (emphasis omitted)

8

26.     On April 2, 2013, Judge Thynge issued her Report and Recommendation

("R&R") regarding the parties' summary judgment motions, recommending denial of Philips'

Motion for Summary Judgment of Invalidity of the '984 Patent (D.I. 662). (SUF ¶ 26) Judge

Thynge rejected Masimo's claim construction arguments regarding the use of two calculators.

(*See* D.I. 662 at 48 ("Rather than writing the limitation as 'a first calculator utilizing a first

calculation technique to determine at least a first ration,' the drafter included the 'capable of'

language which indicates the ability of 'a first calculator' to 'determine at least a first ratio,' not

that both the first and second calculators are required to actually calculate a physiological

characteristic every time a calculation is performed."); *id.* at 50-51 ("[T]he court agrees the use

of 'at least one' demonstrates that the claim does not require the processing module to utilize

both calculators. Contrary to Masimo's assertion, that interpretation does not render one of the

calculators useless. Output from both calculators *might* be utilized by the processing module,

but the claim does not include that requirement.")) Judge Thynge recommended denying

summary judgment, as she found a genuine dispute of material fact as to whether the prior art

disclosed a first and second calculator each capable of determining a first and second ratio. (*Id.*

at 58, 64)

27.     On April 29, 2013 Masimo submitted an IDS that included the R&R and the

parties' objections to the R&R. (SUF ¶ 27; PTX-9052; PTX-9053; PTX-9054) The IDS stated:

> The Report and Recommendation discusses the motions for
> summary judgment, including invalidity and noninfringement, of
> the '984 patent at least on pages 35 through 70. The discussion of
> 35 U.S.C. § 102 and Ukawa can be found at least on pages 51
> through 60. The discussion of 35 U.S.C. § 102 and Hall can be
> found at least on pages 60 through 65. In the Report and
> Recommendation, Magistrate Thynge construed claim elements of
> the '984 patent. These claim constructions can be found at least on

9

page 42 through 51 of the Report and Recommendation.

(SUF ¶ 28; PTX-9052 at 5) Masimo similarly filed IDSs in other reexaminations and applications, discussing the R&R with the same level of detail. (Tr. at 227-28)

28.     Kesler and Grover both believed there was no requirement to direct the Examiner to the particular pages in the R&R that discussed claim construction, but Masimo still did so in order to be helpful. (*Id.* at 232-33, 326) Kesler believed he was not permitted to characterize or summarize the R&R because the IDS "is not a vehicle to provide arguments." (*Id.* at 202-03; *see also id.* at 231-32; DX-2772 at 2200-14)

29.     On May 22, 2013, Masimo submitted an IDS to the PTO that included both parties' responses to each other's objections to the R&R. (SUF ¶ 29; PTX-9056; PTX-9057)

**D.     District Court Rulings**

30.     On March 31, 2014, this Court issued a Memorandum and, separately, an Order ("SJ Order") resolving the parties' objections to the R&R. (D.I. 776, 777; SUF ¶ 31) The Court's SJ Order also expressly adopted all portions of the R&R to which neither side objected, including the recommended construction of the disputed claim language of the '984 patent. (D.I. 777)

31.     The Court's March 31, 2014 Memorandum and SJ Order did not address Philips' objection to Judge Thynge's recommendation regarding the validity of the '984 patent. (SUF ¶ 32)

32.     On April 4, 2014, Philips filed a letter with the Court pointing out that the Memorandum and SJ Order had not addressed Philips' objection to Judge Thynge's recommendation to deny Philips' motion for summary judgment of invalidity of the '984 patent.

