IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MASIMO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-80-LPS |
| | ) | C.A. No. 11-742-LPS |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION and PHILIPS | ) | |
| MEDIZIN SYSTEME BÖBLINGEN GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

Jack B. Blumenfeld, Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, DE

Joseph R. Re, Karen Vogel Weil, Jon W. Gurka, Perry D. Oldham, Stephen W. Larson, KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, CA

    Attorneys for Plaintiff.


David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, POTTER, ANDERSON & CORROON, LLP, Wilmington, DE

Alan M. Grimaldi, Ann Marie Duffy, Clinton H. Brannon, Mark W. Ryan, Michael E. Lackey, Jr., Adam L. Hudes, Brian K. Andrea, Cody I. Gillians, MAYER BROWN, LLP, Washington, DC

Brian A. Rosenthal, MAYER BROWN, LLP, New York, NY

Steven Yovits, MAYER BROWN, LLP, Chicago, IL

William C. Rooklidge, Casey J. McCracken, GIBSON DUNN & CRUTCHER, LLP, Irvine, CA

    Attorneys for Defendants.

## **MEMORANDUM OPINION**

October 31, 2016
Wilmington, Delaware

UNSEALED ON
NOVEMBER 8, 2016



**STARK, U.S. District Judge:**

Pending before the Court are Plaintiff Masimo Corporation's ("Masimo" or "Plaintiff") Motion for Summary Judgment (C.A. No. 09-80-LPS D.I. 1226);[1] Masimo's Motions to Exclude Portions of the Testimony of Michael Keeley, Joseph Dyro, and Bryan Bergeron (*id.*); Defendants Philips Electronics North America Corporation's and Philips Medizin Systeme Böblingen GMBH's ("Philips" or "Defendants") Cross-Motion for Summary Judgment (D.I. 1241); and Philips' Motions to Preclude Certain Expert Testimony of Dr. Shah, Dr. Madisetti, and Mr. Wagner (D.I. 1232). For the reasons stated below, all of the motions will be granted in part and denied in part.

## I. BACKGROUND

Masimo asserts 14 claims of the four patents-in-suit against Philips. (*See* D.I. 1241 at 2) The patents-in-suit are U.S. Patent Nos. 6,157,850 ("'850 patent"); 7,509,154 ("'154 patent"); 8,019,400 ("'400 patent"); and 7,530,949 ("'949 patent"). (*See id.*) The '850, '154, and '400 patents claim "various saturation and pulse rate algorithms." (*Id.*) The '949 patent claims a "patient monitoring system . . . that includes a portable monitoring device and a docking station." (D.I. 1226 at 3) Masimo accuses Philips' Fourier Artifact Suppression Technology ("FAST") algorithm of infringing the '850, '154, and '400 patents, and accuses Philips' MMS X2 monitors of infringing the '949 patent. (*See* D.I. 1241 at 2-3)

On June 27, 2016, Masimo moved for partial summary judgment with respect to the '949 patent. (*See* D.I. 1226) Specifically, Masimo seeks partial summary judgment that Philips infringes two claims of the '949 patent; that the '949 patent is not invalid as anticipated; and that

---

[1]Unless otherwise noted, all citations to the docket are to C.A. No. 09-80-LPS.

Masimo is entitled to lost profits for convoyed sales. (*See id.*)

On the same day, Philips filed its cross-motion for summary judgment. (*See* D.I. 1241) In its motion, Philips seeks summary judgment that it does not infringe the '850, '154, and '400 patents; that it does not willfully infringe the '850 and '400 patents; and that the '949 and '400 patents are invalid. (*See id.*) Philips also seeks summary judgment to preclude lost profits damages for any infringement of the '850 and '400 patents and to preclude lost profits damages on convoyed sales. (*See id.*)

Lastly, and also on June 27, 2016, Masimo and Philips each filed *Daubert* motions relating to each other's experts. (*See* D.I. 1226; D.I. 1232)

Collectively, the parties filed a total of 230 pages of briefing in relation to these motions. The Court heard two-and-a-half hours of oral argument on September 8, 2016. (*See* Transcript ("Tr.")) Each motion consists of various subparts, most of which require separate analysis – a task to which the Court turns its attention below.

## II.    LEGAL STANDARDS

### A.    *Daubert* Motions to Exclude

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the

2

principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

**B.      Summary Judgment**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

3

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

that party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue" (internal quotation marks

omitted)). The "mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment;" a factual dispute is

genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a

scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a

motion for summary judgment; there must be "evidence on which the jury could reasonably find"

for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

### A.   *Daubert* Motions

#### Motion 1: Masimo's Motion (D.I. 1226) to Preclude Michael Keeley's Testimony on Whether Masimo Has Satisfied the First *Panduit* Factor

Masimo argues that Dr. Keeley's testimony on whether Masimo has satisfied the first

*Panduit* factor should be excluded because Dr. Keeley "inappropriately incorporat[es]" the

4

second *Panduit* factor into his analysis. (D.I. 1226 at 32)  Specifically, Masimo argues that Dr.

Keeley does not show a lack of demand for Masimo's patented products, as required by the first

*Panduit* factor. (*See id.* at 31-32)  Instead, Dr. Keeley's opinion discusses non-infringing

substitutes and, therefore, goes to the second *Panduit* factor. (*See id.*)  In its response, Philips

"agree[s]" that Dr. Keeley will not testify on the first *Panduit* factor. (D.I. 1286 at 32)

Moreover, Philips "does not dispute" that Masimo has satisfied the first *Panduit* factor

throughout the damages period. (*Id.* at 23)

     Accordingly, since Philips has indicated that Dr. Keeley will not offer testimony on the

first *Panduit* factor, the Court will grant Masimo's motion.[2]

### Motion 2: Masimo's Motion (D.I. 1226) to Preclude Michael Keeley's Testimony Regarding the Basis-for-Customer-Demand Test

     Masimo argues that Dr. Keeley's testimony on the basis-for-customer-demand test should

be excluded because the test is not applicable to a determination as to whether Masimo is entitled

to lost profits on consumables. (*See* D.I. 1226 at 33-34)[3]  In support of its motion, Masimo cites

to several Federal Circuit cases, arguing that Dr. Keeley's opinion "departs from the Federal

Circuit's lost profits jurisprudence." (*Id.* at 34 (emphasis omitted))

     Philips responds that the basis-for-customer-demand test is part of "the correct legal

standard" for assessing whether to award lost profits on consumables, citing to Federal Circuit

---

    [2]For clarity, throughout this opinion when the Court states that it will grant or deny a "motion" the statement is limited to the particular portion of the motion being discussed in the particular section of the opinion.

    [3]Philips argues that Masimo must satisfy a two-part test to obtain lost profits on consumables: the basis-for-customer-demand test and the functional-unit test. (*See* D.I. 1286 at 24)  Masimo responds that it need only satisfy the functional-unit test. (*See* D.I. 1226 at 33)

case law on this point. (D.I. 1286 at 31)  In its reply brief, Masimo distinguishes Philips' cases and notes that the Court's jury instructions in an earlier phase of this litigation (i.e., in connection with trial held in September, 2014 ("*Masimo I*")),[4] did not require Masimo to satisfy the basis-for-customer-demand test in order to prove lost profits on consumables. (*See* D.I. 1300 at 15)  At oral argument, Masimo explained that Philips "never disputed" the Court's jury instructions in *Masimo I*, also pointing out that the Court's jury instructions there were consistent with several model jury instructions on lost profits. (*See* Tr. at 84-85; D.I. 1301-2 Ex. 59 at 117)

The Court agrees with Masimo that Dr. Keeley's testimony on the basis-for-customer-demand test is inconsistent with the jury instructions in *Masimo I*. (*See* D.I. 908 at 58)  The relevant jury instruction in *Masimo I* did not require Masimo to satisfy the basis-for-customer-demand test to recover lost profits on consumables.  Instead, the jury instruction provided that Masimo need only show that its consumables are part of a functional unit along with its pulse oximetry sensors and cables. (*See id.*)  Moreover, Philips never contested the Court's jury instructions in *Masimo I* and has not illustrated how the law or the facts have changed since that time. (*See* D.I. 1300 at 15)

The Court believes its instruction in *Masimo I* correctly stated the law.  For this reason, and in order to avoid potential inconsistency between *Masimo I* and the forthcoming trial, the jury at the forthcoming trial will be given the same instruction with respect to lost profits.  It follows that the portions of Dr. Keeley's expert opinions that rely on the basis-for-customer-

---

[4]The *Masimo I* trial involved (among other things) Masimo's claim for damages for Philips' infringement of Masimo's '222 and '984 patents, as well as Philips' contentions that these patents were invalid. (*See* D.I. 1226 at 2)  The jury awarded Masimo in excess of $466 million. (*See* D.I. 912 at 5)  On post-trial motions, the Court upheld the jury's verdict. (*See* D.I. 997)

demand test must be excluded.  Dr. Keeley will not be permitted to present testimony applying

the basis-for-customer-demand test at trial.