10

(D.I. 779; SUF ¶ 33; PTX-9151) On April 7, 2014, Masimo wrote to the Court, agreeing with Philips that the Memorandum and SJ Order did not address the validity of the '984 patent. (D.I. 780; SUF ¶ 34; PTX-9152)

33.     On April 7, 2014, a public version of this Court's March 31, 2014 Memorandum (which had initially been issued under seal) became available. (D.I. 781; SUF ¶ 35)

34.     Three days later, on April 10, 2014, the PTO issued a Notice of Intent to Issue Reexamination Certificate ("NIRC") in the '984 Reexam. (SUF ¶ 36; PTX-9072)

35.     On April 14, 2014, the Court issued a Memorandum Order regarding the validity of the '984 patent. (D.I. 787) Specifically, the Court overruled Philips' objection and denied Philips' Motion for Summary Judgment of Invalidity of the '984 patent. (D.I. 787; SUF ¶ 37)

### E.     Philips' Letter

36.     On April 15, 2014, Philips filed a letter ("Philips Letter") with the Court alleging that, during the '984 Reexam, Masimo did not inform the Examiner that Judge Thynge and the Court had rejected the constructions on which Masimo had relied to overcome the Examiner's rejections. (DX-2794 at 1; *see also* D.I. 789) The Philips Letter did not explicitly refer to the Court's March 31, 2014 Memorandum Opinion or SJ Order. (PTX-9105)

37.     Kesler, Grover, and Jensen learned of the Philips Letter on April 15, 2014. (DX-2793 at MASP0849662) Upon learning of the Philips Letter, Jensen wrote in an internal Knobbe email: "Of course. We should send everything to the pto." (PTX-9121) Kesler understood that the letter concerned the R&R. (PTX-9106) Kesler saw no inconsistency in the Statement for Reasons for Confirmation in the NIRC and the R&R. (Tr. at 233-34) Kesler researched whether Masimo could also submit the Philips Letter to the PTO and concluded, based on the Manual of

11

Patent Examining Procedure ("MPEP") Sections 2287.01 and 2256 as well as 37 C.F.R. 1.313, it was impossible after the NIRC had issued – unless Masimo could make an unequivocal statement that one or more claims were invalid. (*Id.* at 185, 235, 238-39; PTX-9106) Kesler felt he could not make that statement, as it was not correct. (Tr. at 185) Kesler shared his research first with Grover and later with Jensen, both of whom agreed with his conclusion. (*Id.* at 306, 358-59)

38.     Kesler believed the reexamination entered the "printing cycle" upon issuance of the NIRC, a view he confirmed by checking the PTO's website, which indicated that the '984 Reexam had been forwarded to the publications office on April 15, 2014. (Tr. at 186-88)[3]

39.     On May 6, 2014, the PTO issued an Ex Parte Reexamination Certificate for the '984 patent. (SUF ¶ 38; PTX-9073)

40.     On May 7, 2014, another Knobbe attorney, Scott Raevsky, informed Loebbaka that he had heard that the Court had issued an order and asked Loebbaka to locate a copy and submit it as part of the IDS they were working on for another reexamination. (PTX-9114) Loebbaka stated: "I didn't know about that. I'm not sure I've received this. I'll find it and prepare IDSs for all the pending reexams. I don't think we've submitted this." (PTX-9118) After receiving a copy of the Court's March 31, 2014 Memorandum, Loebbaka sent it to Grover and Kesler and told them that she would prepare an IDS for each of the pending reexaminations. (PTX-9116; *see also* PTX-9114) Consistent with its policy of full disclosure, Masimo submitted the Memorandum and SJ Order in all pending reexaminations and prosecution cases in which it

---

[3]There is no evidence in the record to support Philips' attorney argument that the date an application enters the "printing cycle" is different than the date it is sent to the "publications office."

and Knobbe believed this was permissible. (Tr. at 249)

41.     Kesler and Grover were not aware of either the Memorandum or Order before

May 7, 2014. (*Id.* at 241; PTX-9116) While Jensen knew that a ruling existed, he had not read

either the Memorandum or SJ Order, and was told that the Court did not address the validity of

the '984 Patent. (Tr. at 400-01) Jensen had no knowledge that the Court addressed claim

construction. (*Id.* at 338-39, 349-50, 400-01)

## II.     INEQUITABLE CONDUCT

### A.     Legal Standards

Applicants for patents and their legal representatives have a duty to prosecute patent

applications with candor, good faith, and honesty. *See Honeywell Int'l Inc. v. Universal

Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007); 37 C.F.R. § 1.56(a). A breach of this

duty constitutes inequitable conduct. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.