Accordingly, the Court will grant Masimo's motion.

### Motion 3: Masimo's Motion (D.I. 1226) to Preclude Michael Keeley's Testimony on the Functional-Unit Test

Masimo argues that Dr. Keeley's testimony on the functional-unit test should be excluded

because "there is no genuine dispute" that Masimo's consumables "function together as a single

assembly to achieve a central purpose of the patented invention." (D.I. 1226 at 27)  Philips

responds that Masimo's pulse oximeters are "intentionally designed" to work with only

Masimo's consumables.  (D.I. 1286 at 30)  Therefore, according to Philips, Masimo's pulse

oximeters and consumables are sold together "only for reasons of financial gain and business

advantage," and any damages on Masimo's consumables would contravene Federal Circuit case

law, which prohibits lost profits for any "patented apparatus and convoyed product . . . 'sold

together merely for . . . business advantage.'" (*Id.* (quoting *Warsaw Orthopedic, Inc. v.

NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015), *vacated on other grounds sub nom.

Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016)))  In its reply brief,

Masimo characterizes Philips' arguments as "antitrust allegations" (D.I. 1300 at 23) because

Philips hypothesizes that Masimo's lost consumables sales could be "caused by Masimo's illegal

locking and tying (and not the alleged infringement)." (D.I. 1286 at 31)

To the extent that Philips seeks to introduce antitrust allegations at the forthcoming patent

trial, the Court will address any appropriate request by Masimo to limit or preclude antitrust

evidence at the appropriate time. (*See generally* C.A. No. 11-742-LPS D.I. 80 at 7)  At this time,

7

Masimo has not provided any basis for the Court to conclude that Dr. Keeley's testimony will potentially confuse the jury or be unduly prejudicial.  Therefore, the Court concludes that Dr. Keeley's proposed testimony is probative of whether Masimo can satisfy the functional-unit test and is permissible expert testimony.

Accordingly, the Court will deny Masimo's motion.

### Motion 4: Masimo's Motion (D.I. 1226) to Preclude Joseph Dyro's Testimony on the Legal Effect of the Parties' OEM Agreement

Masimo argues that Dr. Dyro's testimony on the legal effect of the parties' OEM Agreement should be excluded because Dr. Dyro's testimony relates to a legal issue and because Dr. Dyro lacks expertise in legal matters.  (*See* D.I. 1226 at 37-38)  Philips responds that Dr. Dyro "does not opine on the scope or legal effect of the 2003 OEM agreement" and, therefore, "there is no such opinion for the Court to strike."  (D.I. 1286 at 34)

As Philips has indicated that Dr. Dyro will not testify on the legal effect of the parties' OEM agreement, the Court will grant Masimo's motion.

### Motion 5: Masimo's Motion (D.I. 1226) to Preclude Bryan Bergeron's Testimony on the European Patent Office's Proceedings

Masimo argues that Dr. Bergeron's testimony on the European Patent Office's ("EPO") proceedings should be excluded because Dr. Bergeron has "no expertise in European patent law." (D.I. 1226 at 39)  Specifically, Masimo argues that Dr. Bergeron's testimony "mischaracterize[s] the EPO proceedings," as Dr. Bergeron misattributes the EPO's rejection of a claim to the written description requirement.  (*Id.* at 40)  In its response, Philips "does not dispute" that Dr. Bergeron has no expertise in European patent law, but maintains that Dr. Bergeron should be able to disclose that the EPO "agreed with [his] interpretation of what is (and is not) disclosed" in

8

Masimo's specification. (D.I. 1286 at 35)  Masimo replies that Dr. Bergeron offers an opinion "without understanding . . . European patent prosecution." (D.I. 1300 at 24)

The Court agrees with Masimo. As both sides acknowledge, Dr. Bergeron "is not qualified to opine on European patent procedure." (D.I. 1226 at 39)  Allowing Dr. Bergeron's testimony would risk introducing at trial issues concerning European patent law that would not be helpful – and would potentially be confusing – to the jury.[5]  Hence, the portions of Dr. Bergeron's testimony regarding the EPO's proceedings will be excluded, and Dr. Bergeron will not be permitted to testify regarding the EPO's proceedings.

Accordingly, the Court will grant Masimo's motion.

### Motion 6: Philips' Motion (D.I. 1232) to Preclude Nitin Shah's Testimony on the Acceptability of FAST Version 3.79

Philips moves to exclude Dr. Shah's testimony on the acceptability of FAST Version 3.79 ("FAST 3.79") on the grounds that Dr. Shah's opinions are based on three data samples that were selected by Masimo. (*See* D.I. 1232 at 2)  Because Masimo has not disclosed which data samples it provided to Dr. Shah, Philips cannot, it contends, "recreate or challenge the testing Dr. Shah witnessed." (*Id.* at 4)  Moreover, as Philips observes, Dr. Shah had no "input on which data would be shown to him." (*Id.* at 3)

Masimo counters that Dr. Shah's tests rebut an opinion given by Philips' expert "that FAST 3.79 was just as accurate as prior versions of FAST." (D.I. 1285 at 1)  According to Masimo, "[e]ven a single example of FAST 3.79 having less accurate results undermines the entire premise" of Philips' expert's opinion on this point. (*Id.*)  Masimo further insists that Dr.

---

[5]At oral argument, Philips urged the Court to consider factors pertinent to Federal Rule of Evidence 403 as part of its analysis of the parties' *Daubert* motions. (*See* Tr. at 38)

Shah "personally observed Philips' monitors . . . operating on actual patient signal data in real

time" during testing and "was not spoon-fed client-prepared or lawyer-orchestrated facts." (*Id.* at

3)

The admissibility of Dr. Shah's testimony does not depend on Dr. Shah having analyzed

every possible data sample. Given the purpose of his testimony, Dr. Shah need not have tested a

wide range of data samples as long as he can show "a single example of FAST 3.79 having less

accurate results" than previous versions of FAST. (*Id.* at 1)  Dr. Shah's testimony is admissible

because it satisfies that criterion: Dr. Shah considered three examples, each of which arguably

rebuts Philips' position that FAST 3.79's performance is equivalent in all circumstances to the

performance of earlier versions of FAST. (*See id.* at 1-2)  Dr. Shah's testimony is sufficiently

reliable because Dr. Shah "has previously done comparative testing on pulse oximeters" and

personally observed Philips' monitors during testing. (*Id.* at 3-4)

The Court concludes that Dr. Shah's testimony will help the jury.  The Court will deny

Philips' motion.

### Motion 7: Philips' Motion (D.I. 1232) to Preclude Vijay Madisetti's Testimony on the Acceptability of FAST Version 3.79

Philips moves to preclude Dr. Madisetti's testimony on the acceptability of FAST 3.79,

arguing that Dr. Madisetti is not "an expert in customer buying preferences for pulse oximetry

devices." (D.I. 1232 at 6)  Masimo responds that it "has no intent to present such opinions" from

Dr. Madisetti, although adding that Dr. Madisetti should not be "precluded from testifying about

the technical performance of FAST 3.79."[6]  (D.I. 1285 at 5)

---

[6]To establish that Dr. Madisetti has a reliable basis on which to testify as to FAST's
technical performance, Masimo has filed a Motion for Leave to File Madisetti's Supplemental

Accordingly, since the parties agree that Dr. Madisetti will not be testifying about customer buying preferences for pulse oximetry devices, the Court will grant Philips' motion.