Cir. 1995). If it is established that a patent applicant engaged in inequitable conduct, the patent

is unenforceable. *See Kingsdown Med. Consultants v. Hollister Inc.*, 863 F.2d 867, 877 (Fed.

Cir. 1988). "The ultimate determination of inequitable conduct is committed to the trial judge's

discretion." *Molins*, 48 F.3d at 1178.

To prevail on an inequitable conduct claim, the moving party must establish, by clear and

convincing evidence, that "the applicant misrepresented or omitted material information with the

specific intent to deceive" the PTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d

1276, 1287 (Fed. Cir. 2011) (en banc). "Intent and materiality are separate requirements." *Id.* at

1290.

A prior art reference "is but-for material if the PTO would not have allowed a claim had

13

it been aware of the undisclosed prior art." *Id.* at 1291.  But-for materiality must be shown by a

preponderance of the evidence, "giv[ing] claims their broadest reasonable construction." *Id.* at

1291-92; *see also Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012).

With respect to intent, the moving party "must prove by clear and convincing evidence

that the applicant knew of the reference, knew that it was material, and made a deliberate

decision to withhold it." *Therasense*, 649 F.3d at 1290; *see also 1st Media, LLC v. Elec. Arts,*

*Inc.*, 694 F.3d 1367, 1374-75 (Fed. Cir. 2012).  Because direct evidence of deceptive intent is

rare, a court may infer intent from indirect and circumstantial evidence. *See Therasense*, 649

F.3d at 1290.  However, "[i]ntent to deceive cannot be inferred solely from the fact that

information was not disclosed; there must be a factual basis for finding a deceptive intent."

*Herbert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996).

Furthermore, "intent to deceive must be the single most reasonable inference able to be

drawn from the evidence." *Therasense*, 649 F.3d at 1291 (internal quotation marks omitted).  In

other words, "the evidence must be sufficient to *require* a finding of deceitful intent in light of

all of the circumstances." *Id.* (internal quotation marks and citation omitted; emphasis in

original).  By contrast, "when there are multiple reasonable inferences that may be drawn, intent

to deceive cannot be found." *Id.* at 1290-91.

**B.     Omission**

Philips alleges an omission: specifically, that Masimo's attorneys failed to submit the

Court's March 31, 2014 SJ Order, which adopted Judge Thynge's April 2, 2013 R&R and its

construction of claim terms found in the '984 patent. "In a case involving nondisclosure of

information, clear and convincing evidence must show that the applicant made a deliberate

14

decision to withhold a known material reference." *Therasense*, 649 F.3d at 1290. "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.*

The Court finds Philips has failed to meet its burden to prove an omission by Masimo.

## 1. Deliberate Decision

The record does not support Philips' allegation that Kesler, Grover, or Jensen made "a deliberate decision" to withhold the Court's SJ Order from the PTO. Rather, these attorneys had set up a system of disclosure aimed at providing the PTO with all relevant district court orders by filing IDSs in the '984 Reexam, as well as in nearly two dozen other copending reexaminations. (Tr. at 208-09) Jensen, in particular, wanted a reliable process to ensure disclosure of information to the PTO due to a previous inequitable conduct finding he had suffered in a different lawsuit. (*Id.* at 379-81) Masimo's CEO, Kiani, had also given a general instruction to Masimo's attorneys to "disclose everything" to the PTO – although he did not have any further involvement in implementing that directive. (*Id.* at 96; *see also id.* at 111-12)

Jensen (who was subject to the Protective Order entered by the Court in this case and therefore barred from taking part in the prosecution of the '984 patent) instructed Grover (who oversaw Masimo's portfolio) and Kesler (who handled the daily prosecution work on the '984 patent) to set up a process for submitting all material litigation documents to the PTO. (*Id.* at 360-61, 402, 414) In turn, Grover and Kesler designated an associate, Loebbaka, as the "go-between" for the litigation and prosecution groups. (*Id.* at 117) Loebbaka was instructed that "anything even remotely relevant to the merits of the case should be submitted" to the PTO. (*Id.* at 212-13)

15

Despite this process, the Court's SJ Order was not disclosed to the PTO during the '984

Reexam. (*Id.* at 348) However, the "single most reasonable inference" is that this was the result

of timing and circumstances of the reexamination process rather than any deceitful intent of