### Motion 8: Philips' Motion (D.I. 1232) to Preclude Michael Wagner's Testimony Regarding a Reasonable Royalty for the '949 Patent

Philips argues that Mr. Wagner's testimony regarding a reasonable royalty for the '949 patent should be excluded because Mr. Wagner "fails to apportion" royalties to the asserted claims of the '949 patent, and because Mr. Wagner "fails to use any discernable methodology" to calculate a reasonable royalty rate. (D.I. 1232 at 7)  Specifically, Philips argues that Mr. Wagner bases his opinion on the value of all dual-mode functionality, not just "the particular type of dual-mode functionality covered by the asserted claims" of the '949 patent.  (*Id.* at 7-8)

Masimo counters that Philips' proposed alternatives to Masimo's patented dual-mode functionality "were not acceptable" as non-infringing alternatives.  (D.I. 1285 at 6)  Masimo also defends Mr. Wagner's methodology, noting that "[t]he Federal Circuit has approved of [Mr. Wagner's] analyses" in other litigation and that his methodology "ha[s] thoroughly 'been subjected to peer review and publication.'"  (*Id.* at 7-8 (quoting *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1117 (W.D. Wash. 2012)))

Expert testimony may be admissible under Rule 702 if there are "good grounds" for the

---

Expert Report.  (*See* D.I. 1314 at 1-2)  Philips has characterized Masimo's motion as "a sur-reply brief that should have been part of Masimo's opposition to Philips' *Daubert* motion."  (D.I. 1316 at 2)  As Masimo notes, however, Philips' Motion to Strike Dr. Madisetti's Supplemental Expert Report was still pending before the Court when Masimo's answering brief was due.  (*See* D.I. 1314 at 1)  More substantively, Dr. Madisetti's proposed supplemental expert report "relate[s] to whether certain versions and modifications of [FAST] constitute acceptable non-infringing alternatives, a critical issue which impacts the reasonable royalty damages sought by [Masimo]."  (D.I. 1299 at 3)  Because the supplemental expert report will be helpful to the fact finder when calculating damages, the Court will grant Masimo's Motion for Leave (D.I. 1314).

expert's conclusion, "even if . . . 'there are better grounds for some alternative conclusion' and . . . there are some flaws in the [expert's] methods." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152-53 (3d Cir. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).  Here, Mr. Wagner's conclusion is based on a sufficiently reliable, peer-reviewed methodology. (*See* D.I. 1285 at 7)  Additionally, Mr. Wagner's analysis is of a type widely used in royalty cases, and the Federal Circuit has approved of Mr. Wagner's methodology. (*See id.* at 7-8)

Therefore, the Court concludes that Mr. Wagner has relied on good grounds to arrive at a reasonable royalty rate.  Accordingly, the Court will deny Philips' motion.

**B.      Summary Judgment Motions**

**Motion 9: Masimo's Motion for Summary Judgment ("MSJ") (D.I. 1226) of Infringement of Claims 4 and 10 of the '949 Patent**

Masimo argues that the Court should grant partial summary judgment that "Philips' X2 portable monitor . . . used in combination with the Philips IntelliVue MP20, MP30, MP40, MP50, MP70, MP90, MX600, MX700, and MX 800 bedside monitors" ("IntelliVue Monitors") infringe claims 4 and 10 of Masimo's '949 patent. (D.I. 1226 at 4)  In support of its motion, Masimo notes that one of Philips' experts, Dr. Dyro,[9] "agreed" that the accused IntelliVue Monitors infringe claim 4 and offered no opinion on whether the accused IntelliVue Monitors infringe claim 10. (*Id.* at 6, 8)  Masimo also relies on its own technical expert, Dr. McNames, who "opine[d] that the accused devices infringe [c]laim 10." (*Id.* at 7)

The Court concludes that there is no genuine dispute of material fact that Philips' accused IntelliVue Monitors infringe claim 4 and that Philips' accused products with pre-2011 versions

of FAST infringe claim 10. Philips' own expert, Dr. Dyro, opined that the accused IntelliVue

Monitors infringe claim 4. (*See id.* at 6) Although Philips also provided expert testimony that

Masimo's expert, Dr. McNames, "has not established infringement of [c]laim 10," Philips'

expert had no opinion on whether Philips' accused products infringe claim 10. (*Id.* at 7-8)

Philips has not provided evidence rebutting Masimo's evidence of infringement. Accordingly,

the Court will grant Masimo's motion that Philips' accused products infringe claim 4 and that

Philips' accused products with pre-2011 versions of FAST infringe claim 10.

      Philips' opposition to these conclusions includes a contention that Masimo is effectively

construing "docking station" to be a singular device,[7] despite the fact that "the Court has already

construed the term 'docking station' to allow for a multi-component device." (D.I. 1286 at 4)  In

Philips' view, Masimo's new construction would mean none of the accused IntelliVue Monitors

infringe claims 4 and 10, because each monitor needs an additional device or component to meet

the limitations of these claims. (*See id.* at 6-10)

      The Court agrees with Masimo that its infringement case is not based on a "re-

construction" of the Court's construction of "docking station." (*See* D.I. 1300 at 1)  The Court's

construction of "docking station" is "an apparatus that mechanically accepts and removably

retains a portable physiological measurement device." (D.I. 750 at 41-42 (internal quotation

marks omitted))  Masimo accepts and applies this construction; further, in its reply brief, Masimo

expressly states that it accepts that a "docking station" need not be a singular device. (*See* D.I.

1300 at 1)  The Court perceives nothing in Philips' characterization of Masimo's contentions to

---

[7]Philips speculates that Masimo offers its purported "new" construction in order "to
distinguish prior art" – specifically, the Nellcor Symphony System – to avoid invalidity. (D.I.
1286 at 4)

provide a meritorious basis for denying Masimo's motion for summary judgment of infringement.

Philips next contends that it had "an implied license to sell the MMS X2 under Masimo's '949 patent." (D.I. 1286 at 13)  Masimo counters that Philips' license does not give rise to an implied license because Philips' license "permit[ted] Philips to engage in [only] certain specified conduct." (D.I. 1300 at 5)  Masimo also notes that all of Philips' documents supporting an implied license predate the issuance of the '949 patent. (*See id.* at 6)

The Court concludes that the record does not support Philips' assertion that it had an implied license to sell the MMS X2. An implied license will not be found where the applicable licensing agreement has an "express disclaimer" limiting the scope of the license. *See LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1369 (Fed. Cir. 2006), *rev'd on other grounds sub nom. Quanta Comp., Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).  Masimo's license agreeement with Philips contains such an express disclaimer, stating that "[n]othing in this agreement will be considered a license from either [p]arty . . . , except as expressly provided in the license grants." (D.I. 1300 at 5-6 (emphasis and internal quotation marks omitted))  The applicable licensing agreement does not give rise to an implied license to Philips to sell the MMS X2 under the '949 patent.

Finally, Philips contends that, "[i]ndependent of the construction of . . . 'docking station,'" summary judgment should be denied for post-2011 versions of Philips' FAST X2 products because "there is an issue of fact as to whether" such products come within the scope of claim 10. (D.I. 1286 at 10)

This argument does not go to the ***pre-2011*** versions of FAST; and the Court has not been

14

persuaded by Philips' other bases for opposing summary judgment. Hence, the Court will (as noted above) grant Masimo summary judgment with respect to the pre-2011 versions of FAST.

However, with respect to the ***post-2011*** versions of FAST, the Court agrees with Philips that genuine disputes of material fact preclude an award of summary judgment. Philips points to evidence that "there have been several revisions to the FAST algorithm since 2011" and observes that Masimo previously argued that "even minor revisions to the FAST algorithm make substantial changes in its performance." (*Id.* at 11) Philips also argues that "Masimo offers no evidence that . . . post-2011 revisions of FAST meet the limitations of claim 10." (*Id.*) Philips is correct that summary judgment of infringement is not warranted with respect to claim 10 of the '949 patent as applied to post-2011 versions of FAST. For example, the parties disagree as to whether the post-2011 versions of FAST "changed motion performance." (D.I. 1300 at 3; *see also* D.I. 1286 at 11) The Court will deny Masimo's motion that Philips' accused products with post-2011 versions of FAST infringe claim 10.

Accordingly, the Court will grant in part and deny in part Masimo's motion for summary judgment of infringement of the '949 patent. Specifically, the Court will grant the motion with respect to infringement of claim 4 by Philips' Intellivue Monitors using pre- and post-2011 versions of FAST, will grant the motion with respect to infringement of claim 10 by products using pre-2011 versions of FAST, and will deny the motion with respect to infringement of claim 10 by products using post-2011 versions of FAST.

### Motion 10: Masimo's MSJ (D.I. 1226) that the Nellcor N-250 System Is Not Prior Art to the '949 patent

Masimo seeks summary judgment that the Nellcor-250 System ("N-250" or "N-250

system") is not prior art to the '949 patent based on Philips' purported failure to corroborate any alleged prior public use or sale of the N-250 system. (*See* D.I. 1226 at 11-14)  For purposes of 35 U.S.C. § 102(b), invalidating prior art must be shown, by clear and convincing evidence, to have been "in public use or on sale in this country, more than one year prior to the date" of the pertinent patent application, here the application that resulted in Masimo's '949 patent.  A party may satisfy this burden with testimony of a prior public use or sale that is corroborated by documentary evidence, "preferably . . . physical records that were made contemporaneously with the alleged prior invention." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002).  Uncorroborated testimony "alone cannot surmount the hurdle that the clear and convincing evidence standard imposes in proving patent invalidity." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1370 (Fed. Cir. 1999).