Grover, Kesler, or Jensen. Specifically, the non-disclosure of the SJ Order does not reveal

deceitful intent given: (1) Masimo's disclosure of Judge Thynge's R&R in 2013, (2) the timing

of the Examiner's NIRC almost immediately after the Court's SJ Order issued, (3) Masimo's

focus on the R&R and the Philips Letter as the only bases on which Philips appeared to be

asserting inequitable conduct, (4) a belief (based on research) formed soon after those allegations

were made that the '984 Reexam record was closed, and (5) a lack of awareness of the Court's

SJ Order and any potential inconsistency in claim construction.

The Court explains below in further detail each of these bases for its conclusion.

### a. Disclosure of R&R

Masimo's prosecuting attorneys disclosed Judge Thynge's R&R and pointed out to the

Examiners, with as much (non-argumentative) specificity as they believed was permitted, the

very claim construction statements on which Philips predicates its inequitable conduct claim. On

April 29, 2013, Masimo submitted an IDS that included the R&R – which had issued on April 2,

2013 – and the parties' respective subsequent objections to the R&R. (SUF ¶ 27; PTX-9052;

PTX-9053; PTX-9054) The IDS stated: "In the Report and Recommendation, Magistrate

Thynge construed claim elements of the '984 Patent. These claim constructions *can be found* at

least on page 42 through 51 of the Report and Recommendation." (SUF ¶ 28; PTX-9052 at 5)

(emphasis added) Kesler and Grover testified that they believed there was no requirement to

direct the Examiner to particular pages, but they did so in an effort to be helpful. (Tr. at 232-33,

16

326) Beyond indicating where the constructions could be found, Kesler believed he was not permitted to characterize or summarize the R&R because the IDS "is not a vehicle to provide arguments." (*Id.* at 202-03; *see also* 231-32; DX-2772 at 2200-14)

### b.   SJ Order and NIRC

Next, the truncated period between the issuance of the SJ Order and the NIRC undermines Philips' accusation that Masimo's attorneys ever made a deliberate "decision" not to disclose the SJ Order. After a year of relatively little activity in the '984 Reexam and this litigation, the Court issued its SJ Order on March 31, 2014. (D.I. 776, 777; *see also* SUF ¶¶ 32, 33; PTX-9151) Independently, the PTO issued the NIRC in the '984 reexam less than two weeks later, on April 10, 2014. (SUF at ¶ 36; PTX-9072) As discussed further below, Grover, Kesler, and Jensen all testified that their system of disclosure did not pick up the SJ Order for dissemination to the PTO until May 7, 2014, when Loebakka – the "go-between" for the prosecution and litigation groups at Knobbe – obtained the redacted version of the Court's SJ Order (within a month of the Memorandum Order being made public on April 7 (D.I. 781)), in connection with a different pending reexamination. (Tr. at 208-09, 308; PTX-9114; PTX-9116; PTX-9118)

Hence, Kesler and Grover did not even become aware of the Court's SJ Order until after the NIRC issued and after they had formed the belief that no further submissions could be made in the '984 Reexam.[4]

Jensen had learned of the SJ Order on March 31 (before the NIRC issued), but only

---

[4]*See also* Tr. at 249 (Q: "[I]f you had known about it, on March 31st or April 1st, April 2nd, would it have been disclosed on the '984 case?" Kesler: "Yes. We submitted anything that was remotely relevant. So it would have been disclosed.").

17

insofar as he was given a general summary about its outcomes. *(Id.* at 349, 399-402)[5] Jensen

never read the SJ Order itself or became aware that any claim construction positions Masimo had

previously taken were being rejected, because such review was not under his purview. *(Id.* at

400-01) Jensen testified that he relied on his "very competent litigation team" to read the

document and discern its meaning, and the reexam system (to disclose all relevant rulings) was

in place so he did not have to make or monitor such decisions. *(Id.* at 401)[6]

### c. Philips' Letter

After the PTO issued the NIRC on April 10, 2014 indicating it intended to reissue the