Here, Philips has offered documentary and physical evidence that could be found by a reasonable factfinder to corroborate a prior public use or sale of the N-250 system.  The record contains witness testimony that may be found to be corroborated by service manuals, an FDA submission, an SEC filing, an advertisement, a patent, and a physical example of the N-250. (*See* D.I. 1286 at 16-18 (citing record evidence))  "[D]ocumentary evidence, created around the time [a] machine was developed, provides strong support" for a witness's testimony establishing prior art. *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs. Inc*, 628 F.3d 1359, 1374 (Fed. Cir. 2010) (affirming finding of prior art based on testimony corroborated by contract and operation manual made contemporaneously with alleged prior art invention).  Hence, the record contains evidence from which a reasonable jury could find that the N-250 is prior art to the '949 patent.

Accordingly, the Court will deny Masimo's motion.

16

### Motion 11: Masimo's MSJ (D.I. 1226) that Masimo is Entitled to Lost Profits Through March 7, 2011 for the '850 and '154 Patents

Philips agrees that Masimo is entitled to lost profits through March 7, 2011 for the '850 and '154 patents. (*See* D.I. 1286 at 19) Moreover, the parties have agreed that they will not relitigate the amount of lost profits through March 7, 2011, an issue that was resolved in connection with *Masimo I.* (*See* D.I. 1300 at 14; Tr. at 82) Therefore, the Court will grant Masimo's motion.

### Motion 12: Masimo's MSJ (D.I. 1226) that Masimo Satisfies the First and Third *Panduit* Factors Throughout the Damages Period

Philips agrees that Masimo satisfies the first and third *Panduit* factors throughout the damages period, even after March 7, 2011. (*See* D.I. 1286 at 23-24) Thus, the Court will grant Masimo's motion.

### Motion 13: Masimo's MSJ (D.I. 1226) and Philips' MSJ (D.I. 1241) Regarding Lost Profits on Sales of Consumables

Masimo argues that the Court should grant summary judgment that it is entitled to lost profits on sales of consumables.[8] (*See* D.I. 1226 at 25) In its motion, Masimo argues that it need only satisfy the functional-unit test to obtain lost profits on convoyed sales and further argues that it does satisfy this test. (*See id.* at 26-27)

Philips responds that Masimo's use of the functional-unit test as "the sole test" for lost profits on convoyed sales "is wrong." (D.I. 1286 at 24) Philips argues that Masimo must instead satisfy a two-part test to prove lost profits on consumables: the functional-unit test *and* the basis-

---

[8]Masimo's consumables consist of "a patented apparatus and convoyed product." (D.I. 1286 at 30) Therefore, the terms "consumables" and "convoyed sales" are used interchangeably in this section.

for-customer-demand test. (*See id.*) Philips also argues that Masimo does not satisfy either of

these tests. (*See id.* at 28-31) Specifically, with respect to the functional-unit test, Philips

provides testimony that Masimo's pulse oximeters are sold as a functional unit "only for reasons

of financial gain and business advantage – and not for any functional or technical reason." (*Id.* at

30) Thus, according to Philips, any lost profits damages on Masimo's consumables would

contravene Federal Circuit law, which holds that "a patented apparatus and convoyed product

'[b]eing sold together merely for . . . business advantage is not enough [to form a functional

unit].'" (*Id.* (quoting *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir.

2015), *vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive,*

*Inc.*, 136 S. Ct. 893 (2016))) With respect to the basis-for-customer-demand test, Philips

contends that the record does not permit a reasonable factfinder to find that "Masimo's

inventions are . . . the basis for customer demand for pulse oximeters." (*Id.* at 28)

      Philips makes its arguments both in opposition to Masimo's motion for summary

judgment and in its own cross-motion. That is, Philips also moves for summary judgment that

Masimo is ***not*** entitled to lost profits on consumables. (*See* D.I. 1241 at 40-41) The Court

agrees with the parties that Masimo's motion and Philips' cross-motion are "related." (D.I. 1317

at 1) Hence, the Court will address them together.

      As previously discussed in connection with the parties' *Daubert* motions, the Court's jury

instructions in *Masimo I* did not require Masimo to satisfy the basis-for-customer-demand test in

order to obtain lost profits on its consumables. (*See* D.I. 1300 at 15) Instead, the jury instruction

provided that Masimo needed only to show that its consumables were a functional unit. (*See* D.I.

908 at 58) Thus, for the same reasons the Court has already granted Masimo's motion to

preclude Dr. Keeley's testimony regarding the basis-for-consumer-demand test (*see supra*) – that is, because the law does not support Philips' position,[9] the Court did not require the *Masimo I* jury to find Masimo satisfied the basis-for-consumer demand test, Philips did not contest the *Masimo I* instruction, and altering that instruction to require satisfaction of the basis-for-consumer-demand test in the forthcoming trial would give rise to a substantial risk of (unfairly) inconsistent verdicts – the Court will not require Masimo to satisfy the basis-for-customer-demand test in the current phase of this litigation.

Consistent with the agreed-upon jury instruction used in *Masimo I*, in order to obtain lost profits on consumables, Masimo must satisfy the functional-unit test. Relating to this test, Masimo argues that its "pulse oximetry sensors, cables, and monitors function together as a single assembly to achieve a central purpose of the patented invention." (D.I. 1226 at 27) Philips refutes Masimo's argument, explaining that "Masimo's documents indicate that it is only for reasons of financial gain and business advantage – and not for any functional or technical reason – that [Masimo] locks its pulse oximeters." (D.I. 1286 at 30) A reasonable jury could be persuaded by the evidence to resolve this issue either for Masimo or for Philips. As such, the record reveals "a genuine dispute of material fact regarding the functional relationship between a Masimo pulse oximeter and a Masimo sensor." (*Id.*)

---

[9]Among the many cases cited by Philips is *Rite-Hite Corp. v. Kelly Corp.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995) (en banc). *Rite-Hite* holds, among other things, that a non-practicing patentee may potentially recover lost profits damages. *See id.* at 1546-47. It is difficult to understand how this holding could be correct if, as Philips argues, any party seeking lost profits damages *must always* satisfy the basis-for-consumer-demand test. How can a patentee that does not sell an embodiment of its patent ever prove that the patented technology is the driver of demand for its non-existent product?

Accordingly, the Court will deny Masimo's motion.[10]

### Motion 14: Philips' MSJ (D.I. 1241) of No Literal Infringement of the '850 and '400 Patents Based on the Alternative Calculations Limitations

Philips argues that the Court should grant summary judgment that FAST "does not literally infringe the asserted claims of the '850 and '400 patents under the Court's construction of the 'parallel alternative calculation' terms." (D.I. 1241 at 6) According to the Court's construction, what has been described as the "parallel alternative calculation" limitation requires both calculators in the FAST algorithm to "receive the same input data" and further requires that the calculators' estimates "relate to the same period of time." (D.I. 1069 at 9) In Philips' view, the two calculators[11] in FAST receive different subsets of input data: one calculator uses "the most recent 8 second[s] of data" while the other uses only "the most recent 1-2 seconds of data." (D.I. 1241 at 9) Because both calculators do not use in their calculations data for identical time windows, Philips concludes that FAST does not "receive the same input data" or "produce estimates that relate to the same period of time." (*Id.* at 7) Therefore, according to Philips, "FAST does not [literally] infringe" the relevant patents. (*Id.*)

Masimo responds that the two algorithms in FAST need only receive the same signals,

---

[10]At oral argument, Philips argued that the vast majority of damages Masimo is seeking are attributable to the cables and sensors, and suggested it would be unfairly prejudicial to Philips (in addition to being legally erroneous) to ask the jury to consider this portion of Masimo's damages request. (*See* Tr. at 94) While the Court disagrees, the parties should consider (and, at an appropriate time, advise the Court of their views) whether it would promote judicial economy (by reducing the likelihood of proceedings on remand after any appeal) for the verdict sheet to require the jury to separate out the portion of any damages award attributable to cables and sensors.