'984 patent, Philips filed a letter with the Court on April 15, 2014 levying accusations of

inequitable conduct. (D.I. 789) In part, the Philips Letter stated (in its second paragraph):

> Philips notes that the PTO's Decision was based on a construction
> of the asserted claims urged by Masimo on March 25, 2013 and
> rejected by the Court one week later on April 2, 2013. *Compare*
> D.I. 783, Exh. A at 15-16 with D.I. 662 at 48-51. Masimo,
> however, allowed the claims to be confirmed based on that rejected
> claim construction. As such, the PTO's Decision is a finding that
> is contradictory to this Court's claim construction. *See, e.g., In re
> Rambus,* 694 F.3d 42, 46 (Fed. Cir. 2012). Philips is currently
> considering its options to remedy Masimo's apparent willful
> deception of the Examiner, including seeking to amend its
> counterclaim to add an allegation of inequitable conduct.

---

[5]To give some context, it is important to point out that the Court's Memorandum ran to 42 pages
and addressed both sides' objections to three Reports and Recommendations (which themselves
totaled 284 pages) relating to 19 motions. *(See* D.I. 776 at 4) The construction of claim terms in
the '984 patent is mentioned in a single page of the Memorandum. *(See id.* at 16)

[6]*See also* Tr. at 402 (Q: "Did you ever make a decision not to disclose any ruling on March 31st
to the Patent Office in the reexam file?" Jensen: "No. I think as I indicated before, the decision
was made up front that in the event that ruling – that in the event that ruling and any ruling or
anything came out of the Court that was related to any of the patents in the case, so if it had
related to it, there was a process in place that would get that disclosed to the Court, no
question.")

18

(*Id.* at 1-2) (emphasis omitted)

The record establishes that, in response to the Philips Letter, Masimo's attorneys at Knobbe were focused on two bases on which Philips may have been alleging inequitable conduct, but Masimo's attorneys genuinely failed to imagine that Philips might identify the SJ Order as such a basis. Specifically, emails and trial testimony from Kesler, Grover, and Jensen indicate that when the Masimo attorneys read the Philips letter, they believed Philips' accusations of inequitable conduct were based on (1) a potential lack of disclosure of Judge Thynge's R&R – expressly cited in the letter as "D.I. 662" – or (2) the Philips Letter itself (Masimo counsel speculated that Philips might have filed the letter in order to allege later that Masimo failed to disclose the letter to the PTO). (*See* Tr. at 191, 261-62, 305-06, 405; PTX-9112) There is no evidence that the Philips Letter caused Masimo's attorneys to know Philips' allegation of inequitable conduct was based on the SJ Order (i.e., D.I. 777, which is *not* cited in the Philips Letter).

More particularly, Jensen testified that in response to the Philips Letter, he was immediately concerned that Judge Thynge's R&R had not been disclosed to the PTO and that this must have been the basis for Philips' potential claim of inequitable conduct. (Tr. at 405) This fear was extinguished (*id.* at 406) when Kesler advised him in an April 15 email that they "submitted D.I. 662 in an IDS to the patent office on April 29, 2013" (PTX-9122).

Kesler, Grover, and Jensen all testified that on April 15 they believed Philips might also attempt to mount inequitable conduct accusations based on a failure to disclose the Philips Letter itself. (Tr. at 305-06, 310; *see also id.* at 355-56) Perry Oldham (on the litigation side) had emailed Kesler, Grover, and Jensen asking: "Is it possible [Philips attorney] Brian [Rosenthal] is

19

trying to use the letter to the court as another attempt to make us file documents in the reexamination (i.e., their letter to the court), or argue inequitable conduct if we don't?" (PTX 9122) Jensen's response was: "Of course. We should disclose everything to the pto." (*Id.*)

### d.   Belief Reexam was Closed

On April 15, based on Kesler's research into PTO procedure to determine if the Philips letter could be submitted, all three accused attorneys came to believe that nothing more could be submitted to the PTO, because the NIRC had issued on April 10. (*See, e.g.*, Tr. at 409) Based on his research on the MPEP, Kelser concluded there were no rules allowing an IDS to be submitted after a NIRC if not accompanied by a petition. (*Id.* at 184-85) Kesler further concluded that MPEP Sections 2287.01 and 2256 and 37 C.F.R. 1.313 meant that if the '984 patent had entered the "reexamination certificate printing cycle" – which he determined it had, after checking its status on "PAIR" (Patent Application Information Retrieval system) – the only thing Masimo could submit would be a petition to the director of the PTO making an "unequivocal statement the patent was invalid." (*Id.* at 185-86, 188, 235, 238-39) Kesler did not believe the patent was invalid. (*Id.* at 185)