[11]Like the parties, in the context of FAST the Court uses the terms "calculator" and "algorithm" interchangeably. (*See* D.I. 1241 at 7)

not the same input data. (*See* D.I. 1287 at 4)  Masimo contends that the Court noted during claim

construction that the parties agreed "the two calculators have to receive the ***same input data***" and

"each calculator receive[s] ***the same signal***," belying Philips' current distinction between "same

input data" and "same signal."  (D.I. 1069 at 7 (internal quotation marks omitted; emphasis

added); *see also* Tr. at 22-23; D.I. 1059 at 11 (Philips agreeing, during claim construction

hearing, that "both calculators operate on the same . . . signals"))  Masimo also refutes Philips'

argument regarding different time windows of data by noting that the Court previously held that

"the calculators do not need to rely on the same subset of input data when making their

calculations."  (D.I. 1069 at 9)  Moreover, Masimo continues, even if Philips' view is correct, the

parties' experts disagree as to "what input data each calculator receives," making summary

judgment inappropriate.  (D.I. 1287 at 7)  That is, Masimo's expert opines that both calculators in

FAST "receive the same input data" and use different subsets of input data in their calculations.

(*Id.* at 6)  By contrast, Philips' expert opines that each calculator in FAST receives different data:

one calculator "receives the most recent 8 seconds of data" while another "receives the most

recent 1-2 seconds of data."  (*Id.* (emphasis omitted))

     In the Court's view, the record presents genuine issues of material fact precluding an

award of summary judgment of no literal infringement.  For instance, the parties provide

conflicting expert testimony as to whether both of FAST's calculators must rely on data from

identical time windows.  Masimo's expert opines that they need not, while Philips' expert

disagrees.  (*Compare* D.I. 1241 at 6-10 *with* D.I. 1287 at 6-7)  Both experts claim to be applying

the Court's constructions.  (*See* D.I. 1241 at 7; D.I. 1287 at 5-6)  The Court disagrees with

Philips' contention that the Court has already determined (in its opinion explaining its

21

construction) that, as a matter of law, the two estimates "must relate to the same period of time" in some manner other than the way Masimo's expert opines that they do "relate to the same period of time." (*See* D.I. 1069 at 8-9; D.I. 1240-6 Ex. 12 at C-21 (Masimo's expert Dr. Madisetti's opinion)) To the contrary, on the present record, the Court does not find resolution of the parties' dispute amenable to summary judgment.

Accordingly, the Court will deny Philips' motion with respect to literal infringement.

### Motion 15: Philips' MSJ (D.I. 1241) that Masimo Is Precluded from Relying on the Doctrine of Equivalents to Establish Infringement of the '850 and '400 Patents Based on the Alternative Calculations Limitations

Philips argues that the Court should grant summary judgment precluding Masimo from relying on the doctrine of equivalents to establish infringement of the '850 and '400 patents. (*See* D.I. 1241 at 10-12) According to Philips, Masimo is estopped from relying on the doctrine of equivalents to prove infringement because Masimo added the "parallel alternative calculations" limitation in order to overcome rejections for indefiniteness and double patenting during patent prosecution. (*See id.* at 11) Although Philips' arguments in the opening and reply briefs primarily focus on the '850 patent, Philips stated at oral argument that its contentions also apply to the '400 patent, as both patents' "limitations have precisely the same meaning." (Tr. at 34)

Masimo counters that prosecution history estoppel does not apply because Philips "never shows [that] Masimo made a narrowing amendment" with respect to either patent. (D.I. 1287 at 8) With respect to the '400 patent, Masimo further observes that "Philips points to no amendment at all" and "never explains how the amendments to the '850 patent relate to the claims of the '400 patent, as the law requires." (*Id.* at 9)

22

"Estoppel arises when an amendment is made to secure the patent, and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). In cases where the reason for an amendment is ambiguous, a district court should "proceed[] under the presumption that prosecution history estoppel applies." *EMD Millipore Corp. v. All Pure Techs., Inc.*, 768 F.3d 1196, 1204 (Fed. Cir. 2014). A patentee "then ha[s] the burden to rebut the presumption through [establishing] one of . . . three enumerated exceptions" to estoppel. *Id.*; *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1312-13 (Fed. Cir. 2006) (describing "what must be shown by a patentee" to rebut presumption of estoppel). A patent's prosecution history does not limit the claims of a related patent when "the specific limitation added in the claims of an earlier issued patent is not present in the claims of the later issued patent[]." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1322 (Fed. Cir. 1999).

Here, the reasons for and impact of Masimo's amendments are ambiguous. Therefore, the Court will "proceed[] under the presumption that prosecution history estoppel applies," and Masimo must rebut that presumption by showing that an exception to estoppel applies. *EMD Millipore Corp.*, 768 F.3d at 1204.

Masimo has not rebutted the presumption with respect to two limitations of claim 1 of the '850 patent: "generating a plurality" and "said signals." With respect to these limitations, Masimo contends that Philips has failed to show that the amendments to these claim terms narrowed the scope of the claims. (*See* D.I. 1287 at 9) But it is Masimo's burden to rebut the presumption of prosecution history estoppel and it has not done so with respect to the "generating a plurality" and "said signals" limitations. Since Masimo has not "rebut[ted] the *Festo*

23

presumption, prosecution history estoppel prevents the doctrine of equivalents from being

applied" to the "generating a plurality" and "said signals" terms in claim 1 of the '850 patent.

*Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 563, 568 (D. Del. 2006)

By contrast, Masimo has rebutted the presumption with respect to the "correlates"

limitation in claim 1 and the "comprising" limitation in claim 25, neither of which appear to

relate to "a disputed limitation," as they do not relate to the parallel alternative calculations

limitation at issue. (D.I. 1287 at 9)  Therefore, while Masimo is estopped from alleging

infringement under the doctrine of equivalents to satisfy the "generating a plurality" and "said

signals" limitations of claim 1, Masimo is not estopped from relying on the doctrine of

equivalents with respect to the "correlates" limitation in claim 1 and the "comprising" limitation

in claim 25.  Accordingly, the Court will grant in part and deny in part Philips' motion with

respect to the doctrine of equivalents and the '850 patent.

Turning to the '400 patent, Masimo has rebutted the presumption of estoppel by

demonstrating that the '400 patent has different limitations than the '850 patent.  As noted above,

a patent's prosecution history does not limit the claims of a related patent when "the specific

limitation added in the claims of an earlier issued patent is not present in the claims of the later

issued patent[]." *Al-Site Corp.*, 174 F.3d at 1322.  Although the '400 patent "is a continuation

of" the '850 patent, the '400 patent does not contain the specific limitations that were added in

the '850 patent – i.e., the "generating a plurality" and "said signals" limitations.  (*See* C.A. No.

11-742-LPS D.I. 7-1 Ex. 2 at 128, 159-60)  Therefore, even though the limitations were added to

overcome concerns regarding patentability (*see* D.I. 1240-3 Ex. 6 at 55-56), the limitations of the

'850 patent "are . . . not relevant to determining the scope of the claims" of the '400 patent.  *Al-*

*Site Corp.*, 174 F.3d at 1323.

At oral argument, Philips acknowledged that the '850 and '400 patents contain "different language," but noted that "the Court has construed . . . [both patents'] limitations [to] have precisely the same meaning." (Tr. at 34)  On this basis, Philips seeks a determination that Masimo has failed to rebut the presumption of prosecution history estoppel in connection with the '400 patent. (*See id.*)  However, the Federal Circuit does not look to courts' claim construction rulings to determine whether the same limitations are present in related patents for purposes of prosecution history estoppel. *See Al-Site Corp.*, 174 F.3d at 1323; *see also Depuy Orthopaedics, Inc. v. Androphy*, 2000 WL 297814, at *8 (N.D. Ill. Jan. 19, 2000) (stating that courts look to language of patent claims, not language of claim constructions, to determine whether "the prosecution history of a related patent . . . limit[s] the claims of another related patent.").  Accordingly, the Court will deny Philips' motion with respect to the '400 patent.

### Motion 16: Philips' MSJ (D.I. 1241) of No Literal Infringement of the "Analyzing" / "Analysis Module" Limitations of Claims 1 and 25 of the '850 Patent

Philips argues that the Court should grant summary judgment that FAST does not literally infringe the '850 patent because FAST does not meet the limitations of claims 1 and 25. (*See* D.I. 1241 at 13)  Claims 1 and 25 require the algorithm to analyze "two or more possible indications (determined by different techniques) after the possible indications are determined." (*Id.* (emphasis omitted))  In Philips' view, Dr. Madisetti, Masimo's expert, "unequivocally agreed that the analysis must be performed after both values are calculated." (*Id.*)  According to Dr. Madisetti, FAST does not analyze the values calculated by each algorithm to determine a resulting value. Rather, "the value used as [FAST's] resulting value is based entirely on

25

availability." (*Id.* at 14)  Hence, in Philips' view, FAST does not literally infringe claims 1 and 25 of the '850 patent.