Kesler testified he confirmed his conclusion with Grover, and then went to Jensen to discuss his finding that there was no way to file an IDS since the reexam was closed. (*Id.* at 306, 358-59) Jensen also testified that in response to his email saying "we should send everything to the pto," Perry Oldham wrote back that Kesler had told him prosecution had closed once the NIRC issued. (*Id.* at 407-408; PTX-9122)

### e.   Lack of Awareness of Potential Inconsistencies

It is also worth noting that, at the pertinent times, Grover and Kesler still did not know of

20

the SJ Order, Jensen still did not understand the purported import of the SJ Order, and none of the three attorneys realized any affirmative statements needed to be made about a claim construction discussion in the 2013 R&R. (*See, e.g.*, Tr. at 355-56, 363-64, 406-08) Indeed, the discussion of potential claims of inequitable conduct in the second paragraph of the Philips Letter did not explain the alleged inconsistencies Philips believed to be material. (*See* D.I. 789) All of this further undermines Philips' efforts to show that Masimo's attorneys made a deliberate decision to withhold the Court's SJ Order from the PTO.

## 2. Known Material Reference

Even if Philips had proven a deliberate decision to withhold the SJ Order from the PTO, which Philips did not, Philips has also failed to prove that the SJ Order was a "known material reference" in the view of Kesler, Grover, or Jensen, at a time when any of them believed they could have submitted the SJ Order as part of the '984 Reexam.

As an initial matter, Kesler, Grover, and Jensen all testified that they did not know the Court's SJ Order of March 31, 2014 had adopted a claim construction (to which there was no objection) from the R&R that was arguably contrary to a position they had advanced during the '984 Reexam until *after they had formed the belief* the reexam record was closed. Kesler and Grover did not learn of the SJ Order until May 7, 2014. (Tr. at 180-81, 327-28) While Jensen knew that the SJ Order issued, he was aware of only the general outcome of the ruling. (*Id.* at 349-52)

Philips contends that the first paragraph of its April 15 letter should have alerted Kesler, Grover, and Jensen to the material reference. In pertinent part, it stated: "then, for the first time during summary judgment, she [Masimo's expert, Dr. Baura] presented new distinctions under

21

the claim interpretation that was ultimately adopted by the Court. Those new distinctions are directly contrary to her previous admissions that she had no distinctions." (D.I. 789 at 1) Masimo's attorneys testified at trial that they either did not recall reading this first paragraph or did not understand the purported implications of it with regard to the SJ Order. (Tr. at 261-62, 355-56, 410) They focused on the second paragraph of the Philips Letter, as it was the one which made accusations of potential inequitable conduct against them. (*See, e.g.*, *id.* at 262; D.I. 789 (discussing "willful deception" and "amending counterclaims to allege inequitable conduct"))

Hence, Philips has failed to prove that the accused attorneys made a deliberate decision to withhold a known material reference, because Philips has failed to prove that Masimo's accused attorneys knew of the existence and/or relevance of the Court's SJ Order at a time they believed they could submit it to the PTO.

Given this conclusion, it is not necessary for the Court also to evaluate whether the SJ Order is but-for material.

### 3. Conclusion Regarding Omission Theory of Inequitable Conduct

Overall, then, the Court concludes there is *no evidence* of a deliberate decision by the accused Masimo attorneys (or anyone else) to withhold the Court's SJ Order at a time the attorneys (or anyone else affiliated with Masimo) believed the information could or should be provided to the PTO. Philips' attempt to show, by clear and convincing evidence, inequitable conduct based on an omission fails.

At most, the evidence gives rise to "multiple reasonable inferences," including that Kesler, Grover, and Jensen were acting in good faith to disclose all that they could to the PTO.