Masimo disagrees with Philips' characterization of Dr. Madisetti's testimony.  While Philips contends that Dr. Madisetti "unequivocally agreed that [all] the analysis must be performed after both values are calculated" (*id.* at 11), in Masimo's view Dr. Madisetti instead only "said 'at least some analysis' must occur after both values are calculated" (D.I. 1287 at 11 (quoting D.I. 1240-8 Ex. 16 at 160)).  On Masimo's telling, Dr. Madisetti opined that the analysis within each of the two FAST algorithms, combined with "the analysis to use one or the other 'once both of them have completed their analysis,'" satisfies the claims' limitations.  (*Id.* (quoting D.I. 1288-24 Ex. 72 at 253-54))  Masimo also disputes that FAST's "resulting value is based entirely upon availability" (D.I. 1241 at 14), pointing to evidence that FAST may average possible values from both algorithms when it transitions from one algorithm to the other (*see* D.I. 1287 at 12).  To Masimo, FAST's analysis occurs "after [FAST] determines possible values from both techniques."  (*Id.* (emphasis omitted))

The record could reasonably be found to support both sides' positions, at least with respect to FAST's transition mode.  Philips argues that FAST's transition mode does not involve "analyzing two values" and does not account for the "outputs of [FAST's] two algorithms."  (Tr. at 78-79)  By contrast, Masimo argues that the transition mode performs analysis and that FAST's analysis includes values from both algorithms.  (*See id.* at 67-68)  Both sides cite evidence for their contentions (*compare* D.I. 1241 at 13-15 *with* D.I. 1287 at 10-12); evidence which, if believed, could support a finding for Philips or Masimo.  Therefore, the record demonstrates genuine disputes of material fact with respect to how FAST operates and whether

26

FAST meets the limitations of claims 1 and 25.

Accordingly, the Court will deny Philips' motion.

### Motion 17: Philips' MSJ (D.I. 1241) that Masimo Is Precluded From Relying on the Doctrine of Equivalents to Establish Infringement of Claims 1 and 25 of the '850 Patent

Philips argues that the Court should grant summary judgment precluding Masimo from

relying on the doctrine of equivalents to establish infringement of claims 1 and 25 of the '850

patent. In support of its motion, Philips rebuts Masimo's expert testimony regarding the doctrine

of equivalents and cross-references previous arguments it made with respect to the "parallel

alternative calculations" limitation. (*See* D.I. 1241 at 15) Masimo counters that "Philips never

explains how any particular amendment relates to when the [pertinent] analysis must occur."

(D.I. 1287 at 13) At oral argument, Masimo further emphasized that Philips "never point[s] to

which amendments give rise to . . . estoppel." (Tr. at 74)

The Court agrees with Masimo. "[T]he doctrine of equivalents must be applied to

individual elements of [a] claim." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S.

17, 29 (1997). Therefore, a party alleging prosecution history estoppel must point to specific

elements of a claim that were narrowed during prosecution. Here, Philips has not identified

specific elements that allegedly give rise to prosecution history estoppel. Moreover, unlike the

arguments it made with respect to the "parallel alternative calculations" limitation, Philips does

not cite to specific claims that were initially rejected and then subsequently amended during

prosecution; nor does Philips explain how those claims relate to the limitations now at issue.

(*Compare* D.I. 1241 at 11-12 *with id.* at 15) Instead, Philips references the arguments it made

with respect to the parallel alternative calculations limitation, but fails to explain which particular

27

amendment "relates to when the analysis must occur in the analyzing step of [c]laim 1." (D.I. 1287 at 13)

Accordingly, the Court will deny Philips' motion.

### Motion 18: Philips' MSJ (D.I. 1241) of Non-Infringement of Claim 23 of the '850 Patent

Philips argues that the Court should grant summary judgment that it does not infringe Claim 23 of the '850 patent because the claim is "circular" and, therefore, "impossible to meet." (D.I. 1241 at 16)  Masimo counters that the claim is not circular.  (*See* D.I. 1287 at 14)  Masimo further explains how FAST could be found to meet the limitations of claim 23.  (*See id.* at 14-15)

The Court concludes that the parties have presented genuine disputes of material fact, including whether the claim is circular and whether FAST meets the claim's limitations. Accordingly, the Court will deny Philips' motion.

### Motion 19: Philips' MSJ (D.I. 1241) of Non-Infringement of the '400 Patent

Philips argues that the Court should grant summary judgment that it does not infringe the asserted claims of the '400 patent because FAST does not utilize either of the two algorithms "to determine resulting values after the preliminary values have been calculated, as the claims require." (D.I. 1241 at 17 (emphasis omitted))  At oral argument, Philips added that it was seeking summary judgment of non-infringement under the doctrine of equivalents, given that Masimo "made no argument in its briefs whatsoever about [the] [d]octrine of [e]quivalents." (Tr. at 109)

Masimo responds that "the claims do not require that the resulting values be determined after the preliminary values" and, therefore, "should not be interpreted to require" any order to

the recited steps. (D.I. 1287 at 15 (emphasis omitted))  Masimo further argues that FAST utilizes

at least one of the two algorithms to determine resulting values.  (*See id.* at 16-17)  With respect

to the doctrine of equivalents, Masimo noted at oral argument that Philips did not brief the issue

and, hence, could not meet its burden as the moving party.  (*See* Tr. at 110)

The record demonstrates genuine disputes as to whether FAST literally infringes the

asserted claims of the '400 patent.  The record contains evidence from which a reasonable

factfinder could find, as Philips proposes, that the resulting value depends on which algorithm

makes a result available.  (*See id.* at 108-09)  By contrast, the record also contains evidence from

which a reasonable factfinder could instead find that both algorithms determine resulting values

and the resulting value does not depend only on availability, as Masimo proposes.  (*See* D.I. 1287

at 16-17)  Given the presence of at least this genuine dispute of material fact, the Court will deny

Philips' motion with respect to literal infringement.

Turning to doctrine of equivalents, the Court agrees with Masimo that Philips has not met

its burden as the moving party.  (*See* Tr. at 110, 114)  Thus, Masimo's failure to address the

doctrine of equivalents in its briefing does not entitle Philips to summary judgment on that issue.

Accordingly, the Court will deny Philips' motion with respect to the doctrine of equivalents.

### Motion 20: Philips' MSJ (D.I. 1241) that Masimo Is Precluded from Asserting the Doctrine of Equivalents for the "Adjustably Smoothing" Limitations of the '400 Patent

Philips argues that the Court should grant summary judgment "that Masimo is precluded

from asserting infringement under the doctrine of equivalents" with respect to the "adjustably

smoothing" limitations of the '400 patent.  (D.I. 1241 at 19)  Masimo responds that it "does not

intend to rely on the doctrine of equivalents" to establish this limitation is met by Philips'

accused products. (D.I. 1287 at 17)  Accordingly, the Court will grant Philips' motion.

### Motion 21: Philips' MSJ (D.I. 1241) that FAST Version 3.77 Bars Lost Profits Through October 7, 2014

Philips seeks summary judgment that FAST Version 3.77 precludes lost profits through October 7, 2014. (*See* D.I. 1241 at 20; D.I. 1287 at 17-18)  Masimo opposes, arguing first that FAST Version 3.77 cannot bar lost profits through March 7, 2011 because "[t]he *Masimo I* jury determined that Philips had no acceptable, non-infringing substitutes available to it" through that date. (D.I. 1287 at 17)  Second, Masimo contends that FAST Version 3.77 cannot bar lost profits between March 7, 2011 and October, 7, 2014, the expiration date of Masimo's '154 patent. (*See id.* at 18)

In its reply brief, Philips "agrees that FAST Version 3.77 cannot preclude damages prior to March 7, 2011," narrowing the parties' dispute to the availability of lost profits damages for the period of March 7, 2011 through October 7, 2014. (D.I. 1302 at 8-9)  Philips posits that FAST Version 3.77 "can bar lost profits for that period if the '154 patent is found invalid or not infringed." (*Id.* at 9 (emphasis omitted))

Because the parties agree that FAST Version 3.77 does not bar lost profits through March 7, 2011, the Court will deny Philips' motion with respect to lost profits through March 7, 2011. Additionally, the record reveals genuine disputes of material fact with respect to the validity and infringement of the '154 patent, rendering summary judgment of no lost profits inappropriate for the period of March 7, 2011 through October 7, 2014.

Accordingly, the Court will deny Philips' motion.