22

Furthermore, the record supports a strong inference that Masimo's attorneys would have disclosed the SJ Order if they had understood its purported implications during the ten-day window between the SJ Order and the NIRC, and did not do so after that period only because they believed the '984 Reexam was closed and, therefore, they were not permitted to do so. "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91.

At bottom, what matters is not whether the Masimo attorneys were correct on the law, but what the evidence shows they credibly *believed*. Even if Kesler, Grover, and Jensen were technically wrong about what post-NIRC disclosures were permissible under the MPEP (a dispute the Court need not resolve), what is decisive here is that they believed no such disclosures were possible. The emails and testimony presented at trial all give rise to a strong inference that Kesler, Grover, and Jensen believed they were disclosing everything they could to the PTO through the available mechanisms.

The Court concludes that Philips has failed to meet its burden to prove inequitable conduct.

## C. Misrepresentation

On the same facts, Philips further alleges that Masimo's attorneys made a misrepresentation to the PTO by failing to correct a statement Masimo made to the PTO in a response to an office action, a statement that in Philips' view became false the moment Judge Thynge issued her R&R on April 2, 2013. One fundamental flaw in Philips' theory is that the claim construction positions Masimo advocated throughout prosecution and reexamination of the '984 patent were *arguments*, not factual statements. "While the law prohibits genuine

23

misrepresentations of material fact, a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct." *Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009).

In its March 23, 2013 Response to Office Action, Masimo took the position that the '984 patent's claims "cannot be construed any other way" other than that both calculators actually determine ratios, a conclusion it further supported by arguing that "any other construction would render the claims meaningless." (Tr. at 150-54; DX2740.8 at PHIL03334954-66) Philips asserts that these statements became false after Judge Thynge, in her April 2, 2013 R&R, rejected the same "parallel alternative calculations" construction which Masimo was advocating before the Court and the PTO. However, even accepting Philips' characterization of Masimo's position and Judge Thynge's ruling, at most what Masimo's attorneys were engaged in before the PTO was advocacy of a claim construction position, *not* a factual misstatement. *See Rothman*, 556 F.3d at 1328-29; *see also Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) (finding no inequitable conduct in attorney's representation that prior art PCT application did not relate to invention, as "our precedent has made clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art").

Masimo's argument that a claim term "cannot be construed any other way" was an argument as to the meaning of intrinsic or extrinsic evidence, not a factual representation about what a Court had already decided. Masimo's statement was speculation about a future event, not a material misrepresentation about a fact.

Philips' reliance on the Restatement Second of Contracts to justify its use of the word "misrepresentation" here – in service of its attempt to characterize a claim construction position

24

as a historical fact – is creative, but unpersuasive. Section 161 provides:

> A person's non-disclosure of a fact known to him is equivalent to
> an assertion that the fact does not exist in the following cases only:
> . . . (c) where he knows that disclosure of the fact would correct a
> mistake of the other party as to the contents or effect of a writing,
> evidencing or embodying an agreement in whole or in part.

Restatement (Second) of Contracts § 161 (1981). Philips points to the second illustration of "c.

Failure to correct" in the comments to Section 161, which states:

> A, seeking to induce B to make a contract to buy a thoroughbred
> mare, tells B the mare is in foal to a well known stallion.
> Unknown to A, the mare has miscarried. A learns of the
> miscarriage but does not disclose it to B. B makes the contract.
> A's nondisclosure is equivalent to the assertion that the mare has
> not miscarried and this assertion is a misrepresentation.

(*Id.*; *see also* Tr. at 7) These comments illustrate a change in the *factual circumstances* of the

underlying subject matter of A and B's contract. They do not concern *arguments* made by a

party to a contract (e.g., over the proper construction of the contract or what a Court might say

about the contract).

In short, Philips has failed to prove that any of the accused Masimo attorneys made a

misrepresentation to the PTO. Given this conclusion, the Court need not reach the issue of but-

for materiality.

## IV.    CONCLUSION

For the reasons above, the Court concludes Philips has failed to establish by clear and

convincing evidence that Masimo's attorneys committed inequitable conduct. An appropriate

Order follows.

25