### Motion 22: Philips' MSJ (D.I. 1241) that FAST Version 3.77 Bars Lost Profits From October 7, 2014 Until November 1, 2015

Philips asks the Court to grant summary judgment that FAST Version 3.77 precludes lost profits throughout the damages period because FAST Version 3.77 was available as "a non-infringing, acceptable alternative . . . throughout the [entire] damages period." (D.I. 1241 at 20)  Masimo responds that "Philips' lawyers devised FAST 3.77 for this litigation." (D.I. 1287 at 18)  And, since FAST Version 3.77 allegedly "was a legal strategy in reaction to the *Masimo I* jury verdict," Philips could not have implemented FAST Version 3.77 any earlier in the damages period, making it unavailable. (*Id.*)

The Court finds genuine disputes of material fact as to FAST Version 3.77's genesis, creating "a genuine dispute as to whether Philips would have made FAST 3.77 available any earlier than it actually did." (*Id.*)

Accordingly, the Court will deny Philips' motion.

### Motion 23: Philips' MSJ (D.I. 1241) that FAST Version 3.77 Is a Non-infringing Alternative to Masimo's '850 and '400 Patents

Philips argues that the Court should grant summary judgment that FAST Version 3.77 is a non-infringing alternative to Masimo's '850 and '400 patents. (*See* D.I. 1241 at 20)  Specifically, Philips argues that FAST Version 3.77 does not literally infringe either of these patents because both FAST algorithms do not use the same data, as required by the Court's constructions. (*See id.* at 21-22)  Philips also contends that prosecution history estoppel bars Masimo from proving infringement based on the doctrine of equivalents. (*See id.* at 22)

Masimo responds that FAST Version 3.77 does not avoid infringing the '850 and '400 patents, as both of FAST's algorithms meet the "at least some of the same sensed physiological signal data" limitation. (D.I. 1287 at 18-19 (emphasis and internal quotation marks omitted))

31

Masimo also argues against prosecution history estoppel, stating that "Philips never showed that Masimo made a narrowing amendment that would preclude the doctrine of equivalents." (*Id.*) Further, "Philips never explain[ed] how any particular amendment bore any relationship to the offset in sampling in FAST 3.77." (*Id.*)

Genuine disputes of material fact preclude granting Philips summary judgment with respect to literal infringement. Although Philips claims that FAST's algorithms do not use the same data, Masimo counters that FAST's algorithms do use the same signal data. (D.I. 1241 at 21-22; D.I. 1287 at 19)  The record contains sufficient evidence from which a reasonable jury could find for either side on this dispute. (*See, e.g.*, D.I. 1241 at 21-22; D.I. 1287 at 18-19)  The parties have genuine, material disputes with respect to how FAST operates and whether FAST meets the Court's construction of the limitations of the asserted claims of the '850 and '400 patents.

With respect to the doctrine of equivalents, the Court agrees with Masimo that Philips has not "explain[ed] how any particular amendment bore any relationship to the offset in sampling," the contested issue in this motion. (D.I. 1287 at 19)  As previously discussed, "the doctrine of equivalents must be applied to individual elements of [a] claim." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  Philips has not identified specific elements that allegedly give rise to prosecution history estoppel and has not described which amended claims relate to the limitation in question.  Instead, Philips references the arguments it made with respect to the parallel alternative calculations limitation but does not explain which particular amendment relates to the offset in sampling.

Accordingly, the Court will deny Philips' motion.

### Motion 24: Philips' MSJ (D.I. 1241) of No Willful Infringement of the '850 and '400 Patents

Philips argues that "[t]he Court should grant summary judgment of no willful infringement because Masimo has no evidence that Philips willfully infringed the '850 or '400 [p]atents." (D.I. 1241 at 22)  As both parties acknowledge, the Supreme Court articulated a new standard for willful infringement in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), overruling *Seagate*'s test for enhanced damages.  Under *Halo*'s new standard, "subjective willfulness alone – i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer' . . . – can support an award of enhanced damages." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 2016 WL 5112047, at *3 (Fed. Cir. Sept. 21, 2016) (quoting *Halo*, 136 S. Ct. at 1932; internal citation omitted).  To determine whether an accused infringer's conduct was subjectively willful, the Court must "measure[]" the accused infringer's "culpability . . . against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933.  An accused infringer's conduct may be found to amount to willful infringement if it is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Id.* at 1932.

Philips argues that Masimo cannot obtain enhanced damages under *Halo* because Philips subjectively "believed . . . that it does not infringe the '850 [p]atent" and "did not even know about the '400 [p]atent until it was sued in 2011." (D.I. 1241 at 23)  Therefore, in Philips' view, "it had a good faith belief that it did not, and . . . does not, infringe" the '850 and '400 patents. (*Id.* at 26)

Masimo answers by citing testimony it contends shows that "Philips always knew it was

infringing Masimo's patents and . . . engaged in extraordinary efforts to hide that infringement." (D.I. 1287 at 19)  As Masimo views the record, it shows that "Philips' engineers were well aware of the '850 patent" as early as 2003, as demonstrated by the fact that "Philips referenced Masimo's use of multiple techniques" in a 2003 FDA submission.  (*Id.* at 21)  Masimo further alleges that Philips was aware of the *Nellcor* court's decision as to the '850 patent and that Philips speculated that Masimo would next "come after" Philips.  (D.I. 1289-2 Ex. 20 at 59) Masimo also finds in the record evidence that Philips attempted to "hide its infringement" from Masimo, "even after Masimo filed suit."  (D.I. 1287 at 23)

The Court concludes that the parties have presented genuine disputes of material fact with respect to willful infringement of the '850 patent.  For example, at oral argument, Philips claimed that its statements in the aftermath of the *Nellcor* trial reflected concern that "if Masimo proceeded aggressively against Nellcor, it could sue [Philips] as well," but did not reflect a knowledge of infringement.  (Tr. at 40)  Masimo countered that Philips' statements and accompanying conduct were indicative of willful infringement.  (*See id.* at 44-45; D.I. 1287 at 23)  A reasonable factfinder hearing this (and the totality of record, admissible evidence) could find for either side on this dispute.  Thus, the Court will deny Philips' motion with respect to the '850 patent

With respect to the '400 patent, Masimo has not presented any evidence to support a finding that Philips' conduct was "willful, wanton, malicious, [or in] bad faith."  *Halo*, 136 S. Ct. at 1932.  A reasonable factfinder could not find that Philips subjectively intended to infringe the '400 patent.  Masimo argues that Philips willfully infringed Masimo's '400 patent because "the '400 patent includes a claim specifically directed to Philips' precise calculation techniques."

(D.I. 1287 at 28)  Even if true, this is an insufficient basis for a finding of willful infringement.

Accordingly, the Court will grant Philips' motion with respect to the '400 patent.

### Motion 25: Philips' MSJ (D.I. 1241) of No Literal Infringement of Claims 9, 10, and 14 of the '154 Patent

Philips argues that the Court should grant summary judgment that Philips' Accused Products do not infringe claims 9, 10, and 14 of the '154 patent because the Accused Products "do not 'output' an oxygen saturation that is 'selected' by the processor, as required by the claims." (D.I. 1241 at 27)  Instead, Philips contends, saturation values determined by an algorithm in FAST are further processed by being "subjected to a median filter and then averaged with previous values." (*Id.* at 28)

Masimo responds that, despite the differences that Philips highlights, Philips' Accused Products could still literally infringe claim 9 of the '154 patent.[12]  (*See* D.I. 1287 at 28)  Masimo argues that "nothing in the claims precludes the oxygen saturation measurement calculated within the processor from undergoing additional processing . . . before being displayed." (*Id.* at 29)  Similarly, Masimo contends that the '154 patent's claims "do not limit any output to a display or serial port" and, hence, may include internal outputs. (*Id.*)

The record demonstrates genuine disputes of material fact, including whether oxygen saturation measurements that undergo additional processing can be found infringing. Accordingly, the Court will deny Philips' motion.

### Motion 26: Philips' MSJ (D.I. 1241) that Masimo is Precluded From Relying on the Doctrine of Equivalents to Establish Infringement of Claims 9, 10, and 14 of the '154 Patent

---

[12]Claims 10 and 14 depend on claim 9 of the '154 patent. (*See* D.I. 1241 at 27)

Philips argues that Masimo should be precluded from relying on the doctrine of equivalents to establish infringement of claims 9, 10, and 14 of the '154 patent, because "Masimo made extensive amendments to claim 9" in response to rejections under sections 112 and 102(b). (D.I. 1241 at 31)  Philips specifically argues that the "analysis" and "output" requirements of claim 9 were added in response to the PTO's rejections. (*See id.* at 31-32)

Masimo counters that prosecution history estoppel does not apply because its amendments "were only tangentially related to the patentability of the asserted claims, rebutting the presumption that prosecution history estoppel applies." (D.I. 1287 at 31)  In support of its argument, Masimo claims that the "analysis" and "output" requirements were not added to overcome a section 102(b) rejection. (*See id.* at 31-32)

When presented with a narrowing amendment, the Court must "presum[e] that prosecution history estoppel applies." *EMD Millipore Corp. v. All Pure Techs., Inc.*, 768 F.3d 1196, 1204 (Fed. Cir. 2014).  The patentee may then rebut the presumption by establishing one of three exceptions to estoppel: "the equivalent [was] unforeseeable at the time of the application; the rationale underlying the amendment [bore] no more than a tangential relation to the equivalent in question; or there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the [equivalent]." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002).

Masimo relies on the "tangentiality" exception to rebut the presumption of prosecution history estoppel. (*See* D.I. 1287 at 31)  With respect to the "tangentiality" exception, the Court must "focus[] on the patentee's objectively apparent reason for the narrowing amendment" in the "context in which the amendment was made." *Festo Corp. v. Shoketsu Kinzoku Kogyo*

36

*Kabushiki Co.*, 344 F.3d 1359, 1369-70 (Fed. Cir. 2003) (en banc). Tangentiality is demonstrated when "the reason for the narrowing amendment was peripheral, or not directly relevant" to the equivalent in question. *Id.* at 1369. Further, "that reason [for the amendment] should be discernible from the prosecution history record, if the public notice function of a patent and its prosecution history is to have significance." *Id.* "If the prosecution history reveals no reason for the narrowing amendment, the presumption is not rebutted. . . . Silence does not overcome the presumption." *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315-16 (Fed. Cir. 2008) (internal citation omitted).

Here, the prosecution history does not explain Masimo's reasons for adding the "analysis" and "output" requirements to the '154 patent. (*See* D.I. 1240-6 Ex. 11 at 48-49) At best, the prosecution history indicates that the "analysis" requirement was not added to overcome a section 102(b) rejection; but Masimo points to nothing in the record affirmatively explaining the reasons for amending the claim in question. (*See id.*) Similarly, Masimo does not identify any record support for why the "output" requirement was added. (*See id.*) Because the prosecution history "reveals no reason for the narrowing amendment[s]," Masimo has not rebutted the presumption in favor of prosecution history estoppel. *Honeywell*, 523 F.3d at 1315-16.

Accordingly, the Court will grant Philips' motion.

### Motion 27: Philips' MSJ (D.I. 1241) that the Nellcor Symphony System Qualifies as Prior Art

Philips argues that the Court should grant summary judgment that the Nellcor Symphony System ("Nellcor" or "Symphony System") qualifies as prior art to the '949 patent because it was

"on sale at the latest as of July of 1997." (D.I. 1241 at 32)  To be prior art under section 102(b), there must be clear and convincing evidence that the alleged prior art was "in public use or on sale in this country, more than one year prior to the date" of the patent application being challenged.  35 U.S.C. § 102(b) (2006).  A party may meet its burden of proof under section 102(b) with testimony concerning a prior public use or sale that is corroborated by documentary evidence, "preferably . . . physical records that were made contemporaneously with the alleged prior invention."  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002).  Uncorroborated testimony "alone cannot surmount the hurdle that the clear and convincing evidence standard imposes in proving patent invalidity."  *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1370 (Fed. Cir. 1999).

Here, the record contains witness testimony and arguably corroborating documentary evidence.  (*See* D.I. 1287 at 33-34)  Philips' documentary evidence includes product manuals and 1996 FDA clearance for the Symphony System.  (*See* D.I. 1302 at 16)  Masimo counters that Philips' documents "do not show or corroborate a commercial sale or offer for sale" of the Symphony System.  (D.I. 1287 at 34)  Masimo also points out that "Philips presents no purchase order, invoice, receipt, or other document showing or corroborating a sale of any version of the Symphony [S]ystem in the United States before the critical date."  (*Id.* at 35)

"[T]he ultimate determination of whether . . . oral testimony is sufficiently corroborated" presents a factual question.  *TransWeb LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1302 (Fed. Cir. 2016).  Here, a reasonable factfinder could find that Philips' product manuals and FDA filings corroborate testimony of a public use or sale at the pertinent time.  Such a factfinder might alternatively, however, reach the opposite conclusion.  It follows, then, there is a genuine dispute

38

of material fact on this issue.

Accordingly, the Court will deny Philips' motion.

### Motion 28: Philips' MSJ (D.I. 1241) that the Nellcor Symphony System Includes a Docking Station as Required by Claims 4 and 7 of the '949 Patent

Philips requests that the Court grant summary judgment that the Nellcor Symphony System includes a docking station, as required by claims 4 and 7 of the '949 patent. (*See* D.I. 1241 at 32-36)  The Symphony System consists of three components: the N-3000, N-3100, and N-3200. (*See id.* at 33)  According to Philips, "[t]he N-3100 when combined with the N-3200 meets the docking station limitation as construed by the [C]ourt" and further "meets the limitations recited in claims 4 and 7." (*Id.* at 34)  Masimo counters that "any docking station must be the . . . N-3200." (D.I. 1287 at 37)  In Masimo's view, since the N-3200 alone "does not measure an additional physiological parameter," as the claims require, the N-3200 does not meet the limitations of claims 4 and 7. (*Id.*)

The record reveals genuine disputes of material fact.  The parties disagree as to how many components of the Symphony System comprise a docking station.  The parties further disagree on "whether a skilled artisan would view" Philips' combination of the N-3100 and N-3200 "as a 'docking station' under the claims." (*Id.*)  A reasonable factfinder could side with either Philips or Masimo on these disputes.

Accordingly, the Court will deny Philips' motion.

### Motion 29: Philips' MSJ (D.I. 1241) that the Nellcor Symphony System Renders Claim 10 of the '949 Patent Obvious

Philips argues that the Court should grant summary judgment that "it would have been obvious to combine the Nellcor Symphony System with the '272 [p]atent in 1999." (D.I. 1241 at

37) According to Philips, claim 10 of the '949 patent is obvious because "there was no technological incompatibility that prevented the combination of the Nellcor Symphony with the '272 patent in 1999." (*Id.* at 39)

In response, Masimo argues that "skilled artisans would not have been motivated to combine the Symphony and the '272 patent technology because Nellcor – the purported designer of the Symphony and [the] industry leader – had convinced the industry that the pulse oximetry described in the '272 patent 'was a trick.'" (D.I. 1287 at 38-39 (quoting D.I. 1240-10 Ex. 19 at ¶ 100)) Masimo also notes that Nellcor raised "widespread skepticism that Masimo's technology worked." (D.I. 1240-10 Ex. 19 at ¶ 100)

A claim is obvious when a person having ordinary skill in the art would have "an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007). As evidenced by the conflicting testimony cited by the parties, the record demonstrates genuine disputes of material fact, including whether skilled artisans would have any motivation to combine the Symphony System and the '272 patent. (D.I. 1287 at 39) In particular, a reasonable factfinder could find that skilled artisans would have combined Philips' prior art, but could alternatively find otherwise (for reasons including Nellcor's statements about the '272 patent). (*See* D.I. 1287 at 39)

Accordingly, the Court will deny Philips' motion.

### Motion 30: Philips' MSJ (D.I. 1241) that Claim 5 of the '400 Patent is Indefinite

Philips argues that the Court should grant summary judgment that claim 5 of the '400 patent is indefinite. (*See* D.I. 1241 at 41) Claim 5 "includes the same phrase that is used in

claim 17 of the '222 [p]atent" which was litigated in *Masimo I*.  (*Id.*)  Since the Court held in

*Masimo I* that claim 17 of the '222 patent was indefinite, Philips argues that the Court should

now extend the *Masimo I* ruling on the '222 patent to claim 5 of the '400 patent.  (*See id.*)

Masimo responds that the Court should not "extend[] the ruling on the '222 patent" but,

instead, should make a decision on the '400 patent "based on the record pertaining to [c]laim 5 of

the '400 patent."  (D.I. 1287 at 41)  That record, according to Masimo, shows that Philips' own

expert "examined [c]laim 5 and agreed that a person of skill in the art would understand [the

claim] under the Court's construction."  (*Id.*)

A patent is presumed to be valid.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95

(2011).  In light of this presumption, a party alleging indefiniteness must prove by clear and

convincing evidence that the claims fail to "inform those skilled in the art about the scope of the

invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120,

2129 (2014).

Here, Philips offers only the asserted similarities between the '222 patent and the '400

patent.  Given the record evidence – including Philips' own expert's testimony regarding claim

5's definiteness (*see* D.I. 1241 at 41; D.I. 1287 at 41) – a reasonable factfinder would not have to

conclude that Philips has shown indefiniteness by clear and convincing evidence.

Accordingly, the Court will deny Philips' motion.

IV.   **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the parties'

motions.  An appropriate Order follows.